1   MORGAN, LEWIS & BOCKIUS LLP
    JOSEPH E. FLOREN, State Bar No. 168292
2   KIMBERLY A. KANE, State Bar No. 226896
    One Market Street, Spear Street Tower
3   San Francisco, CA 94105-1126
    Tel./Fax: 415.442.1000/1001
4   jfloren@morganlewis.com
    kkane@morganlewis.com
5
    ROBERT E. GOODING, JR., State Bar No. 50617
6   JENNIFER R. BAGOSY, State Bar No. 223145
    5 Park Plaza, Suite 1750
7   Irvine, CA 92614
    Tel./Fax: 949.399.7000/7001
8   rgooding@morganlewis.com
    jbagosy@morganlewis.com
9
    MARC J. SONNENFELD (*pro hac vice*)
10  KAREN PIESLAK POHLMANN (*pro hac vice*)
    1701 Market Street
11  Philadelphia, PA 19103-2921
    Tel./Fax: 215.963.5000/5001
12  msonnenfeld@morganlewis.com
    kpohlmann@morganlewis.com
13
    Attorneys for Nominal Defendant
14  HEWLETT-PACKARD COMPANY

15

16

17                   IN THE UNITED STATES DISTRICT COURT

                     FOR THE NORTHERN DISTRICT OF CALIFORNIA
18

19  IN RE HEWLETT-PACKARD COMPANY          Master File No. 12-CV-6003 CRB
    SHAREHOLDER DERIVATIVE LITIGATION,
20                                          **NOMINAL DEFENDANT HEWLETT-**
                                            **PACKARD COMPANY'S NOTICE OF**
21  _____ **MOTION AND MOTION TO STAY;**
                                            **MEMORANDUM OF POINTS AND**
22                                          **AUTHORITIES IN SUPPORT**
    This Document Relates to:  All Actions  **THEREOF**
23
                                            Date:   Friday, June 21, 2013
24                                          Time:   10:00 a.m.
                                            Dept.:  Courtroom 6, 17th Floor
25                                          Judge: Hon. Charles R. Breyer

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO STAY

**TO THE HONORABLE CLERK, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, June 21, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Charles R. Breyer, at the San Francisco Courthouse, Courtroom 6, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, nominal defendant Hewlett-Packard Company ("HP") will and hereby does move the Court to stay this action (the "Derivative Action") in its entirety until the earlier of (a) when the independent committee, formed by HP's Board of Directors to investigate potential claims by the Company, completes its investigation and makes a recommendation to the Board, and the Board makes its decision whether to pursue this litigation; or (b) when the Court decides a motion to dismiss the consolidated complaint filed in *In re HP Securities Litigation*, No. 12-cv-5980 CRB, the parallel putative class action alleging claims for violations of the federal securities laws (the "Securities Action"); and in any event not later than (c) January 17, 2014.

This Motion to Stay is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, and the Declaration of Kimberly A. Kane ("Kane Decl.") in Support Thereof, the pleadings and papers on file in this action and in the Securities Action, and such other matters as may be presented to the Court at or before the time of the hearing.

This Motion to Stay is brought following HP's counsel's conference with Plaintiff's counsel regarding a potential stipulated stay. Those discussions have not resulted in an agreement as of the date of this Motion to Stay. *See* Kane Decl. ¶ 4.

Dated: May 10, 2013

MORGAN, LEWIS & BOCKIUS LLP

_____/s/ Joseph E. Floren_____
JOSEPH E. FLOREN
Attorneys for Nominal Defendant
HEWLETT-PACKARD COMPANY

1

**TABLE OF CONTENTS**

**Page**

2

3    TABLE OF AUTHORITIES ............................................................................................ ii

4    STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) .................................................. iv

5    SUMMARY OF ARGUMENT (STANDING ORDER ¶ 5) ........................................ iv

6    I.      BACKGROUND ............................................................................................. 1

7            A.      HP's Acquisition of Autonomy and Subsequent Write-Down. ............................ 1

8            B.      The Substantially Similar Securities and Derivative Lawsuits Commence. ........... 1

9            C.      The Board Forms the Independent Committee. .................................................... 4

10   II.     ARGUMENT ................................................................................................... 5

11           A.      The Derivative Action Should Be Stayed Pending the Independent
                     Committee's Investigation and Recommendation. ................................................ 5

12           B.      The Derivative Action Should Be Stayed Until the Court Decides
                     Whether to Dismiss the Securities Complaint. .................................................... 6

13
14                   1.      Prosecution of the Derivative Action Is Antithetical to HP's
                             Defensive Position in the Securities Action. ............................................... 7

15                   2.      A Stay Is Warranted Because the Relief Sought in the Derivative
                             Action Depends on the Outcome of the Securities Action. ...................... 10

16                   3.      A Stay Will Conserve Judicial Resources. .................................................... 11

17                   4.      The Court Should Temporarily Stay the Derivative Action
                             to Avoid Prejudice to HP and Promote Efficiency. .................................. 14

18
19   III.    CONCLUSION ............................................................................................... 15

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beiser v. PMC-Sierra, Inc.*,
   No. 3893, 2009 WL 483321 (Del. Ch. Feb. 26, 2009).............................................................. 8

*Breault v. Folina*,
   No. SACV010826, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002) ........................... vi, 7, 8, 9

*Brenner v. Albrecht*,
   No. 6514, 2012 WL 252286 (Del. Ch. Jan. 27, 2012) .............................................. 7, 8, 10, 15

*Brudno v. Wise*,
   No. Civ.A. 19953, 2003 WL 1874750 (Del. Ch. Apr. 1, 2003)............................. 7, 10, 11, 15

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962)................................................................................................... 11

*Copeland v. Lane*,
   No. 5:11-cv-01058, 2012 WL 4845636 (N.D. Cal. Oct. 10, 2012) ...................................... v, 5

*Cucci v. Edwards*,
   No. SACV 07-532, 2007 WL 3396234 (C.D. Cal. Oct. 31, 2007) ................................. *passim*

*In re Diamond Foods, Inc. Deriv.Litig.*,
   No. 7657-CS, 2013 WL 755673 (Del. Ch. Feb. 28, 2013) ..................................................... 10

*In re First Solar Deriv. Litig.*,
   No. CV-12–00769, 2012 WL 6570914 (D. Ariz. Dec. 17, 2012).................................. *passim*

*In re Groupon Deriv. Litig.*,
   882 F. Supp. 2d 1043 (N.D. Ill. 2012) ............................................................................. *passim*

*In re HP Deriv. Litig.*,
   Nos. 5:10-cv-03608, 5:11-cv-01058, 2011 WL 5914216 (N.D. Cal. Nov. 28, 2011) ............. 6

*In re Ormat Techs., Inc. Deriv. Litig.*,
   No. 3:10-cv-00177, 2011 WL 3841089 (D. Nev. Aug. 29, 2011).................................. *passim*

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ................................................................................................................... 1

*Laborers' Local v. Intersil*,
   868 F. Supp. 2d 838 (N.D. Cal. 2012) ................................................................................. 1, 5

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005).................................................................................................. 6

*Moradi v. Adelson*,
  No. 2:11–cv–00490, 2012 WL 3687576 (D. Nev. Aug. 27, 2012).................................. v, 5, 6

*Rosenblum v. Sharer*,
  No. CV 07-6140, 2008 U.S. Dist. LEXIS 65353 (C.D. Cal. July 28, 2008) .................. *passim*

*South v. Baker*,
  62 A.3d 1 (Del. Ch. 2012) ....................................................................................... 7

*Zucker v. Andreessen*,
  No. 6014-VCP, 2012 WL 2366448 (Del. Ch. June 21, 2012) ................................. 6

**FEDERAL STATUTES**

15 U.S.C. § 78j(b) ........................................................................................................ 1

15 U.S.C. § 78t(a) ..................................................................................................... 1-2

15 U.S.C. § 78u-4(b)(3)(B) ........................................................................................ 8

15 U.S.C. § 78u-4(b)(3)(C)(i) ................................................................................... 10

**FEDERAL RULES AND REGULATIONS**

17 C.F.R. § 240.10b-5 ................................................................................................ 1

Fed. R. Civ. P. 23.1 .................................................................................................... 7

**STATE STATUTES**

8 Del. Code § 220 ....................................................................................................... 8

Cal. Corp. Code §1601 ............................................................................................... 8

.

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3))

Should this consolidated shareholder derivative action (the "Derivative Action") be temporarily stayed until the earlier of (a) when the independent committee, formed by Hewlett-Packard Company's ("HP's" or the "Company's") Board of Directors (the "Board") to investigate potential claims by the Company, completes its investigation and makes a recommendation to the Board, and the Board makes its decision whether to pursue this litigation; or (b) when the Court decides a motion to dismiss the consolidated complaint filed in *In re HP Securities Litigation*, No. 12-cv-5980 CRB, the parallel putative class action alleging claims for violations of the federal securities laws (the "Securities Action"); and in any event not later than (c) January 17, 2014?

## SUMMARY OF ARGUMENT (STANDING ORDER ¶ 5)

In the interests of fairness and judicial economy, HP, the nominal defendant on whose behalf this case was filed, moves to temporarily stay this Derivative Action.  As the Court has previously observed, "[t]he cases here stem from HP's acquisition of [Autonomy Corporation plc ("Autonomy")] and thus share common facts."  Order Consolidating Cases, Appointing Lead Plaintiffs, and Appointing Lead Counsel and Interim Lead Counsel at 2 (Docket No. 65) (the "Consolidation Order").  Indeed, the Derivative Action and Securities Action both allege that the same statements, by the same defendants, regarding HP's acquisition, integration and write-down of Autonomy were false and misleading and violate the federal securities laws; the plaintiff in the Securities Action brings these claims directly and seeks damages ***against HP*** and certain individual defendants based on the alleged securities fraud alone, while the plaintiff in this Derivative Action seeks to bring these same claims ***on behalf of HP*** and seeks to recover alleged damages to HP based on the securities fraud as well as the costs of investigating and defending the underlying Securities Action.  HP seeks a stay of the Derivative Action to last initially for no more than approximately seven months from the hearing on this motion, by which time circumstances will have changed and the parties and Court will be in a better position to determine whether the Derivative Action should proceed or should continue to be stayed.

As set forth more fully below, in response to shareholder demands following HP'a announcement of the Autonomy write-down, the Board appropriately appointed an independent committee, which has engaged distinguished independent outside counsel, to investigate the Company's potential claims and to make a recommendation to the Board as to how best to proceed. *See Copeland v. Lane*, No. 5:11-cv-01058, 2012 WL 4845636, at *7 (N.D. Cal. Oct. 10, 2012) ("[T]he Independent Committee was formed to investigate, review, and evaluate the facts and circumstances asserted . . . and to make recommendations to the Board whether HP should commence or continue litigation. . . .  [T]hat procedure is appropriate." (internal citations and quotation marks omitted)).  Under these circumstances, the Court should stay the Derivative Action at least until the Board has had the opportunity to make a fully informed decision whether to pursue any claims being investigated by the independent committee.  Indeed, "the [independent committee] may recommend pursuing the litigation and the Board may adopt its decision.  It would thus be premature to demean the [committee's] legitimacy *before* it finishes its investigation and makes its recommendations to the Board." *Moradi v. Adelson*, No. 2:11-cv-00490, 2012 WL 3687576, at *3 (D. Nev. Aug. 27, 2012) (staying derivative case pending the resolution of the committee's investigation and recommendation to the Board).

Additionally, the Derivative Action should also be stayed until the Court rules on forthcoming motions to dismiss the consolidated complaint in the Securities Action.  This result is in the best interests of the Court and HP, the true party-in-interest in the Derivative Action, for three reasons.  First, moving forward with the Derivative Action would significantly prejudice HP because the court-appointed lead plaintiff will seek to prove—ostensibly on HP's behalf—the very allegations that HP is opposing in the Securities Action.  Second, because the relief sought in the Derivative Action largely depends on the outcome of the Securities Action, it is premature to proceed with the Derivative Action at this point.  Third, litigating similar issues and claims in two separate cases is inefficient and an unnecessary waste of resources for the parties and the Court.  When these factors are present, courts routinely stay derivative cases in favor of parallel securities cases.  *E.g.*, *In re First Solar Deriv. Litig.*, No. CV-12–00769, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012); *In re Groupon Deriv. Litig.*, 882 F. Supp. 2d 1043, 1048-51 (N.D. Ill. 2012); *In*

*re Ormat Techs., Inc. Deriv. Litig.*, No. 3:10-cv-00177, 2011 WL 3841089, at *4-5 (D. Nev. Aug. 29, 2011); *Rosenblum v. Sharer*, No. CV 07-6140, 2008 U.S. Dist. LEXIS 65353, at *24-25 (C.D. Cal. July 28, 2008); *Cucci v. Edwards*, No. SACV 07-532, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007); *Breault v. Folina*, No. SACV010826, 2002 WL 31974381, at *1-2 (C.D. Cal. Mar. 15, 2002).

   In the event that the Court has not ruled on the motions to dismiss in the Securities Case, or the independent committee has not completed its investigation by January 17, 2014, the Court should set a hearing to re-visit whether to continue or to terminate the stay at that time.

I.      **BACKGROUND**

A.      **HP's Acquisition of Autonomy and Subsequent Write-Down.**

HP is an information technology corporation headquartered in Palo Alto, California and incorporated in Delaware.[1]  Consolidated Derivative Shareholder Complaint (Docket No. 75-2) (the "Derivative Complaint" or "Deriv. Compl.") ¶ 32.  On August 18, 2011, HP announced that it had entered into an agreement to acquire software company Autonomy for approximately $11 billion.  *Id.* ¶ 2.  Following the Autonomy acquisition, HP discovered historical accounting improprieties at Autonomy which, among other things, led to its announcement of an $8.8 billion write-down on November 20, 2012.  *Id.*  An onslaught of lawsuits alleging securities fraud and shareholder derivative actions followed.  *See* Consolidation Order at 1-2.

B.      **The Substantially Similar Securities and Derivative Lawsuits Commence.**

Beginning on November 26, 2012, three putative federal securities class actions and eight derivative actions were filed in this District against HP and Autonomy and certain of their respective executives, officers, directors, financial advisors and auditors.[2]  Consolidation Order at 1.  The derivative cases were consolidated by stipulated order on February 21, 2013 (Docket No. 61).  On March 4, 2013, the Court consolidated the putative securities actions and appointed purported HP shareholder PGGM Vermogensbeheer B.V. (the "Securities Plaintiff") as lead plaintiff in the Securities Action and Stanley Morrical (the "Derivative Plaintiff") as lead plaintiff in the Derivative Action.  Consolidation Order at 1, 9, 13.

On May 3, 2013, the Securities Plaintiff filed the Consolidated Complaint for Violation of the Federal Securities Laws (the "Securities Complaint" or "Sec. Compl.", attached as Exhibit A to the Declaration of Kimberly A. Kane in Support of Nominal Defendant HP's Motion to Stay ("Kane Decl.")), which asserts claims under Section 10(b) and Rule 10b-5, and Section 20(a) of

---

[1]      Because HP is a Delaware corporation, Delaware law governs whether a shareholder can pursue this Derivative Action in the name and right of the Company.  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96, 108-09 (1991); *accord Laborers' Local v. Intersil*, 868 F. Supp. 2d 838, 844 (N.D. Cal. 2012).

[2]      On February 11, 2013, the plaintiff in the third putative federal securities class action, *Neumann v. Hewlett Packard* (No.13-0284), filed a Voluntary Notice of Dismissal dismissing all claims against all defendants.

the Securities Exchange Act of 1934 against HP, the HP Executives, the Chairman of HP's Board (Lane), and the former CEO of Autonomy (Lynch).[3]  Sec. Compl. ¶¶ 233-41.  The Securities Complaint alleges that the individual defendants and HP knowingly or with deliberate recklessness made untrue statements about the Autonomy acquisition and integration during the August 19, 2011 to November 20, 2012 putative class period, while failing to disclose HP's allegedly inadequate due diligence, Autonomy's accounting improprieties, and HP's post-acquisition investigation.  *Id.* ¶¶ 3, 7, 163-209.  The Securities Complaint also alleges that HP filed financial statements that were materially misstated due to the incorporation of the inflated Autonomy financials and valuation.  *Id.* ¶ 134.

Also on May 3, 2013, the Derivative Plaintiff filed the Derivative Complaint asserting on behalf of HP the same federal securities fraud claims against many of the same HP Executives (Apotheker, Whitman and Robison), as well as against the HP Board Members for signing the allegedly false financial statements.  Deriv. Compl. ¶¶ 1, 396-409.  As set forth in the chart below, both plaintiffs allege substantially the same series of allegedly misleading disclosures or omissions by HP from August 18, 2011 through October 3, 2012, in the very same HP press releases, SEC filings, and conference call transcripts.

---

[3]     The defendants named in the Securities and Derivative Actions discussed herein are defined as follows and referred to individually by last name or as indicated in quotation marks:

- Michael Lynch (former CEO of Autonomy);

- The "HP Executives": Léo Apotheker, Margaret Whitman, Catherine Lesjak, James Murrin, and Shane Robison (current or former executive officers of HP);

- The "HP Board Members": Marc Andreesen, Lawrence Babbio, Jr., Sari Baldauf, Shumeet Banerji, Rajiv Gupta, John Hammergren, Ann Livermore, Raymond Lane, Gary Reiner, Patricia Russo, Dominique Senequier, G. Kennedy Thompson and Ralph Whitworth (current or former directors of HP, along with Apotheker and Whitman);

- The "Financial Advisors": Barclays Capital ("Barclays") and Perella Weinberg Partners LP ("Perella") (advisors to HP in connection with the Autonomy acquisition).

| Challenged Statement | Securities Complaint | Derivative Complaint |
|---|---|---|
| **Aug. 18, 2011 Press Release** | 163-170 | 185 |
| **Aug. 18, 2011 Conf. Call** | 163-170 | 190 |
| **Sept. 13, 2011 Conf. Call** | 171-176 | 197-200 |
| **Sept. 22, 2011 Conf. Call** | 177 | |
| **Sept. 22, 2011 All Things Digital Interview** | 178 | |
| **Nov. 21, 2011 Conf. Call** | 179, 181 | 218, 249 |
| **Nov. 29 - Dec. 1, 2011 Vienna Conf.** | | 220-22, 250 |
| **Dec. 14, 2011 10-Q** | 142-148 | |
| **Dec. 14, 2011 10-K** | 142-148, 180-81 | 231, 269, 378, 380 |
| **Feb. 22, 2012 Press Release** | 182, 184 | |
| **February 22, 2012 Conf. Call** | 185 | 233 |
| **Mar. 12, 2012 10-Q** | 149-150, 187-88 | 269 |
| **Mar. 21, 2012 Shareholder Meeting** | 189 | |
| **May 23, 2012 Press Release** | 190, 193 | |
| **May 23, 2012 Conf. Call** | 191, 193 | 242 |
| **June 4, 2012 Vegas Conf.** | | 246-47, 252 |
| **June 5, 2012 All Things Digital Interview** | 194 | |
| **June 8, 2012 10-Q** | 151-53, 196-98 | 253, 269 |
| **Aug. 8, 2012 Press Release** | | 262-64 |
| **Aug. 22, 2012 Press Release** | 199-200 | 265 |
| **Aug. 22, 2012 Conf. Call** | 201-02 | |
| **Sept. 10, 2012 10-Q** | 154-158, 204-06 | 269 |
| **Oct. 3, 2012 Analyst Mtg.** | 207 | 285 |

Relying on the same facts that form the basis of the securities fraud claims, the Derivative Complaint also asserts claims against the individual defendants for breach of fiduciary duty, abuse of control, corporate waste, and unjust enrichment, as well as claims against the Financial Advisors for aiding and abetting these breaches and for negligence. Deriv. Compl. ¶¶ 410-445. The Derivative Complaint alleges that HP's damages include, *inter alia*, the cost of investigating and defending the Securities Action and damages to the Company as a result of repurchasing its shares at prices allegedly inflated by the same securities fraud that is the subject of the Securities Complaint. *Id*. ¶¶ 25, 337, 404, 409, 419, 428. Thus, the viability of the Derivative Action depends in large part on whether securities fraud was committed and the cost to the Company of any such fraud.

C.      **The Board Forms the Independent Committee.**

In response to three shareholder demand letters requesting that the Board take action against certain parties following the November 20, 2012 announcement of the Autonomy write-down, the Board formed an independent committee to investigate the allegations in the demands and the related lawsuits and provide a recommendation to the Board as to whether and how HP should assert any claims against any of the potential defendants (the "Independent Committee").[4] Kane Decl. ¶ 3; *see* Deriv. Compl. ¶ 389.  The Independent Committee is comprised of three outside directors led by Ralph Whitworth, an independent director who joined HP's Board after the Autonomy acquisition.  Deriv. Compl. ¶¶ 47, 385, 386.  The Committee has retained Ralph Ferrara at Proskauer Rose LLP as independent legal counsel, and is currently conducting its investigation.  Kane Decl. ¶ 3; *see* Deriv. Compl. ¶¶ 389, 390, 395.

As the Derivative Complaint alleges, HP's General Counsel summarized the composition, mandate, and status of the Independent Committee at the Company's Annual Shareholder Meeting on March 20, 2013:

> [The] Committee has been formed by resolution of the Board. The three members are Ralph Whitworth, Gary Reiner, and Ken Thompson. . . .
>
> The charter is roughly consistent with the lawsuits that have been filed against the company.  It is not simply related to the Autonomy matter, but in fact relates to other aspects as well, including allegations relating to certain impairment charges that were taken in connection with both the EDS acquisition and the Autonomy acquisition.
>
> As is practiced, this Committee retains counsel to assist them in that process.  That counsel has been selected and will be commencing its work shortly.  The independence of this Committee is ultimately passed on by a court of law, and so therefore it is required to meet certain criteria that is established by these courts under the various laws – in this particular instance, under the laws of Delaware.

---

[4]     Plaintiff erroneously contends that the Independent Committee is a special litigation committee empowered to determine on behalf of HP, *inter alia,* whether to pursue the claims asserted in this action.  *See, e.g.*, Deriv. Compl. ¶¶ 43, 46, 47, 395.  In fact, however, the Derivative Complaint itself cites statements by HP General Counsel John Schultz and spokesperson Howard Clabo reflecting simply that the Independent Committee has been charged with investigating the facts and providing a recommendation to the disinterested and independent members of the Board.  *Id.* ¶ 394 (Clabo's statement that the Committee was formed only "to make a ***recommendation*** to the full board as to its response to these claims" (emphasis added)); *id.* ¶ 389 (Schultz's statement describing the Committee as a "special committee" formed to investigate the allegations, not a special litigation committee).

Deriv. Compl. ¶ 389; *see also id.* ¶ 394 (HP spokesman Howard Clabo's statement that the Independent Committee was formed "to make a recommendation to the full board as to its response to these claims").

## II.     ARGUMENT

### A.     The Derivative Action Should Be Stayed Pending the Independent Committee's Investigation and Recommendation.

This Court should stay the Derivative Action to allow the Board the opportunity to evaluate the claims raised therein.  Control over the corporation and its affairs, including the decision to pursue litigation, rests with the directors, not the shareholders, of a Delaware corporation.  *Laborers' Local*, 868 F. Supp. 2d at 844-45.  Indeed, it is entirely appropriate for a board to form a committee to investigate, review and evaluate allegations in demand letters and derivative lawsuits, and make a decision based on the committee's review and recommendation regarding whether to commence or continue litigation.  *Copeland v. Lane*, No. 5:11-cv-01058, 2012 WL 4845636, at *7 (N.D. Cal. Oct. 10, 2012).

Courts routinely grant temporary stays of derivative litigation to allow independent board committees to complete their investigations based on the following logical reasons:

> [I]t would seem that such an independent committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval.  If a derivative plaintiff were to be permitted to depose corporate officers and directors and to demand the production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted.

*E.g.*, *Moradi v. Adelson*, No. 2:11-cv-00490, 2012 WL 3687576, at *2 (D. Nev. Aug. 27, 2012) (citation omitted).  These considerations support a stay regardless of whether the committee has only investigative and advisory authority, as here, or is a special litigation committee afforded absolute authority to determine the Company's position and actions with respect to the litigation.[5]

---

[5]     Indeed, if the Independent Committee were a special litigation committee as (inaccurately) alleged by the Derivative Plaintiff, *see supra* note 4 and accompanying text, then under Delaware law, it would be practically "a foregone conclusion that a motion to stay pending the resolution of an SLC [special litigation committee] investigation must be granted."  *Moradi*, 2012 WL 3687576, at *2 (citation omitted).

*Moradi*, 2012 WL 3687576, at *3.  This is because "the [committee] may recommend pursuing the litigation and the Board may adopt its decision.  It would thus be premature to demean the [committee's] legitimacy *before* it finishes its investigation and makes its recommendations to the Board." *Id*. (staying case pending advisory committee's recommendation to board).

Here, HP's Board has formed the Independent Committee to conduct an investigation and make a recommendation to the Board, at which point the Board can decide on a fully informed basis whether and how to pursue or otherwise address the claims raised in this action.  Because an Independent Committee has been formed and has retained counsel to advise and assist it in conducting its investigation of and formulating its recommendations concerning the allegations in the Derivative Complaint, this Derivative Action should be stayed to allow time for the investigation to occur.  The decision whether and how to move forward with the Derivative Action rests with the Board, not individual HP shareholders, and the Derivative Action should be stayed pending the Board's decision with respect to the Independent Committee's recommendations.  *Moradi*, 2012 WL 3687576, at *3.  Any other result would obviate the protections afforded corporations under Delaware law.[6]

### B.    The Derivative Action Should Be Stayed Until the Court Decides Whether to Dismiss the Securities Complaint.

This "court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (citation omitted).  Courts thus routinely stay derivative cases in favor of parallel securities

---

[6]    Moreover, while it is premature to assess the independence of the Board or the Independent Committee prior to the Committee's recommendation, *Moradi*, 2012 WL 3687576, at *4, the demands upon the Board necessarily conceded the Board's independence as a matter of law.  *See, e.g.*, *In re HP Deriv. Litig.*, Nos. 5:10-cv-03608, 5:11-cv-01058, 2011 WL 5914216, at *1, n.3 (N.D. Cal. Nov. 28, 2011) ("[a] shareholder plaintiff, by making demand[,] . . . 'tacitly concedes the independence of a majority of the board to respond'"(citation omitted)).  And, Derivative Plaintiff's allegation that HP's establishment of the Committee shows demand futility with regard to the entire Board, Deriv. Compl. ¶ 395, is plainly refuted by relevant case law.  *See, e.g.*, *Zucker v. Andreessen*, No. 6014-VCP,  2012 WL 2366448, at *6 (Del. Ch. June 21, 2012) ("reject[ing] plaintiff's contention 'that Defendants waived any arguments they may have regarding Plaintiff's election not to make a demand' by delegating authority to assess the merits of the pending lawsuit to a special litigation committee"(citation omitted)).

fraud class actions where (as here) (1) concurrent prosecution of the derivative case would unnecessarily and inappropriately harm the company; (2) the relief sought in the derivative case depends on the outcome of the securities case; and (3) practical considerations make it unduly complicated, inefficient, and wasteful for the overlapping cases to proceed simultaneously.[7]

### 1.   Prosecution of the Derivative Action Is Antithetical to HP's Defensive Position in the Securities Action.

A derivative suit allows shareholders, under certain circumstances, to bring claims to enforce a company's rights. *See* Fed. R. Civ. P. 23.1. The derivative plaintiff acts as the company's fiduciary and has a duty to act in the company's best interest. *Breault*, 2002 WL 31974381, at *1. Thus, a derivative suit "may proceed only when it is in the company's best interest." *Id.* (staying derivative action pending outcome of federal securities action).

Courts recognize that a company's best interest is not served if a derivative case proceeds ahead of or contemporaneously with a parallel securities class action because "the nature of the derivative suit will require [the company] to allege wrongdoing on the part of its officers and directors while maintaining the innocence of the same officers and directors in the class action." *First Solar*, 2012 WL 6570914, at *2. As the Delaware Court of Chancery recently explained:

> [I]t is not practical for two actors – [the derivative plaintiffs] and [the Company's] board – to pursue divergent strategies in two simultaneous actions on behalf of the same entity . . . . Prosecution of [the] derivative action would involve taking actions designed to refute the merits of the Company's defense of the Securities Class action, and vice versa. The Individual Defendants are likely witnesses in both cases, but [the derivative plaintiff] must attempt to undermine their credibility while the Company presumably will attempt to rely on their veracity. The potential for such conflicts . . . creates a significant risk that prosecution of [the derivative plaintiff's] case will prejudice [the Company]. For example, party admissions and adverse judicial rulings in this action might estop the Company from advancing contrary assertions on its own behalf in the Securities Class Action.

---

[7]      *See, e.g., First Solar*, 2012 WL 6570914, at *2; *Groupon Deriv. Litig.*, 882 F. Supp. 2d 1043, 1048-51; *Ormat Techs.*, 2011 WL 3841089, at *4-5; *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *24-25; *Cucci*, 2007 WL 3396234, at *2; *Breault*, 2002 WL 31974381, at *1-2; *Brenner v. Albrecht*, No. 6514, 2012 WL 252286, at *4-6 (Del. Ch. Jan. 27, 2012); *Brudno v. Wise*, No. Civ.A. 19953, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003); *see also South v. Baker*, 62 A.3d 1, 23-24 (Del. Ch. 2012) (stating Delaware Court of Chancery "routinely" stays derivative cases pending securities cases).

1    *Brenner*, 2012 WL 252286, at \*6; *see also Groupon*, 882 F. Supp. 2d at 1052 (quoting same).

2    Accordingly, "[s]everal cases hold that this argument is a sufficient reason to stay a derivative

3    action." *First Solar*, 2012 WL 6570914, at \*2; *see, e.g.*, *Groupon*, 882 F. Supp. 2d at 1052;

4    *Brenner*, 2012 WL 252286, at \*6; *Ormat*, 2011 WL 3841089, at \*4; *Rosenblum*, 2008 U.S. Dist.

5    LEXIS 65353, at \*24; *Cucci*, 2007 WL 3396234, at \*2; *Breault*, 2002 WL 31974381, at \*2 (cases

6    staying derivative action in favor of securities action based in whole or in part on concern that

7    proceeding in the derivative case will hurt the company's position in the securities case).

8            Any prosecution of the purported securities fraud claims on HP's behalf in the Derivative

9    Action would be antithetical to the Company's efforts to defend itself against those same

10   allegations asserted directly against it in the Securities Action.  Already, HP's defense of the

11   Securities Action has been placed at a potential disadvantage absent a stay.  The Derivative

12   Complaint selectively quotes and purports to describe the contents of certain internal company

13   documents that the Derivative Plaintiff obtained pursuant to shareholder inspection demands

14   made under California Corporations Code Section 1601 and Delaware General Corporation Law

15   Section 220, 8 Del. Code § 220, and subject to an express confidentiality agreement requiring

16   such materials be filed (if at all) under seal.  *See* Deriv. Compl. at 1.  Those statutes afford

17   shareholders such inspection rights under certain circumstances, and only for proper purposes in

18   furtherance of their interests as current shareholders of the Company, consistent with the

19   Company's best interests.  Such shareholder records inspections are not permitted, however, for

20   purposes adverse to the corporation, such as to obtain information for a securities class action.

21   *See, e.g.*, *Beiser v. PMC-Sierra, Inc.*, No. 3893, 2009 WL 483321, at \*4 (Del. Ch. Feb. 26, 2009).

22   The Securities Plaintiff has no such inspection rights.  Moreover, the Securities Plaintiff is not

23   entitled to obtain discovery at this stage of the proceedings because of Congress's command in

24   the Private Securities Litigation Reform Act of 1995 ("PSLRA") that discovery in the Securities

25   Action be stayed unless and until the Securities Complaint survives dismissal.  *See* 15 U.S.C.

26   § 78u-4(b)(3)(B).  Further, the Derivative Complaint references these documents in a way that HP

27   anticipates will require additional disclosure of their contents on any motion to dismiss.  The

28   Derivative Action, which exists solely to protect the Company's purported interests, should not be

1   permitted to proceed in a way that will inevitably provide discovery to the Securities Plaintiff that

2   the PSLRA expressly precludes.

3         Additionally, the Derivative Plaintiff presumably intends to argue on HP's behalf that

4   certain factual allegations in the Derivative Complaint satisfy the PSLRA pleading standards with

5   respect to the securities claims, while HP will argue in the Securities Action that the very same

6   allegations are insufficient.  Moreover, proceeding in the Derivative Action will involve attempts

7   by the Derivative Plaintiff to attack the credibility of the defendants and to prove the very same

8   misconduct HP must defend against in the Securities Action.  If the Derivative Plaintiff –

9   purportedly acting in the best interests of the Company – were to prove the individual defendants

10  are liable, this could potentially result in the liability of the officers being imputed to HP in the

11  Securities Action.  *See Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *24.  This result would

12  clearly cause "substantial harm to [the Company], the party on whose behalf this derivative action

13  has been brought."  *Id.*  It is plainly not in HP's best interests for it and the Derivative Plaintiff –

14  acting on the Company's behalf – to move forward under two directly competing theories of

15  liability.  For this reason alone, the Derivative Action should be stayed pending the resolution of

16  the Securities Action.  *First Solar*, 2012 WL 6570914, at *2.

17        Lastly, the time and expense associated with litigating the Derivative Action would

18  undoubtedly impose a hardship on the Company that can and should be deferred at this time.  *See*

19  *Breault*, 2002 WL 31974381, at *2 ("This [derivative] action will divert Emulex's financial and

20  management resources from the pending [securities] litigations against it."); *Ormat*, 2011 WL

21  3841089, at *4 (quoting *Breault*); *see also First Solar*, 2012 WL 6570914, at *2 ("simultaneous

22  litigation will increase the cost of the overall litigation in the near term").

23        In contrast to the prejudice to HP's interests that would result if a stay is not granted, the

24  Derivative Plaintiff will suffer no harm if a temporary stay is imposed.  The filing of the case

25  itself has ensured that no prejudice to the Company's rights (which the Derivative Plaintiff

26  purports to protect) can occur during the pendency of the stay.  The filing of the Derivative

27  Action tolls the statutes of limitations on the claims alleged, and the filing of the original

28  complaints in the Securities and Derivative Actions imposed document retention requirements as

a matter of law upon all defendants under the PSLRA.  15 U.S.C. § 78u-4(b)(3)(C)(i).  Finally, at

this juncture, the Company seeks only a temporary stay for no more than seven months from the

date of the hearing on this motion, which will ensure that the Court may manage both the

Securities Action and the Derivative Action expeditiously and efficiently based on the

circumstances at that time.

> **2.      A Stay Is Warranted Because the Relief Sought in the Derivative
> Action Depends on the Outcome of the Securities Action.**

"Courts that have considered the interplay between derivative and securities actions have

often found that derivative claims 'cannot be adjudicated in full (or even in large measure) until

the securities class action is tried.'"  *Groupon*, 882 F. Supp. 2d at 1048 (quoting *Brudno*, 2003

WL 1874750, at *4) (internal punctuation omitted); *see also Brenner*, 2012 WL 252286, at *6,

*Ormat*, 2011 WL 3841089, at *4; *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *24; *Cucci*, 2007

WL 3396234, at *2 (cases staying derivative action in favor of securities action because

derivative plaintiff sought damages suffered by the company arising from the securities action).

This is because a tag-along derivative case like this one seeks damages from the defendants for

causing the company to purchase its own stock inflated as a result of the alleged securities fraud

and also seeks the company's defense costs for the securities case (including the costs of

settlement or a judgment).  *E.g.*, *Brudno*, 2003 WL 1874750, at *2; *see In re Diamond Foods,

Inc. Deriv. Litig.*, No. 7657-CS, 2013 WL 755673, at *3 (Del. Ch. Feb. 28, 2013) ("because the

derivative actions seek to make the derivative defendants indemnify Diamond for any damages or

costs it must pay as a result of the securities suits, the derivative actions should be stayed until the

securities suits are concluded").  HP denies that its share price was inflated by any of the

purported materially misleading misrepresentations or omissions, but damages arising from this

issue, as well as how much the Company must pay in defense costs, cannot be determined until

the Securities Action is adjudicated.  *E.g.*, *id.*  Even where a derivative plaintiff asserts claims for

relief that are not contingent on the securities case (*e.g.*, requests for corporate reforms), courts

still stay the derivative action because its scope will be significantly curtailed by the adjudication

of the securities claims.  *Groupon*, 882 F. Supp. 2d at 1048.

HP'S MOTION TO STAY
MASTER FILE NO. 12-CV-6003 CRB

The Derivative Complaint alleges that HP has sustained "billions of dollars in damages," Deriv. Compl. ¶¶ 404, 409, 419, including "costs incurred from overpaying for its own stock at artificially inflated prices" as a result of the defendants' alleged securities fraud, as well as "costs incurred from . . . investigations and litigation against HP and its officers and directors." *Id.* ¶¶ 337(c), (f), *id.* ¶ 404 ("As a direct and proximate result of the HP Individual Defendants' foregoing violations of Section 10(b) and Rule 10b-5, HP has sustained billions of dollars in damages, including, but not limited to the, $8.8 billion write-down, the costs and expenses incurred in connection with HP's internal investigation of historical financial statements, potential securities litigation, and its loss of reputation and goodwill."). The amount of those damages, if any, cannot be calculated until the Securities Action is resolved. As a result, any litigation in this action over HP's purported right to recover damages that have not yet been incurred in connection with the Securities Action would be premature. *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *25 ("[T]he suit should be stayed because the shareholders' claims necessarily depend on the outcome of the securities class action. If [the Company] is exonerated in the securities class action, then it is unclear what, if anything, would be left of the derivative action."); *Cucci*, 2007 WL 3396234, at *2 ("If Defendants are successful on the motion to dismiss the [Securities Complaint], Plaintiffs may have little basis for pursuing this [] Derivative Action.").

Central to the claims in the Derivative Action are the allegations that HP has been harmed by the defendants' securities fraud and by its potential liability arising from the Securities Action. The truth or falsity of these allegations (and damages arising therefrom) cannot be determined until the Securities Action is adjudicated. "In these circumstances, 'the sensible ordering of events is for the securities class action to proceed first.'" *Groupon*, 882 F. Supp. 2d at 1048 (quoting *Brudno*, 2003 WL 1874750, at *5) (internal punctuation omitted).

### 3.    A Stay Will Conserve Judicial Resources.

This Court has the discretionary power to control the disposition of the cases on its docket "in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Where the parties and factual allegations at issue in a securities and derivative case substantially overlap, courts find that a stay

1  of the derivative case "would preserve judicial resources and reduce the litigation burden on the

2  parties and the court." *Groupon*, 882 F. Supp. 2d at 1051.  The overlap need not be perfect –

3  additional or different parties, factual allegations, and legal claims will not militate against a stay.

4  *See id.* Here, a review of the complaints demonstrates that the issues in the Derivative Action

5  substantially overlap with those in the Securities Action.

6      **First,** courts look at the overlap between the parties to determine if they are "sufficiently

7  similar" to warrant a stay.  *Groupon*, 882 F. Supp. 2d at 1050.  It is typical in these cases for the

8  lead plaintiffs to be different and for derivative cases to involve additional board member

9  defendants, so the parties need not be perfectly aligned for the court to issue a stay.  As the *Ormat*

10 court reasoned,

11        The fact that Plaintiffs in this case are not lead plaintiffs in the Securities Class
          Action, and that there are additional defendants in this case, do not require a
12        finding that a stay is not warranted.  We do not believe that the two actions must
          involve exactly the same parties and that Plaintiffs of a shareholder derivative suit
13        must be the lead plaintiffs in the class action suit in order [to enter] a stay.

14 2011 WL 3841089, at *5; *see also Groupon*, 882 F. Supp. 2d at 1049 ("Although the class action

15 contains different plaintiffs and additional defendants, the parties in both cases need not be

16 perfectly aligned for the court to issue a stay.").

17      The overlap among the parties to the Derivative and Securities Actions clearly supports a

18 stay.  The lead plaintiffs in both actions are or were HP shareholders and purport to act in their

19 capacities as such, whether on behalf of the Company in the Derivative Action or on behalf of a

20 class of purchasers of HP stock in the Securities Action.  Deriv. Compl. p. 1, ¶ 31; Sec. Compl.

21 ¶¶ 3, 107.  Moreover, the defendants alleged in the Derivative Complaint to have made the

22 misrepresentations that are the basis for the derivative securities claims are also named in the

23 Securities Complaint.  Deriv. Compl. ¶ 403 (claiming that Apotheker and Whitman in particular

24 made false and misleading statements), ¶ 400 (claiming that Lane signed the challenged 2011 10-

25 K); Sec. Compl. ¶¶ 110-112, 115 (naming Apotheker, Whitman and Lane as defendants).

26      **Second**, courts look to the factual overlap in the claims to determine whether "both

27 actions rest on the same or closely related transactions, happenings or events." *Cucci*, 2007 WL

28 3396234, at *2; *Groupon*, 882 F. Supp. 2d at 1050 (quoting same); *see Rosenblum*, 2008 U.S.

1  Dist. LEXIS 65353, at *25 (staying derivative action where plaintiffs "will need to prove the

2  same core factual allegations at issue in the securities class action").  In addition to temporal

3  overlap, of particular relevance in these cases is the overlap between the allegedly misleading

4  disclosures or omissions.  *Groupon*, 882 F. Supp. 2d at 1050 (granting stay where "both sets of

5  plaintiffs rely on the same documents to support their claims," and "describe similar temporal

6  events"); *Cucci*, 2007 WL 3396234, at *2 (granting stay where both complaints "allege the same

7  series of misleading or omissive disclosures . . . and quote the same [Company] press releases,

8  SEC filings and analyst reports"); *Ormat*, 2011 WL 3841089, at *5 (granting stay where "both

9  lawsuits are based on Defendants' accounting practices and public financial statements in 2008

10  and 2009").  Where both sets of plaintiffs challenge the same statements or omissions for the

11  same reasons, courts routinely find that "'both actions rest on the same or closely related

12  transactions, happenings or events, and thus will call for the determination of the same or

13  substantially related questions of fact.'"  *Groupon*, 882 F. Supp. 2d at 1051 (citation omitted).

14      Here, the Securities and Derivative Plaintiffs rely on a substantially similar set of

15  purportedly misleading disclosures or omissions to support their respective claims.  *See supra*

16  § I(B) (chart comparing challenged statements).  Both the Derivative and Securities Plaintiffs

17  allege that HP performed insufficient due diligence prior to acquiring Autonomy; that HP

18  concealed Autonomy's accounting improprieties and inflated value; that HP's financial

19  statements were in turn inflated after the Company acquired Autonomy; and that HP's post-

20  acquisition investigation was inadequate.  Deriv. Compl. ¶¶ 19-24, 400; Sec. Compl. ¶ 7.  The

21  Derivative Plaintiff makes the further allegation that the defendants concealed that "HP's highly

22  publicized Next Generation Information Platform IDOL 10 Autonomy/Vertica was not available

23  to the market, even though HP had represented to the market that it already existed."  Deriv.

24  Compl. ¶ 400.  However, this additional allegation, which is contradicted on the face of the

25  Complaint (*see id.* ¶ 229, acknowledging "a product with the name IDOL 10 existed"), does not

26  preclude a stay.  As the *Groupon* court recognized, a derivative case should be stayed even

27  though it involves additional claims, because "[i]f the [overlapping] class claims are disposed of

28  on a motion to dismiss, then the scope of the derivative action will be significantly limited."  882

F. Supp. 2d at 1049.

**Finally**, any difference in the legal theories of a securities and derivative case does not preclude a stay, but in fact bolsters the need for a stay.  To succeed in the Securities Action, the Securities Plaintiff must show that the individual defendants acted with scienter, and are thereby liable to a plaintiff class of purchasers of HP stock.  Similarly, the Derivative Plaintiff must show that the individual defendants acted with scienter and are liable to HP.  *See Groupon*, 882 F. Supp. 2d at 1051 ("[the derivative plaintiff] must prove that certain alleged misstatements constitute a breach of the individual defendants' fiduciary duties, whereas the [federal securities] class action plaintiffs must prove that these same statements constitute securities fraud").  To the extent these theories diverge, they are merely "two sides of the same coin, and courts have regularly stayed one action in favor of the other despite the different nature of the claims." *Groupon*, 882 F. Supp. 2d at 1051 (citing cases).  "[Here] both lawsuits are based on [Autonomy's] accounting practices and [HP's] public financial statements during [2011] and [2012].  The difference in claims arises from the nature of each action, that is, the way in which all shareholder derivative actions differ from securities class actions."  *Ormat*, 2011 WL 3841089, at *5.  This difference provides no basis to deny staying the Derivative Action, and the close similarities in the factual and legal issues presented strongly support a stay.  *Id*.

### 4.     The Court Should Temporarily Stay the Derivative Action to Avoid Prejudice to HP and Promote Efficiency.

"Given the significant overlap between the two cases, and the potential prejudice to [HP] should the present action proceed, the court [should] conclude[] that [HP] would face hardship if forced to go forward at this juncture." *Groupon*, 882 F. Supp. 2d at 1052.  Once the Court determines whether the Securities Complaint survives dismissal, "both the court and the parties will be in a better position to understand the scope of [the] defendants' potential liability" in the Derivative Action.  *Id*.  Accordingly, the Court should stay the Derivative Action until it decides a motion to dismiss the Securities Complaint, at which the point the Court and the parties should revisit the circumstances and reevaluate the necessity and/or the scope of any continued stay.  *See Groupon*, 882 F. Supp. 2d at 1052; *Cucci*, 2007 WL 3396234, at *2 (cases staying derivative

1  action pending ruling on the motion to dismiss the securities action complaint); *First Solar*, 2012

2  WL 6570914, at *2; *Ormat*, 2011 WL 3841089, at *9 (staying derivative action pending final

3  resolution of securities action); *Brenner*, 2012 WL 252286, at *7 (staying case "indefinitely" but

4  allowing plaintiff to "seek to lift the stay" upon the final dismissal of the securities class action or

5  in approximately one year's time, or "at any time for good cause shown"); *Brudno*, 2003 WL

6  1874750, at *5 (ordering that a "stay shall be indefinitely entered" and noting that "[a]s with any

7  stay ruling, the court should remain flexible and open to revisiting the situation").

8  ## III.     CONCLUSION

9      For the foregoing reasons, HP respectfully requests that this Court stay the Derivative

10  Action until the earlier of (a) when the Independent Committee has completed its investigation

11  and made a recommendation to the Board, and the Board has decided whether and how the

12  Company should proceed with respect to the claims raised in this Action; or (b) when the Court

13  decides the forthcoming motions to dismiss in the Securities Action; and in any event not later

14  than (c) January 17, 2014.

15  Dated:  May 10, 2013                                   Respectfully submitted,

16                                                        MORGAN LEWIS & BOCKIUS LLP

17                                                        By:_/s/ Joseph E. Floren_____
                                                            JOSEPH E. FLOREN
18                                                        Attorneys for Nominal Defendant
                                                          HEWLETT-PACKARD COMPANY
19

20  DB1/ 74183674.1

21

22

23

24

25

26

27

28