MORGAN, LEWIS & BOCKIUS LLP
JOSEPH E. FLOREN, State Bar No. 168292
KIMBERLY A. KANE, State Bar No. 226896
One Market Street, Spear Street Tower
San Francisco, CA  94105-1126
Tel: 415.442.1000 / Fax: 415.442.1001
jfloren@moganlewis.com
kkane@morganlewis.com

ROBERT E. GOODING, JR., State Bar No. 50617
JENNIFER R. BAGOSY, State Bar No. 223145
5 Park Plaza, Suite 1750
Irvine, CA  92614
Tel: 949.399.7000 / Fax: 949.399.7001
rgooding@morganlewis.com
jbagosy@morganlewis.com

MARC J. SONNENFELD (*pro hac vice*)
KAREN PIESLAK POHLMANN (*pro hac vice*)
1701 Market Street
Philadelphia, PA  19103-2921
Tel: 215.963.5740 / Fax: 215.963.5001
msonnenfeld@morganlewis.com
kpohlmann@morganlewis.com

Attorneys for Nominal Defendant
HEWLETT-PACKARD COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION,<br><br>This Document Relates to:  All Actions | Master File No. 12-cv-6003 CRB<br><br>**NOMINAL DEFENDANT HEWLETT-PACKARD COMPANY'S FURTHER BRIEF REGARDING SEALING**<br><br>Dept.: Courtroom 6, 17th Floor<br>Judge:  Honorable Charles R. Breyer |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 74285003.2

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB

On May 20, 2013, the Court granted the administrative motions of Plaintiff and Nominal Defendant Hewlett-Packard Company ("HP") to seal certain limited portions of the Consolidated Shareholder Derivative Complaint (the "Complaint"). (Dkt. No. 82.) Also on May 20, the Court ordered HP "to explain and provide relevant authority" in a further brief "how releasing the kind of information that remains sealed 'would harm Autonomy's competitive position . . . [in] that Autonomy's competitors would be interested in and could make competitive use of HP's internal assessments and internal financial metrics for the Autonomy business,' and why that interest (or another interest) amounts to a 'compelling reason' overcoming the 'strong presumption in favor of access to court records.'" (Dkt. No 83; citations omitted.) This is HP's brief in response.

I. **INTRODUCTION**

The Court's May 20 Order sealed a small fraction of the 178-page Complaint, limited to portions of 13 paragraphs that quote confidential internal documents detailing HP's ***current plans*** and ***future projections*** for its Autonomy business unit, as well as certain confidential segmented revenue figures, budget analyses, and management assessments of Autonomy's strengths and weaknesses (the Complaint quotes only the weaknesses) in the very recent past. Recognizing that such information is competitively sensitive and protected as trade secrets, numerous courts have held that it is properly sealed to prevent the competitive injury and loss of confidentiality that otherwise would result – particularly where, as here, the information at issue has not been offered in evidence at a trial or in connection with any dispositive motion.

As detailed further below, the confidential information in the Complaint itself, together with the Pforzheimer Declaration and a legion of cases recognizing that similar information is appropriately sealed to protect business confidentiality interests, demonstrate the compelling interests supporting sealing and the competitive harm that would result from public disclosure. The sealing at issue is narrowly tailored to protect only these compelling interests.

II. **THE LAW SPECIFICALLY AUTHORIZES SEALING OF CONFIDENTIAL FINANCIAL AND BUSINESS STRATEGY INFORMATION OF THE TYPES AT ISSUE HERE.**

The court properly seals portions of judicial records where a party shows "compelling reasons" sufficient to overcome the presumption that the public may access such records.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB

DB1/ 74285003.2

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).[1]  Such "compelling reasons" exist when court files might become a "vehicle for improper purposes" through, for example, the release of trade secrets.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Kamakana*, 447 F.3d at 1179.  The "common-law right of inspection has bowed before the power of a court to insure that its records are not used . . . as sources of ***business information that might harm a litigant's competitive standing***."  *Nixon*, 435 U.S. at 598 (emphasis added; internal quotations omitted); *accord In re Electronic Arts*, 298 Fed. App'x 568, 569 (9th Cir. 2008) (non-precedential) (reversing district court order denying sealing of contract pricing terms).  Thus, as explained further below, the courts protect confidential internal business plans, strategies, and financial information where, as here, a party specifically identifies the information in the record, shows that it has been kept in confidence, and public disclosure could cause loss of trade secrets or other injury to its business.  *See also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136-37 (9th Cir. 2003) (reversing overbroad sealing order where litigant "fail[ed] to identify where in the documents confidential financial information and trade secrets are to be found").  The Court's May 20 sealing order was manifestly appropriate under these standards.

### III. HP'S CURRENT AND FUTURE PLANS, STRATEGIES, AND PROJECTIONS FOR AUTONOMY SHOULD REMAIN SEALED.

As explained in the Pforzheimer and Kane Declarations, the select information in the Complaint about HP's ***current and future*** plans, strategies, and projections regarding the Autonomy business is kept in confidence within HP, was disclosed to Plaintiff only under statutory records inspection rights and subject to an express confidentiality agreement, and is not

---

[1]  The "compelling reasons" standard governs sealing of trial records and "judicial documents" used to resolve a dispute on the merits, such as dispositive motions, while a "good cause" standard governs sealing of raw discovery material and filings on non-dispositive motions.  *See Kamakana*, 447 F.3d at 1179-80; *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102-03 (9th Cir. 1999).  The Ninth Circuit has not held that sealing of a complaint is also necessarily subject to the "compelling reasons" standard, and it need not be where, as here, no adjudication has been (or may ever be) sought with respect to the factual matter subject to sealing.  *See, e.g.*, *Mercury Interactive Corp. v. Klein*, 158 Cal. App. 4th 60, 100-05 (2007) (holding exhibits to complaint not subject to presumptive public access under First Amendment case law where not used or relied upon in any adjudication).  The Court need not decide which standard applies here, however, because HP's showing demonstrates compelling reasons to seal the very limited excerpts of the Complaint now at issue.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 74285003.2

2

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB

known to the general public or competitors of Autonomy. Pforzheimer Decl. ¶¶ 3-5; Kane Decl. ¶¶ 4-5. The information in the Complaint itself (detailed further below) makes clear how, as Mr. Pforzheimer testified, its public disclosure could harm Autonomy's competitive position. For example, disclosure of business segments in which revenue expectations are lower than others could easily lead Autonomy's customers and prospective customers in those business segments to be more aggressive in negotiating pricing for Autonomy's software and services. The information regarding areas where HP perceives weakness or the need for change in the business could, if publicly disclosed, be used by Autonomy's competitors to target those business segments for more aggressive pursuit of Autonomy's customers and/or to hire away Autonomy's employees in those areas, and could make hiring more difficult. Disclosure of HP's plans to refocus resources between different areas in the business could lead to excess attrition of customers and employees in areas designated for fewer resources. And public disclosure of assessments of problems or needed improvements in Autonomy's product or service offerings would provide a golden opportunity to Autonomy's competitors to seek to criticize its products and services and win away the business of Autonomy's customers.

It is precisely to prevent these potential uses of "business information that might harm a litigant's competitive standing" that the courts grant motions to seal such information. *Nixon*, 435 U.S. at 598. There should be no question that this information is entitled to trade secret protection, and that avoiding the loss of such protection is a sufficiently compelling reason alone to warrant sealing. For example, in *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002), the court confirmed that a business's internal information, maintained in confidence, regarding marketing strategy and plans, including its "1, 3 and 5 year strategic plan documents," constitute trade secrets entitled to protection under California law. *Id.* at 1452-54. Numerous courts have thus affirmed that similar future business projections, plans, and strategy information are properly sealed. *See, e.g.*, *Krieger v. Atheros Commc'ns, Inc.*, No. 11-cv-640, 2011 WL 250831, at *1 (N.D. Cal. June 25, 2011) (company's financial projections, discussions of business strategy, and competitive analyses prepared by its investment advisor found to provide compelling reasons to justify sealing); *Bite Tech, Inc. v. X2 Biosystems, Inc.*, No. 12-1267, 2013 WL 1399349, at *2-3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 74285003.2

3

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB

1 (W.D. Wash. Apr. 5, 2013) (sealing financial projections, balance sheets, profit and loss
2 statements and cash flow statements that could "undercut [the moving party's] operations,
3 vendors and business opportunities"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-
4 md-2087, 2011 WL 864897, at *2 (S.D. Cal. Mar. 11, 2011) (sealing granted as to emails
5 revealing business and marketing strategy, information regarding product development, sales and
6 pricing information, financials, internal troubleshooting, and client business information).

      Here, HP seeks to keep sealed only those portions of the Complaint that quote from and recite HP's forward-looking plans, future projections, and business strategies for the Autonomy business unit. Specifically, the following excerpts as to which the Court granted sealing disclose HP's future operating plans and specific projections about operations, personnel matters, and financial performance:

| EXCERPT | COMPELLING REASONS FOR SEALING |
| --- | --- |
| ¶ 256 (last sentence), lines 14-17<br>¶ 257 (entire), lines 17-25<br>¶ 258 (last sentence), lines 5-6 | These quotations and excerpts from a July 2012 presentation to HP's Board regarding Autonomy provide specific characterization of alleged problems with the business; the status of financial analysis; the length of time in the future HP projects it will take to resolve such problems; and assessments of the business's leadership, operating model, product quality, and customer satisfaction. These specifics (which cannot be described in more detail here without revealing their content) could easily be used by Autonomy's competitors or customers to weaken Autonomy's competitive position and undermine its relations with its current and prospective customers and/or employees, as explained above and confirmed in the Pforzheimer Declaration. |
| ¶ 272 (in part) lines 26-1, 6; ¶ 273 (entire), lines 7-15 | These quotations and excerpts from a September 2012 presentation to HP's Board repeat those identified immediately above and should be sealed for the same reasons. |
| ¶ 274 (entire), lines 15-27 | This paragraph excerpts *HP's Fiscal Year 2013 Plan* for Autonomy as presented to HP's Board in September 2012 (*i.e.*, the plan for the current fiscal year), including revenue growth projections, identification of the expectations for growth or lack of same in specific business segments, plans to shift resources among various aspects of the business, and the time frame expected to succeed. HP's current strategic plan for Autonomy is a classic trade secret, and its public disclosure could harm Autonomy's competitive standing or relations with customers for the reasons identified above. |
| ¶ 277 (in part) quoted text in last sentence, lines 14-16 | This quotation from another September 2012 presentation regarding the Autonomy business refers to plans for the business and platform in 2013, which should be sealed for the same reasons identified above. |
| ¶ 280 (first sentence) lines 4-5. | This quotation from the same September 2012 presentation regarding a particular type of strategic approach to improving Autonomy's performance should be sealed for the same reasons identified above. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 74285003.2

4

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB

## IV. HP'S CONFIDENTIAL RECENT FINANCIAL DATA FOR THE AUTONOMY BUSINESS SHOULD REMAIN SEALED.

In the same vein as HP's forward-looking business plans for Autonomy, its confidential and non-public financial data about recent, specific financial metrics for its Autonomy business unit may be used to predict future business trends and developments and to target specific areas where competitors may seek to exploit perceived weaknesses through more aggressive competition for customers and employees. The information at issue itself reflects this, as confirmed by the Pforzheimer Declaration. Likewise, HP's internal identification of specific amounts and reasons for budget shortfalls at Autonomy in mid- to late-2012, and identification of areas of weaknesses in the business, would if publicly disclosed provide fodder for competitors to attempt to undermine Autonomy's relations with customers and prospective customers in the market. If they were to learn of HP's own internal assessments of Autonomy's current weaknesses, competitors would have an unfair opportunity to exploit them. This information is not otherwise available to competitors and customers; HP publicly reports its financial performance on an aggregate basis across large business lines, while maintaining as proprietary the performance metrics and financial datapoints of specific business units such as Autonomy.[2] This recent past financial information may be used to predict Autonomy's future business and obviously affects business planning and strategy. If this information were released, Autonomy's competitors would learn of Autonomy's specific current weaknesses as identified by HP management, and could target those weaknesses to harm Autonomy's future business prospects.

For these reasons, courts readily grant motions to seal financial information and internal assessments of this type. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012 WL 5476846, at *4 (W.D. Wash. Nov. 12, 2012) (motion to seal provisionally granted as to information related to past business strategies because it could meaningfully be used to predict future plans); *Bite Tech*, cited *supra* at *3-4; *AMC Tech., LLC v. Cisco Sys.*, No. 11-cv-3403, 2012 U.S. Dist. LEXIS 9934, at *2 (N.D. Cal. Jan. 27, 2012) (fees and royalties paid for software development and licensing should be sealed); *Bauer Bros. LLC v. Nike, Inc.*, No. 09cv500, 2012

---

[2]   *See, e.g.*, HP's Annual Report on Form 10-K (filed Dec. 27, 2012), *available at* http://www.sec.gov/Archives/edgar/data/47217/000104746912011417/a2211959z10-k.htm.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 74285003.2

5

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB

WL 1899838, at *3 (S.D. Cal. May 24, 2012) (sealing of information about non-public financial data for costs of goods, royalty costs, promotional and personnel costs granted). Thus, the following excerpts should be sealed:

| EXCERPT | COMPELLING REASONS FOR SEALING |
|---|---|
| ¶ 240 (in part), lines 21-22<br>¶ 240 (one sentence), lines 25-27 | These quotations and excerpts from a May 2012 presentation to HP's Board regarding Autonomy provide specific financial figures and metrics about the business, and reasons for certain financial datapoints and specific revenue shortfalls as compared to budget (which cannot be described in more detail here without revealing their content). This information is only one year old and could easily be used by Autonomy's competitors or customers to weaken Autonomy's competitive position and undermine its relations with its current and prospective customers and/or employees in the business areas identified, as explained above and confirmed in the Pforzheimer Declaration. In addition, these specific financial figures and datapoints are at best ancillary to the claims raised in the Complaint. |
| ¶ 260 (in part), lines 14-16<br>¶ 261 (two sentences), lines 17-21 | These quotations and excerpts from a July 2012 presentation to HP's Board regarding Autonomy provide data regarding specific targets, segment revenue for Autonomy's business as compared to budget, operating profit figures, and assessment of the reasons for the same and particular weaknesses. |
| ¶ 276 (entire), lines 7-9<br>¶ 277 (second sentence), lines 11-13 | These quotations and excerpts from a September 2012 presentation to HP's Board repeating matters discussed immediately above, as well as an assessment of a weakness within Autonomy should be sealed for the same reasons discussed above. |

## V. THE SEALING IS APPROPRIATELY NARROWLY TAILORED.

As required by Local Rule 79-5(a), the Court's May 20 Order seals only those limited portions of the Complaint (portions of 13 paragraphs comprising only a few of its 178 pages) that are warranted by the compelling reasons identified above. Thus, the sealing is narrowly tailored and fully appropriate under the standards established by the Ninth Circuit. *See Foltz*, 331 F.3d at 1137-38 (reversing sealing where moving party failed to identify specific confidential financial information and trade secrets).

## VI. CONCLUSION

For these reasons and those identified in the Pforzheimer and Kane Declarations, the Court's May 20 Order should remain in force.

Dated: May 23, 2013                                MORGAN, LEWIS & BOCKIUS LLP

                                                    By:    /s/ Joseph E. Floren
                                                       Attorneys for Nominal Defendant
                                                       HEWLETT-PACKARD COMPANY

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 74285003.2

6

HP'S FURTHER BRIEF RE SEALING
CASE NO. 12-CV-6003 CRB