1  Ian D. Berg (Bar No. 263586)
   **ABRAHAM FRUCHTER,**
2    **& TWERSKY, LLP**
   12526 High Bluff Drive, Suite 300
3  San Diego, California 92130
   Tel:    (858) 792-3448
4  Fax:    (858) 792-3449
   *iberg@aftlaw.com*
5
6  *Counsel for Plaintiffs*

7  [Additional counsel listed on signature page]

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11 IN RE HEWLETT-PACKARD COMPANY          )   MASTER DOCKET
                                          )
12 SHAREHOLDER DERIVATIVE LITIGATION      )   NO. C-12-6003 CRB
                                          )
13                                        )
                                          )
14                                        )
   THIS DOCUMENT RELATES TO:              )
15                                        )   Case No. 3:14-cv-02287-CRB
   HARRIET STEINBERG, et al.,             )
16                                        )   **PLAINTIFFS' REPLY**
                   Plaintiff,             )   **MEMORANDUM IN FURTHER**
17      v.                                )   **SUPPORT OF MOTION TO SEVER**
                                          )   **THE DEMAND REFUSED**
18 LEO APOTHEKER, et al.,                 )   **COMPLAINT FROM THE**
                                          )   **CONSOLIDATED DEMAND**
19                 Defendants,            )   **FUTILITY COMPLAINT**
                                          )
20      and                               )   **DATE:   July 11, 2014**
                                          )   **TIME:   10:00 a.m.**
21 HEWLETT-PACKARD COMPANY, a Delaware    )   **JUDGE:  Hon. Charles R. Breyer**
   corporation,                           )
22                                        )
                   Nominal Defendant.     )
23                                        )
                                          )
24                                        )

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION AND PRELIMINARY STATEMENT**

Plaintiffs Edward Vogel and Harriet Steinberg (collectively referred to herein as "Plaintiffs" or "Demand Refused Plaintiffs"), by their undersigned attorneys, respectfully submit this Reply Memorandum in further support of their motion to sever the demand refused complaint from the consolidated demand futility complaint. Plaintiffs' action, which is based on a theory of wrongful demand refusal and names only four former or current senior executive defendants, is procedurally and substantively distinct from the related demand futility action pending before this Court, which names a total of eighteen defendants including fifteen current and former outside directors of Hewlett-Packard Company ("HP" or the "Company"). *See* Consolidated Shareholder Derivative Complaint, Dkt. No. 75-2 (hereinafter: "Demand Futility Complaint"). The two actions are sufficiently distinct in their theory and focus that, consistent with the overwhelming weight of authority, it is inappropriate for the two distinct actions to be or to remain consolidated.

In addition, HP's actions here and in prior litigation belie its claim that the demand refused and demand futility cases are so similar that separating the cases is not appropriate. In this action, HP expressly acknowledged the distinctions between the competing theories by meeting "separately" with each group to present the same information, *i.e.*, the "board's position." *See* Defendant Hewlett-Packard Company's Opposition to the *Steinberg* Plaintiffs' Motion (Dkt. No. 147) at 1 (hereinafter: "HP Opp."). Moreover, in a recent litigation, HP took the exact opposite position from the one it takes now. In that case, in the face of the other litigants requesting that the demand refused and demand futility cases be consolidated, HP insisted that the different theories of the cases required that they be litigated separately and not consolidated. The court agreed. *In re HP Derivative Litig.*, 2011 U.S. Dist. LEXIS 136174 at *13 (N.D. Cal. Nov. 28, 2011) (hereinafter: "*HP Derivative*"). Here, as in *HP Derivative*, the demand refused and demand futility cases should be kept separate.

II.     **ARGUMENT**

A.      **Consolidation of Plaintiffs' Demand Refused Action With the Demand Futility Action is Inappropriate**

The overwhelming weight of authority provides that demand refused cases should not be consolidated for all purposes with a demand futility case.  Indeed, Judge Davila, in deciding the same issue in a prior shareholder derivative action involving HP refused to consolidate a demand made action with a demand futility action based upon arguments *made by HP,* almost the exact opposite of those it made here, that consolidation was inappropriate because "there are significant legal and procedural differences in the way derivative cases are handled, depending on whether they are 'demand made' or 'demand futile.'"  *HP Derivative*, 2011 U.S. Dist. LEXIS 136174, at *13.[1] *See also id.* at *7 n.3 (quoting *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991)).

Proceeding in this fashion – severing the Demand Refused Plaintiffs from the consolidated demand futility action – will not impose any procedural burdens on either the Court or any of the parties.  Instead, "[i]f pre-trial coordination does become necessary at some point, it can be easily accomplished through the issuance of discrete joint orders or the scheduling of joint hearings without the need for actual consolidation . . . ."  *HP Derivative*, 2011 U.S. Dist. LEXIS 136174, at *14.

HP also ignores, as Plaintiffs previously argued, that Delaware law precludes a single litigant from simultaneously advocating both a demand futility theory and a demand refused theory.  *See* Plaintiffs' Motion (Dkt. No. 143) at 7 (citing *Boeing Co. v. Shrontz*, 18 Del. J. Corp. L. 225, 237 (Del. Ch. 1993)).[2] The *Morrical* plaintiffs have opted to pursue their derivative claims based on demand futility and, therefore, cannot simultaneously advocate a theory of wrongful demand refusal, which directly conflicts with this essential theory of the case.  Indeed, the primary focus, and the possibly determinative issue, in the demand futility cases, will be the

---

[1] This Court has also refused to deem a second demand made/refused action brought by the plaintiff in *HP Derivative,* A.J. Copeland, as related to this action.  *See* Dkt. No. 131 (HP's opposition to the cases being deemed related); and Dkt. No. 133 (denying plaintiff Copeland's motion).

[2] Delaware law applies with respect to the breach of fiduciary duty claims asserted on behalf of HP, which is a Delaware corporation.  *Kamen v. Kemper Fin'l Services Co.*, 500 U.S. 90, 100 (1990).  See also *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 989-90 (9th 1999) (Delaware law applies); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1214-15 (N.D. Cal. 2007) (California courts generally follow internal affairs doctrine which provides that "the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders.").

1   independence of the HP board of directors (the "Board") and whether a majority of the members

2   of the Board were interested in the claims alleged in this action and could have decided fairly

3   and independently whether to consider a demand.  That issue will dominate the demand futility

4   cases until resolved, and is completely absent from this demand refused action.[3]

5          Beyond the inherent conflict between demand futility and demand refused actions, further

6   supporting a separate track for Plaintiffs' demand refused action is that here, as in *HP*

7   *Derivative*, "many questions of law and fact are not common . . . ." *HP Derivative*, 2011 U.S.

8   Dist. LEXIS 136174, at *13.  Thus, Plaintiffs have limited their claims to four HP former or

9   current senior executives (*see Steinberg v. Apotheker, et al.,* No. 14-CV-2287 CRB (Complaint,

10  Dkt. No. 9)) while the demand futility action names a total of 18 defendants, including current

11  and former members of HP's board.  Demand Futility Complaint at ¶¶33-53.  The senior

12  executive defendants, unlike the director defendants, cannot claim the benefits of Section 141(e)

13  of Delaware's General Corporation Law which, by its very terms, only provide a safe harbor for

14  a director reasonably relying on the advice of a company's officers.  8 Del. C. §141(e);[4] *see also*

15  *AIG, Inc. Consolidated Derivative Litig.*, 965 A.2d 763, 807, 831 (Del. Ch. 2009) (8 Del. C.

16  §141(e) protects directors).  In addition, senior executives, such as the defendants in the Demand

17  Refused Action, cannot claim the benefits of the indemnification/safe harbor provision of

18  Section 102(b)(7) of Delaware's General Corporation Law because it is limited to "breach of

19  fiduciary duty *as a director*…." 8 Del. C. § 102(b)(7) (emphasis added).  *See*, *e.g.*, *In re Rural*

20  *Metro Corp. Stockholders Litig.*, 88 A. 3d 54, 86-87 (Del. Ch. March 7, 2014) (section 102(b)(7)

21

22  ───────────────
    [3] Plaintiffs, in making their motion, are not intending in any way to disparage Cotchett, Pitre &

23  McCarthy LLP (the "Cotchett Firm"), which is lead counsel in the demand futility action.  The
    clients represented by the Cotchett Firm – which did not submit an opposition to Plaintiffs'

24  motion – have chosen to pursue a different incompatible legal strategy against different
    defendants.

25  [4] The statute provides:  A member of the board of directors…shall, *in the performance of such*
    *member's duties*, be fully protected in relying in good faith upon the records of the corporation

26  and upon such information, opinions, reports or statements presented to the corporation by any of
    the corporation's officers or employees, or committees of the board of directors, or by any other

27  person as to matters the member reasonably believes are within such other person's professional
    or expert competence and who has been selected with reasonable care by or on behalf of the

28  corporation. (Emphasis added)

1    does not protect officers).

2         HP has already stated that these provisions of Delaware corporate law will be very much

3    at issue both in any motion to dismiss and in any litigation on the merits of the demand futility

4    action (if the *Morrical* plaintiffs' action  survives a motion to dismiss).  *See* Def. HP's Notice of

5    Motion and Motion to Stay (Dkt. No. 102) at 7-8.  In contrast, in Plaintiffs' action, the issue will

6    not be a factor because no non-executive directors are named as defendants and those statutory

7    safe harbors from liability have no bearing on the reasonableness or good faith of the Board's

8    decision with respect to the Demands.

9         *Horn v. Raines*, 227 F.R.D. 1 (D.D.C. 2005), the lone case upon which HP relies, is

10   neither controlling nor on point.  The limit of the holding in *Horn* is that the distinction between

11   demand made and demand futile litigation was insufficient "to necessitate separate actions *at this*

12   *point in this litigation*."  *Id*. at 3 (emphasis added).  Subsequent proceedings in the case

13   demonstrate that the court's instructions (apparently not understood by the litigants) resulted in a

14   tortured procedural history in the demand made action, and ultimately in it being separated out

15   from the demand futility action.

16        Indeed, if anything, *Horn*'s subsequent procedural history serves as the "poster child" for

17   why demand futility actions should not be consolidated with demand refused actions.  Thus, in

18   *Horn*, the demand futility plaintiffs, who gained control of the action, failed to assert that

19   demand had been improperly refused.  Their claims were ultimately dismissed and Kellmer, the

20   demand made/refused plaintiff, failed to file a notice of appeal, believing his action had not been

21   the subject of the court's dismissal order because the consolidated complaint had not included

22   allegations relating to his demand made/refused complaint.  Instead, Kellmer promptly filed his

23   own new derivative lawsuit right after the demand futility plaintiffs had docketed their appeal.

24   *In re Fed. Nat'l Mortgage Assoc. Secs., Deriv., and "ERISA" Litig.*, 725 F. Supp. 2d 169, 174

25   (D.D.C. 2010).  The Federal Housing Finance Authority ("FHFA") then moved to intervene in

26   Kellmer's newly filed case and for voluntary dismissal of the complaint.  The district court

27   granted the motion to intervene, but while it denied the voluntary dismissal motion, it granted a

28

1    motion to dismiss with prejudice by Fannie Mae.  *Id.* at 175, 178, 180-81.  The D.C. Circuit held,

2    however, that the Kellmer case should have only been voluntarily dismissed without prejudice,

3    thereby implying that the case had been properly filed, but affirmed the substitution of the FHFA

4    in place of Kellmer as the party plaintiff.  *Kellmer v. Raines*, 674 F.3d 848, 852 (D.C. Cir. 2012).

5    This tortured process in *Horn* could have been avoided had the two cases been kept separate and

6    simply coordinated.  In sum, *Horn* is roadmap into a tangled conflict of interest and the results

7    there demonstrate why it should not be followed but rather avoided.

8          HP also seeks to salvage its effort to consolidate Plaintiffs' demand refused action with

9    the demand futility action by claiming that the issue of whether HP's Board acted reasonably and

10   in good faith in responding to the shareholder demands will be addressed in the demand futility

11   action if that case is pressed over HP's objections (*i.e.*, if the demand futility action is not

12   settled).[5]  HP Opp. at 6.  This argument lacks merit.

13         Shareholders proceeding on a theory of demand futility only have standing to pursue a

14   derivative action *if* demand would have been futile.  Fed. R. Civ. P. 23.1(b)(3)(B).  *See also In re*

15   *Google, Inc. Shareholder Derivative Litig.*, No. 11-4248 PJH, 2012 U.S. Dist. LEXIS 64638, at

16   *12-13 (N.D. Cal. May 8, 2012); *Abrams v. Wainscott*, No. 11-297-RGA, 2012 U.S. Dist.

17   LEXIS 121425, at *12 (D. Del. Aug., 21, 2012) (under Delaware law, because plaintiff did not

18   demonstrate demand futility, the court need not reach defendants' other arguments, such as

19   standing; case dismissed); *Sucher v. Zvi Alon*, No. C 98-203 CRB, 1998 U.S. Dist. LEXIS

20   23612, at *5 (N.D. Cal. Nov. 5, 1998) (futility not shown, motion to dismiss granted).

21   Accordingly, motions to dismiss demand futility actions (such as the *Morrical* plaintiffs' action)

22   are directed towards the adequacy of the demand futility allegations at the time the complaint

23   was first filed.  *See, e.g., Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992); *In re Google,*

24   *Inc. Shareholder Derivative Litig.*, 2012 U.S. Dist. LEXIS 64638, at *15 (board's independence

25   and disinterest reviewed as of the time the complaint was filed).

---

26   [5] Even a proposed settlement would not necessarily be sufficient grounds to grant consolidation.

27   *See In Re Rino Int'l Corp. Derivative Litig.*, No. 2:10-cv-02209-MMD-GWF, 2013 U.S. Dist. LEXIS 63632, at *5 (D. Nev. May 3, 2013) disputed settlement positions militated against

28   consolidation.

1    HP has already clearly stated its position that the *Morrical* plaintiffs have failed to

2    adequately allege demand futility.  *See* Motion to Stay (Docket No. 102) at 7-8.  That issue will

3    almost certainly be the sole focus of any motion to dismiss directed to the *Morrical* plaintiffs'

4    demand futility action.  It is not an issue here.

5    In the event that the *Morrical* plaintiffs survive a motion to dismiss, the Board may make

6    a motion to terminate the litigation.  *See generally Zapata Corp. v. Moldanado*, 430 A.2d 779,

7    788 (Del. 1980).  *Zapata* shifts the burden to the company of "proving independence, good faith

8    and a reasonable investigation, rather than presuming" those elements and also allows for some

9    discovery.  *Id*.

10   Plaintiffs, therefore, find it hard to believe, the virtually inconceivable proposition, that

11   HP or any of the defendants will argue in a motion to dismiss for failure to make a demand

12   brought pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1, that they properly considered and rejected

13   shareholder demand.  Aside from the issue not being ripe until the demand futility plaintiffs are

14   able to establish their standing to pursue their breach of fiduciary duty claims on behalf of HP,

15   the shifting of burdens of proof and the access to discovery is something to which no rational

16   defendant would willingly subject themselves.

17   **B.    HP's Actions Belie Its Claim That The Demand Refused Case Must Be Consolidated**

18   HP's actions and prior position are inconsistent with, and contrary to, its claim that the

19   demand refused case is so similar to the demand futility case that they must be consolidated.

20   First, in its opposition to this motion, HP admits that it regarded the two types of cases as

21   sufficiently distinct that it required separate meetings with each group to present the same

22   information.  HP states that its lawyers "***met separately*** with both Morrical's and

23   Steinberg/Vogel's lawyers to present the board's position."  HP Opp. at 1 (emphasis added).  If

24   the Demand Refused Plaintiffs and demand futility plaintiffs had brought essentially the same

25   cases asserting the same claims, there would not have been a reasonable justification for meeting

26   with the two groups separately during which the same information was presented.  Only if HP

27   recognized the distinction between the legal positions and theories does HP's conduct make

28

PLAINTIFFS' MOTION FOR RELIEF FROM THE CONSOLIDATION ORDER          - 7 -
Master Docket No. C-12-6003 CRB
Case No. 3:14-cv-02287-CRB

1    sense.

2          In addition, HP recently took virtually the exact opposite position in derivative litigation

3    brought in this District.  *See HP Derivative*, 2011 U.S. Dist. LEXIS 136174 at *13.  In

4    that case, HP opposed the efforts of the demand refused action to consolidate with the demand

5    futility actions.  HP insisted that the different theories of the cases required that they be litigated

6    separately and not consolidated.  The court relied on HP's argument and found that the demand

7    made case was "categorically different from the [demand futility] actions, and for this reason

8    will ultimately be analyzed under a different legal standard. . . . [Moreover,] it is clear that the

9    unique characteristics of each case will predominate even at the pre-trial stage."  *Id.* at *13-14.

10         Here, contrary to its position in *HP Derivative*, HP now claims that the distinctions

11   between demand refused and demand futility, which it so vehemently asserted in that case, are

12   not present here.  While the issues decided in *HP Derivative* case may not rise to the level of

13   collateral estoppel in this case, the issue litigated was virtually the same.[6] At the very least, it is

14   highly persuasive authority, and demonstrates how HP's position here is more a matter of

15   convenience than conviction.  It is also a decision consistent with the routine actions of courts

16   confronted with separate demand refused and demand futility actions.  *See* Pl. Mot. (Docket No.

17   143) at 7-8.

18   **C.    Consolidation Would Be Procedurally Unfair**

19         HP offers no substantive response to Plaintiffs' contention that the terms of the

20   consolidation order was procedurally unfair.  Instead, after acknowledging that Plaintiffs may

21   challenge the terms of the consolidation order, in a footnote, HP faults a lack of diligence on the

22   part of Plaintiffs' counsel for failing to object to the terms of the consolidation order at the time it

23   was entered.

24   _____

25   [6] While collateral estoppel may not apply, this issue was litigated by essentially the same parties
     - HP, the Company's shareholders and HP's directors were all parties in that action.  The
     decision in *HP Derivative* ultimately formed part of a final judgment after that case was
26   dismissed.  *Copeland v. Lane*, Case No. 5:11-CV-01058-EJD, 2013 U.S. Dist. LEXIS 65742 at
     *36 (N.D. Cal. May 6, 2013).  Thus, the principles underlying collateral estoppel apply because
27   "once a court has decided an issue of . . . law necessary to its judgment, that decision . . .
     preclude[s] relitigation of the issue in the suit on a different cause of action involving a party to
28   the first case."  *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 332 n.16 (2005).

However, setting aside the inappropriate professional swipe, HP's position makes no sense. The consolidation order was entered on February 21, 2013 only less than three months after Plaintiffs made their demand on December 4, 2012. At that point in time, Plaintiffs could not yet have known what actions the Board would take with respect to the Demands and could not have filed an action. *Accord Wang v. Page.*, No. 12-1785-PJH, 2012 U.S. Dist. LEXIS 113073 (N.D. Cal. Aug. 10, 2012) (demand was not automatically deemed refused where it had been made on September 6, 2011 with no response for more than seven months by April 10, 2012 when the action was filed).

## III.   CONCLUSION

Therefore, for the reasons set forth above and in Plaintiffs' motion, Plaintiffs' action should not be consolidated with the Demand Futility Action but severed from it and, the Court should enter the proposed form of Order previously submitted by Plaintiffs in connection with their motion.

Dated: June 27, 2014                    **ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: _____/s/ *Ian D. Berg*_____
                Ian D. Berg   (Bar No. 263586)

12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 792-3448
Fax:    (858) 792-3449
*iberg@aftlaw.com*

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham
Lawrence D. Levit
Philip T. Taylor
One Penn Plaza; Suite 2805
New York, New York 10119
Tel:    (212) 279-5050
Fax:    (212) 279-3655
*jabraham@aftlaw.com*
*llevit@aftlaw.com*
*ptaylor@aftlaw.com*

**KANTROWITZ, GOLDHAMER**
  **& GRAIFMAN, P.C.**
Gary S. Graifman
Michael L. Braunstein
210 Summit Avenue
Montvale, New Jersey 07645
Tel:    (201) 391-7000
Fax:    (201) 307-1088
*ggraifman@kgglaw.com*

**GREEN & ASSOCIATES, LLC**
Michael S. Green
522 Route 18, Suite 5
East Brunswick, New Jersey 08816
Telephone (732) 390-5900

***Counsel for the Plaintiffs***