JOSEPH W. COTCHETT (Cal. SBN 36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (Cal. SBN 168009)
mmolumphy@cpmlegal.com
MATTHEW K. EDLING (Cal. SBN: 250940)
medling@cpmlegal.com
JENNIFER R. CRUTCHFIELD (Cal. SBN: 275343)
jcrutchfield@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Lead Counsel for Plaintiff Stanley Morrical,
derivatively on behalf of Hewlett-Packard Company*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION | **Master File NO. C-12-6003-CRB** |
| THIS DOCUMENT RELATES TO:  ALL ACTIONS | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:  August 29, 2014<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 6, 17th Floor<br>Hon. Charles R. Breyer** |

# TABLE OF CONTENTS

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| I. INTRODUCTION | 2 |
| II. OVERVIEW OF THE LITIGATION | 3 |
|     A. The Federal Action | 3 |
|     B. The State Actions | 5 |
|     C. Formation of the Independent Committee and Internal Investigation | 5 |
|     D. Settlement Negotiations and Mediation | 6 |
| III. THE SETTLEMENT TERMS | 7 |
| IV. THE STANDARDS FOR PRELIMINARY APPROVAL OF A DERIVATIVE SETTLEMENT | 8 |
| V. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND ULTIMATELY FINALLY APPROVED AFTER NOTICE TO HP SHAREHOLDERS | 9 |
| VI. THE ATTORNEYS' FEES PROVIDED UNDER THE ENGAGEMENT LETTER ARE FAIR AND REASONABLE | 12 |
| VII. PROPOSED SCHEDULE OF EVENTS | 13 |
| VIII. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cohn v. Nelson*
375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................................................. 8

*Ellis v. Naval Air Rework Facility*
87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................................ 9

*Hensley v. Eckerhart*
461 U.S. 424 (1983) .......................................................................................................... 12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
55 F.3d 768 (3d Cir. 1995) .................................................................................................. 8

*In re Jiffy Lube Sec. Litig.*
927 F.2d 155 (4th Cir. 1991) ............................................................................................ 11

*Ingram v. Coca-Cola Co.*
200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................................... 13

*Officers for Justice v. Civil Serv. Comm'n*
688 F.2d 615 (9th Cir. 1982) .................................................................................. 9, 11, 12

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993) ................................................................................................ 9

*Wiener v. Roth*
791 F.2d 661 (8th Cir. 1986) .............................................................................................. 8

**Other Authorities**

*Manual for Complex Litigation* ............................................................................................... 10

**Rules**

Fed. R. Civ. P. 23.1(c) ............................................................................................................... 8

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on August 29, 2014, at 10 a.m., or as soon thereafter as counsel may be heard, plaintiff Stanley Morrical (on behalf of himself and derivatively on behalf of Hewlett-Packard Company) ("Federal Plaintiff") will move before the Honorable Charles R. Breyer, United States Senior District Judge, at the United States District Court, Northern District of California, 450 Golden Gate Avenue, Courtroom 6, San Francisco, California 94102, to grant preliminary approval of the settlement set forth in the Stipulation of Settlement dated June 30, 2014 ("Stipulation"), and filed contemporaneously herewith.[1]

The Motion is based on the attached Memorandum of Points and Authorities in Support of Preliminary Approval of Derivative Settlement, the Stipulation and the Declaration of the Honorable Vaughn R. Walker, United States District Judge (Ret.) ("Walker Decl.") filed herewith, and such additional evidence or argument as may be required by the Court.

---

[1] All capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND STATEMENT OF ISSSUES TO BE DECIDED

This Memorandum is submitted in support of preliminary approval of the settlement of the derivative claims brought on behalf of nominal defendant Hewlett-Packard Company ("HP" or the "Company") against certain of its current and former officers and directors. The settlement resolves the derivative claims pending in this Court (the "Federal Action") and the derivative actions pending in the Superior Court of California for Santa Clara County, styled *Gould v. Whitman, et al.*, Case No. 1:13-cv-250220, filed July 26, 2013, and *Noel v. Whitman, et al.*, Case No. 1:13-cv-251346, filed August 16, 2013 (the "State Actions"). The settlement is the result of extensive arm's-length negotiations overseen by the Honorable Vaughn R. Walker, United States District Judge (Ret.), Walker Decl., ¶¶1, 6-15, and is unquestionably fair, reasonable, and adequate, and deserves preliminary approval.

After seven day-long mediation sessions under the direction of Judge Walker, HP, the Federal Plaintiff, the State Plaintiffs, the Settling Individual Defendants, and the Settling Professional Advisor Defendants (together, the "Settling Parties") reached an agreement to resolve the Federal Action and the State Actions. Stipulation, §§III.A.(1)-(4). Under the terms of the settlement, Federal and State Plaintiffs (together, the "Settling Plaintiffs"), through their counsel Cotchett, Pitre & McCarthy LLP and Robbins Geller Rudman & Dowd LLP (together, the "Settling Plaintiffs' Counsel"), shall assist HP in its pursuit of affirmative claims against certain legacy Autonomy Corporation plc ("Autonomy") officials, including Michael Lynch, Autonomy's former Chief Executive Officer, Sushovan Hussain, Autonomy's former Chief Financial Officer, and/or other non-released persons and entities responsible for HP's losses arising from the acquisition of Autonomy. Stipulation, §§III.A.(1)-(4); Walker Decl., ¶23. Additionally, pursuant to the terms of the Settlement, HP is in the process of adopting certain state-of-the-art enhancements to its policies and procedures for potential mergers and acquisitions that were developed with the assistance of the Settling Plaintiffs and their counsel. Stipulation, §III.A.(1).

After negotiating the settlement, counsel for the Settling Plaintiffs' Counsel, and HP, with the substantial assistance of Judge Walker, negotiated an engagement letter relating to the pending actions and pursuit of HP's affirmative claims against Lynch, Hussain and others who injured HP. Walker Decl., ¶¶13-15. Under the engagement letter, in addition to a fixed monthly retainer in the amount of $562,500 for 32 months, Settling Plaintiffs' Counsel will be eligible to receive a contingent fee equal to 10% of the amount recovered by HP up to $100 million, and 25% of any amount in excess of $100 million, up to a maximum contingent amount of $30 million. Stipulation, §§IV.A. and Exh. A.

In sum, the settlement confers substantial benefits upon HP in a case of extraordinary complexity and costs. Accordingly, Federal Plaintiff respectfully requests the Court to enter the [Proposed] Order Preliminarily Approving Derivative Settlement and Providing for Notice ("Notice Order"), which provides for:

a) granting preliminary approval of the settlement,

b) directing that notice be given to HP shareholders, and

c) scheduling a hearing at which the Court will consider final approval of the settlement, including the separately negotiated engagement letter, and a service award for the Federal Plaintiff.

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed settlement should be provided to HP shareholders and that a hearing be scheduled for final settlement approval. As discussed herein and in the declaration filed in support of the settlement, the settlement meets this standard. Accordingly, Federal Plaintiff respectfully submits that the Court should enter the Notice Order.

## II. OVERVIEW OF THE LITIGATION

### A. The Federal Action

Between November 2012 and December 2012, several shareholder derivative actions were filed in the United States District Court for the Northern District of California in connection

with HP's acquisition of Autonomy Corporation plc (the "Acquisition") and related events: (i) *Riccardi v. Lynch, et al.*, 12-cv-06003, filed November 27, 2012; (ii) *Espinoza v. Lynch, et al.*, 12-cv-06025, filed November 27, 2012; (iii) *Bascheri v. Apotheker, et al.*, 12-cv-06091, filed November 30, 2012; (iv) *Bertisch v. Apotheker, et al.*, 12-cv-06123, filed December 3, 2012; (v) *City of Birmingham Retirement and Relief System v. Apotheker, et al.*, 12-cv-06146, filed December 18, 2012; (vi) *Tola v. Lynch, et al.*, 12-cv-06423, filed December 18, 2012; (vii) *Morrical v. Whitman, et al.*, 12-cv-06434, filed December 19, 2012; and (viii) *Weissmann v. Apotheker, et al.*, 3:13-cv-0557, filed February 7, 2013. All eight of these federal shareholder derivative cases were assigned or transferred to the Honorable Charles R. Breyer.

On February 21, 2013, the Court consolidated all of the then-pending federal shareholder derivative actions in the Federal Action, styled *In re Hewlett-Packard Company Shareholder Derivative Litigation*, 3:12-cv-06003-CRB. Shortly thereafter, the Court appointed Stanley Morrical as lead plaintiff and the law firm of Cotchett, Pitre & McCarthy, LLP as lead counsel.

On May 2, 2013, Federal Plaintiff filed a Consolidated Shareholder Derivative Complaint in the Federal Action. The Federal Complaint, which asserts that a pre-suit demand on HP's Board of Directors ("Board") would have been futile, alleges misconduct by the Settling Individual Defendants and Settling Professional Advisor Defendants in connection with the Acquisition and related events. More particularly, the Federal Plaintiff alleges that the Settling Individual Defendants breached their fiduciary duties, committed corporate waste, and violated the Securities Exchange Act by ignoring "red flags" concerning Autonomy's accounting practices, failing to properly evaluate Autonomy's technology, improperly promoting software that allegedly did not exist post-Acquisition, causing HP to enter into a share-buyback program and repurchase its shares at allegedly artificially inflated prices before the announcement of the impairment charge, and failing to disclose certain information regarding the Acquisition and its aftermath leading up to the announcement of the impairment charge.

The Federal Complaint also alleges that the Settling Professional Advisor Defendants aided and abetted the Settling Individual Defendants' alleged breach of fiduciary duty, and acted

unlawfully in providing fairness opinions to the Board.  The Federal Plaintiff alleges that these failures caused the Company to sustain damages in the form of a significant impairment charge, costs and expenses incurred in connection with HP's internal investigation into Autonomy's accounting improprieties, potential securities litigation, and its loss of reputation and goodwill.

### B.     The State Actions

On July 26, 2013, HP shareholder James R. Gould, Jr. filed a shareholder derivative action in state court in Santa Clara County, California, styled *Gould v. Whitman, et al.*, Case No. 1:13-cv-250220 (Cal. Super. Ct., Santa Clara Cty.).  On August 16, 2013, HP shareholder Leroy Noel filed another shareholder derivative action in state court in Santa Clara County, California, styled *Noel v. Whitman, et al.*, Case No. 1:13-cv-251346 (Cal. Super Ct., Santa Clara Cty.).  On September 26, 2013, the Santa Clara County Superior Court consolidated the *Noel* matter with the *Gould* litigation.

The State Complaints, which also assert that a pre-suit demand on HP's Board would have been futile, make claims on behalf of HP against present and former HP directors and officers in connection with the Acquisition and related events.  The complaint filed in the *Noel* action also alleges violations of certain California statutes by Autonomy's former Chief Executive Officer Michael Lynch in connection with pre-Acquisition conduct arising out of his sale of Autonomy securities to HP.

### C.     Formation of the Independent Committee and Internal Investigation

In January 2013, the HP Board created the Independent Committee and authorized it to, among other things, investigate, review and evaluate the facts and circumstances alleged in the Federal and State Actions and other shareholder derivative suits and shareholder demand letters.  The Board also authorized the Independent Committee to make a recommendation to the Board whether HP should commence litigation concerning any of the claims asserted in the shareholder derivative actions and shareholder demand letters.  The Independent Committee retained Proskauer Rose LLP ("Committee Counsel") to assist with its internal investigation shortly thereafter.

---

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Notice of Motion and Motion for Preliminary Approval of Derivative Settlement;**   5
Master File No. C-12-6003-CRB

In April 2013, while the Independent Committee was conducting its review, Committee Counsel met with counsel for the Federal Plaintiff ("Federal Counsel") to provide information and supporting materials regarding the Independent Committee's mandate. Committee Counsel met with Federal Counsel a second time, in November 2013, to provide an update regarding the status of the Independent Committee's review, including the Independent Committee's professional advisors' preliminary findings regarding the types of problematic transactions entered into between Autonomy and certain Autonomy business partners before the Acquisition.

Committee Counsel also met with counsel for the State Plaintiffs ("State Counsel") while the Independent Committee was conducting its review. At a December 2013 meeting, Committee Counsel provided State Counsel with an update regarding the status of the Independent Committee's review and State Counsel provided Committee Counsel with the State Plaintiffs' governance proposals and their views on the allegations in the State Actions.

After completing the internal investigation, the Independent Committee presented its findings and recommendations to the Board in January 2014. Based on its consideration of the Independent Committee's findings and recommendations, the Board (other than defendants Lane, Livermore and Whitman) resolved, among other things, that HP has claims against certain legacy Autonomy officials, including Lynch, Autonomy's former Chief Executive Officer, and Hussain, Autonomy's former Chief Financial Officer. The Board also resolved that Committee Counsel, along with counsel for HP ("Company Counsel"), should explore resolution of claims asserted in the Federal and State Actions and various other shareholder derivative actions and shareholder demand letters. The Board further instructed the Company's management to consider the governance enhancements that had been informed by the allegations in the Federal Action and proposals from State Plaintiffs.

### D. Settlement Negotiations and Mediation

In early February 2014, settlement negotiations commenced. Towards that end, Committee Counsel and Company Counsel held detailed, full-day, face-to-face meetings on February 18-20, 2014 with Federal Counsel and on February 21, 2014 with State Counsel.

During those meetings, Committee Counsel briefed Federal Counsel and State Counsel on the Independent Committee's findings and recommendations, the Board's decisions, and the governance enhancements. Walker Decl., ¶¶7-10.

On February 24 and 25, 2014, HP and the Federal and State Plaintiffs participated in the first of seven face-to-face mediation sessions with Judge Walker. Walker Decl., ¶24. Three weeks later, on March 11-13, 2014, HP and the Federal and State Plaintiffs participated in additional face-to-face mediation sessions with Judge Walker. Walker Decl., ¶¶11-12. At the end of the March 13, 2014 session, an agreement in principle was reached regarding the substantive issues in the Actions subject to, among other things, Court approval. *Id.*

After reaching an agreement on the principle terms of the settlement, on April 1 and 2, 2014, counsel for HP and the Federal and State Plaintiffs participated in face-to-face mediation sessions overseen by Judge Walker to discuss attorneys' fees. Walker Decl., ¶14. Those sessions did not result in an agreement regarding fees. Judge Walker continued to work with counsel for the Federal and State Plaintiffs (on the one hand) and HP (on the other hand) regarding the fee issues. Ultimately, in May 2014, those parties reached an agreement on the fee issue, the terms of which are set forth in the engagement letter. Walker Decl., ¶15.

### III. THE SETTLEMENT TERMS

The settlement is an excellent result for and in the best interests of HP and its shareholders, reached after extensive, arm's-length negotiations overseen by Judge Walker. Walker Decl., ¶¶16-23. Under the terms of the settlement, the Settling Plaintiffs, through Settling Plaintiffs' Counsel, subject to the terms of the engagement letter, shall assist HP in any other lawsuits, arbitrations or mediations initiated by HP against legacy Autonomy officials Michael Lynch and Sushovan Hussain and/or potentially other non-released persons or entities. Stipulation, §§III.A.(1)-(4). Additionally, the Settling Plaintiffs, through their counsel, will also assist HP in obtaining a dismissal and/or realignment of the parties in *Noel v. Whitman, et al.*, Case No. 1:13-cv-251346 (Cal. Super Ct., Santa Clara Cty.) consistent with the terms of the Settlement. *Id.*

Further, under the terms of the Settlement, HP is in the process of implementing certain enhancements to its policies and procedures for evaluating potential mergers and acquisitions. *Id.* These enhancements provide for greater involvement in the M&A process by the Finance and Investment Committee as well as the Technology Committee of the Board. The due-diligence process would be enhanced, with additional training for persons taking part in the company's due-diligence efforts and due-diligence plans subject to greater oversight. There would be additional and enhanced oversight for larger transactions by key members of management who will form a newly chartered Risk Management Committee. And there would be periodic board- and management-level review of the company's processes for evaluating, reviewing, and approving mergers and acquisitions, including the criteria for considering potential M&A partners.

## IV. THE STANDARDS FOR PRELIMINARY APPROVAL OF A DERIVATIVE SETTLEMENT

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. *Wiener v. Roth*, 791 F.2d 661 (8th Cir. 1986). Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id*. (emphasis in original).

## V. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE PROVIDED TO HP SHAREHOLDERS

At the Settlement Hearing, the Court will have before it detailed papers submitted in support of the settlement and will be asked to make a determination as to whether the settlement is fair, reasonable, and adequate and in the best interest of those whose claims will be extinguished. While Federal Plaintiff believes that the settlement merits this Court's final

approval, at this time Federal Plaintiff respectfully requests only that the Court grant preliminary approval of the settlement.

To grant preliminary approval, the Court need only conclude that a settlement of the claims against the Settling Individual Defendants and the Settling Professional Advisor Defendants is "within the range of possible approval" to preliminarily approve the settlement for the purposes of providing notice and holding a future fairness hearing. As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

Here, there can be no question that the settlement is "within the range of possible approval." As a threshold matter, the settlement was reached after extensive arm's-length negotiations between and among counsel for the Settling Parties with the substantial assistance of Judge Walker, and provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation. Walker Decl., ¶¶7-12, 16-23. Moreover, the Independent Committee, exercising their business judgment, approved the settlement, concluding the settlement of the Federal and State Actions on the terms set forth in the Stipulation is in the best interest of the Company, and confers substantial benefits to HP. Stipulation at §II.F.(2). Under these circumstances, Federal Plaintiff respectfully submits that the settlement is "within the range of possible approval" and should be preliminarily approved.

Federal Plaintiff respectfully submits that the settlement, in every respect, is in the best interests of HP and its shareholders. Indeed, under the settlement, the Settling Plaintiffs and their respective counsel will assist HP in pursuing affirmative claims against the legacy Autonomy executives and potentially other non-released persons and entities who injured HP as a result of

the Acquisition. This is an unusual resolution of derivative claims pending in the Northern District of California, but one that perfectly aligns the interests of the Settling Plaintiffs and of HP. As a result, HP's interests will be vigorously prosecuted and zealously protected by leading law firms and lawyers from both sides of the complex shareholder litigation bar.

Further, reference to some of the factors considered by courts in granting final approval of derivative and class action settlements lends support to the Federal Plaintiff's belief that the settlement should not only be preliminarily approved but also finally approved. *Officers for Justice*, 688 F.2d at 625. In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's length without collusion. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). As discussed above, each element of the settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of significant give and take by the Settling Parties, and was reached only after seven face-to-face mediation sessions overseen by Judge Walker. Walker Decl., ¶¶6-12, 16-23.

An evaluation of the benefits of settlement must also be tempered by recognition that any compromise involves concessions on the part of most of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Although Federal Plaintiff believes that the claims asserted against the Settling Individual Defendants and the Settling Professional Advisor Defendants in the Federal Action were meritorious, liability was by no means a foregone conclusion. Had Federal Plaintiff continued to litigate, there was a risk that he would not have been successful on those defendants' pre-trial motions designed to eliminate or curtail the derivative claims. And, even if Federal Plaintiff prevailed at the pleading stage, significant risks remained in getting past the Settling Individual Defendants' and Settling Professional Advisor Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial. The settlement eliminates these risks of continued litigation, while focusing HP's attention on pursuing affirmative claims against those responsible for HP's

losses relating to the Acquisition — legacy Autonomy executives and potentially other non-released third-parties.

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *Officers for Justice*, 688 F.2d at 625. The Settling Parties, and each of them, have independently considered the settlement and agree that it is in the best interests of HP and its shareholders. Further, Federal Counsel has extensive experience in the area of shareholder representative litigation, and has successfully prosecuted numerous shareholder derivative actions. As a result, Federal Counsel has a unique insight into the legal and factual issues presented. Here, Federal Counsel used that expertise and experience to reach an outstanding result for HP. Finally, the assistance of a neutral, well-respected mediator, Judge Walker, also assured a sound result for HP and its shareholders.

## VI. THE ATTORNEYS' FEES PROVIDED UNDER THE ENGAGEMENT LETTER ARE FAIR AND REASONABLE

In recognition of the substantial benefits conferred upon HP, HP, by and through its Independent Committee, has entered into an engagement letter with the Settling Plaintiffs' Counsel that provides for a fixed fee and fee contingent upon the amount recovered by HP. More particularly, in addition to a fixed monthly retainer in the amount of $562,500 for 32 months, Settling Plaintiffs' Counsel will be eligible to receive a contingent fee equal to 10% of the amount recovered by HP up to $100 million, and 25% of any amount in excess of $100 million, up to a maximum contingent amount of $30 million. Stipulation, §§IV.A. and Exh. A.

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Moreover, where there is no evidence of collusion and no detriment to the parties, the court should give "substantial

weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); Walker Decl., ¶¶13-15, 22.

Here, Settling Plaintiffs' Counsel and HP agreed to the terms of the engagement letter after the principal terms of the settlement were agreed upon. Moreover, Judge Walker oversaw these arm's-length negotiations, which resulted in an attorneys' fee provision that is within the range of agreed fees paid in similarly complex derivative cases. Stipulation, §§IV.A. and Exh. A; Walker Decl., ¶¶13-15, 22.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the settlement, Federal Plaintiff respectfully requests that the Court establish dates by which (i) notice of the settlement will be distributed to HP shareholders, (ii) dates by which HP shareholders may comment on the settlement, and (iii) a date for the final Settlement Hearing.

Since the settlement includes Governance Revisions relating to HP's internal merger and acquisition processes, HP has filed the Governance Revisions under seal. The proposed notice provides that HP shareholders who wish to review the Governance Revisions for the purpose of evaluating and potentially objecting to the settlement, must submit a request to review the Governance Revisions to HP's counsel verifying their shareholder status and agreeing to be bound by an appropriate confidentiality agreement restricting the disclosure and use of the information. See Settlement, Exh. C (Notice) at p. 5.

As set forth in the Notice Order, Federal Plaintiff respectfully proposes the following schedule:

| | |
|---|---|
| Short-Form Notice of Proposed Derivative Settlement published in *The Wall Street Journal*, *New York Times*, *The San Francisco Chronicle*, and *Investors' Business Daily* ("Notice Date") | 10 business days after Court enters the Notice Order preliminarily approving settlement |
| Filing of Notice of Proposed Derivative Settlement via a Form 8-K with the SEC | 10 business days after Court enters the Notice Order preliminarily approving settlement |
| Filing of Motion for Final Approval of Derivative Settlement | 35 calendar days before the Settlement Hearing |
| Last day for HP shareholders to comment on the settlement | 20 calendar days before the Settlement Hearing |
| Last day for Settling Parties to submit any papers in opposition to any comments | 7 calendar days before the Settlement Hearing |

In addition, Federal Plaintiff proposes that the Settlement Hearing be scheduled on August 29, 2014. This time period will provide HP shareholders adequate time to consider the proposed settlement. This schedule is similar to those used in other derivative settlements and provides due process to HP shareholders with respect to their rights concerning the settlement.

## VIII.  CONCLUSION

The settlement achieved is an extraordinary result.  Accordingly, Federal Plaintiff respectfully submits that the settlement is fair, reasonable, and adequate and should be preliminarily approved.

Dated:  June 30, 2014                              Respectfully Submitted,

/s/  Mark. C. Molumphy
Mark. C. Molumphy

**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
medling@cpmlegal.com

*Lead Counsel for Plaintiff Stanley Morrical, derivatively on behalf of Hewlett-Packard Company*