KEKER & VAN NEST LLP
JOHN W. KEKER - # 49092
jkeker@kvn.com
JAN NIELSEN LITTLE - # 100029
jlittle@kvn.com
BROOK DOOLEY - # 230423
bdooley@kvn.com
NICHOLAS D. MARAIS - # 277846
nmarais@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Proposed Intervenor
SUSHOVAN HUSSAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master File No. C-12-6003-CRB<br><br>**SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE TO CHALLENGE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    August 25, 2014<br>Time:    9:30 a.m.<br>Dept.:    Courtroom 6, 17th Floor<br>Judge:    Hon. Charles R. Breyer |
|---|---|

SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 25, 2014, at 9:30 a.m., or as soon thereafter as counsel may be heard, Proposed Intervenor Sushovan Hussain will move to intervene in *In re Hewlett-Packard Company Shareholder Derivative Litigation*, Master File No. C-12-06003-CRB, as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, by the Court's permission under Federal Rule of Civil Procedure 24(b)(1)(B).

Mr. Hussain files this motion based on the grounds set forth with particularity in his accompanying Memorandum of Points and Authorities in Support of Motion to Intervene to Challenge Settlement, the pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing.

Dated: July 21, 2014                                KEKER & VAN NEST LLP

                                                    By:  */s/ John W. Keker*
                                                         JOHN W. KEKER
                                                         JAN NIELSEN LITTLE
                                                         BROOK DOOLEY
                                                         NICHOLAS D. MARAIS

                                                         Attorneys for Proposed Intervenor
                                                         SUSHOVAN HUSSAIN

SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

**MEMORANDUM OF POINTS AND AUTHORITIES**

In 2011, Hewlett-Packard bought Autonomy for $11 billion, over the objections of its CFO who said the price was too high.  The stock market reacted to the purchase negatively.  Within months, the HP board fired the executives who sponsored the acquisition and replaced its CEO with board member Meg Whitman.  HP accountants took over the accounting at Autonomy in England, and began to integrate it into HP's financial system.  New HP management, though, took steps to undermine the merger so that it essentially failed.  After more than a year passed, HP CEO Whitman cried fraud and announced an $8.8 billion write-down.

Within days, the plaintiffs' bar sprang into action, filing derivative, ERISA and class action lawsuits.  In this derivative case, highly respected lawyers, well aware of their obligations under Rule 11, claimed that:

- Defendants ignored CFO Catherine Lesjak's "impassioned case against the acquisition before the HP board of directors.  'I can't support it,' Lesjak told the directors, according to a person who was present at the HP board of directors meeting.  'I don't think it's a good idea.  I don't think we're ready.  I think it's too expensive.  I'm putting a line down this is not in the best interest of the company.'" Derivative Complaint, ¶ 117.[1]

- "No due diligence was done [regarding the acquisition].  This was a fraud known at the highest levels of HP, including its board of directors." *Id*. at ¶ 13.

- Defendants "abdicated their duties by consciously ignoring red flags regarding the Autonomy acquisition." *Id*. at ¶ 72.

- "According to analysts, HP sought to maximize the amount of the write-down it could blame on fraud in order to take the largest write-down it could of Autonomy without acknowledging the misconduct of HP's own officers and directors.... [I]t is evident that HP is using [alleged accounting improprieties at Autonomy] as an excuse to write-down the value of other bad investments without admitting that HP overpaid…." *Id*. at ¶ 23.

- "HP's fiduciaries misrepresented facts to conceal their own failings." *Id.* at ¶ 1.

- "HP's officers and directors have also knowingly made false statements to the press … that would expose HP officers and directors to fraud claims." *Id*. at ¶ 74.

---

[1] All references to the Derivative Complaint are to Plaintiffs' [Redacted] Consolidated Shareholder Derivative Complaint (Dkt. 75-2), filed on May 3, 2013 in *In re Hewlett-Packard Company Shareholder Derivative Litigation*, master file number C-12-06003-CRB.

- The individual defendants—whose "unlawful behavior had severely damaged HP"—have been "enriched by salaries, bonuses, fees, stock options and other perks not justified by HP's unlawful activities and performance under their stewardship." *Id*. at ¶ 25.

HP through its counsel spent a year and a half in this court avoiding dealing with those claims. Instead, it appointed a special litigation committee, which hired a well-known and very expensive lawyer to do an investigation.[2] After the investigation, a reaction similar to alchemy occurred: HP and respected plaintiffs' lawyers entered into an agreement where HP insiders pay nothing and are absolved of all wrongdoing, and the respected plaintiffs' lawyers get at least $18 million and as much as $48 million for "assisting" some other law firm to sue Autonomy's former officers, no doubt in England where discovery is limited and those respected lawyers are not even licensed to practice law.

Any normal person would say, "Are you kidding me?" A federal district judge, who is required to rule on the fairness of the settlement and make sure that it is not collusive, should say, "Not in my court."

As HP's "Independent Committee" counsel Ralph Ferrara himself has written:

> [C]ourts will generally scrutinize non-monetary settlements to ensure that the benefit to the corporation is real and not illusory. … [T]here is a danger that such settlements may be the result of collusion between the individual defendants (typically the corporation's directors of officers) and the plaintiff's counsel, who generally receives his or her attorneys' fees from the corporation as part of the agreement.

Ralph Ferrara, *Shareholder Derivative Litigation*, § 14.05[2][a] (2d ed. 2014) (collecting cases rejecting settlements involving "cosmetic" reforms and no monetary payment).

\* \* \*

Pursuant to Federal Rule of Civil Procedure 24(a), Proposed Intervenor Sushovan Hussain hereby moves to intervene in this action, for the limited purpose of challenging the proposed settlement. This motion seeks permission (1) to intervene, and, once intervention is granted,

---

[2] In 2009, it was reported that Mr. Ferrara charged more than $30 million to conduct a similar internal investigation, "according to people familiar with the situation." *See* The Recorder, *Brocade Closely Watched Backdating Lawsuit Ends in the Red* (available at http://www.alm.law.com/jsp/article.jsp?id=1202431585820&slreturn=20140618155539) (last accessed July 17, 2014). Given the scope of this investigation, Mr. Ferrara has undoubtedly charged closer to $40–50 million.

2
SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

(2) to take discovery, and (3) to submit briefing in opposition to the proposed settlement. Mr. Hussain has not previously been a party to this action, and has not been served with any pleadings or notices in connection with this action. We file this Motion to Intervene to be heard 35 days hence pursuant to Local Rule 7-2, on August 25, 2014, the date set for hearing on the one-sided Motion for Preliminary Approval of Settlement.

I. **SUSHOVAN HUSSAIN, NOT PREVIOUSLY A PARTY TO THIS SUIT, IS NAMED IN THE PROPOSED SETTLEMENT AS A PUTATIVE FUTURE DEFENDANT**

Sushovan Hussain is the former Chief Financial Officer of Autonomy Corporation plc. ("Autonomy"). Mr. Hussain has not to date been named as a defendant in this litigation. However, on June 30, Plaintiffs in this action filed a Stipulation of Settlement and a Motion for Preliminary Approval of Settlement, which reveals a plan for HP to pursue "other lawsuits" against "Legacy Autonomy Officials Michael Lynch and Sushovan Hussain" and potentially others. *See* Dkt. 149-2 (Stipulation of Settlement) at 35–36, 41–42; *see also id.* at 11–12 (defining "Legacy Autonomy Officials to include "Michael R. Lynch [and] Sushovan Hussain," and defining "Non-Released Preserved Claims").

II. **MR. HUSSAIN'S INTERESTS ARE AFFECTED BY THE PROPOSED SETTLEMENT**

Both as a "Legacy Autonomy Official" targeted for suit by HP and as an HP shareholder, Mr. Hussain has interests, "the protection of which may, as a practical matter, be impaired or impeded" if the Motion for Preliminary Approval proceeds without his participation. The proposed settlement poses a "tangible threat" to Mr. Hussain's legally cognizable interests, such that intervention is appropriate. *Forest Conservation Council v. U.S. Forest Service,* 66 F.3d 1489, 1496 (9th Cir. 1995). It does so in two ways.

First, the proposed "Complete Bar Order" appears to preclude *anyone*—shareholder or not—from *ever* pursuing legal action against the Releasees for claims that are "based upon" or "arise[] out of" the "transactions and occurrences" alleged in Plaintiffs' 445-paragraph complaint. Specifically, that "Complete Bar Order," which the proposed settlement contemplates this Court entering, provides as follows:

3
SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

> Any and all persons and entities are permanently barred, enjoined and restrained from commencing, prosecuting or asserting any claim against any Releasee arising under state, federal, foreign, or common law, however styled (whether for indemnification or contribution or otherwise denominated, including, without limitation, claims for breach of contract, breach of fiduciary duty or misrepresentation), where the alleged injury of such person or entity is that person's or entity's alleged liability to the Company or Autonomy, as applicable, based upon, arising out of, or relating to either (1) any Released Securities Holder/Company Claim belonging to the Company or (2) any Non-Released Preserved Claim belonging to the Company or Autonomy, including, without limitation any claim against any Releasee that is based upon, arises out of or relates to this Federal Action or the State Actions, or the transactions and occurrences that are alleged in the Complaint…
>
> including, without limitation, any claim in which a person or entity seeks to recover from any of the Releasees (i) any amounts such person or entity may become liable to pay to or on behalf of the Company or Autonomy and/or (ii) any costs, expenses or attorneys' fees from defending any claim by or on behalf of the Company or Autonomy.
>
> All such claims are hereby extinguished, discharged, satisfied and unenforceable, subject to a hearing to be held by the Court, if necessary; *provided, however*, that, with respect to any judgment against any person or entity on behalf of the Company or Autonomy (including any judgment obtained by a Securities Holder bringing a claim derivatively on behalf of the Company) based upon, arising out of, or relating to any Released Securities Holder/Company Claim or Non-Released Preserved Claims (including, without limitation, any claim against any Releasee that is based upon, arises out of or relates to this Federal Action or the State Actions, or the transactions and occurrences that are alleged in the Complaint), that person or entity shall be entitled to a credit of an amount that corresponds to the percentage of responsibility of the applicable Releasee(s) for the loss to the Company or Autonomy, as applicable….

Dkt. 149-2, Ex. D at ¶ 13(a).

While the language of this proposed Complete Bar Order is less than clear, it would appear to seek to bar Mr. Hussain, in the future, from asserting any counterclaims or other claims, for indemnity, contribution or otherwise, against HP or its officers or directors in any future litigation. The proposed "Notice to Shareholders," written more simply, indicates the breadth of the proposed Complete Bar Order:

> [I]t will release and extinguish all claims (both known and unknown) that were or could have been asserted against the Individual HP Defendants and the Professional Advisors (and the other Releasees) … in any other action or proceeding to the extent those claims arise out of or relate to the allegations in any of these lawsuits.[3]

The proposed Bar Order is unconstitutional as applied to a non-party like Mr. Hussain. It

---

[3] *See* Dkt. 149-2, Ex. C (Notice of Proposed Settlement), 4.

4

SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

is a principle of general application in Anglo-American jurisprudence that "[o]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 846 (1999) (citing *Martin v. Wilks*, 490 U.S. 755, 762 (1989)); *see also Alvarado Partners LP v. Mehta*, 723 F. Supp. 540, 554 (D. Colo 1989) ("[T]o the extent settling parties seek to bar claims by persons or entities other than [parties to the action], such persons or entities are not before me. Fundamental due process principles prohibit claim extinguishment against anyone not a party to this action."). Although Mr. Hussain is not currently a defendant in this action, he has been named as a putative future defendant, and as such he is also similarly situated to a "non-settling defendant" who has the right to challenge a settlement and its attendant releases and bars: "There is consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example." *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987); *see also In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 172 (5th Cir. 1979) (quoting 3 Newberg on Class Actions (1977) § 5660b at 564–65); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1387 (D. Md. 1983); *Altman v. Liberty Equities Corp.*, 54 F.R.D. 620 (S.D.N.Y.1972). Once intervention is granted, we would seek the opportunity to brief and argue the impropriety of the proposed Complete Bar Order in greater detail.

Second, Mr. Hussain is also a "Securities Holder."[4] As such, the shareholder release provisions of the Proposed Settlement—which release all potential claims that any HP shareholder could bring against any of the released defendants—could also potentially bar Mr. Hussain from asserting any counterclaims or other claims, for indemnity or contribution or otherwise, against HP or its officers or directors in any future litigation.

Mr. Hussain thus has "significantly protectable" interests at issue in connection with this settlement. *Forest Conservation Council v. U.S. Forest Service,* 66 F.3d at 1494. Mr. Hussain seeks to intervene now to challenge preliminary approval of the settlement, as opposed to simply

---

[4] Mr. Hussain was issued 9,663 Restricted Stock Units by Hewlett-Packard.

waiting to file an objection as a shareholder, because of his additional status as a named putative defendant in a future action contemplated by HP.  As a potential future defendant, Mr. Hussain may be in a position to assert counterclaims or other claims, including for indemnity and contribution.  This situates him differently than a "regular" HP shareholder.  Given his "dual status" as both a current shareholder subject to broad releases and as a putative future defendant potentially restricted by a "Complete Bar Order," intervention, as opposed to mere shareholder objection, is appropriate.

### III.  THE PROPOSED SETTLEMENT IS COLLUSIVE AND UNFAIR

Mr. Hussain has an interest in challenging this collusive settlement because it would shield from adversarial examination the claims of wrongdoing by HP officials—claims suddenly now deemed to be "without merit"—and further shield that wrongdoing from any future claims by Mr. Hussain when a suit is brought seeking to blame him instead.  Indeed, by this settlement, HP seeks to forever bury from disclosure the real reason for its 2012 write-down of Autonomy: HP's own destruction of Autonomy's success after the acquisition.  And by the broad bar order it seeks, HP seeks to absolve itself of its own responsibility for its losses.

The proposed settlement is premised on HP's Board having "resolved … that there is no merit to the claims asserted against the named defendants" in the derivative action.  *See* Dkt. 149-2, 2.  Although Plaintiffs' counsel now appears ready to settle—and take between $18 and $48 million in attorneys' fees—they have until now adamantly questioned the HP Board's ability to fairly and objectively make these sorts of decisions: "It is evident that HP and its Board of Directors are unwilling and unable to review this situation in a fair and objective manner." Dkt. 75-2 (Consolidated Compl.), ¶ 73.  Since the inception of this consolidated action, Plaintiffs' counsel has called HP out for doing the very thing it proposes to do in this self-serving settlement: "blame[] … the write-down on Autonomy's accounting but fail[] to take accountability" for its own significant shortcomings.  *Id.* at ¶ 18.  Indeed, Plaintiffs' justified and lengthy list of concerns about the would-be "released" HP defendants span 445 paragraphs of Plaintiffs'

6
SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

consolidated complaint, many of which are still redacted.[5]

In addition to the allegations taken from the complaint in this action that are listed on pages 1–2, *supra*, plaintiffs' counsel in the securities and ERISA cases have raised similar allegations concerning HP and its management and Board:

- This case "tells the story of … a beleaguered HP Board who were, in their own words, 'just too exhausted from all the infighting' to effectively oversee HP's executive management in the months leading up to the Autonomy Acquisition…." Securities Compl., ¶ 6.[6]

- "Desperate to reverse its fortunes, in the summer of 2011 HP began to pursue UK software company Autonomy as an acquisition target. Although a number of media reports suggested that Autonomy might not be a good fit for HP, HP rushed consideration and due diligence of the deal.... The market reacted badly…, and HP's stock price took a significant hit based on this news." ERISA Compl., ¶ 73.[7]

- According to a *Financial Times* exposé, "[s]everal emails … show that HP executives, in one instance up to the level of chief executive Meg Whitman, were included in communications that referred to hardware sales by the UK company." ERISA Compl., ¶ 78.

- "As the *Financial Times* aptly summarized, 'HP claims to have been the victim of one of the largest accounting swindles ever in November 2012. Since then, compelling corroboration has yet to emerge.' This lack of corroboration only deepens the suspicion that HP merely overpaid for Autonomy, then botched its integration." ERISA Compl., ¶ 95.

- "HP's Autonomy due diligence team reported directly to Defendant Robison, which, not coincidentally, stripped CFO Lesjak of her ability to scrutinize a transaction that, Apotheker, Lane and Robison knew she vehemently opposed." Securities Compl., ¶ 38.

---

[5] As this Court explained in *In re Brocade Communications Systems, Inc.*, the public has a strong interest in knowing what happened here—both in HP's botched acquisition of Autonomy and in the hushed settlement negotiations that followed. *See, e.g.*, *In re Brocade Comm's Systems, Inc.*, case no. 05-cv-02233-CRB, Hearing Tr. (Aug. 22, 2008) (Dkt. 246), 32:24–34:8 ("And, and, I think we have to be very concerned here that this is a public process. … After all, you have a situation where a law firm brings a lawsuit, they charge certain things, and then they are agreeable to—that their lawsuit essentially be dismissed. Parts of it certainly have been incorporated in the—in the other lawsuit, and parts haven't. So the public—'Well, why does that happen? When went on?' And, something did go on. … I'm suggesting that it might be of public interest to know why that happened.").

[6] All references to the Securities Complaint are to Plaintiffs' Consolidated Complaint for Violation of the Federal Securities Laws (Dkt. 100), filed on May 3, 2013 in *In re HP Securities Litigation*, master file number C-12-05980-CRB.

[7] All references to the ERISA Complaint are to Plaintiffs' Second Consolidated Amended Class Action Complaint (Dkt. 121), filed on July 16, 2014 in *In re HP ERISA Litigation*, master file number C-12-06199-CRB.

7
SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

At a September 2013 hearing, Plaintiffs' counsel argued that HP's attempts to refocus the investigation on Legacy Autonomy Officials was an irrelevant distraction. *See, e.g.*, Hearing Tr. (Sept. 6, 2013), 17:9–12 ("The fact that we didn't sue some English nationals—or, as [Ferrara] refers to them, as 'legacy Autonomy employees'—is immaterial. It may be material to his investigation, but it has nothing to do with our case."). Now, suddenly, Plaintiffs' counsel do a total about-face, buying the very story they rejected last year. And, in so doing, they propose a settlement that results in (1) no monetary recovery to the company or its shareholders, (2) some vague and undisclosed "Governance Revisions," which HP has not even agreed to implement or enforce,[8] and which may only be seen by shareholders who undertake an onerous process of submitting a request and agreeing to terms of a confidentiality agreement, and (3) payment of a guaranteed $18 million and up to $48 million in fees to Plaintiffs' counsel for them to "assist" the firm of Wachtell Lipton in its (presumably also handsomely compensated) litigation of claims against former Autonomy officials.[9]

This would seem to be precisely the type of collusive settlement that experts warn merit careful scrutiny. *See, e.g.*, *In re Chiron Corp. Secs. Litig.*, C-04-4293-VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) (Walker, J., denying settlement approval) ("The great risk of settlements such as the one currently before the court is that the settlement terms will serve more the interests of class counsel than the needs of class members."); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1178 (N.D. Cal. 1993) (Walker, J., disapproving settlement of derivative action) ("It is well known that counsel for the class who decide to settle a class action may not

---

[8] *See, e.g.*, Stipulation at 35 ("**Subject to** HP management's review of and recommendations regarding the Governance Revisions, HP shall implement the Governance Revisions…") (emphasis added).

[9] This agreement is somewhat similar to that reached in connection with the 2008 derivative ligation involving Brocade, discussed *supra* at fn. 5, in which an agreement was reached between derivative plaintiffs' counsel (the law firms of Robbins Umeda and Johnson Bottini), whereby plaintiffs' counsel agreed to relinquish their own pursuit of claims, pursuant to a "realignment of parties," to instead be retained by Brocade, reporting exclusively to lead counsel for Brocade Special Litigation Committee (Ralph Ferrara, then of Dewey Ballantine). Under that agreement, plaintiffs' counsel agreed to serve as "co-counsel" to perform "specific work the Special Litigation Committee wishes the Co-Counsel Firms to conduct," as specifically authorized by Mr. Ferrara's firm, in exchange for a fee of (i) a guaranteed $8 million, plus (ii) potential contingent fee payments such that the total compensation could reach $25 million or more in the "sole discretion" of the Special Litigation Committee.

8
SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473

necessarily have the interests of their putative clients, the class members, at heart.").

This settlement should be challenged (and future claims should not be barred) in light of HP's own actions, which would have been aired in the litigation of this derivative suit, including:

- The firing in September and October 2011—before the acquisition even closed—of the two HP architects and visionaries behind the acquisition, ex-CEO Léo Apotheker and former CTO Shane Robison;

- HP's new management's failure to take the steps necessary to effectuate the key synergies the merger was intended to realize, in the areas of sales and marketing and operations and technology integration; and

- HP's subsequent "big-bath" write-downs relating to two poorly managed acquisitions, Electronic Data Systems and Autonomy, followed by a shifting of blame to former Autonomy management.

The existence of these and other facts alluded to in the initial complaint make the proposed settlement and future bar orders proper subjects of inquiry.[10]

## IV. REQUESTED RELIEF

For these reasons, Sushovan Hussain seeks the following relief:

1. Permission to intervene in this action, for the limited purpose of challenging the settlement, which impacts his rights;

2. Permission to take limited discovery concerning (i) the process underlying the settlement and (ii) the evaluation of the claims against HP officers and directors, which have now been determined to be "without merit." Such discovery should include:

    a. Disclosure of an unredacted copy of the amended complaint;

    b. Access to information concerning the "extensive presentation on the findings and recommendations," the "electronic databases containing tens of millions of documents," and the reports of interviews of "nearly 100

---

[10] Appropriate challenges to this proposed settlement may also aid the Court in its determinations of the fairness of the settlement. *Eubank v. Saltzman*, Slip Op, No 13-2091 (7th Cir. June 2, 2014) (Posner, J., reversing district court's approval of settlement) ("Fortunately the [class] settlement, including the amount of attorneys' fees to award to class counsel, must be approved by the district judge presiding over the case; unfortunately American judges are accustomed to presiding over adversary proceedings. They expect the clash of the adversaries to generate the information that the judge needs to decide the case. And so when a judge is being urged by both adversaries to approve the … settlement that they've negotiated, he's at a disadvantage in evaluating the fairness of the settlement to the class.").

individuals" referenced in the Declaration of Judge Walker[11] filed in connection with the proposed settlement; and

  c. The report of the "Independent Committee's findings and recommendations," which formed the basis for HP's Board's resolution "that there is no merit to the claims asserted against the named defendants in the Federal Action or the State Actions (other than as to Legacy Autonomy Official Michael Lynch)…;"[12] and

3. A briefing schedule, following discovery, to challenge the proffered settlement, and in particular to challenge the Complete Bar Order insofar as it affects Mr. Hussain's rights.

## V. CONCLUSION

Proposed Intervenor Sushovan Hussain respectfully requests that this Court **GRANT** his Motion to Intervene to challenge the proposed settlement.

                 Respectfully submitted,

Dated: July 21, 2014         KEKER & VAN NEST LLP

             By: */s/ John W. Keker*
                JOHN W. KEKER
                JAN NIELSEN LITTLE
                BROOK DOOLEY
                NICHOLAS D. MARAIS

                Attorneys for Proposed Intervenor
                SUSHOVAN HUSSAIN

---

[11] As Judge Walker explained in his declaration, his limited involvement in this case "did not require [him] to reach conclusions about any of [the] contested issues." *See* Dkt. 149-1 (Walker Decl.), ¶ 18; *see also id.* at ¶¶ 23–24 (explaining that "only the Court can decide whether the settlement is substantively a fair compromise" and "urg[ing] the Court to give this settlement its earnest and most serious consideration.").

[12] Dkt. 149-2, 2.

10
SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO INTERVENE
TO CHALLENGE SETTLEMENT; MPA IN SUPPORT THEREOF
Master File No. C-12-6003-CRB

846473