## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**IN RE HEWLETT-PACKARD COMPANY
SHAREHOLDER DERIVATIVE LITIGATION**

**Case No.  C-12-6003-CRB**

### AMENDED AND RESTATED STIPULATION OF SETTLEMENT

WHEREAS, on August 18, 2011, Hewlett-Packard Company announced its intention to make a tender offer for all shares of Autonomy Corporation plc, and on October 3, 2011 the tender offer was closed (the "Acquisition"); and

WHEREAS, on November 20, 2012, HP announced that it was taking an $8.8 billion Impairment Charge for goodwill and intangible assets for the Autonomy unit within HP's Software segment in the fourth quarter of HP's 2012 fiscal year;[1] and

WHEREAS, after HP's November 20, 2012 announcement, a number of shareholder derivative actions were filed alleging misconduct by HP officers and directors, certain of HP's professional advisors and others in connection with the Acquisition and related events; and

WHEREAS, four shareholders submitted demand letters to HP's Board of Directors and other shareholders demanded that documents be produced to them pursuant to Section 220 of the Delaware General Corporation Law regarding the Acquisition and related events; and

---

[1].    All capitalized terms are defined in Section I of this Amended and Restated Stipulation of Settlement.

WHEREAS, in January 2013, HP's Board of Directors created an Independent Committee and authorized it to, among other things, investigate, review and evaluate the facts and circumstances alleged in the shareholder derivative actions and shareholder demand letters; and

WHEREAS, after a thorough review, the Independent Committee presented its findings and recommendations to the Board in January 2014; and

WHEREAS, based on their consideration of the Independent Committee's findings and recommendations, the Board resolved (as more fully described below) that there is no merit to the claims asserted against the named defendants in the Federal Action or the State Actions (other than as to Legacy Autonomy Official Michael Lynch) and that pursuit of any such claims (other than as to Legacy Autonomy Official Michael Lynch) would not otherwise be in HP's best interest; and

WHEREAS, based on their consideration of the Independent Committee's findings and recommendations, the Board resolved (as more fully described below), among other things, that the Company has claims against Michael Lynch, Sushovan Hussain, and Deloitte UK, and that the pursuit of such claims is in the best interests of HP; and

WHEREAS, the Board instructed the Company's management to consider a collection of Governance Revisions that had been informed by allegations in the Federal Action and by proposals from State Plaintiffs; and

WHEREAS, after seven day-long mediation sessions under the direction of retired United States District Judge Vaughn R. Walker, the parties reached an agreement in principle to resolve the Federal Action and the State Actions, which agreement was subject to a number of conditions, including execution of a full settlement agreement; and

WHEREAS, Settling Plaintiffs' decision to enter into this Settlement is based upon, among other things, (*i*) information presented to Settling Plaintiffs' Counsel during face-to-face meetings regarding the Independent Committee's findings and recommendations and the Board's decisions, (*ii*) information provided to Settling Plaintiffs' Counsel in advance of and following these face-to-face meetings, (*iii*) the Company's adoption since the Acquisition of certain enhancements to its mergers and acquisitions policies and procedures and its adoption, as part of this Settlement, of additional revisions that, while not based on any finding or belief that the Company's merger and acquisition policies as they existed at the time of the Acquisition were in any way inadequate or deficient or that the Company failed to conduct adequate due diligence in connection with the Acquisition, will further enhance such policies and procedures, and (*iv*) Settling Plaintiffs' and Settling Plaintiffs' Counsel's determination that the terms of this Settlement as set out in this Agreement are fair, reasonable and adequate and in the best interests of the Company and its shareholders; and

WHEREAS, while (*i*) HP expressly denies that (*x*) any of the claims (other than those as to any Legacy Autonomy Officials and/or Autonomy Pre-Acquisition Advisors) made in the Federal Action, the State Actions, any other shareholder derivative actions or the shareholder demands with respect to HP's officers and directors or the Professional Advisors have any merit or that pursuit of any such claim would be in the best interest of the Company or its shareholders and (*y*) HP's merger and acquisition policies that existed at the time of the Acquisition were in any way inadequate or deficient, and (*ii*) the Settling Individual Defendants and the Settling Professional Advisor Defendants expressly deny all assertions of wrongdoing or liability arising out of the allegations in the Federal Action, the State Actions, any other shareholder derivative ac-

tions or the shareholder demands, HP nevertheless considers this Settlement (for the reasons discussed below) to be in the best interest of the Company and its shareholders.

WHEREAS, on June 30, 2014, the undersigned reached an agreement to settle the captioned case pursuant to which, among other things, Settling Plaintiffs (through Settling Plaintiffs' Counsel) would assist HP in certain lawsuits, arbitrations or mediations initiated by HP against Legacy Autonomy Officials Michael Lynch and Sushovan Hussain and/or (potentially) other non-released persons or entities. Such assistance by Settling Plaintiffs (through Settling Plaintiffs' Counsel) was not a condition of the settlement.

WHEREAS, on August 25, 2014, the Court held a hearing on the proposed settlement and stated that it would not approve, as part of the settlement, the arrangement pursuant to which Settling Plaintiffs' Counsel proposed to render assistance to HP following the settlement.

WHEREAS, the undersigned have agreed to amend and restate the stipulation of settlement to clarify the terms of the settlement following the August 25, 2014 hearing.

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by, between and among plaintiff shareholders Stanley Morrical, James R. Gould and Leroy Noel, nominal defendant Hewlett-Packard Company, and defendants Margaret C. Whitman, Léo Apotheker, Raymond J. Lane, Marc L. Andreessen, Shumeet Banerji, G. Kennedy Thompson, Rajiv L. Gupta, John H. Hammergren, Ann M. Livermore, Gary M. Reiner, Patricia F. Russo, Ralph W. Whitworth, Lawrence T. Babbio, Sari M. Baldauf, Dominique Senequier, Shane Robison, Barclays Capital Inc., and Perella Weinberg Partners, through their respective duly authorized counsel, that all matters and claims, known and unknown, that were or could have been asserted in the Federal Action or the State Actions against the Settling Individual Defendants and the Settling Professional Advisor Defendants are, subject to Court approval, settled, compromised, satisfied,

4

dismissed and/or withdrawn with prejudice on the terms and conditions of this Agreement and the Release contained in this Agreement.  The terms of this Agreement supersede and replace the stipulation of settlement executed on June 30, 2014.

## I.    DEFINITIONS

A.    As used in this Agreement, the following capitalized terms have the following meanings, unless a Section or Subsection of this Agreement provides otherwise in which case the definition provided in that Section or Subsection shall apply to that Section or Subsection:

1.    "Actions" means the Federal Action and the State Actions.

2.    "Acquisition" means HP's acquisition of Autonomy through a tender offer, which closed on the Acquisition Date.

3.    "Acquisition Date" means October 3, 2011.

4.    "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

5.    "Agreement" means this Amended and Restated Stipulation of Settlement and its Exhibits attached hereto, including any subsequent written amendments to the Amended and Restated Stipulation of Settlement and/or its Exhibits.

6.    "Approval Date" means the date on which the Court enters the Approval Order.

7.    "Approval Order" means the order to be entered by the Court approving the Settlement and this Agreement and dismissing all claims in the Federal Action as contemplated in Section VII(B) of this Agreement, which order shall be substantially in the form set out in Exhibit C.

8.    "Autonomy" means Autonomy Corporation plc, now known as Autonomy Corporation Ltd, and each and all of (*i*) its parents, predecessors, and successors, (*ii*) its current

and former Affiliates, divisions, business units, joint ventures (regardless of percentage of inter-

est), subsidiaries, and assigns and (*iii*) all other entities in which Autonomy has or had a Control-

ling Interest or that have or had a Controlling Interest in Autonomy; *provided however*, that "Au-

tonomy" shall not include HP or any other entities included within the definition of the Compa-

ny.

    9.  "Autonomy Business Partners" means entities that purchased or sold

products or services from or to Autonomy.

    10.  "Autonomy Pre-Acquisition Advisors" means (*i*) Deloitte, (*ii*) Qatalyst, or

(*iii*) any other person or entity who acted as an advisor to Autonomy before the Acquisition Date

other than the Professional Advisors or the Settling Professional Advisor Defendants.

    11.  "Barclays Capital" means Barclays Capital Inc. and each of (*i*) its parents,

predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint

ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in

which Barclays Capital Inc. has or had a Controlling Interest or that have or had a Controlling

Interest in Barclays Capital Inc. and (*iv*) the current and former partners and principals of each of

the foregoing.

    12.  "Business Day" means a day other than a Saturday, Sunday or Legal Holi-

day.

    13.  "Board" means the Board of Directors of HP.

    14.  "Claim" means any and all actions, causes of action, proceedings, adjust-

ments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money,

accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, de-

mands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses,

attorneys' fees and losses of any sort whatsoever, whether in law or in equity, and whether based on any federal, state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or Unknown Claims, accrued or not accrued, including without limitation claims for violation of the Securities Exchange Act (including but not limited to Sections 10(b), 14(a) and 20(a)), violations of Securities Exchange Commission rules (including but not limited to Rule 10b-5), breach of fiduciary duty (including the duties of care, loyalty, good faith, disclosure and oversight), corporate waste, corporate mismanagement, unjust enrichment, lack of candor, corporate abuse of control, aiding and abetting breach of fiduciary duty, and negligence.

15. "Committee Counsel" means the law firms of Proskauer Rose LLP, Choate Hall & Stewart LLP and Brown Rudnick LLP.

16. "Committees" means the Committees of the Board of Directors of HP, including but not limited to the Technology Committee, the Finance & Investment Committee, and the Audit Committee.

17. "Company" means HP and each and all of (*i*) its parents, predecessors, and successors, (*ii*) its current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns and (*iii*) all other entities in which HP has or had a Controlling Interest or that have or had a Controlling Interest in HP; *provided however*, that "Company" shall not include Autonomy.

18. "Company Counsel" means the law firms of Proskauer Rose LLP and Wachtell, Lipton, Rosen & Katz.

19. "Complaints" means the Federal Complaint and the State Complaints.

20.     "Complete Bar Order" means that portion of the Approval Order, the text of which shall be substantially in the form set out in paragraph 13 of Exhibit C, that the Settling Parties shall ask the Court to enter and that is an essential term of this Agreement.

21.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or control the direction of the management and policies of the entity, whether through ownership of voting shares, by contract, or otherwise.

22.     "Court" means the United States District Court for the Northern District of California.

23.     "Defendants' Settlement Counsel" means Company Counsel, Settling Individual Defendants' Counsel and Settling Professional Advisor Defendants' Counsel.

24.     "Deloitte" means Deloitte Touche Tohmatsu Limited ("DTTL") and each of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, members, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns (including, but not limited to, Deloitte LLP or Deloitte UK, LLP), (*iii*) all other entities in which DTTL or any of its affiliates, divisions, members, business units, joint ventures, subsidiaries, or assigns (including, but not limited to Deloitte LLP or Deloitte UK, LLP) has or had a Controlling Interest or that have or had a Controlling Interest in it or them, (*iv*) any other entity that has the word "Deloitte" in its name or title, and (*v*) the current and former partners and principals of each of the foregoing.

25.     "Ernst & Young LLP" means Ernst & Young LLP and each of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other enti-

ties in which Ernst & Young LLP has or had a Controlling Interest or that have or had a Controlling Interest in Ernst & Young LLP and (*iv*) the current and former partners and principals of each of the foregoing.

26.     "ERISA Class Action" means the consolidated putative class action captioned *In re HP ERISA Litigation*, No. C-12-6199-CRB (N.D. Cal.).

27.     "Execution Date" means June 30, 2014.

28.     "Fairness Hearing" means the hearing at or after which the Court shall make a decision whether to approve this Agreement as fair, reasonable and adequate and in the best interest of the Company and its shareholders.

29.     "Federal Action" means the consolidated shareholder derivative lawsuit styled *In re Hewlett-Packard Company Shareholder Derivative Litigation*, Case No. C-12-6003-CRB (N.D. Cal.), and all other lawsuits that have been consolidated into it or that may be consolidated into it as of the Final Settlement Date.

30.     "Federal Complaint" means the consolidated shareholder derivative complaint filed by Federal Plaintiff in the Federal Action on or about May 3, 2013.

31.     "Federal Counsel" means the law firm of Cotchett, Pitre & McCarthy, LLP and any other counsel that have appeared of record or rendered legal services to any plaintiffs in connection with the Federal Action.

32.     "Federal Plaintiff" means Stanley Morrical.

33.     "Final" means, when used in connection with any Court judgment or order, that the judgment or order shall be final:

        a.     if no appeal is taken, on the date on which the time to appeal from the judgment or order (including any potential extension of time) has expired; or

b.      if any appeal is taken from the order and judgment, the date on which all appeals therefrom – including any petitions for rehearing en banc, petitions for certiorari or any other form of review and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant judgment or order.

34.    "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

35.    "Freshfields Bruckhaus Deringer" means Freshfields Bruckhaus Deringer and each of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in which Freshfields Bruckhaus Deringer has or had a Controlling Interest or that have or had a Controlling Interest in Freshfields Bruckhaus Deringer and (*iv*) the current and former partners and principals of each of the foregoing.

36.    "Gibson Dunn & Crutcher LLP" means Gibson Dunn & Crutcher LLP and each of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in which Gibson Dunn & Crutcher LLP has or had a Controlling Interest or that have or had a Controlling Interest in Gibson Dunn & Crutcher LLP and (*iv*) the current and former partners and principals of each of the foregoing.

37.    "Governance Revisions" means the corporate governance and control enhancements to HP's mergers and acquisitions policies and procedures referred to in the Ninth Whereas clause above, submitted to the Court under seal, and available to potential objectors on

the terms set forth in the Preliminary Approval Order.

38.     "HP" means Hewlett-Packard Company and its successors.

39.     "Impairment Charge" means the $8.8 billion impairment charge for good-will and intangible assets for the Autonomy unit within HP's Software segment taken in the fourth quarter of HP's 2012 fiscal year and announced on November 20, 2012.

40.     "Independent Committee" means the committee of HP directors created by the Board in January 2013 to review allegations regarding the Acquisition and other matters alleged in certain shareholder demand letters and derivative actions.

41.     "Judgment" means the Judgment entered by the Court as contemplated in Section VII(B) of this Agreement, which judgment shall be substantially in the form set out in Exhibit D.

42.     "KPMG LLP" means KPMG LLP and each of (*i*) its parents, predeces-sors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in which KPMG LLP has or had a Controlling Interest or that have or had a Controlling Interest in KPMG LLP and (*iv*) the current and former partners and principals of each of the foregoing.

43.     "Legacy Autonomy Officials" means Michael R. Lynch, Sushovan Hussain, and all other individuals who were directors, officers, or employees of Autonomy be-fore the Acquisition Date.

44.     "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Co-lumbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal or California state holiday.

45.     "Mediator" means retired United States District Judge Vaughn R. Walker or an individual with equivalent qualifications and experience, as approved by the Settling Parties, if Judge Walker is unavailable.

46.     "Morgan, Lewis & Bockius LLP" means Morgan, Lewis & Bockius LLP and each of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in which Morgan, Lewis & Bockius LLP has or had a Controlling Interest or that have or had a Controlling Interest in Morgan, Lewis & Bockius LLP and (*iv*) the current and former partners and principals of each of the foregoing.

47.     "Non-Released Pending Claims" means (*i*) Claims related to or arising solely from the Palm Matters, (*ii*) the claims made in the operative complaint in *Copeland v. Lane*, No. 11-CV-1058 (EJD) (N.D. Cal.), *appeal pending* No. 13-16251 (9th Cir.) ("*Copeland I*"), as of the date of this Agreement, (*iii*) the claims made in *Copeland v. Apotheker*, No. 3-14-CV-0622 (EJD) (N.D. Cal.) ("*Copeland II*"), but only to the extent such claims are also included in and covered by *Copeland I*, and (*iv*) the claims made in *Saginaw Police & Fire Pension Fund v. Hewlett-Packard Company*, No. 5:10-CV-4720 (EJD) (N.D. Cal.), *appeal pending*, No. 12-16473 (9th Cir.), as of the date of this Agreement.

48.     "Non-Released Preserved Claims" means Claims that may be asserted by the Company or Autonomy against (*i*) Autonomy, (*ii*) Legacy Autonomy Officials, (*iii*) Autonomy Pre-Acquisition Advisors, or (*iv*) Autonomy Business Partners.

49.     "Notice" means the notice described in Subsection III.B.1 of this Agreement, as approved by the Court, which notice shall be substantially in the form set out in Exhibit B.

50. "Notice and Administrative Expenses" means all expenses associated with administration of this Settlement, including the expenses associated with publishing the Notice; *provided however*, that Notice and Administrative Expenses shall not include any fees and expenses paid to Settling Plaintiffs' Counsel.

51. "Objection Date" means the date by which objections to the Settlement proposed in this Agreement must be filed with the Court and served on counsel as set out in the Preliminary Approval Order.

52. "Palm Matters" means the Company's acquisition of Palm, Inc., which closed on or about July 1, 2010, and all subsequent operational decisions made regarding the integration and operation of the assets acquired in the Palm acquisition, including but not limited to the decision to discontinue webOS devices, the decision to open-source webOS, the decision to take an impairment charge regarding the Palm assets, the timing or amount of that impairment charge, any statements or alleged omissions made concerning any matters involving Palm or webOS, and any other allegations raised in the Amended Complaint in *In re Hewlett-Packard Shareholder Derivative Litigation*, Master File No. 8:11-cf-1454-AG (C.D. Cal.), except to the extent that any such allegations were also raised in the Federal Action and/or the State Actions.

53. "Perella Weinberg Partners" means Perella Weinberg Partners LP and Perella Weinberg Partners UK LLP and each and all of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns and (*iii*) all other entities in which Perella Weinberg Partners LP or Perella Weinberg Partners UK LLP has or had a Controlling Interest or that have or had a Controlling Interest in Perella Weinberg Partners LP or Perella Weinberg

Partners UK LLP; and (*iv*) the current and former partners and principals of each of the forego-

ing.

54.     "Plaintiffs' Counsel" means Federal Counsel and State Counsel.

55.     "Preliminary Approval Date" means the date on which the Court enters

the Preliminary Approval Order.

56.     "Preliminary Approval Order" means the order to be entered by the Court

concerning (among other things) notice and administration of the proposed Settlement and the

Fairness Hearing, as contemplated in Section VI of this Agreement, which order shall be sub-

stantially in the form set out in Exhibit A.

57.     "Professional Advisors" means KPMG LLP, Ernst & Young LLP, Fresh-

fields Bruckhaus Deringer, Gibson Dunn & Crutcher LLP, Slaughter and May, and Morgan,

Lewis & Bockius LLP.

58.     "Qatalyst" means Qatalyst Partners and each of (*i*) its parents, predeces-

sors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures

(regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in which

Qatalyst has or had a Controlling Interest or that have or had a Controlling Interest in Qatalyst

and (*iv*) the current and former partners and principals of each of the foregoing.

59.     "Release" means the releases and waivers set forth in Subsection III.E.1 of

this Agreement.

60.     "Released Securities Holder/Company Claims" means, subject to the pro-

viso set out below in this Subsection I.A.60, each and every Claim that Settling Plaintiffs or any

other Securities Holder asserted or could have asserted on behalf of the Company, or that the

Company asserted or could have asserted directly in its own right, as of, on or before the Final

14

Settlement Date, against any of the Releasees (whether in the Settled Actions (including all Claims alleged or asserted in the Complaints or in any petition or complaint filed in any action consolidated into the Settled Actions as of the Final Settlement Date) or in any other action, proceeding, or demand, including without limitation *Steinberg* v. *Apotheker*, No. 14-cv-02287 (N.D. Cal.)), to the extent that such Claims relate, directly or indirectly, to any Releasee's alleged action or inaction, oral or written statements, misrepresentations, omissions, facts, events, matters, transactions or occurrences respecting (*i*) conduct in connection with the Acquisition, including but not limited to due diligence, the fairness of the Acquisition and its terms, the technological and operational integration of Autonomy into the Company, the Impairment Charge, and all related events, (*ii*) alleged violations of federal or state securities laws; (*iii*) the Company's hiring and compensation of its officer and directors; (*iv*) the Company's share repurchase program, (*v*) the Company's historical strategy for and implementation of acquisitions, (*vi*) allegedly false or misleading proxy statements filed by the Company in 2013, (*vii*) the Company's foreign loan program (*Copeland II* ¶¶ 119-120), (*viii*) the adequacy of and compliance with the Company's internal controls, (*ix*) all statements, disclosures or representations relating to the foregoing matters, (*x*) the Company's policies, practices, procedures or controls relating to the foregoing matters, (*xi*) compliance with laws and rules (including federal and state securities laws) relating to the foregoing matters, (*xii*) any of the facts or circumstances that gave rise to the Settled Actions, (*xiii*) the HP Board's consideration or evaluation of any litigation or other demand concerning any of the foregoing, or (*xiv*) any allegation that the HP Board should commence litigation related to the foregoing, all of which include Claims relating to any of the allegations contained in the Complaints, or that could have been contained in the Complaints, including by way of example and without limitation:

a.      the Company's merger and acquisition policies, practices, and procedures (*e.g.*, *Morrical* ¶¶ 175, 198, 200; *Gould* ¶ 31; *Noel* ¶ 35);

b.      any action or inaction in connection with, arising from, or related to the Acquisition, including but not limited to (*i*) due diligence performed or not performed (*e.g., Morrical* ¶¶ 164-169, 175, 198, 200, *Gould* ¶¶ 30-31, *Noel* ¶¶ 35-38, *Cook* ¶¶ 14-15, 23, 75 112-114), (*ii*) valuation of Autonomy (*e.g., Morrical* ¶¶ 207-209, *Gould* ¶ 3, *Noel* ¶ 5, *Ho* ¶¶ 71-75), (*iii*) evaluation of alleged "red flags" regarding Autonomy (*e.g., Morrical* ¶¶ 102-150, *Gould* ¶¶ 3, 32, *Noel* ¶ 36, *Ho* ¶¶ 4-5, 44-70, *Cook* ¶¶ 22-23, 27, 109-111, 120), (*iv*) consideration and evaluation of the ability to terminate the Acquisition agreement (*e.g.*, *Copeland II* ¶ 103; *Cook* ¶¶ 113-114), and (*v*) statements, representations, disclosures or filings concerning the Acquisition or otherwise related to Autonomy (*e.g., Morrical* ¶¶ 185-206, *Gould* ¶¶ 33-39, *Noel* ¶¶ 36-43, *Ho* ¶¶ 39-40, *Cook* ¶¶ 19-21, 76, 113), including without limitation Claims belonging to the Company or derivative (but not direct) Claims belonging to Securities Holders based on any of the statements alleged to be false or misleading in the Securities Class Action and any of the statements and/or omissions as to which the Court sustained claims in the Securities Class Action (*e.g.*, *Steinberg* ¶¶ 65-73);

c.      Any action or inaction in connection with, arising from, or related to the allegations of the senior Autonomy executive who came forward on or about May 25, 2012, including but not limited to the disclosure, nondisclosure, investigation or review of the May 2012 allegations and assertions (*e.g.*, *Morrical* ¶¶ 235-37, 253, 269, *Ho* ¶¶ 6-7, 41, *Cook*, ¶ 123(c), *Copeland II* ¶ 110, *Steinberg* ¶¶ 65-72, 86);

    d.  any action or inaction in connection with, arising from, or related to the Acquisition and Autonomy, including but not limited to due diligence, technological and operational integration, and the Impairment Charge (*e.g., Morrical* ¶¶ 177-184, 328-332, 349-351, *Gould* ¶¶ 22-23, *Noel* ¶¶ 26-27);

    e.  any action or inaction in connection with, arising from, or related to the post-Acquisition integration of Autonomy into the Company, including but not limited to (*i*) strategic, operational and governance integration (*e.g., Morrical* ¶¶ 210-214), (*ii*) technology and product integration (including IDOL 10 and its alleged existence or nonexistence) (*e.g., Morrical* ¶¶ 220-230), (*iii*) the Company's evaluation of alleged "red flags" respecting the progress of integration (*e.g., Morrical* ¶¶ 217, 277-280), (*iv*) the Company's delegation of authority to Legacy Autonomy Officials to manage the Autonomy business unit after the Acquisition (*e.g., Morrical* ¶¶ 210-214), and (*v*) statements, representations, disclosures or filings concerning Autonomy's products, technology and the integration process or otherwise related to Autonomy (*e.g., Morrical* ¶¶ 220-230, 245-252, *Gould* ¶¶ 36-40, *Noel* ¶¶ 40-44);

    f.  any action or inaction in connection with, arising from, or related to the Impairment Charge, including but not limited to (*i*) all activities before and leading up to the Impairment Charge (*e.g., Morrical* ¶¶ 253-281), (*ii*) the amount, allocation and timing of the Impairment Charge (including whether the write-down should have been taken in an earlier period) (*e.g., Morrical* ¶¶ 289-294, *Cook* ¶¶ 26, 96, 107), and (*iii*) statements, representations, disclosures or filings concerning the Impairment Charge or otherwise related to Autonomy (*e.g., Morrical* ¶¶ 303-305; *Noel* ¶¶ 2-3, 46, *Gould* ¶ 41, *Ho* ¶¶ 2-3, 6, 43, *Cook* ¶¶ 26, 96, 107);

g.      any regulatory filing, public statement, press release, disclosure or representation relating to any of the allegations in the Complaints or that otherwise were or could have been asserted in the Settled Actions (*e.g., Morrical* ¶¶ 400-401, *Gould* ¶ 37, *Noel* ¶ 41, *Cook* ¶¶ 16, 84-85, 88, 93, 96 98-99, *Steinberg* ¶¶ 66-68);

h.      any violations of the Securities Exchange Act (including but not limited to Sections 10(b), 14(a) and 20(a)), the rules of the Securities and Exchange Commission (including but not limited to Rule 10b-5), or any other federal or state securities laws, including but not limited to the Sarbanes-Oxley Act, in connection with, arising from, or related to the Acquisition, the integration of Autonomy into the Company, the Impairment Charge, the Company's repurchases of its own shares, or statements or alleged omissions concerning any other events or matters that were or could have been alleged in the Settled Actions (*e.g., Morrical* ¶¶ 312, 396-409; *Copeland II* ¶¶ 205-217);

i.      any breaches of fiduciary duty (including, but not limited to, the duties of care, loyalty, candor, good faith, disclosure and oversight, or any other duty placed upon corporate directors and/or officers by common law or statute), aiding and abetting any breaches of fiduciary duty, and/or any obligations under federal, state or foreign law with respect to conduct or inaction that relates to, or arises out of, the events or matters that were or could have been alleged in the Settled Actions through and including the Execution Date (*e.g., Morrical* ¶¶ 410-419, *Copeland II* ¶¶ 233-235, *Gould* ¶¶ 53-57, *Noel* ¶¶ 66-71, *Ho* ¶¶ 102-108, *Cook* ¶¶ 128-134, *Steinberg* ¶¶ 83-92);

j.      any abuse of control alleged to have occurred in connection with conduct that relates to, or arises out of, the events or matters that were or could have been

alleged in the Settled Actions through and including the Execution Date (*e.g., Morrical* ¶¶ 420-423);

        k.       any corporate waste alleged to have been committed in connection with conduct that relates to, or arises out of, the events or matters that were or could have been alleged in the Settled Actions through and including the Execution Date (*e.g., Morrical* ¶¶ 424-429, *Gould* ¶¶ 58-62, *Noel* ¶¶ 72-77, *Ho* ¶¶ 109-113, *Cook* ¶¶ 124-127);

        l.       any unjust enrichment of any of the Company's current and former officers, directors, and employees – but not including Legacy Autonomy Officials – that relates to, or arises out of, the events or matters that were or could have been alleged in the Settled Actions through and including the Execution Date (*e.g., Morrical* ¶¶ 430-433, *Noel* ¶¶ 78-83);

        m.       any negligence alleged to have been committed in connection with conduct that relates to, or arises out of, the events or matters that were or could have been alleged in the Settled Actions through and including the Execution Date (*e.g., Morrical* ¶¶ 442-445);

        n.       any action or inaction in connection with, arising from, or relating to the Company's 2008 acquisition of EDS, including but not limited to (*i*) the Company's pursuit of EDS as a potential acquisition target, (*ii*) due diligence performed in connection with the acquisition, (*iii*) the amount paid to acquire EDS, (*iv*) post-acquisition management and integration of EDS, (*v*) the impairment charge taken in 2012 for Enterprises Services, which includes EDS, and (*vi*) statements, representations, disclosures or filings related to the events and matters listed in (*i*) through (*v*), including but not limited to communications with investors concerning the roles played by any of the Company's

current or former officers or directors in connection with such events or matters (*e.g., Morrical* ¶¶ 67, 70, 210, 262, 282, 285);

       o.     the Company's alleged historical (*i*) overpayment for acquisitions and (*ii*) practice of using mergers and acquisitions to solve business problems, including but not limited to the acquisitions of Autonomy and EDS (*e.g.*, *Morrical* ¶¶ 66-74*, Ho* ¶¶ 5, 75, *Cook* ¶¶ 8-11, 67);

       p.     any failures to adopt, implement, oversee, monitor or maintain adequate internal controls, policies, practices or procedures related to the events or matters that were or could have been asserted in the Settled Actions, including any failures to ensure compliance with such controls, through and including the Execution Date, including but not limited to controls, policies, practices or procedures related to (*i*) mergers and acquisitions, (*ii*) hiring of officers and directors, and (*iii*) compensation of officers and directors (*e.g.*, *Copeland II* ¶¶ 144-147);

       q.     the Company's hiring and compensation policies and practices, including but not limited to (*i*) the compensation paid to Mark Hurd, (*ii*) the severance paid to Léo Apotheker, (*iii*) the compensation paid to Shane Robison in 2011, (*iv*) the hiring of Margaret Whitman as HP's CEO and the compensation paid to her, and (*v*) the Company's CEO succession plan or alleged lack of such a plan (*e.g.*, *Copeland II* ¶¶ 42-77, *Morrical* ¶¶ 51, 201, *Cook* ¶¶ 6, 68-70, 80-82);

       r.     any conduct or inaction occurring in connection with the Board's 2011 authorization of $10 billion in share repurchases and the Company's and/or Board's implementation or review of that authorization, including any decisions to continue re-

purchases and any alleged failure to suspend repurchases during the period before the Execution Date (*e.g.*, *Morrical* ¶¶ 282-284, *Ho* ¶¶ 6, 76-80, *Cook* ¶ 72);

       s.      any allegedly false or misleading proxy statements filed by the Company in 2013 (*e.g.*, *Copeland II* ¶¶ 126-150);

       t.      the adequacy of and compliance with the Company's internal controls to the extent they relate to the events or matters that were or could have been asserted in the Settled Actions (*e.g.*, *Copeland II* ¶¶ 144-147; *Morrical* ¶ 312);

       u.      any sales of personally held HP stock by any Releasee, including James Murrin, HP's former Controller and Principal Accounting Officer (*e.g.*, *Bascheri* ¶¶ 20, 106);

       v.      the defense or settlement of the Settled Actions;

       w.      except as provided for in this Agreement, any and all Claims (*i*) for attorneys' fees, expert-witness fees and/or other costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing any Settling Plaintiff in the Settled Actions and (*ii*) by Settling Plaintiffs in connection with or in any way related to the Settled Actions and/or the settlement of the Settled Actions; and

       x.      any failure to (*i*) bring Claims against any individual or entity arising out of relating to any of the events or matters that were or could have been alleged in the Settled Actions (*e.g.*, *Morrical* ¶¶ 27, 352, *Cook* ¶ 47, *Noel* ¶ 4, 61, *Ho* ¶ 101) and (*ii*) to obtain tolling agreements from any individual or entities against whom Claims might be brought respecting any of the events or matters that were or could have been alleged in the Settled Action;

*provided however,* that the term "Released Securities Holder/Company Claims" does not include (*i*) Non-Released Preserved Claims, (*ii*) Non-Released Pending Claims or (*iii*) any Claims that Settling Plaintiffs or any other Securities Holder might have against a Releasee solely to the extent that any such Claims are direct Claims against such Releasee (including claims made in the Securities Class Action and/or the ERISA Class Action) and not Claims made on behalf of the Company.

      61.    "Releasee" means each and every one of, and "Releasees" mean all of, (*i*) the Settling Individual Defendants, (*ii*) the Company, (*iii*) the Settling Professional Advisor Defendants, (*iv*) the Professional Advisors, (*v*) each of the Settling Individual Defendants' agents, principals, representatives, attorneys (including Settling Individual Defendants' Counsel), advisors, administrators, accountants, consultants and assigns, (*vi*) each of the Company's, the Settling Professional Advisor Defendants' and the Professional Advisors' past and present officers, directors, employees, officials, members, partners, principals, agents, representatives, attorneys (including any and all in-house counsel, outside counsel, Committee Counsel, Company Counsel and Settling Professional Advisor Defendants' Counsel), advisors, administrators, auditors (including any and all internal and external auditors), accountants, consultants, service providers, successors-in-interest and insurance carriers of any or all of the foregoing; *provided however*, that "Releasee" shall not include any of the following:  (a) Legacy Autonomy Officials, (b) Autonomy, (c) Autonomy Pre-Acquisition Advisors, or (d) Autonomy Business Partners; *provided further* that, respecting a Releasee who is a person, "Releasee" shall also mean each and all of such Releasee's respective spouses, marital communities, immediate family members, estates, heirs, executors, beneficiaries, trusts, trustees, predecessors, successors, and assigns.

62.  "Releasee Claims" means each and every Claim that has been or could have been asserted by any Releasee against Settling Plaintiffs, any other Securities Holder, the Company or any of their respective attorneys (including, without limitation, Plaintiffs' Counsel and Defendants' Settlement Counsel) and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Settled Actions.

63.  "Releasor" means each and every one of, and "Releasors" means all of, (*i*) the Company, (*ii*) Settling Plaintiffs and all other Securities Holders, (*iii*) Settling Plaintiffs' and all other Securities Holders' parents, predecessors, successors, current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries and assigns, and all other entities in which any of them has or had a Controlling Interest or that have or had a Controlling Interest in any of them, (*iv*) past and present officers, directors, employees, officials, members, partners, principals, agents, representatives, attorneys (including any and all in-house and outside counsel and Plaintiffs' Counsel), advisors, administrators, auditors (including any and all internal and external auditors), accountants, consultants, service providers, successors-in-interest and insurance carriers of any or all of the foregoing and (*v*) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of any other Releasor; *provided* that respecting any Releasor who is a person, "Releasor" shall also mean each and all of such Releasor's respective estates, heirs, executors, beneficiaries, trusts, trustees and assigns; *provided further* that "Releasor" shall not include (a) Legacy Autonomy Officials, (b) Autonomy, (c) Autonomy Pre-Acquisition Advisors, and (d) Autonomy Business Partners.

64.  "Securities Class Action" means the consolidated putative class action captioned *In re HP Securities Litigation*, No. C-12-5980-CRB (N.D. Cal.)

65.     "Securities Holders" means any and all individuals or entities that hold or held, or beneficially own or owned, directly or indirectly, common stock or other equity securities of HP on or before the Approval Date.

66.     "Settlement" means the settlement terms, conditions and other provisions memorialized in this Agreement.

67.     "Settled Actions" means the Federal Action and the State Actions.

68.     "Settling Individual Defendants" means Margaret C. Whitman, Léo Apotheker, Raymond J. Lane, Marc L. Andreessen, Shumeet Banerji, G. Kennedy Thompson, Rajiv L. Gupta, John H. Hammergren, Ann M. Livermore, Gary M. Reiner, Patricia F. Russo, Ralph W. Whitworth, Lawrence T. Babbio, Sari M. Baldauf, Dominique Senequier, and Shane Robison.

69.     "Settling Individual Defendants' Counsel" means the law firms of Skadden, Arps, Slate, Meagher & Flom LLP, Debevoise & Plimpton LLP, Cooley LLP, and O'Melveny & Myers LLP.

70.     "Settling Parties" means HP, the Settling Plaintiffs, the Settling Individual Defendants, and the Settling Professional Advisor Defendants.

71.     "Settling Plaintiffs" means the Federal Plaintiff and the State Plaintiffs.

72.     "Settling Plaintiffs' Counsel" means the law firms of Cotchett, Pitre & McCarthy, LLP and Robbins Geller Rudman & Dowd LLP, and their respective successor(s).

73.     "Settling Professional Advisor Defendants" means Barclays Capital and Perella Weinberg Partners.

74.     "Settling Professional Advisor Defendants' Counsel" means the law firms of Sullivan & Cromwell LLP and Shearman & Sterling LLP.

75.     "Slaughter and May" means Slaughter and May and each of (*i*) its parents, predecessors, and successors, (*ii*) its current and former affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries, and assigns, (*iii*) all other entities in which Slaughter and May has or had a Controlling Interest or that have or had a Controlling Interest in Slaughter and May and (*iv*) the current and former partners and principals of each of the foregoing.

76.     "State Actions" means *Gould v. Whitman, et al.*, Case No. 1:13-cv-251346 (Cal. Super. Ct., Santa Clara Cty.), and *Noel v. Whitman, et al.*, Case No. 1:13-cv-251346 (Cal. Super. Ct., Santa Clara Cty.), and all other lawsuits that have been consolidated into either of the State Actions or that may be consolidated into either of them as of the Final Settlement Date.

77.     "State Complaints" means the derivative complaint filed by State Plaintiff Gould on or about July 26, 2013 and the derivative complaint filed by State Plaintiff Noel on or about August 16, 2013.

78.     "State Counsel" means the law firms of Robbins Geller Rudman & Dowd LLP., and any other counsel that have appeared of record or rendered legal services to any plaintiffs in connection with the State Actions.

79.     "State Plaintiffs" means James R. Gould and Leroy Noel.

80.     "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Agreement under Section IX of this Agreement.

81.     "Unknown Claim" means any and all (*i*) Released Securities Holder/Company Claims that any Releasor does not know or suspect exist with respect to one or more Releasees at the time of the release of the Releasees and (*ii*) Releasee Claims that any Releasee

does not know or suspect exist with respect to one or more Releasors at the time of the release of the Releasors, which, if known by such Releasee or Releasor (as the case may be), might have affected his, her or its decision(s) concerning this Agreement.  As to all Claims released in this Agreement, each of Settling Plaintiffs, the Company, Settling Individual Defendants, Settling Professional Advisor Defendants, Plaintiffs' Counsel, and Defendants' Settlement Counsel expressly waives, and each other Securities Holder, Releasee and Releasor shall be deemed to have waived, and by operation of the Approval Order and the Judgment shall have expressly waived, any and all provisions, right and benefits conferred by any national, state, territorial, or other local law of the United States or of any other country, or any principle of federal or common law, that is similar, comparable, or equivalent to California Civil Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settling Plaintiffs, the Company, Settling Individual Defendants, Settling Professional Advisor Defendants, Plaintiffs' Counsel, and Defendants' Settlement Counsel acknowledge (or, by operation of law, shall be deemed to have acknowledged) that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to fully, finally, and forever settle and release any and all claims released hereby known or unknown, suspected or unsuspected, that now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.  Settling Plaintiffs, the Company, Settling Individual Defendants, Settling Professional Advisor Defendants, Plaintiffs' Counsel, and Defendants' Settlement Counsel acknowledge, and all other Securities Holders, Releasees and Releasors by opera-

tion of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the Claims released pursuant to the Agreement was separately bargained for and is a key element of this Agreement.

B.   Capitalized terms used in this Agreement but not defined above shall have the meanings ascribed to them in this Agreement.

## II.   BACKGROUND

### A.   **The Federal Action**

1.   Between November 2012 and December 2012, seven shareholder derivative actions were filed in the United States District Court for the Northern District of California in connection with the Acquisition and related events:  (*i*) *Riccardi v. Lynch, et al.*, 12-cv-06003, filed November 27, 2012; (*ii*) *Espinoza v. Lynch, et al.*, 12-cv-06025, filed November 27, 2012; (*iii*) *Bascheri v. Apotheker, et al.*, 12-cv-06091, filed November 30, 2012; (*iv*) *Bertisch v. Apotheker, et al.*, 12-cv-06123, filed December 3, 2012; (*v*) *City of Birmingham Retirement and Relief System v. Apotheker, et al.*, 12-cv-06146, filed December 18, 2012; (*vi*) *Tola v. Lynch, et al.*, 12-cv-06423, filed December 18, 2012; and (*vii*) *Morrical v. Whitman, et al.*, 12-cv-06434, filed December 19, 2012.  On February 7, 2013, another federal derivative action was filed in the United States District Court for the Northern District of California, styled *Weissmann v. Apotheker, et al.*, 3:13-cv-0557.  All eight of these federal shareholder derivative cases were assigned or transferred to the Honorable Charles R. Breyer.

2.   On February 21, 2013, all of the then-pending federal shareholder derivative actions were consolidated in the Federal Action, styled *In re Hewlett-Packard Company Shareholder Derivative Litigation*, 3:12-cv-06003-CRB.  The Court appointed Stanley Morrical as lead plaintiff and the law firm of Cotchett, Pitre & McCarthy, LLP as lead counsel shortly thereafter.

3.      On May 2, 2013, Federal Plaintiff filed a consolidated shareholder deriva-
tive complaint in the Federal Action.  The Federal Complaint, which asserts that a pre-suit de-
mand on HP's Board would have been futile, alleges misconduct by the Settling Individual De-
fendants and Settling Professional Advisor Defendants in connection with the Acquisition and
related events.  More particularly, the Federal Plaintiff alleges, among other things, that the Set-
tling Individual Defendants breached their fiduciary duties, committed corporate waste, and vio-
lated the Securities Exchange Act by, among other things, ignoring "red flags" concerning Au-
tonomy's accounting practices, failing to properly evaluate Autonomy's technology, improperly
promoting software that allegedly did not exist post-Acquisition, causing HP to enter into a
share-buyback program and repurchase its shares at allegedly artificially inflated prices prior to
the announcement of the Impairment Charge, and failing to disclose certain information regard-
ing the Acquisition and its aftermath leading up to the announcement of the Impairment Charge.
The Federal Complaint also alleges that the Settling Professional Advisor Defendants aided and
abetted the Settling Individual Defendants' alleged breach of fiduciary duty, and acted negligent-
ly in providing fairness opinions to the Board.  The Federal Plaintiff alleges that these failures
caused the Company to sustain damages in the form of the Impairment Charge, costs and ex-
penses incurred in connection with the Company's internal investigation into Autonomy's ac-
counting improprieties, potential securities litigation, and its loss of reputation and goodwill.

B.      **The State Actions**

1.      In July 2013, HP shareholder James R. Gould, Jr. filed a shareholder de-
rivative action in state court in Santa Clara County, California, styled *Gould v. Whitman, et al.*,
Case No. 1:13-cv-250220 (Cal. Super. Ct., Santa Clara Cty.).  In August 2013, HP shareholder
Leroy Noel filed another shareholder derivative action in state court in Santa Clara County, Cali-

fornia, styled *Noel v. Whitman, et al.*, Case No. 1:13-cv-251346 (Cal. Super Ct., Santa Clara Cty.).  In September 2013, the state court consolidated the *Noel* matter with the *Gould* litigation. The State Complaints, which also assert that a pre-suit demand on HP's Board would have been futile, make claims on behalf of HP against present and former HP directors and officers in connection with the Acquisition and related events.  Mr. Noel's complaint also alleges violations of certain California statutes by Legacy Autonomy Official Michael Lynch in connection with pre-Acquisition conduct arising out of his sale of Autonomy securities to the Company.  The State Actions were stayed pending resolution of the Federal Action.

        C.     **Related Actions**

        1.     In addition to the Actions, several additional lawsuits related to the Acquisition have been filed:  (*i*) a shareholder derivative lawsuit in the Superior Court of California, County of San Mateo filed in January 2013 (currently stayed pending resolution of the Federal Action), (*ii*) a shareholder derivative lawsuit in Delaware Court of Chancery filed in March 2014 (which HP has sought to stay or dismiss pending disposition of the Federal Action), (*iii*) a shareholder derivative lawsuit in the United States District Court for the District of Northern California filed in May 2014 (as to which the plaintiff has sought relief from the consolidation order entered in the Federal Action), (*iv*) the Securities Class Action in the Court (in which the Court granted in part and denied in part defendants' motions to dismiss in November 2013), and (*v*) the ERISA Class Action, also in the Court (which was dismissed in April 2014 with leave to amend).

        2.     An additional shareholder derivative action was filed in the Court on February 10, 2014, *Copeland v. Apotheker*, No. 3:14-00-00622 (EJD) (N.D. Cal.) ("*Copeland II*"). While this action addresses certain issues arising out of the Acquisition, it also addresses issues related to an earlier filed suit, *Copeland v. Lane*, No. 11-CV-1058 (EJD) (N.D. Cal.), *appeal pending* No. 13-16251 (9th Cir.) ("*Copeland I*").  On February 13, 2014, nominal defendant HP

29

filed a motion to relate *Copeland II* to the *Copeland I* litigation. The plaintiff in *Copeland II* filed a competing motion to relate the matter to the Federal Action. The Court denied the plaintiff's motion on February 24, 2014, and the District Judge who had adjudicated *Copeland I* granted HP's motion to relate *Copeland II* to the earlier litigation.

            3.      The Board has also received several shareholder demand letters concerning the Acquisition and other matters, which were submitted on behalf of (*i*) Frederick Stern, on November 29, 2012, (*ii*) Sarah K. Steiner, on November 29, 2012, (*iii*) Harriet Steinberg and Edward and Linda Vogel, on December 4, 2012, and (*iv*) Andrew and Martha Copeland, on July 12, 2013. Shareholders Andrew and Martha Copeland filed the *Copeland II* action (described above), as a demand-refused action. Harriet Steinberg and Edward Vogel filed the derivative action described above in Subsection II.C.1.*iii*, as a demand-refused action.

D.     **The Board's Resolution**

1.     In January 2013, the Board created the Independent Committee and authorized it to "(*i*) investigate, review and evaluate the facts and circumstances alleged in the Demands and Derivative Suits; (*ii*) make a recommendation to the Board of Directors whether HP should commence litigation concerning any of the claims asserted in the Demands or Derivative Suits and authorize the commencement of and direct the prosecution or settlement of any litigation that the Board of Directors may authorize in response to the Demands or Derivative Suits; and (*iii*) evaluate and make a recommendation to the Board of Directors whether some or all of the claims asserted in the Demands or Derivative Suits should otherwise be pursued by HP and, in connection therewith, adopt any new or modified corporate policies or procedures or other internal corrective measures as the Committee deems appropriate."

2.     After conducting a thorough review, the Independent Committee presented its findings and recommendations to the Board in January 2014.  Directors Raymond Lane, Ann Livermore, and Margaret Whitman voluntarily recused themselves from participating in the Board's vote on the Independent Committee's findings and recommendations solely to remove any argument that they were not sufficiently disinterested and independent to vote respecting such findings and recommendations.  In addition, director Robert Bennett voluntarily recused himself from participating in the Board's vote on the Independent Committee's findings and recommendations concerning Perella Weinberg Partners (and had previously voluntarily recused himself from the Independent Committee's consideration of pending and potential claims against Perella Weinberg Partners).

3.     Based on its consideration of the Independent Committee's findings and recommendations, the Board (other than Mr. Lane, Ms. Livermore and Ms. Whitman) resolved,

among other things, that (*i*) the Independent Committee's review was reasonable and undertaken in good faith and was sufficiently thorough and objective, (*ii*) other than those directors who had voluntarily recused themselves, as described in the preceding paragraph (respecting whom the Board made no findings as to this issue), each of the then-current directors was sufficiently independent and disinterested to respond to the Federal Complaint, the State Complaints and related shareholder derivative actions and demand letters, (*iii*) each of the Settling Individual Defendants had at all times adequately fulfilled his or her duties of care, loyalty, good faith, disclosure and oversight, had not violated the federal securities laws or other laws, and had otherwise acted in the best interests of the Company and its shareholders, (*iv*) there is no merit to the claims asserted against the Settling Individual Defendants, any other current or former HP officers and directors (other than Michael Lynch), Settling Professional Advisor Defendants, and Professional Advisors in the Complaint and related shareholder derivative actions and demand letters, (*v*) no Settling Individual Defendant, current or former HP officer or director (excluding Michael Lynch), Settling Professional Advisor Defendant, or Professional Advisor would likely be subject to liability as to such matters, (*vi*) the pursuit of any such claims by Securities Holders or the Company itself would not be in the best interests of the Company or its shareholders, and (*vii*) the pursuit of claims against Michael Lynch, Sushovan Hussain, and Deloitte UK is in the best interests of the Company.

4.     The Board instructed Committee Counsel and Company Counsel to explore whether resolution of the claims made in the various pending complaints (including in the Complaints) and in shareholder demands was feasible consistent with the Board's resolution.

5.     The Board also instructed the Company's management to consider a collection of Governance Revisions that had been informed by the allegations in the Federal Action and proposals from State Plaintiffs.

E.     **Settlement Discussions and Mediation**

1.     In April 2013, while the Independent Committee was conducting its review, Proskauer Rose LLP met with Federal Counsel to provide information and supporting materials regarding the Independent Committee's mandate.  Proskauer Rose met with Federal Counsel a second time in November 2013 to provide an update regarding the status of the Independent Committee's review, including the Independent Committee's professional advisors' preliminary findings regarding the types of problematic transactions entered into between Autonomy and certain Autonomy Business Partners prior to the Acquisition.

2.     Proskauer Rose also met with State Counsel while the Independent Committee was conducting its review.  At a December 2013 meeting, Proskauer Rose provided State Counsel with an update regarding the status of the Independent Committee's review and State Counsel provided Proskauer Rose with the State Plaintiffs' governance proposals and their views on the allegations in the State Actions.

3.     Committee Counsel and Company Counsel also held detailed, full-day, face-to-face meetings on February 18-20, 2014 with Federal Counsel and on February 21, 2014 with State Counsel.  During those meetings, Committee Counsel briefed Federal Counsel and State Counsel on the Independent Committee's findings and recommendations, the Board's decisions, and the Governance Revisions.

4.     On February 24 and 25, 2014, Company Counsel, Federal Counsel and State Counsel participated in face-to-face mediation sessions with the Mediator.  Company

Counsel, Federal Counsel and State Counsel participated in additional face-to-face mediation

sessions with the Mediator on March 11–13, 2014.  At the end of the March 13, 2014 session, an

agreement in principle was reached regarding the substantive issues in the Actions subject to,

among other things, (*i*) the execution of a full settlement agreement, (*ii*) approval by the Federal

Plaintiff, the State Plaintiffs, the Board, the Settling Individual Defendants and the Settling Pro-

fessional Advisor Defendants, and (*iii*) Court approval of the Settlement.  No attorneys' fee

amounts were discussed before reaching the agreement in principle.

> 5.     Subsequent face-to-face mediation sessions were held on April 1 and 2,

2014 to discuss Federal Counsel's and State Counsel's fees, as well as certain of the key provi-

sions to be included in this Agreement.  Those sessions did not result in an agreement regarding

fees.

> 6.     The Mediator continued to work with Federal Counsel and State Counsel

(on the one hand) and Company Counsel (on the other hand) regarding the fee issues and an

agreement in principle on this issue was reached on May 7, 2014.

> 7.     In advance of, in connection with, and following the mediation sessions,

the Settling Plaintiffs' Counsel have been given access to information that allowed them to as-

sess and confirm (*i*) the independence and disinterestedness of the Board members who deter-

mined how to proceed with respect to the Actions, (*ii*) the reasonableness of the procedures fol-

lowed by the Independent Committee in conducting its review, and of the Board's decisions con-

cerning how to proceed with the Actions, and (*iii*) the fairness, reasonableness, and adequacy of

the proposed Settlement to HP and its shareholders.  Throughout the pendency of the Actions,

various consultants and experts, including those with expertise in directors' and officers' fiduci-

ary duties, and counsel competent in litigation involving these issues have advised the Settling Plaintiffs' Counsel.

        8.     On June 30, 2014, the undersigned executed a stipulation of settlement pursuant to which, among other things, Settling Plaintiffs (through Settling Plaintiffs' Counsel) would assist HP in certain lawsuits, arbitrations or mediations initiated by HP against Legacy Autonomy Officials Michael Lynch and Sushovan Hussain and/or (potentially) other non-released persons or entities.  Such assistance by Settling Plaintiffs (through Settling Plaintiffs' Counsel) was not a condition of the settlement.

        9.     On August 25, 2014, the Court held a hearing on the proposed settlement and stated that it would not approve, as part of the settlement, the arrangement pursuant to which Settling Plaintiffs' Counsel proposed to render assistance to HP following the settlement.

        10.    Following the hearing held on August 25, 2014, Federal Counsel and State Counsel (on the one hand) and Company Counsel (on the other hand) agreed to mediate Settling Plaintiffs' claim for attorneys' fees in connection with the Governance Revisions.  As a result of the mediation, Federal Counsel and State Counsel (on the one hand) and Company Counsel (on the other hand) agreed to submit the dispute to the Mediator for binding arbitration, subject to review and approval of the Court.

       F.     **Settlement Considerations**

        1.     Based upon (*i*) investigation into and evaluation of the facts and laws relating to the Claims alleged in the Actions, including investigation of the facts and laws before initiating the State Actions, (*ii*) information presented to Settling Plaintiffs and Settling Plaintiffs' Counsel by Committee Counsel and Company Counsel prior to the Execution Date, including information regarding the Independent Committee's findings and recommendations and the

Board's decisions, (*iii*) the Company's adoption since the Acquisition of certain enhancements to its mergers and acquisitions policies and procedures and its consideration, as part of this Settlement, of additional revisions that will further enhance such policies and procedures, (*iv*) investigations and legal analysis conducted during the pendency of the Actions, and (*v*) Settling Plaintiffs' and Settling Plaintiffs' Counsel's determination that the terms of the proposed Settlement as set out in this Agreement are fair, reasonable and adequate and in the best interests of the Company and its shareholders, Settling Plaintiffs (*i*) have agreed that pursuing the Released Securities Holder/Company Claims against the Releasees is not in the best interests of the Company; (*ii*) have agreed to settle the Actions and to release the Releasees from Released Securities Holder/Company Claims pursuant to the terms of this Agreement, and (*iii*) have agreed that pursuing claims against Michael R. Lynch, Sushovan Hussain, and, perhaps, other non-released persons or entities is in the best interests of the Company.

2.     Based upon the Board's determinations regarding the allegations in the Complaints and the related shareholder derivative actions and demand letters, which determinations in turn are based upon the findings and recommendations of the Independent Committee, HP expressly denies that the Claims that were or could have been asserted in the Actions, insofar as they relate to (*i*) the Company, (*ii*) the Settling Individual Defendants, (*iii*) any other current or former HP officers or directors (other than Michael Lynch), (*iv*) the Settling Professional Advisor Defendants or (*v*) the Professional Advisors have any merit or that pursuit of any such Claims would be in the best interests of the Company or its shareholders.  HP nevertheless considers the terms of this Settlement as set out in this Agreement to be in the best interests of the Company and its shareholders because the Settlement would, among other things, confer substantial mate-

rial benefits on the Company through further enhancement of the Company's merger and acqui-

sition policies and procedures as set out in the Governance Revisions.

        3.      The Settling Individual Defendants and the Settling Professional Advisor

Defendants expressly deny all assertions of wrongdoing or liability arising out of any of the con-

duct, statements, acts or omissions that were or could have been alleged in the Actions or any

related actions and/or shareholder demand letters concerning the Acquisition and other matters.

        4.      The HP board has resolved that the pursuit of claims against Michael

Lynch, Sushovan Hussain, and Deloitte UK is in the best interests of the Company.

## III.    TERMS AND CONDITIONS OF THE SETTLEMENT

        A.    **Settlement Relief**

        1.      HP shall implement the Governance Revisions, respecting which HP

acknowledges that the Settling Plaintiffs and Settling Plaintiffs' Counsel contributed to the for-

mulation of, and constructively informed the Independent Committee's and the Board's recom-

mendations regarding, such Revisions.

        2.      Settling Plaintiffs (through Settling Plaintiffs' Counsel) shall assist HP in

dismissing the Federal Actions and *Gould v. Whitman, et al.*, Case No. 1:13-cv-250220 (Cal. Su-

per. Ct., Santa Clara Cty.), with prejudice as to the named defendants and other specified Re-

leasees.

        3.      Settling Plaintiffs (through Settling Plaintiff's Counsel) shall also assist

HP in obtaining a dismissal and/or realignment of the parties in *Noel v. Whitman, et al.*, Case No.

1:13-cv-251346 (Cal. Super Ct., Santa Clara Cty.).

B.     **Notice to Securities Holders and Other Communications with Securities Holders**

      1.    **Notice**

      a.    Subject to the requirements of the Preliminary Approval Order and Section IX, no later than ten (10) Business Days after the Preliminary Approval Date, (*i*) the Settling Parties shall cause the Notice to be published on two occasions in *The Wall Street Journal*, *The New York Times*, *The San Francisco Chronicle* and *Investor's Business Daily*, and (*ii*) HP shall cause the Notice to be filed with the United States Securities and Exchange and Commission as an attachment to a Form 8-K and shall cause the Notice and the Agreement to be published on the Investor Relations page of its website.

      b.    A copy of the Notice, substantially in the form set out in Exhibit B, shall be submitted to the Court for approval at the time the Settling Parties submit this Agreement to the Court.

      2.    **Direct Communications with Securities Holders**

      a.    The Company expressly reserves the right to communicate with and respond to inquiries by Securities Holders with respect to matters unrelated to this Agreement.

      b.    The Company may undertake such efforts to communicate with Securities Holders regarding the Settlement as it deems necessary or appropriate, including telephone communications, and to engage in any other communications with Securities Holders within the normal course of the Company's business.

3.      **Other Communications**

a.      The announcement of the Settlement will be made in a joint press release to be mutually agreed by the Settling Parties, *provided* that HP shall have the right to determine the timing of such release.

b.      The Settling Parties, Settling Plaintiffs' Counsel and Defendants' Settlement Counsel agree that (*i*) they will not make any comments to the media respecting Settling Plaintiffs, the Company, the Settling Individual Defendants, the Settling Professional Advisor Defendants or the Settlement that are inconsistent with the terms or purposes of this Agreement, and (*ii*) that any comments to the media related to the proposed Settlement will be fair, balanced and accurate.

c.      The Settling Parties, Settling Plaintiffs' Counsel and Defendants' Settlement Counsel agree that, in making any statement as allowed by this Agreement, they will not disparage each other or HP's past or existing corporate governance or operations and (other than to identify an action bearing the person's name) they shall not refer to any of Settling Plaintiffs or the Individual Defendants by name.

d.      Notwithstanding this Subsection III.B.3, nothing shall prevent the Company (or any Settling Individual Defendants in their capacity as current officers or directors of the Company) from making any and all disclosures regarding the proposed Settlement the Company believes may be required or appropriate, including disclosures to government agencies, regulators, stock exchanges, analysts, attorneys, accountants and insurance carriers, without notification to or prior review by the other Settling Parties, Settling Plaintiffs' Counsel, or Defendants' Settlement Counsel; *provided however,* that any such disclosures regarding the Settlement will be balanced, fair, and accurate.

C.      **Notice and Administrative Expenses**

    1.  HP shall be responsible for the payment of all Notice and Administrative Expenses.

D.      **Dispute Resolution**

    1.  If the Settling Parties have a dispute concerning the Notice to be provided to Securities Holders or the administration or implementation of this Agreement, such dispute shall be submitted to the Mediator for binding, nonreviewable resolution.

    2.  If a dispute is submitted to the Mediator pursuant to this Subsection III.D, the Company shall pay or cause to be paid any fees charged or expenses incurred by the Mediator in connection with such dispute resolution.

E.      **Releases and Waivers, Order Approving Settlement and Judgment**

    1.  **Releases and Waivers**

      a.  Pursuant to the terms of this Agreement, the Approval Order and the Judgment, without further action by anyone, and subject to Subsections III.E.1.e and III.E.1.f, on and after the Final Settlement Date, Settling Plaintiffs, all other Securities Holders, Plaintiffs' Counsel and the Company, on behalf of themselves and all other Releasors for good and sufficient consideration, the relief and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have fully, finally, and forever released, relinquished, settled and discharged:

        (1)  all Released Securities Holder/Company Claims against each and every one of the Releasees; and

        (2)  except to the extent otherwise specified by this Agreement, all Claims that have been, could have been or could be asserted by any Releasor against

any Releasee for attorneys' fees, costs or disbursements incurred by Plaintiffs' Counsel or any

other counsel representing any Settling Plaintiff or any other Securities Holder in connection

with or related in any manner to the Settled Actions, the settlement of the Settled Actions or the

administration of the Settled Actions and/or the Settlement.

        b.      Pursuant to the terms of this Agreement, the Approval Order and

the Judgment, without further action by anyone, and subject to Subsections III.E.1.e and III.E.1.f,

on and after the Final Settlement Date, Releasees, for good and sufficient consideration, the re-

ceipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by opera-

tion of law and of the Approval Order and the Judgment shall have fully, finally, and forever re-

leased, relinquished, settled and discharged all Releasors from any and all Releasee Claims.

        c.      Except to the extent otherwise specified in this Agreement, pursu-

ant to the Approval Order and the Judgment, without further action by anyone, and subject to

Sections III.E.1.e and III.E.1.f, on and after the Final Settlement Date, the Settling Parties (in-

cluding each of their Counsel and all related parties), on behalf of themselves, their predecessors,

successors, Affiliates, assigns, and any person or entity claiming by or through any of them, for

good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged,

shall be deemed to have, and by operation of law, the terms of this Agreement, the Approval Or-

der and the Judgment shall have fully, finally, and forever released, relinquished, settled and dis-

charged each other from any and all Claims that arise out of or relate in any way to the initiation,

prosecution or settlement of the Settled Actions.

        d.      Pursuant to the terms of this Agreement, the Approval Order and

the Judgment, without further action by anyone, and subject to Subsections III.E.1.e and III.E.1.f,

on and after the Final Settlement Date, Settling Plaintiffs and all other Securities Holders, on be-

half of themselves and all other Releasors for good and sufficient consideration, the relief and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever waived, relinquished, and abandoned any right to bring (and shall lack standing to assert), in a derivative capacity, any Non-Released Preserved Claims to the extent such Claims relate to the facts or circumstances that gave rise to the Settled Actions, including by way of example and without limitation items (a) through (x) listed in Subsection I.A.60; *provided* that nothing in this Subsection III.E.1.d shall bar the assertion by the Company or Autonomy of any Claim, including the Non-Released Preserved Claims; *provided further* that nothing in this Subsection III.E.1.d shall preclude Settling Plaintiffs or any other Securities Holder from asserting Claims that are solely direct Claims made in their capacity as Securities Holders (including Claims that have been or could have been brought in the Securities Class Action and/or the ERISA Class Action).

e.      Notwithstanding any other provision of this Subsection III.E.1, nothing in this Agreement, the Approval Order or the Judgment shall bar or enjoin any Claim:

(1)      by any of the Settling Parties, Settling Plaintiffs' Counsel, or Defendants' Settlement Counsel to enforce the terms of this Agreement, the Approval Order or the Judgment;

(2)      by the Company to seek reimbursement for advanced attorneys' fees or expenses from any Releasee who has been determined, or may be determined, to be unindemnifiable with respect to any Released Securities Holder/Company Claims; *provided* that this Subsection III.E.1.e.(2) shall not apply to any Releasee whom the Board (based on the review conducted by the Independent Committee) has found adequately fulfilled his or her

fiduciary duties and otherwise acted in the best interests of the Company and its shareholders with respect to Released Securities Holder/Company Claims;

(3) by Defendants or Defendants' Settlement Counsel seeking reimbursement for fees and expenses incurred in representing any of the Company, Settling Individual Defendants, Settling Professional Advisors or any other Releasee;

(4) belonging to the Company or any insured Releasee against any of the Company's insurers arising out of or relating to any potentially applicable insurance contracts or other agreements; *provided* that any such Claim must be asserted directly by the Company or the insured Releasee in its, his or her own right;

(5) by any Releasee who is or was employed or associated with the Company, with respect to the rights of any such individual or entity under or to (*i*) pension plans, 401(k) plans, separation agreements, employment agreements, stock options, salary benefits or any other benefit plan, including health plans, in which such Releasee participates as a result of his or her current or former employment or association with the Company or (*ii*) indemnification, advancement or insurance coverage with respect to any claim made as to a Releasee that arises (*x*) by reason of the fact that he or she is or was a director, officer or employee of the Company or (*y*) under a written agreement between the Releasee and the Company or its Affiliates providing for indemnification, advancement, or insurance coverage.

f. Notwithstanding any other provision of this Subsection III.E.1 or of the Agreement, nothing in the Preliminary Approval Order, the Approval Order or the Judgment shall bar (*i*) any Releasee or the Company from asserting any defense or any claim against (*w*) Autonomy, (*x*) any Legacy Autonomy Officials, (*y*) Autonomy Pre-Acquisition Advisors, and (*z*) any Autonomy Business Partners in any pending or future judicial, administrative, regu-

latory, arbitration or other proceeding, (*ii*) assertion of any Non-Released Preserved Claims by the Company or Autonomy (but not by Securities Holders, who shall not have the right to bring Non-Released Preserved Claims under Subsection III.E.1) or (*iii*) assertion of any Non-Released Pending Claims.

    g.  The releases and waivers in this Subsection III.E.1 were separately bargained for and are essential elements of this Agreement.

    2.  **Order Approving Settlement and Judgment**

    a.  The Settling Parties shall obtain from the Court the Approval Order and the Judgment as further described in Section VII below.

  F.  **FRCP 11; Cal. CCP § 128.7**

    1.  The Settling Parties agree that, during the course of the Federal Action and the State Actions, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure as well as Section 128.7 of the California Code of Civil Procedure.

## IV. ATTORNEYS' FEES AND EXPENSES; SERVICE AWARD

  A.  Consistent with the substantial benefits conferred upon and expected to be conferred upon HP and its shareholders in connection with the Governance Revisions, HP has agreed to pay attorneys' fees and expenses to Settling Plaintiffs' Counsel in an amount to be determined in binding arbitration by the Mediator, subject to review and approval by the Court.

  B.  HP's payments to Settling Plaintiffs' Counsel for fees and expenses incurred in connection with the Actions shall be subject to the following conditions:

    1.  Payments made to Cotchett, Pitre & McCarthy, LLP, counsel to Federal Plaintiff in the Federal Action and to Robbins Geller, counsel to State Plaintiffs in the State Actions, shall be the sole aggregate compensation for Federal Counsel and State Counsel in connec-

tion with the Federal Action and the State Actions, respectively.

2.      HP shall pay or cause to be paid the amount ordered by the Court within ten (10) Business Days following entry of the Approval Order.  If, after payment of any portion of compensation pursuant to the terms of this Agreement, this Agreement is properly and timely terminated in accordance with its terms, Settling Plaintiffs' Counsel shall, within ten (10) Business Days following such termination, return to HP any amounts paid in accordance with this Agreement.

3.      Settling Plaintiffs' Counsel agree that their respective partners, shareholders, or members are subject to the jurisdiction of the Court for purposes of enforcing this Section IV.

C.      Subject to Court approval, in consideration for his time and effort in bringing and prosecuting the Federal Action, HP agrees to pay Federal Plaintiff a Service Award of $25,000, or such other lower amount as the Court may order.  A court decision awarding Federal Plaintiff an amount less than $25,000, or a decision denying Federal Plaintiff's application for a Service Award altogether, shall not be a basis to terminate this Agreement or the Settlement.  HP shall pay or cause to be paid the amount ordered by the Court (up to $25,000) within ten (10) Business Days following entry of the Approval Order.  If, after payment of any portion of such award, this Agreement is properly and timely terminated in accordance with its terms, Federal Plaintiff shall, within ten (10) Business Days following such termination, return any such amounts to HP.

D.      Neither any Releasee nor the Company shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Settling Plaintiffs and Plaintiffs' Counsel), directly or indirectly, in connection with the Actions or this Agreement except as expressly provided for in this

Agreement.  Settling Plaintiffs shall not be liable for or obligated to pay any fees, expenses, costs

or disbursement to, or incur any expenses on behalf of, any person or entity (including, without

limitation, any Settling Individual Defendant, any Settling Professional Advisor Defendant, the

Company or Defendants' Settlement Counsel), directly or indirectly, in connection with the Ac-

tions or this Agreement except as expressly provided for in this Agreement.

## V.   OBJECTIONS BY SECURITIES HOLDERS; SECURITIES HOLDER REVIEW OF GOVERNANCE REVISIONS

A.     Any Securities Holder who wishes to object to the fairness, reasonableness or ad-

equacy of this Agreement or to any term(s) of this Agreement, or to review the Governance Re-

visions in order to decide whether to lodge an objection, may do so subject to the requirements

set out in the Preliminary Approval Order.

## VI.   PRELIMINARY APPROVAL HEARING AND PRELIMINARY APPROVAL ORDER

A.     Federal Plaintiff has moved for the entry of an order preliminarily approving the

stipulation of settlement executed on June 30, 2014.  The Settling Parties shall jointly request

that the Court enter a Preliminary Approval Order, substantially in the form set out in Exhibit A,

approving this Agreement.

B.     The Settling Parties shall request that the Court, in its discretion, either (*i*) hold a

Preliminary Approval Hearing to allow the Settling Parties to describe the proposed Settlement,

the notice to be provided pursuant to its terms and the scheduling of a Fairness Hearing or

(*ii*) address the Settling Parties' application for entry of a Preliminary Approval Order based on

the Settling Parties' application without a hearing.

## VII.   FAIRNESS HEARING, ORDER APPROVING SETTLEMENT, JUDGMENT AND DISMISSAL

A.      The Settling Parties shall request that the Court schedule a Fairness Hearing at which to consider whether to approve this Agreement as fair, reasonable and adequate and in the best interest of the Company and its shareholders.

B.      If the Court approves the Agreement, the Settling Parties shall jointly ask the Court to enter an Approval Order and a Judgment substantially in the forms attached as Exhibits C and D, respectively.  The Approval Order and the Judgment shall include, among other provisions, a permanent injunction barring Securities Holders, and anyone purporting to represent or to pursue claims on behalf of Securities Holders, from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Federal Action or the Released Securities Holder/Company Claims; *provided however*, that nothing in the Approval Order or the Judgment shall enjoin the pursuit of Non-Released Pending Claims; *provided further* that nothing in the Approval Order or the Judgment shall enjoin the pursuit of any Non-Released Preserved Claims by the Company or Autonomy (but not by Securities Holders, who shall not have the right to bring Non-Released Preserved Claims under Subsection III.E.1).

C.      If any term of the Complete Bar Order entered by the Court in the Approval Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford each of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Securities Holder/Company Claim.

D.      The Judgment will contain a statement that, during the course of the Federal Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## VIII. NO ADMISSIONS

A.     This Agreement, the offer of this Agreement, and implementation of and compliance with this Agreement shall not constitute or be construed as an admission by any or all of the Releasees of any wrongdoing or liability.  This Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaints and of the Released Securities Holder/Company Claims and Releasee Claims.  In particular, nothing in this Agreement, the offer of this Agreement or the implementation of and compliance with this Agreement shall constitute or be construed as an admission by HP or any of the Releasees that HP's merger and acquisition policies and practices as they existed before the Acquisition were in any way deficient, that HP or its professional advisors engaged in inadequate due diligence in connection with the Acquisition, or that HP or any of the Releasees made any misrepresentations or omissions of material facts relating to the Acquisition, Autonomy, or the impairment.

B.     The Settling Parties agree that no party was or is a "prevailing party."  In no event shall this Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Actions, any other action, or any other judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Agreement.

C.     Without limiting any of the foregoing provisions in this Section VIII, neither this Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Company, the Settling Individual Defendants, or the Settling Professional Advisor Defendants, or as a waiver by the Company, the Settling Individual Defendants, or the Settling Professional Advisor Defendants of any applicable defense.

48

**IX.    MODIFICATION OR TERMINATION OF THIS AGREEMENT**

A.      The terms and provisions of this Agreement may be amended, modified or ex-
panded by written agreement of the Settling Parties; *provided however*, that after entry of the
Approval Order and the Judgment, the Settling Parties may by agreement effect such amend-
ments, modifications or expansions of this Agreement and its implementing documents without
notice to or approval by the Court as long as such amendments, modifications or expansions are
not materially inconsistent with the Approval Order and Judgment and do not limit the rights of
Settling Plaintiff, any other Securities Holder, the Company, Releasors or Releasees under this
Agreement.

B.      Subject to Subsections IX.D, IX.E and IX.F, this Agreement shall terminate:

1.      if the Final Settlement Date does not occur; or

2.      subject to Subsection IX.C, at the sole option and discretion of the Com-
pany, the Settling Individual Defendants, the Settling Professional Advisor Defendants or the
Settling Plaintiffs if (*i*) the Court, or any appellate court, rejects, modifies or denies approval of
any portion of the Agreement or the proposed Settlement that the terminating Settling Party rea-
sonably and in good faith determines is material, including, without limitation, the Complete Bar
Order, any of the Court's findings of fact or conclusions of law, the provisions relating to Notice
and/or the terms of the Release or (*ii*) the Court, or any appellate court, does not enter or com-
pletely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval
Order or the Judgment, including the Complete Bar Order and/or the Release, that the terminat-
ing Settling Party reasonably and in good faith believes is material.

C.      The relevant terminating Settling Party must exercise an option to terminate this
Agreement by providing notice to all other Settling Parties no later than thirty (30) days after re-
ceiving actual notice of the event prompting the termination.

D.     Notwithstanding anything set out in this Section IX, none of the Settling Plaintiffs, any other Securities Holder or Settling Plaintiffs' Counsel may terminate this Agreement in connection with any ruling by the Court respecting either (*i*) attorneys' fees or expenses or (*ii*) the Service Award set out in Section IV.  The attorneys' fees set forth in Article IV of this Agreement are severable from the remainder of the Settlement.  No party may terminate the Settlement on the ground that the Court disapproves any or all of the attorneys' fees.  All parties will remain bound by the remaining terms of the Settlement in the event that the Court disapproves any or all of the attorney's fees.

E.     If an option to terminate this Agreement arises under this Section IX, (*i*) no Settling Party shall be required for any reason or for any circumstance to exercise that option, and (*ii*) any determination to exercise an option to terminate shall be made in good faith.

F.     If this Agreement is terminated pursuant to its terms, then:

1.     This Agreement shall be null and void and shall have no force or effect, and no Settling Party or Releasee shall be bound by any of its terms except for the terms set out in Subsection IV.B.3, Subsection IV.C, Section VIII, Subsection IX.F, and Subsections X.C through X.T;

2.     This Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Settling Parties or any other Securities Holder, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to the payment of Notice and Administrative Expenses as described in Subsection III.C.1 above;

3.     Releasees (including without limitation the Company, Settling Individual Defendants and Settling Professional Advisor Defendants) expressly deny any wrongdoing by

50

Releasees and expressly and affirmatively reserve all defenses, arguments and motions that have been or might later be asserted in the Actions;

4.      The Settling Plaintiffs expressly and affirmatively reserve all Claims, arguments and motions that have been or might have been asserted in the Actions;

5.      Neither this Agreement nor the fact of its having been made shall be admissible or entered into evidence in any proceeding for any purpose whatsoever, except to enforce its terms;

6.      Neither HP's agreement to the terms set out in this Agreement nor HP's execution of this Agreement shall constitute or be construed to be an admission by HP that any wrongdoing has taken place, that any of the Settling Individual Defendants or Settling Professional Advisor Defendants (or any other Releasee) has engaged in a breach of his, her or its fiduciary duties or engaged in any other actionable conduct in connection with the conduct alleged in the Complaints or that any of the Claims made in the Actions have any merit or are in the best interest of the Company or its shareholders to pursue;

7.      Neither the Settling Individual Defendants' agreement to the terms set out in this Agreement nor their execution of this Agreement shall constitute or be construed to be an admission by the Settling Individual Defendants collectively or individually that any of the Settling Individual Defendants breached his or her fiduciary duties or engaged in any other actionable conduct in connection with the conduct alleged in the Complaints or that any of the Claims made in the Actions has any merit;

8.      Neither the Settling Professional Advisor Defendants' agreement to the terms set out in this Agreement nor their execution of this Agreement shall constitute or be construed to be an admission the Settling Professional Advisor Defendants collectively or individu-

51

ally that any of the Settling Professional Advisor Defendants engaged in any actionable conduct in connection with the conduct alleged in the Complaints or that any of the Claims made in the Actions has any merit;

        9.     The terms and provisions of any confidentiality agreement executed in connection with the Settlement shall continue in full force and effect;

        10.     The Company shall, consistent with Subsections III.C.1 and III.D.2 above, pay all Notice and Administrative Expenses and Mediator fees incurred but not paid as of the Termination Date; and

        11.     Except as expressly set out in the Agreement in Subsections III.C.1, IV.B.3, IV.C and IX.F.11, nothing in this Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees and/or expenses.

**X.**       **GENERAL MATTERS AND RESERVATIONS**

       A.     The obligations of the Settling Parties to consummate the Agreement are conditioned upon the occurrence of each of the following:

        1.     entry by the Court of the Preliminary Approval Order in substantially the form attached as Exhibit A, with changes only as approved by the Settling Parties;

        2.     entry by the Court of the Approval Order in substantially the form attached as Exhibit C, with changes only as approved by the Settling Parties;

        3.     entry by the Court of the Judgment in substantially the form attached as Exhibit D, with changes only as approved by the Settling Parties;

        4.     the Final Settlement Date.

       B.     The Settling Parties intend this Agreement to be a final and complete resolution of all Claims arising out of Released Securities Holder/Company Claims that have been or could have been asserted by any Securities Holder derivatively or by the Company directly against Re-

leasees or any of them. The Settling Parties agree not to assert in any forum that the Actions were brought (on the one hand) or that the Company, Settling Individual Defendants or Settling Professional Advisor Defendants defended the Actions (on the other hand) in bad faith or without a reasonable basis. The Settling Parties shall not assert any Claims relating to the prosecution, defense or settlement of the Actions except as necessary to enforce this Agreement. The Settling Parties agree that the settlement relief provided in the Agreement and the terms of this Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with experienced counsel.

C.     Joseph W. Cotchett and Mark C. Molumphy represent that they are authorized to enter into the Agreement on behalf of the Federal Plaintiff and any other attorneys who have represented or who now represent the Federal Plaintiff in the Federal Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept the Federal Plaintiff apprised of the progress of the settlement negotiations, (*ii*) they have advised the Federal Plaintiff of the terms and provisions of this Agreement, and (*iii*) the Federal Plaintiff has approved entering into this Agreement.

D.     Darren J. Robbins and Benny C. Goodman III represent that they are authorized to enter into the Agreement on behalf of the State Plaintiffs and any other attorneys who have represented or who now represent the State Plaintiffs in the State Actions and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept the State Plaintiffs apprised of the progress of the settlement negotiations, (*ii*) they have advised the State Plaintiffs of the terms and provisions of this Agreement, and (*iii*) the State Plaintiffs have approved entering into this Agreement.

E.      Marc Wolinsky represents that he is authorized to enter into this Agreement on behalf of HP and any other attorneys who have represented or who now represent HP in the Actions and/or with respect to Released Securities Holder/Company Claims and that (*i*) he has kept HP apprised of the progress of the settlement negotiations, (*ii*) he has advised HP of the terms and provisions of this Agreement, and (*iii*) HP has approved entering into this Agreement.

F.      John C. Dwyer represents that he is authorized to enter into this Agreement on behalf of Settling Individual Defendant Whitman and any other attorneys who have represented or who now represent her in the Actions and/or with respect to Released Securities Holder/Company Claims and that (*i*) he has kept Ms. Whitman apprised of the progress of the settlement negotiations, (*ii*) he has advised Ms. Whitman of the terms and provisions of this Agreement, and (*iii*) Ms. Whitman has approved entering into this Agreement.

G.      Bruce E. Yannett and Colby A. Smith represent that they are authorized to enter into this Agreement on behalf of Settling Individual Defendant Apotheker and any other attorneys who have represented or who now represent him in the Actions and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Mr. Apotheker apprised of the progress of the settlement negotiations, (*ii*) they have advised Mr. Apotheker of the terms and provisions of this Agreement, and (*iii*) Mr. Apotheker has approved entering into this Agreement.

H.      Eric S. Waxman and Timothy A. Miller represent that they are authorized to enter into this Agreement on behalf of Settling Individual Defendants Lane, Andreessen, Banerji, Thompson, Gupta, Hammergren, Livermore, Reiner, Russo, Whitworth, Babbio, Baldauf and Senequier and any other attorneys who have represented or who now represent those Settling Individual Defendants in the Actions and/or with respect to Released Securities Holder/Company

Claims and that (*i*) they have kept those Settling Individual Defendants apprised of the progress of the settlement negotiations, (*ii*) they have advised those Settling Individual Defendants of the terms and provisions of this Agreement, and (*iii*) those Settling Individual Defendants have approved entering into this Agreement.

I.      Daniel Bookin and Matthew Close represent that they are authorized to enter into this Agreement on behalf of Settling Individual Defendant Robison and any other attorneys who have represented or who now represent him in the Actions and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Mr. Robison apprised of the progress of the settlement negotiations, (*ii*) they have advised Mr. Robison of the terms and provisions of this Agreement, and (*iii*) Mr. Robison has approved entering into this Agreement.

J.      Brian T. Frawley, Brendan P. Cullen and Victoria A. Coyle represent that they are authorized to enter into this Agreement on behalf of Settling Professional Advisor Defendant Barclays Capital and any other attorneys who have represented or who now represent Barclays Capital in the Federal Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Barclays Capital apprised of the progress of the settlement negotiations, (*ii*) they have advised Barclays Capital of the terms and provisions of this Agreement, and (*iii*) Barclays Capital has approved entering into this Agreement.

K.      Patrick D. Robbins and Alan S. Goudiss represent that they are authorized to enter into this Agreement on behalf of Settling Professional Advisor Defendant Perella Weinberg Partners and any other attorneys who have represented or who now represent Perella Weinberg Partners in the Federal Action and/or with respect to Released Securities Holder/Company Claims and that (*i*) they have kept Perella Weinberg Partners apprised of the progress of the settlement negotiations, (*ii*) they have advised Perella Weinberg Partners of the terms and provi-

sions of this Agreement, and (*iii*) Perella Weinberg Partners has approved entering into this Agreement.

L.  This Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter and supersedes any agreements that preceded this Agreement, including any agreement in principle as well as the stipulation of settlement executed on June 30, 2014.  This Agreement may not be altered or modified except by written instrument executed by Settling Plaintiffs' Counsel (with the permission of Settling Plaintiffs), Committee Counsel and Company Counsel (with the permission of HP), Settling Individual Defendants' Counsel (with the permission of the Settling Individual Defendants) and Settling Professional Advisor Defendants' Counsel (with the permission of the Settling Professional Advisor Defendants).  The Settling Parties expressly acknowledge that no other agreements, arrangements or understandings not described in this Agreement exist among or between them.  In entering into this Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly in this Agreement.

M.  This Agreement shall be governed by and interpreted according to the laws of the State of California, excluding its conflict of laws provision.

N.  Except as set out in Subsection III.D above, the Court retains continuing and exclusive jurisdiction over this Agreement, the Settling Parties, all Securities Holders (including all Securities Holders who submit objections pursuant to Section V), all Releasors and all Releasees to adjudicate, subject to Sections III.D and IX, all issues relating to this Agreement and the Settlement, including without limitation, any issues relating to the Preliminary Approval Order, the Approval Order or the Judgment.  Subject to Subsection III.D, any action arising under or to en-

force this Agreement, the Preliminary Approval Order, the Approval Order or the Judgment shall

be commenced and maintained only in the Court.

O.      Whenever this Agreement requires or contemplates that a Settling Party shall or

may give notice to another Settling Party or to counsel, notice shall be provided by e-mail, fac-

simile and/or overnight (excluding Saturday and Sunday) delivery service as follows and shall be

deemed effective upon receipt of such e-mail, facsimile transmission or delivery to the e-mail,

facsimile number or address, as the case may be, below:

1.      If to HP, then to:

Marc Wolinsky
mwolinsky@wlrk.com
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1226
Facsimile:  (212)  403-2226

2.      If to the Federal Plaintiff, then to:

Joseph W. Cotchett
jcotchett@cpmlegal.com
Mark C. Molumphy
mmolumphy@cpmlegal.com
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

3.      If to the State Plaintiffs, then to:

Darren J. Robbins
darrenR@rgrdlaw.com
Benny C. Goodman III
bennyg@rgrdlaw.com
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Fax: (619) 231-7423

4.      If to the Settling Individual Defendants, then to:

Counsel for Settling Individual Defendant Whitman:

John C. Dwyer
dwyerjc@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304
Telephone:  (650) 843-5228
Facsimile:  (650) 849-7400

Counsel for Settling Individual Defendant Apotheker:

Bruce E. Yannett
beyannett@debevoise.com
Colby A. Smith
casmith@debevoise.com
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone:  (212) 909-6495
Facsimile:  (212) 521-7495

Counsel for Settling Individual Defendants Lane, Andreessen, Banerji, Thompson, Gupta, Hammergren, Livermore, Reiner, Russo, Whitworth, Babbio, Baldauf and Senequier:

Eric S. Waxman
eric.waxman@skadden.com
Timothy A. Miller
timothy.miller@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, California 94301
Telephone:  (650) 470-4620
Facsimile:  (650) 798-6536
Counsel for Settling Individual Defendant Robison:

Daniel Bookin
dbookin@omm.com
Matthew Close
mclose@omm.com
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  (415) 984-8786
Facsimile:  (415)984-8701

5.      If to the Settling Professional Advisor Defendants, then to:

Counsel for Settling Professional Advisor Defendant Barclays Capital:

Brian T. Frawley
frawleyb@sullcrom.com
Brendan P. Cullen
cullenb@sullcrom.com
Victoria A. Coyle
coylev@sullcrom.com
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 291-9437

Counsel for Settling Professional Advisor Defendant Perella Weinberg Partners:

Patrick D. Robbins
probbins@shearman.com
Shearman & Sterling LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
Telephone:  (415) 616-1100
Facsimile:  (415) 616-1199

Alan S. Goudiss
agoudiss@shearman.com
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4906
Facsimile:  (646) 848-4906

P.      All time periods set forth in this Agreement shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by a court, the day, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Legal Holiday, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have caused the office of the Clerk of the Court to be inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

Q.      The Settling Parties reserve the right, subject to the Court's approval, mutually to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

R.      The Settling Parties, their successors and assigns, and their counsel undertake to implement this Agreement, to cooperate fully in seeking Court approval and to use all reasonable efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

S.      This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original. Execution by facsimile or by electronically transmitted signature shall be ful-

ly and legally binding on a Settling Party.

T.      All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled to enforce the terms of the Release.

Agreed to as of this 3rd day of September, 2014.

Joseph W. Cotchett
Mark C. Molumphy
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, California 94010

COUNSEL FOR FEDERAL PLAINTIFF

Darren J. Robbins
Benny C. Goodman III
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

COUNSEL FOR STATE PLAINTIFFS

Marc Wolinsky
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

COUNSEL FOR HEWLETT-PACKARD COMPANY

John C. Dwyer
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304

Bruce E. Yannett
Colby A. Smith
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT WHITMAN

COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT
APOTHEKER

61

S.      This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original.  Execution by facsimile or by electronically transmitted signature shall be ful-

ly and legally binding on a Settling Party.

T.      All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled to enforce the terms of the Release.

Agreed to as of this 3rd day of September, 2014.

_____
Joseph W. Cotchett
Mark C. Molumphy
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, California 94010

COUNSEL FOR FEDERAL PLAINTIFF

_____
Darren J. Robbins
Benny C. Goodman III
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

COUNSEL FOR STATE PLAINTIFFS

_____
Marc Wolinsky
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

COUNSEL FOR HEWLETT-PACKARD COMPANY

_____
John C. Dwyer
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304

COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT WHITMAN

_____
Bruce E. Yannett
Colby A. Smith
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT
APOTHEKER

61

S.      This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original.  Execution by facsimile or by electronically transmitted signature shall be ful-

ly and legally binding on a Settling Party.

T.      All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled to enforce the terms of the Release.

Agreed to as of this 3rd day of September, 2014.


_____          _____

Joseph W. Cotchett                        Darren J. Robbins
Mark C. Molumphy                          Benny C. Goodman III
Cotchett, Pitre & McCarthy, LLP           Robbins Geller Rudman & Dowd LLP
840 Malcolm Road, Suite 200               655 West Broadway, Suite 1900
Burlingame, California 94010              San Diego, CA 92101

COUNSEL FOR FEDERAL PLAINTIFF             COUNSEL FOR STATE PLAINTIFFS

                                          Marc Wolinsky
                                          Wachtell, Lipton, Rosen & Katz
                                          51 West 52nd Street
                                          New York, New York 10019

                COUNSEL FOR HEWLETT-PACKARD COMPANY


_____          _____

John C. Dwyer                             Bruce E. Yannett
Cooley LLP                                Colby A. Smith
3175 Hanover Street                       Debevoise & Plimpton LLP
Palo Alto, California 94304               919 Third Avenue
                                          New York, New York 10022


COUNSEL FOR SETTLING                      COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT WHITMAN              INDIVIDUAL DEFENDANT
                                          APOTHEKER

S.      This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original.  Execution by facsimile or by electronically transmitted signature shall be ful-

ly and legally binding on a Settling Party.

T.      All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled to enforce the terms of the Release.

Agreed to as of this 3rd day of September, 2014.


_____          _____

Joseph W. Cotchett                                     Darren J. Robbins
Mark C. Molumphy                                    Benny C. Goodman III
Cotchett, Pitre & McCarthy, LLP               Robbins Geller Rudman & Dowd LLP
840 Malcolm Road, Suite 200                    655 West Broadway, Suite 1900
Burlingame, California 94010                      San Diego, CA 92101

COUNSEL FOR FEDERAL PLAINTIFF          COUNSEL FOR STATE PLAINTIFFS


_____

Marc Wolinsky
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

COUNSEL FOR HEWLETT-PACKARD COMPANY


_____          _____

John C. Dwyer                                           Bruce E. Yannett
Cooley LLP                                               Colby A. Smith
3175 Hanover Street                                   Debevoise & Plimpton LLP
Palo Alto, California 94304                         919 Third Avenue
                                                               New York, New York 10022

COUNSEL FOR SETTLING                       COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT WHITMAN      INDIVIDUAL DEFENDANT
                                                               APOTHEKER

61

S.      This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original.  Execution by facsimile or by electronically transmitted signature shall be ful-

ly and legally binding on a Settling Party.

T.      All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled to enforce the terms of the Release.

Agreed to as of this 3rd day of September, 2014.


Joseph W. Cotchett
Mark C. Molumphy
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, California 94010

COUNSEL FOR FEDERAL PLAINTIFF

Darren J. Robbins
Benny C. Goodman III
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

COUNSEL FOR STATE PLAINTIFFS


Marc Wolinsky
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

COUNSEL FOR HEWLETT-PACKARD COMPANY


John C. Dwyer
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304

COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT WHITMAN

Bruce E. Yannett
Colby A. Smith
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT
APOTHEKER

61

_Timothy A. Miller / VGC._

Eric S. Waxman
Timothy A. Miller
Skadden, Arps, Slate, Meagher &
Flom LLP
525 University Avenue
Palo Alto, California 94301


COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANTS LANE,
ANDREESSEN, BANERJI, THOMPSON,
GUPTA, HAMMERGREN,
LIVERMORE, REINER, RUSSO,
WHITWORTH, BABBIO, BALDAUF
AND SENEQUIER

Daniel Bookin
Matthew Close
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111


COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT ROBISON

Brian T. Frawley
Brendan P. Cullen
Victoria A. Coyle
Sullivan and Cromwell LLP
125 Broad Street
New York, New York 10004


COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR
DEFENDANT BARCLAYS CAPITAL

Patrick D. Robbins
Shearman & Sterling LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111

Alan S. Goudiss
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022


COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR
DEFENDANT PERELLA WEINBERG
PARTNERS

_____          Daniel Bookin / VGL
                                          _____
Eric S. Waxman                            Daniel Bookin
Timothy A. Miller                         Matthew Close
Skadden, Arps, Slate, Meagher &           O'Melveny & Myers LLP
Flom LLP                                  Two Embarcadero Center, 28th Floor
525 University Avenue                      San Francisco, California 94111
Palo Alto, California 94301


COUNSEL FOR SETTLING                      COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANTS LANE,               INDIVIDUAL DEFENDANT ROBISON
ANDREESSEN, BANERJI, THOMPSON,
GUPTA, HAMMERGREN,
LIVERMORE, REINER, RUSSO,
WHITWORTH, BABBIO, BALDAUF
AND SENEQUIER


_____          _____
Brian T. Frawley                          Patrick D. Robbins
Brendan P. Cullen                         Shearman & Sterling LLP
Victoria A. Coyle                         Four Embarcadero Center, Suite 3800
Sullivan and Cromwell LLP                 San Francisco, California 94111
125 Broad Street
New York, New York 10004                  Alan S. Goudiss
                                          Shearman & Sterling LLP
                                          599 Lexington Avenue
                                          New York, New York 10022


COUNSEL FOR SETTLING                      COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR                      PROFESSIONAL ADVISOR
DEFENDANT BARCLAYS CAPITAL                DEFENDANT PERELLA WEINBERG
                                          PARTNERS

62

Eric S. Waxman
Timothy A. Miller
Skadden, Arps, Slate, Meagher &
Flom LLP
525 University Avenue
Palo Alto, California 94301


COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANTS LANE,
ANDREESSEN, BANERJI, THOMPSON,
GUPTA, HAMMERGREN,
LIVERMORE, REINER, RUSSO,
WHITWORTH, BABBIO, BALDAUF
AND SENEQUIER

Daniel Bookin
Matthew Close
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111


COUNSEL FOR SETTLING
INDIVIDUAL DEFENDANT ROBISON

Brian T. Frawley
Brendan P. Cullen
Victoria A. Coyle
Sullivan and Cromwell LLP
125 Broad Street
New York, New York 10004


COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR
DEFENDANT BARCLAYS CAPITAL

Patrick D. Robbins
Shearman & Sterling LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111

Alan S. Goudiss
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022


COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR
DEFENDANT PERELLA WEINBERG
PARTNERS

Brian T. Frawley
Brendan P. Cullen
Victoria A. Coyle
Sullivan and Cromwell LLP
125 Broad Street
New York, New York 10004

Patrick D. Robbins
Shearman & Sterling LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111

Alan S. Goudiss
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR
DEFENDANT BARCLAYS CAPITAL

COUNSEL FOR SETTLING
PROFESSIONAL ADVISOR
DEFENDANT PERELLA WEINBERG
PARTNERS