JOSEPH W. COTCHETT (36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (168009)
mmolumphy@cpmlegal.com
MATTHEW K. EDLING (250940)
medling@cpmlegal.com
JENNIFER R. CRUTCHFIELD (275343)
jcrutchfield@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Lead Counsel for Plaintiff Stanley Morrical,*
*derivatively on behalf of Hewlett-Packard Company*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>    ALL ACTIONS | **Master File NO. C-12-6003-CRB**<br><br>**LEAD PLAINTIFF'S SUPPLEMENTAL BRIEF:**<br><br>**(1) IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF AMENDED SETTLEMENT AGREEMENT, AND**<br><br>**(2) IN OPPOSITION TO MOTIONS TO INTERVENE AND SEVER**<br><br>Date:  September 26, 2014<br>Time:  10:00 a.m.<br>Courtroom 6, 17th Floor<br>Hon. Charles R. Breyer |

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED ............. 3

    A.    The Standard On Preliminary Approval ........................................ 3

    B.    The Settlement Provides Valuable Benefits To HP In The Form Of Targeted
        Corporate Governance Reforms ........................................ 3

    C.    Lead Plaintiff Considered The Benefits And Risks Of Continued
        Litigation Under Applicable Delaware Law ........................................ 5

    D.    The Settlement Was Negotiated At Arm's Length, Free Of Collusion, And With
        The Assistance Of A Prominent Mediator, Retired United States District Judge
        Vaughn Walker ........................................ 8

III.  THE MOTIONS TO INTERVENE AND SEVER SHOULD BE DENIED ................... 8

    A.    Cook's Motion To Intervene To Replace Lead Plaintiff and Lead
        Counsel Should Be Denied ........................................ 9

        1.    Cook Fails To Satisfy The Prerequisites For Mandatory Intervention ....... 9

        2.    Cook Fails To Satisfy The Requirements for Permissive Intervention .... 11

        3.    Cook's Reasons To Replace Cotchett Are Flawed ................................. 12

    B.    Hussain's Motion To Intervene To "Object" To The Settlement Should
        Be Denied ........................................ 13

    C.    Steinberg's Motion to Sever Should Be Denied ................................. 14

IV.   CONCLUSION ................................................................................................ 15

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to
Intervene and to Sever; Master File No. C-12-6003-CRB

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano*
324 F.3d 1078 (9th Cir. 2003) .................................................................................. 10

*Aronson v. Lewis*
473 A.2d 805 (Del. 1984) ........................................................................................... 5

*Brazen* v. *Bell Atl. Corp.*
695 A.2d 43 (Del. 1997) .............................................................................................. 7

*Chih Teh Shen v. Miller*
212 Cal. App. 4th 48 (2012) ..................................................................................... 11

*Cohn v. Nelson*
375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................................................... 5

*Copeland* v. *Lane*
2012 WL 4845636 (N.D. Cal. Oct. 10, 2012)......................................................... 7, 15

*Ellis v. Naval Air Rework Facility*
87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981)..................... 8

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*
2012 WL 1674299 (S.D.N.Y. May 14, 2012) ...................................................... 10, 14

*In re Caremark Derivative Litigation*
698 A.2d 959 (Del. Ch. 1996)....................................................................................... 6

*In re F5 Networks, Inc. Derivative Litigation*
No. C06-794 RSL (W.D. Wash. Jan. 6, 2011).............................................................. 5

*In re HP Inkjet Printer Litig.*
716 F.3d 1173 (9th Cir. 2013) ................................................................................... 11

*In re HP Sec. Litig.*
2013 WL 6185529 (N.D. Cal. Nov. 26, 2013) .............................................................. 6

*In re Nucoa Real Margarine Litig.*
2012 U.S. Dist. LEXIS 189901 (C.D. Cal. June 12, 2012) ....................................... 12

*In re NVIDIA Corp. Derivative Litig.*
No. C-06-06110-SBA (JCS) (N.D. Cal. Dec. 22, 2008).............................................. 5

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

ii

*In re Pacific Enterprises Sec. Litig.*
47 F.3d 373 (9th Cir. 1995) ........................................................................ 3

*Levine v. Smith*
591 A.2d 194 (Del. 1991) ........................................................................ 15

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*
671 F. Supp. 819 (D. Mass. 1987) ............................................................ 8

*Metropolitan Life Ins. Co.* v. *Tremont Grp. Holdings, Inc.*
2012 WL 6632681 (Del. Ch. Sept. 13, 2012) ............................................ 7

*Moore v. Verizon Commc'ns, Inc.*
2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013) .......................... 12

*Nw. Forest Res. Council v. Glickman*
82 F.3d 825 (9th Cir. 1996) ...................................................................... 9

*Scattered Corp.* v. *Chicago Stock Exch.*
701 A. 2d 70 (Del. 1997) .......................................................................... 7

*Solash* v. *Telex Corp.*
1988 WL 3587 (Del. Ch. Jan. 19, 1998) ..................................................... 7

*United States v. Oregon*
913 F.2d 576 (9th Cir. 1990) ..................................................................... 9

*Wood v. Baum*
953 A.2d 136 (Del. 2008) .......................................................................... 6

**Other Authorities**

Manual for Complex Litigation

§30.41 (3d ed. 1995) .................................................................................. 3

**Rules**

Fed. R. Civ. P. 24(a)(2) ............................................................................. 9

Fed. R. Civ. P. 24(b)(3) ........................................................................... 12

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

iii

## I.      INTRODUCTION

On August 25, 2014, the Court directed the parties moving for preliminary approval of a proposed Stipulation of Settlement ("Settlement") of the consolidated HP derivative actions to clarify that the benefits provided by the Settlement – including valuable corporate governance reforms targeted at HP's Mergers & Acquisition's practices – could be evaluated separate and apart from an award of attorneys' fees and a proposed agreement by HP to retain Lead Plaintiff to assist in future litigation.  The Court further asked the parties to brief whether it was necessary for parties to formally intervene in order to assert objections to the settlement.

On September 3, 2014, the settling parties filed an Amended and Restated Stipulation of Settlement ("Amended Settlement"), which (a) removes entirely the proposed retainer agreement between HP and derivative plaintiff's counsel; (b) clarifies that the substantive terms of the settlement can be considered and approved separate from any award of attorneys' fees; (c) provides that attorneys' fees related to the governance reforms will be submitted to binding arbitration by former United States District Judge Vaughn Walker, subject to the review and approval of this Court.  Doc. 201.

The Amended Settlement also helps resolve the questions raised by the Court, *i.e.*, whether intervention is necessary to object to terms in the Amended Settlement and the appropriate time to consider intervention.

### Cook's Claim of Conflict

Given the removal of the proposed retention agreement, Cook's claim that the Cotchett firm has a conflict is now moot.

### Cook's and Steinberg's Objections to Release of HP Executives

The remaining objections by Cook and Steinberg pertain to the release of claims against HP's executives and advisors, which can readily be addressed at the final approval hearing.

### Hussain's Motion to Intervene

Hussain's counsel admitted at the recent hearing that Hussain wants to intervene to "object" to the settlement, but that other shareholders – who are not the subject of investigation

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

1

by HP and law enforcement authorities – have a stronger interest to ensure the terms are adequate to HP.  Hussain's protests in Court, through his counsel, Mr. Keker, appear designed to deflect attention from the conduct of his client (and Mike Lynch) in the sale of Autonomy to HP.

If there was any doubt, one has only to read a representative email from Hussain, the former Chief Financial Officer of Autonomy, sent internally to Lynch, Autonomy's Chief Executive Officer, just before the sale to HP.  The email, attached as Exhibit A, is very clear that Autonomy's accounting practices were a fraud.  It says, in part: "we've covered up with bofa [Bank of America]" and "there are swathes of reps with nothing to do maybe chase imaginary deals" – a situation Hussain portrays as a financial "plane crash."[1]

At the recent hearing, Mr. Keker told this Court that "Mr. Hussain has a very strong interest in seeing that somebody shine a light on what actually happened here."  Transcript at 50:24-25.  Plaintiff totally agrees.  When Plaintiff filed the Consolidated Complaint in May 2013, he had a good faith belief that HP's management had not properly vetted Autonomy and that, in the words of this Court, the writedown indicated that "something went terribly wrong." After over a year of work by the Cotchett firm, and independently by the Demand Review Committee established by HP's Board, the light began to shine on the massive fraud perpetrated on HP by persons with knowledge of Autonomy's true financial condition.

Thus, Plaintiff's decision to settle with defendants had nothing to do with "collusion," as alleged by Mr. Keker, but rather an informed, reasoned determination that HP had been defrauded.  Mr. Keker's own client said it best shortly before he decided to shop Autonomy to HP: "it's bad."  *See* Exhibit A.

Accordingly, for all these reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Amended Settlement, authorize the distribution of notice, and set a final approval hearing.

---

[1] Hussain was Autonomy's CFO from 2001 until October 2011.  Accordingly to published reports, criminal investigations relating to Autonomy's sale to HP have now been opened by both the U.S. **Department of Justice** and the U.K **Serious Fraud Office**.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

## II.     THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.     The Standard On Preliminary Approval

Federal Rule of Civil Procedure 23.1(c) requires court approval of a derivative settlement.  In evaluating a derivative settlement, courts in the Ninth Circuit apply the same two-step process applied in class actions, involving preliminary and then final approval.  *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

For preliminary approval, a court need only conclude that the proposed settlement "within the range of possible approval" such that notice can be provided and a future fairness hearing scheduled to consider any objections.  *Id.*  As the Manual for Complex Litigation explains, addressing the class action standard:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

Manual for Complex Litigation §30.41, at 237 (3d ed. 1995).

### B.     The Settlement Provides Valuable Benefits To HP In The Form Of Targeted Corporate Governance Reforms

As discussed in Plaintiff's underlying motion, the Governance Revisions negotiated in this settlement provide a substantial benefit to HP.  The Governance Revisions directly address Plaintiff's allegations related to HP's existing Mergers & Acquisitions ("M&A") practices, and provide for, among other things, significantly enhanced procedures which will help create a corporate environment where the issues complained of are less likely to reoccur.  In fact, they may prevent frauds like this from happening in the future.

The parties spent substantial time discussing and evaluating HP's internal M&A processes, and the Governance Revisions reflect significant improvements crafted during these joint discussions.  Plaintiff was also greatly assisted by one of the nation's foremost accounting

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

3

1   and corporate governance experts, David Larcker, the James Irvin Miller Professor of

2   Accounting at Stanford's Graduate School of Business and the co-director of the Business

3   School's Corporate Governance Research Initiative.

4       Highlights of these Governance Revisions include a senior executive-level Risk

5   Management Committee, with Board-approved charter, charged with ensuring that due diligence

6   risk issues are identified and raised to the CEO and Board level.  Under its new charter, the

7   Committee will serve as a clearinghouse for risk management issues raised during the M&A

8   process, whether they be financial, accounting, or technical issues.  Lead Plaintiff also worked

9   closely with HP to refine and implement a comprehensive internal electronic database, linking all

10  of HP's separate business units involved in M&A due diligence with over 500 specified due

11  diligence items, ranging from valuation to integration.  This database will ensure M&A

12  procedures are performed, documented, and reported to senior management.  In addition, HP will

13  implement reforms to the Board's Finance & Investment Committee and Investment Review

14  Board, charged with oversight of HP's M&A activity, relating to the composition and

15  dissemination of due diligence prepared reports by advisors retained by the Company, and a

16  defined process review of M&A activities, with specific criteria and metrics for target selection,

17  valuation and integration.  HP will bolster its institutionalized due diligence education and

18  training.  HP has agreed to implement a new fairness opinion policy relating to outside advisor's

19  independence, conflicts of interest, and the assumptions and qualifications used in written

20  fairness opinions.  HP will also adopt a new M&A due diligence policy, with a technology due

21  diligence plan to be approved by Board's Technology Committee.

22      Courts have repeatedly held that governance reforms such as these are extremely valuable

23  to a corporation, particularly when they address the governance issues raised in litigation.  For

24  example, in granting approval of a shareholder derivative action settlement on behalf of Nvidia

25  Corp., the district court held that, "[a]s corporate debacles such as Enron, Tyco and WorldCom

26  demonstrate, strong corporate governance is fundamental to the economic well-being and

27  success of a corporation." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS),

28

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

4

slip op. at 4 (N.D. Cal. Dec. 22, 2008); *see also*, *In re F5 Networks, Inc. Derivative Litigation*, No. C06-794 RSL, slip op. at 2 (W.D. Wash. Jan. 6, 2011) ("The Court finds that the corporate governance measures implemented and/or maintained through the Settlement provide substantial benefits to F5 and its shareholders."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.") (citing cases).

For the same reasons, the Settling Parties here have determined that the Governance Revisions "confer substantial material benefits on the Company" because they enhance "the Company's merger and acquisition policies and procedures" and, therefore, provide substantial new protections for HP for future mergers and acquisitions.  See Stip §II.F.1-2.

### C.   Lead Plaintiff Considered The Benefits And Risks Of Continued Litigation Under Applicable Delaware Law

HP, while located in California, filed its incorporation papers under Delaware law.  Thus, in evaluating the value of claims against the defendants released by the Settlement, as well as the potential benefits and risks of continued litigation, Plaintiff needed to take into account relevant Delaware law applying to the claims.  It is hardly a secret that Delaware law poses significant challenges to shareholders suing in a derivative capacity.

First, of course, Plaintiff would need to overcome the issue of demand futility, and Delaware's strict application of the demand requirement.  In Delaware, a demand is futile where (1) a majority of Board lacks independence to consider demand or (2) where is "a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

Here, HP's Board was comprised almost entirely of outside directors.  None personally benefitted from the Autonomy transaction.  This was not a situation, like the stock option backdating cases, where the Board's independence could be more easily rebutted.

Similarly, there were difficulties demonstrating that this was the "rare case" in which HP Board's lacked independence because they faced a substantial likelihood of personal liability for approving the deal.  *Id.* at 815.  Under Delaware's business judgment rule, directors are

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

5

presumed to have acted in good faith, on an informed basis, and in the best interests of the corporation. *Id.* at 812. Further, under Delaware statute, directors are immunized from liability, even for bad decisions, if they reasonably rely on information provided by management or outside professionals. 8 Del. C. 141(e). Here, HP's Board retained several law firms, an accountant, and two professional bankers, who both opined that HP was paying a fair price based on their own independent valuation models.

As mentioned at the recent hearing, Delaware law also permits corporations to include in charter provision exculpating directors from liability for breaches of duty of care. 8 Del. C. 102(b)(7). HP had such a provision here. Thus, Plaintiff would need to prove that the directors acted in bad faith or violated their duty of loyalty, essentially requiring evidence that the directors acted with intent to wrong the corporation and advance their personal interests. See, e.g., *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). Notably, in addressing motions to dismiss in the companion HP securities class action, *In re HP Sec. Litig.*, 2013 WL 6185529 (N.D. Cal. Nov. 26, 2013), this Court held "it is implausible that had Defendants known about the fraud being perpetrated on them before the deal closed that they would have gone ahead with the deal" and "[t]he complaint fails to establish any coherent motive as to why Defendants would knowingly purchase a company for several times its actual value or that they knew Autonomy's accounting was problematic." *Id.* at *6.

The same burdens applied to claims based on post-acquisition conduct. For example, Hussein claims in his papers that HP's writedown was due to HP's inability to properly integrate Autonomy after the acquisition. However, if true, claims based on allegations that a board mismanaged the business or failed to monitor the corporation's conduct have been called "possibly the most difficult theory in corporate law." *In re Caremark Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996).

Claims against HP's officers, who are not covered by HP's exculpation provision, would still face significant obstacles. Plaintiff would need to prove that they violated their duty of care by acting with gross negligence, a standard that Delaware courts have interpreted to require

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

6

proof that HP's officers took actions "which [were] without the bounds of reason" and "so grossly off-the-mark as to amount to reckless indifference or a gross abuse of discretion."  See, e.g., *Metropolitan Life Ins. Co.* v. *Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *7 (Del. Ch. Sept. 13, 2012); *Solash* v. *Telex Corp.*, 1988 WL 3587, at *9 (Del. Ch. Jan. 19, 1998). Again, HP's officers would certainly argue that the due diligence process was robust and consistent with standards applied to evaluate UK corporations, and the ultimate price paid was consistent with fairness opinions provided by outside advisors, and fully vetted.

Had Plaintiff been able to overcome demand futility, HP would almost certainly bring a motion to terminate or take-over the case to pursue other claims, based on the resolution of HP's Board and its Demand Review Committee.  HP would then argue that, under Delaware law, the sole issue to decide is one of process, *i.e.*, in deciding to dismiss claims against HP officials and prosecute claims against Autonomy, did the directors "act in an informed manner and with due care, and in a good faith belief that their action was in the best interest of the corporation." *Copeland* v. *Lane*, No. 5:11-cv-01508 EJD, 2012 WL 4845636, at *5 (N.D. Cal. Oct. 10, 2012); *Scattered Corp.* v. *Chicago Stock Exch.*, 701 A. 2d 70, 75-77 (Del. 1997).  HP would also claim that, under Delaware law, the Board's decision to terminate certain litigation and bring litigation against Autonomy was presumptively valid under the business judgment rule.  *Brazen* v. *Bell Atl. Corp.*, 695 A.2d 43, 49 (Del. 1997).

Here, Lead Plaintiff was very familiar with the Demand Review Committee's evaluation process, including the materials it reviewed, the witnesses it interviewed, and the conclusions it reached.  However, that does not mean that Lead Plaintiff's counsel took the Committee's work and conclusions at face value.  To the contrary, Lead Plaintiff's counsel applied professional skepticism and independently analyzed the relevant evidence and legal claims.  Over several months, Plaintiff's counsel exhaustively evaluated the Autonomy acquisition from both sides of the transaction.  Plaintiff's counsel obtained and reviewed due diligence materials, Board and Board Committee presentations, and relevant Autonomy records contemporaneously provided to HP.  Plaintiff's counsel also interviewed numerous witnesses, including primary HP deal

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

7

participants who led the due diligence process and negotiated with Autonomy.  Plaintiff's

counsel also engaged the Committee and its advisors in frank discussions about the basis for

their conclusions, and attempted to gather as much information as possible about the best sources

of recovery to HP.

Ultimately, Lead Plaintiff concluded that there would be significant litigation risks in

attempting to establish that HP's officers and directors, and the professional advisors that the

Board retained and relied upon, failed to act in good faith during the due diligence process, or in

attempting to integrate Autonomy after the acquisition closed, based on applicable Delaware law.

Plaintiff concluded that claims against HP's Board would be made even more difficult given

evidence indicating that Autonomy had actively misled HP about its financial condition.

### D. The Settlement Was Negotiated At Arm's Length, Free Of Collusion, And With The Assistance Of A Prominent Mediator, Retired United States District Judge Vaughn Walker

The proposed Amended Settlement warrants a presumption that it is fair and reasonable,

because it is the product of extensive arm's-length negotiations conducted by capable counsel

who are well-experienced in derivative actions, with the substantial assistance of an independent

mediator, here Judge Walker.  *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp.

819, 822 (D. Mass. 1987); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),

aff'd, 661 F.2d 939 (9th Cir. 1981); *see also*, Walker Decl. ¶16.

### III. THE MOTIONS TO INTERVENE AND SEVER SHOULD BE DENIED

At the recent hearing, the Court asked for additional briefs addressing (1) the necessity of

intervention or severance to assert the objections raised by Cook, Steinberg and Hussain in their

respective motions, and (2) whether the motions should be resolved at this stage, before

preliminary approval is granted.  As discussed below, given the merits of the respective motions,

as well as the impact of the modifications to the Amended Settlement, there is no legal nor

practical basis to grant the motions at this stage of the case.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

8

### A. Cook's Motion To Intervene To Replace Lead Plaintiff and Lead Counsel Should Be Denied

Rather than participate in these federal proceedings filed almost two years ago, Rodney Cook waited almost a year, obtained the same documents that Lead Plaintiff obtained, and then filed a <u>copycat</u> derivative complaint in Delaware state court.  Just over one month ago, upon learning of the Settlement reached in this action, Cook asked the Delaware Chancery Court to expedite his case.  The Delaware Court <u>denied</u> his request, said it would not act as Cook's "stalking horse" to assert objections, and instructed Cook to make any objections to the Settlement in the Northern District of California.

However, Cook chose not to assert objections as an HP shareholder.  Instead, Cook and his counsel, The Weiser Law Firm ("Weiser"), moved to intervene in this derivative action to remove Morrical as lead plaintiff and the Cotchett firm as lead counsel.  Yet, Cook doesn't even satisfy the prerequisites for intervention and the only two reasons he provides for replacing lead plaintiff and counsel are demonstrably false.

### 1. Cook Fails To Satisfy The Prerequisites For Mandatory Intervention

As Cook acknowledges, it was his affirmative burden to satisfy all four independent elements for mandatory intervention:  (1) a timely application, (2) an interest relating to the property or transaction which is the subject of the action, (3) that disposition of the action without his intervention may as a practical matter impair or impede his ability to protect that interest, and (4) the applicant's interest is not adequately represented by existing parties.  Cook Mtn at 9; F.R.C.P. 24(a)(2).  Cook falls short on several of these elements.

First, Cook's motion is untimely.  In determining whether a motion for intervention is timely, the court considers three factors:  (1) the stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for any delay.  *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 836-37 (9th Cir. 1996).  As the Ninth Circuit has noted, a proposed intervenor "must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'"  *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (citation omitted).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

9

Here, Cook waited until the eve of settlement, nearly two years after the derivative actions were first filed, to move to intervene based on the alleged superiority of his complaint and Cotchett firm's alleged conflict. Yet, Cook's supposedly superior complaint was filed almost six months ago, in March 2014. Similarly, the Cotchett firm's role as class counsel in the *Inkjet* class action has been publically known for years, and Cook's implication that the firm somehow concealed its involvement is belied by the record in this case, as the firm disclosed its representation of HP consumers in a firm resume filed with its lead counsel motion back in January 2013. The Court then heard motions seeking appointment of lead plaintiff and lead counsel in March 2013, and neither Cook nor any other HP shareholder objected or alleged any conflict of interest.

Indeed, while it was his burden as the moving party, Cook provides <u>no</u> competent evidence establishing many of his own predicate facts, including when he or his counsel first learned of the HP Inkjet case or the need to intervene, or why they waited until now to raise a conflict. The sole evidence was contained in their own 3-page declarations, yet neither Cook nor Weiser even mention the HP Inkjet case. See Doc. 172-1 (Weiser Declaration) and Ex. 6 to 172-1 (Cook Declaration). Intervention should be denied on this basis alone.

Second, Cook fails to establish that, absent intervention, he will be unable to protect his interests. The opposite is true. Intervention is unnecessary because Cook can already protect his interests by exercising his rights as an objector under Rule 23.1, which is the typical course. *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2012 WL 1674299, at *3 (S.D.N.Y. May 14, 2012). If Cook believes the Settlement releases valuable claims for inadequate consideration than he can raise such concerns at the fairness hearing, "alongside those of other likely objectors." *Bank of America*, 2012 WL 1674299, at *3.

Cook also fails to establish an interest relating to the Autonomy transaction that it is not "adequately represented" by the existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Here, Cook argues that the Cotchett firm suffers from a conflict of interest due to its simultaneous representation of consumers in the Inkjet class action. However, there is no

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

10

conflict.  The fact that the Cotchett firm serves as Lead Counsel in the derivative action does not mean the firm has an attorney/client relationship with HP.  Under California law, an attorney representing a derivative plaintiff does not "enter[] an attorney-client relationship with the corporation simply by filing the derivative action."  *Chih Teh Shen v. Miller*, 212 Cal. App. 4th 48, 57-58 (2012).[2]

Stripped of this ground, Cook's objection boils down to his disagreement with the Settlement terms.  However, where the ultimate objectives are the same, a proposed intervener's disagreement with the existing party's litigation strategy or tactics does not make their interests adverse so as to justify intervention, and a presumption of adequate representation arises, requiring the proposed intervener to make a "compelling showing" to rebut it.  *Arakaki, supra*, 324 F.3d at 1086.  Here, Cook fails to show how shareholder derivative interests were not adequately represented in the action in negotiating these terms, and Lead Plaintiff was represented by highly experienced and capable counsel who spent nearly two years investigating the relevant allegations.  After extensive arm's-length settlement negotiations, Lead Plaintiff and his counsel made a reasoned decision to settle the litigation on the terms set forth in the Amended Stipulation.  There is simply no evidence to the contrary or, for that matter, any evidence to support Cook's belief that the Settlement will harm HP or HP's current shareholders.

## 2.  Cook Fails To Satisfy The Requirements for Permissive Intervention

In a single footnote, Cook asks the Court to grant permissive intervention "for essentially the same reasons" as mandatory intervention.  Cook Mtn at 11, fn 15.  However, for the "same reasons" discussed above, the Court should deny permissive intervention.

Indeed, when permissive intervention is sought, the court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed.

---

[2] Moreover, absent extraordinary clairvoyance, the Cotchett firm could not have "colluded" with HP to cut a deal in *Inket* in return for a favorable deal in this case, the implication raised by Cook.  The parties settled *Inket* in **2010** – four years ago – before HP even announced the Autonomy acquisition.  While the Ninth Circuit vacated the order approving the settlement in May 2013, it was solely based on the statutory calculation of fees (*In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1175 (9th Cir. 2013)).  Further, the parties submitted new briefs in *Inkjet* before any mediation was conducted in this case.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

11

R. Civ. P. 24(b)(3).  Here, granting permissive intervention will "unduly delay or prejudice" the parties by delaying resolution of the case and adding additional costs all without any assurance that the delay Cook requests will lead to a superior result.  *See, e.g.*, *In re Nucoa Real Margarine Litig.*, No. CV 10-00927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901, at *81 (C.D. Cal. June 12, 2012) (holding that permissive intervention, "after a settlement ha[d] already been reached," would "complicate and slow the resolution of the case and prejudice the parties"); *Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at *54 (N.D. Cal. Feb. 5, 2013) (denying permissive intervention after a settlement had been reached in part "because intervention [would] cause prejudice to the existing parties and might delay the resolution of [the] action").

### 3.     Cook's Reasons For Replacing The Cotchett Firm Are Flawed

In addition to Cook's failure to establish the elements for intervention, and the fact that he can already challenge the Settlement by making an objection, the motion should be denied since both two reasons he provides for replacing Morrical and Cotchett are demonstrably false.

First, Cook claims that he and his attorneys at the Weiser firm need to intervene to replace Morrical and the Cotchett firm since they "alone" made a "books and records" inspection request to HP under Delaware law and obtained records allowing Cook to "exclusively set forth stronger allegations and claims."  Mtn. at 1.  This assertion is false.  Plaintiff Morrical made an inspection request under Delaware law, as well as a separate demand for HP's books and records under California's shareholder inspection statute (applicable to corporations, like HP, headquartered in California).  Plaintiff even followed up on his inspection demands by filing a Verified Petition for Writ of Mandate for Inspection of Corporate Books and Records in Santa Clara Superior Court.  Had Cook bothered to read Lead Plaintiff's Consolidated Complaint filed back in 2013, he would have learned of Lead Plaintiff's efforts, since the very first page describes the inspection demands and related writ proceedings.  See Consolidated Complaint at 1 (Doc. 75-2).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

12

As a result of these efforts, Morrical obtained the same HP documents that Cook now highlights as his singular triumph in this case.  Indeed, on closer analysis, the only significant difference between the "books and records" inspection efforts is that Cook also filed a separate action in Delaware to obtain more documents, and lost.  Cook's unsuccessful efforts hardly seem grounds to intervene.  Curiously, Cook claims that he used data gathered from his inspection requests to plead "a novel theory" that HP's CFO, Catherine Lesjak, warned HP directors about the purchase price paid for Autonomy.  Cook Mtn. at 14.  However, this information is not novel, and Cook's own Motion cites to the *Wall Street Journal* as the source of this information.  *Id.* at 14, 18-19.  Lead Plaintiff Morrical made similar allegations about Lesjak's warnings to the Board in his original and consolidated complaint (see, e.g., Consolidated Complaint, Doc. 75-2 at ¶117) and, of course, carefully investigated the viability of these claims before settling.

### B. Hussain's Motion To Intervene To "Object" To The Settlement Should Be Denied

Autonomy's former CFO, Sushovan Hussain, has also moved to intervene.  That motion has already been fully briefed and, for the reasons previously stated in Lead Plaintiff's Opposition (Doc. 169) and HP's Opposition (Doc. 165), the motion should be denied.

First, Hussain <u>admits</u> that he has no interest in intervening to protect the interests of HP or its shareholders, but rather only his own interests – a point he emphasized in his prior briefing. See, e.g., Hussain Reply Memo at 2 ("We admit that Mr. Hussain has filed this motion in service of his own interests, as litigants usually do.").  Accordingly, he doesn't meet Rule 24's prerequisites for 24 intervention, whether mandatory or permissive.  Indeed, because of Hussain's "unique" position as a potential defendant based on HP's and the Cotchett firm's investigation, Hussain's counsel agreed with the Court that it would be "unprecedented" for Hussain to intervene in this action:

> THE COURT:   . . . Secondly, you stand in a somewhat unique
>
> position, because you are a – you are representing an individual who will
>
> oppose the positions taken by Hewlett-Packard.  Whether . . . whether
>
> their positions have merit or don't have merit, you are the opposer.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

13

So it would be a – a somewhat – It would be somewhat

unprecedented, from what I can see, for your to be allowed to intervene,

you – not you personally –

      MR. KEKER:  I get it."

Transcript at 44:6-19.

Second, Hussain's counsel told this Court that Hussain is intervening to "object" to the settlement terms and to provide "advocacy" by "someone who's opposed to the settlement." Transcript at 41:7-12.  Putting aside the absurdity of that position, whereby counsel for the very person who allegedly defrauded HP and its shareholders out of billions of dollars now wants to "advocate" for their interests – intervention is not required to object to the settlement.[3]  To the extent Hussain can demonstrate standing, he can raise his objections just like any other HP shareholder under Rule 23.1.  *Bank of America*, *supra*, 2012 WL 1674299, at *3.  Of course, as this Court previously noted, other HP shareholders are in a better position to inquire into the settlement's fairness, and several have done so.

### C.      Steinberg's Motion to Sever Should Be Denied

For the same reasons described above, there is no reason to sever Steinberg's derivative action, filed after HP's Board refused her demand, from the other consolidated proceedings.  Put simply, Steinberg can already protect her interests as an objector.

Further, Lead Plaintiff certainly did take into account the strength of all claims covered by the release, including those asserted by "demand refused" plaintiffs like Steinberg.  At the recent hearing, Steinberg's counsel argued that claims against HP officers were somehow easier to prosecute since Steinberg made a demand, as she didn't need to overcome the issue of demand futility.  Steinberg failed to mention the higher hurdles she inherited by making the demand, including likely arguments by HP that, by making a demand, (1) she conceded the disinterestedness and independence of the Board, and (2) was limited to challenging the process

---

[3] As pointed out in the Introduction, referring to Exhibit A, it seems clear that Hussain's interest in intervening is actually to obtain discovery which he would otherwise not be able to obtain in the ongoing criminal investigation.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB**

14

1   by which the Board rejected her demand, and overcoming the business judgment rule.  *Levine v.*

2   *Smith*, 591 A.2d 194, 212-213 (Del. 1991).

3           Indeed, in another "demand refused" derivative action involving HP and based on

4   allegations that HP officers breached their fiduciary duties during the acquisition of another

5   company, 3PAR, the district court recently applied Delaware law and dismissed the case finding

6   that the shareholder plaintiff failed to carry this burden.  *Copeland v. Lane*, Case No. 5:11-cv-

7   01508 EJD, 2013 U.S. Dist. LEXIS 65742 (N.D. Cal., May 6, 2013), at *25-30.

8   **IV.     CONCLUSION**

9           In light of the strong policy favoring the negotiated compromise of litigation, including

10  shareholder derivative actions, the substantial benefits conferred upon HP by the Governance

11  Revisions, and the risks and costs of continued litigation, Lead Plaintiff respectfully submits that

12  this Amended Settlement is within the range of possible approval and, therefore, should be

13  preliminarily approved.  Further, since the objections raised by Cook, Hussain, and Steinberg can

14  readily be addressed at the final approval hearing, as is typically done, the motions to intervene

15  and sever should be denied.

16

17  Dated: September 4, 2014              */s/ Mark C. Molumphy*

                                         Mark C. Molumphy
18                                       **COTCHETT, PITRE & McCARTHY, LLP**
                                         840 Malcolm Road, Suite 200
19                                       Burlingame, CA 94010
                                         Telephone: (650) 697-6000
20                                       Facsimile: (650) 697-0577

21
                                         *Lead Counsel for Plaintiff Stanley Morrical,*
22                                       *derivatively on behalf of Hewlett-Packard Company*

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Lead Plaintiff's Supplemental Memorandum ISO Motion for Prelim. Approval, And In Opposition to Motions to Intervene and to Sever; Master File No. C-12-6003-CRB

15

Exhibit A

From:           Sushovan Hussain [sushovanh@autonomy.com]
Sent:           Friday, December 10, 2010 1:19 AM
To:             Mike Lynch
Subject:        Us idol

Really don't know what to do mike. As I guessed revenue fell away completely yet SMS report shows massive activity. But I speak with the vp's who are far more accurate. Also stouff, Joel and mike I think keep separate sheets and unless I am v wrong don't discuss the sheets hence plane crashes and they don't know. We've covered up with bofa and hopefully db and D?? but if latter 2 don't happen it's totally bad. There are swathes of reps with nothing to do maybe chase imaginary deals.

So radical action is required, really radical, we can't wait any more.

Everywhere I look at us idol it's bad.

Sent from my iPhone