KEKER & VAN NEST LLP
JOHN W. KEKER - # 49092
jkeker@kvn.com
JAN NIELSEN LITTLE - # 100029
jlittle@kvn.com
BROOK DOOLEY - # 230423
bdooley@kvn.com
NICHOLAS D. MARAIS - # 277846
nmarais@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Proposed Intervenor
SUSHOVAN HUSSAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HEWLETT PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION. | Master File No. 3:12-cv-06003-CRB<br><br>**PROPOSED INTERVENOR SUSHOVAN HUSSAIN'S SUPPLEMENTAL BRIEF RE: AUGUST 25 HEARING**<br><br>Date:         September 26, 2014<br>Time:        10:00 a.m.<br>Dept.:        Courtroom 6, 17th Floor<br>Judge:       Hon. Charles R. Breyer |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY APPROVAL REQUIRES A CAREFUL ASSESSMENT OF THE PROPOSED SETTLEMENT ................................................................................... 1

II. SUSHOVAN HUSSAIN IS ENTITLED TO PARTICIPATE MEANINGFULLY IN THIS PROCEEDING—WHETHER AS AN INTERVENOR OR AN OBJECTOR. ........................................................................................................................ 5

    A. Mr. Hussain is entitled to intervene or to object to challenge this settlement, which seeks to severely truncate his legal rights. ................................. 6

    B. Whether he is an intervenor or objector, Mr. Hussain must be permitted to participate meaningfully. ......................................................................................... 9

III. THE PARTIES' "REVISED" SETTLEMENT AGREEMENT ....................................... 11

IV. CONCLUSION .................................................................................................................. 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alvarado Partners LP v. Mehta*
    723 F. Supp. 540 (D. Colo. 1989) ............................................................................................. 7

*Arakaki v. Cayetano*
    324 F.3d 1078 (9th Cir. 2003) ................................................................................................... 6

*Beckman Indus., Inc. v. Int'l Ins. Co.*
    966 F.2d 470 (9th Cir. 1992) ..................................................................................................... 8

*Bell Atl. Corp. v. Bolger*
    2 F.3d 1304 (3d Cir. 1993) ....................................................................................................... 10

*Bushansky v. Armacost*
    12-CV-01597-JST, 2014 WL 2905143 (N.D. Cal. June 25, 2014) ......................................... 9

*Cordy v. USS-Posco Indus.*
    12-CV-00553-JST, 2013 WL 4028627 (N.D. Cal. Aug. 1, 2013) ............................................ 2

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 2, 13

*Harris v. Pernsley*
    820 F.2d 592 (3d Cir. 1987) ...................................................................................................... 7

*Hemphill v. San Diego Ass'n of Realtors, Inc.*
    225 F.R.D. 616 (S.D. Cal. 2005) ............................................................................................. 10

*In re HealthSouth Corp. Sec. Litig.*
    572 F.3d 854 (11th Cir. 2009) .................................................................................................. 6

*In re Mercury Interactive Corp. Sec. Litig.*
    618 F.3d 988 (9th Cir. 2010) .................................................................................................. 10

*In re MRV Commc'ns, Inc. Derivative Litig.*
    CV 08-03800 GAF, 2013 WL 2897874 (C.D. Cal. June 6, 2013) ....................................... 1, 9

*In re Nasdaq Market-Makers Antitrust Litig.*
    1997 WL 805062 (S.D.N.Y. Dec. 31, 1997) ............................................................................ 3

*In re Nat'l Football League Players' Concussion Injury Litig.*
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ........................................................................................ 2

*In re Novatel Wireless Sec. Litig.*
    Civil No. 08cv1689 AJB, 2014 WL 2858518 (S.D. Cal. June 23, 2014) ................................. 6

*In re Oracle Secs. Litig.*
    829 F. Supp. 1176 (N.D. Cal. 1993) ......................................................................................... 3

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................ 1, 2, 3

*League of United Latin Am. Citizens v. Wilson*
    131 F.3d 1297 (9th Cir. 1997) .................................................................................................. 8

*Ortiz v. Fireboard Corp.*
    527 U.S. 815 (1999) ................................................................................................................ 7

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ................................................................................................ 13

*Sw. Ctr. for Biological Diversity v. Berg*
    268 F.3d 810 (9th Cir. 2001) .................................................................................................. 8

*U.S. ex rel. McGough v. Covington Technologies, Co.*
    967 F.2d 1394 (9th Cir. 1992) ................................................................................................ 7

*Waller v. Fin. Corp. of Am.*
    828 F.2d 579 (9th Cir. 1987) .................................................................................................. 7

*Zimmerman v. Zwicker & Associates, P.C.*
    CIV. 09-3905 RMB, 2011 WL 65912 (D.N.J. Jan. 10, 2011) ................................................. 3

**State Cases**

*Cook v. Hewlett-Packard Co.*
    2014 WL 311111 (Del. Ch. Jan 30, 2014) ............................................................................ 13

*In re Oracle Cases*
    4180, 2005 WL 3278775 (Cal. Super. Ct. Nov. 22, 2005) ..................................................... 4

*Strategic Asset Mgmt., Inc. v. Nicholson*
    CIV.A. 20360-NC, 2004 WL 1192088 (Del. Ch. May 20, 2004) .......................................... 5

**Federal Rules**

Fed. R. Civ. P. 23 .......................................................................................................................... 10

Fed. R. Civ. P. 23(e) ....................................................................................................................... 2

Fed. R. Civ. P. 23.1(c) .................................................................................................................... 9

Fed. R. Civ. P. 24(a) ....................................................................................................................... 8

Fed. R. Civ. P. 24(a)(2) ................................................................................................................... 7

Fed. R. Civ. P. 24(c) ....................................................................................................................... 7

On August 25, the Court denied preliminary approval of HP and Plaintiff's proposed settlement and continued the hearing on Mr. Hussain's motion to intervene to September 26. In so doing, the Court asked the parties and proposed intervenors to address several questions:

1. Which issues should be raised <u>before</u> the Court rules on preliminary approval, and which issues ought to be decided <u>after</u> the settlement is preliminarily approved (if it is)?

2. Can the settlement be tested by objection alone—or does Mr. Hussain need to intervene?

Mr. Hussain submits this supplemental brief to address these discrete issues.  We will address the parties' so-called settlement "revisions" at the end of this brief—noting for now that they are entirely cosmetic and raise more concerns than they resolve.

## I. PRELIMINARY APPROVAL REQUIRES A CAREFUL ASSESSMENT OF THE PROPOSED SETTLEMENT.

At the August 25 hearing, the Court asked for briefing on these questions:

> [A]re these issues that are being raised by the proposed intervenors issues that are more suitable to adjudication once preliminary approval has been—has been offered or achieved, rather than— rather than before? …
>
> I also would like to know in further detail as to the scope of review that … the Court should embark upon prior to granting preliminary approval; that is, envisioning a whole period of time where other objectors can come in to the proposed settlement, what should the … Court do in advance of that—of the granting of preliminary approval?[1]

Approval of a derivative action is a two-step process, "similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement deserves preliminary approval and then, after notice of the settlement is provided to class members, determines whether final approval is warranted." *In re MRV Commc'ns, Inc. Derivative Litig.*, CV 08-03800 GAF, 2013 WL 2897874, at *1 (C.D. Cal. June 6, 2013).

<u>Preliminary</u> approval is not just a "rubber stamp" from this Court—it establishes an important initial presumption that the settlement is fair. *See, e.g.*, *In re Tableware Antitrust Litig.*,

---

[1] Hearing Tr. (Aug. 25, 2014), 63:23–64:8 (Breyer, J.).

484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714–15 (E.D. Pa. 2014) (denying preliminary approval) ("Judicial review must be <u>exacting and thorough</u>. The task is demanding because the adversariness of litigation is often lost after the agreement to settle.") (emphasis added).

Moreover, certain issues need to be raised and addressed at this preliminary stage. If the Court wishes to guide or alter discrete terms of the proposed settlement—like the overreaching and unreasonable "Complete Bar Order," which restricts Mr. Hussain's rights and is not cured by the settlement's phantom "judgment credit" provision—it needs to do so <u>before</u> preliminary approval. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)[2] ("Neither the district court nor this court have the ability to 'delete, modify or substitute certain provisions.' The settlement must stand or fall in its entirety.") (citations omitted).[3]

Before the Court blesses the proposed settlement, even preliminarily, it must satisfy itself that the agreement adequately meets at least four criteria:

- It appears to be the product of serious, informed, non-collusive negotiations;
- It has no obvious deficiencies;
- It does not improperly grant preferential treatment to class representatives or segments of the class; and
- It falls within the range of possible approval.

*Cordy v. USS-Posco Indus.*, 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013) (Tigar, J.) (denying preliminary approval because, among other problems, plaintiffs "provide[d] no information about the maximum amount that the putative class members could have recovered"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal.

---

[2] Although *Hanlon* involved a class action—rather than derivative—settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions … are relevant by analogy" here. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:Civil 3D* § 1839 at 195 (2014).

[3] *See also* Dkt. 201 (Revised Stipulation of Settlement), § IX.B.2 (noting that the Agreement <u>shall</u> terminate "at the sole option and discretion of the Company, the Settling Individual Defendants, the Settling Professional Advisor Defendants or the Settling Plaintiffs if (i) the Court, or any appellate court, rejects, <u>modifies</u> or denies approval of any portion of the Agreement or the proposed Settlement that the terminating Settling Party reasonable and in good faith determines is material, including, without limitation, <u>the Complete Bar Order</u>….") (emphases added).

2007) (Walker, J.); *see also, e.g.*, *In re Nasdaq Market-Makers Antitrust Litig.*, 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997).

The fourth of those factors—whether the settlement "falls within the range of the possible approval"—also requires that the Court weigh, at this <u>preliminary</u> stage, "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080 (N.D. Cal. 2007). If the parties' proposed *quid pro quo* is unbalanced, there is no basis for a presumption of fairness and the Court should deny preliminary approval. *See, e.g.*, *Zimmerman v. Zwicker & Associates, P.C.*, CIV. 09-3905 RMB, 2011 WL 65912, at *3 (D.N.J. Jan. 10, 2011) (denying preliminary approval of class action settlement because "there is a phantom benefit to the class but yet the class is required to release their FDCPA claims" and "the scope of the proposed release and agreement not to sue is over inclusive").

Here, unusually—and despite Plaintiff's counsel's claim that "the settlement confers substantial benefits upon HP…," Dkt. 149 at 3—the company is getting <u>no</u> money at all, and its shareholders are being asked to settle for undisclosed governance reforms.[4]

Worse still, as the Court noted on August 25, these reforms may well have been implemented even without this litigation. In explaining his rejection of Oracle's proposed derivative settlement—which conferred nothing but the sort of cosmetic corporate changes proposed here—Judge Walker specifically chastised Oracle for failing to provide "evidence to support derivative plaintiffs' counsel's argument … that their lawsuit, rather than some other stimulus, actually caused Oracle to make these changes.… Fear of further class actions, such as the potentially costly one involved here, must also have provided Oracle with good reason to change its business practices. Notably, the corporation itself has not offered an independent analysis of these issues." *In re Oracle Secs. Litig.*, 829 F. Supp. 1176, 1184 (N.D. Cal. 1993).

By contrast, the shareholders are giving up a great deal. Indeed, this settlement will leave the Individual Defendants in a <u>better</u> position than they would have been absent this litigation

---

[4] Dkt. 201-2, Ex. B (Revised Proposed Notice to Shareholders), at 3 ("HP will implement certain governance reforms related to HP's evaluation of potential mergers and acquisitions…"); Dkt. 201 (Revised Stipulation), § I.A.37 (noting that the Governance Revisions will only be made "available to potential objectors on the terms set forth in the [as-yet-unapproved] Preliminary Approval Order").

3
PROPOSED INTERVENOR HUSSAIN'S SUPPLEMENTAL BRIEF RE: AUGUST 25 HEARING
CASE NO. 3:12-CV-06003-CRB

859364

ever having been filed. In particular, the <u>nonexhaustive</u> 49-part definition of "Released Claims" provides that the Individual Defendants cannot be sued even for violations that have nothing to do with the Autonomy acquisition, including:

- HP's "alleged historical … overpayment for acquisitions"—that is, acquisitions generally, not just the Autonomy transaction;[5]
- The compensation that HP pays Meg Whitman—which, at last count, had climbed from $15.3 million in 2012 to $17.6 million in 2013;
- HP's "hiring and compensation policies and practices"—including, for instance, Leo Apotheker's nearly $10 million in severance pay;
- "[A]<u>ny</u> allegedly false or misleading proxy statements filed by the Company in 2013"—not limited to the Autonomy acquisition in any way; and
- "[A]<u>ny</u> sales of [Individual Defendants'] personally held HP stock."

*See* Dkt. 201 at 20–21. HP's shareholders would even be prohibited from future derivative suits related to this settlement, banishing any future challenge to either (i) Ralph Ferrara's internal "investigation," which was designed to absolve HP and its leadership, and which we estimate to have cost more than $40 million, or (ii) the up to $48 million that HP has agreed to pay Plaintiffs' counsel.[6]

For their part, Whitman, Apotheker, and the other Individual Defendants have refused to acknowledge any wrongdoing[7] or pay any money. If anything, they are now <u>further</u> damaging the Company by using corporate funds to pay Plaintiffs' counsel—a tactic that has been rejected in other cases. *See, e.g.*, *In re Oracle Cases*, 4180, 2005 WL 3278775, at *1 (Cal. Super. Ct.

---

[5] Other recent write-downs include an $8 billion write-down of EDS announced in August 2012; a $1.2 billion write-down of Compaq announced in May 2012; and a $1.67 billion write-down announced in November 2011 in connection with the failed Palm acquisition and related business closures.

[6] *See generally infra* 11 n.14 and accompanying text.

[7] *See* Dkt. 149-2 (Stipulation) at 2 ("[T]he Board resolved … that there is no merit to the claims asserted against the named defendants" in these actions); *id.* at 3 ("[T]he Settling Individual Defendants … expressly deny all assertions of wrongdoing or liability arising out of the allegations in the Federal Action, the State Actions, any other shareholder derivative actions or the shareholder demands…"). Just last month, Plaintiff's counsel Joseph Cotchett told the Financial Times that "[e]xtensive work by the lawyers has shown that HP's board was 'probably negligent' when it bought Autonomy." Financial Times, *Hewlett-Packard v Autonomy: Bombshell that shocked corporate world* (Aug. 12, 2014), http://www.ft.com/cms/s/0/c7c141ca-2172-11e4-a958-00144feabdc0.html#axzz3CK42s7um.

Nov. 22, 2005) (rejecting a proposed settlement where attorneys' fees were to be borne by the company, before accepting revisions that made clear that attorneys' fees "will not result in any harm to the corporation as [they are] being paid entirely by [CEO Larry] Ellison"); *see also Strategic Asset Mgmt., Inc. v. Nicholson*, CIV.A. 20360-NC, 2004 WL 1192088, at *2 (Del. Ch. May 20, 2004) (denying proposed settlement because "the Settling Defendants are charged in SAMI's derivative complaint with having breached their fiduciary duties, but they apparently are not contributing to the settlement (not even to the payment of attorneys' fees).").

## II. SUSHOVAN HUSSAIN IS ENTITLED TO PARTICIPATE MEANINGFULLY IN THIS PROCEEDING—WHETHER AS AN INTERVENOR OR AN OBJECTOR.

The other question raised by the Court at the August 25 hearing was this:

> You know, … [the settlement is] going to be tested. … And the question … in my mind, is, can it be tested by way of objection as distinct from by way of intervention? Because intervention introduces a complexity in … in the litigation that I don't know is actually necessary.[8]

Mr. Hussain has moved to intervene because intervention is the appropriate way to attack the proposed Complete Bar Order (which affects and curtails his formal legal rights), because he requires access to limited discovery to fairly challenge the settlement, and because the collusive and unfair nature of this settlement needs to be tested <u>before</u> preliminary approval. *See, e.g.*, American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.03 cmt. a (2010) ("If problems with the proposed settlement are apparent to the court, it is in the interest of the court and the parties to address those issues promptly, before significant time and resources are invested in notifying the class of the proposed settlement.").

However, Mr. Hussain's concern lies more with protecting his legal interests, and less with the specific means by which he is allowed to do so. Accordingly, he is willing to proceed as either an intervenor or an objector, provided that—<u>prior</u> to preliminary approval—he is allowed to (i) challenge the Complete Bar Order, (ii) address the unfair and collusive nature of the parties' proposed settlement, and (iii) access the limited discovery requested through his July 21 motion.

---

[8] Hearing Tr. (Aug. 25, 2014), 41:17–22 (Breyer, J.).

**A.    Mr. Hussain is entitled to intervene or to object to challenge this settlement, which seeks to severely truncate his legal rights.**

Mr. Hussain's primary concern lies with the settlement's attempts to strip him of his legal rights. In particular, the Complete Bar Order aims to prevent Mr. Hussain (and others) from ever seeking contribution or indemnification from the Individual Defendants—many of whom have repeatedly been accused of directly mismanaging the Autonomy acquisition.[9] While Plaintiff's counsel claims that Mr. Hussain's rights "are not negatively impacted," HP itself has acknowledged the reach of its proposed bar order:

> MR. WOLINSKY:  Mr. Hussain has no personal interest in whether or not the directors and officers get a release.
>
> MR. KEKER:  That's false.
>
> MR. WOLINSKY:  …  The one thing he can't do, HP sues Mr. Hussain. Mr. Hussain says, 'Yes, I may be liable to H-P for $8 billion, but I really think Meg Whitman mismanaged the company, and she should be – she should contribute to the judgment against me.'  That lawsuit is barred….[10]

Hearing Tr. (Aug. 25, 2014), 48:15–49:4 (emphasis added). Because the settlement will negatively impact Mr. Hussain's rights, he is entitled to intervene. *See, e.g.*, Dkt. 165 (HP Opp.) at 2 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003)). Indeed, intervention exists "as a matter of right when … the applicant has a legally protected interest that may be impaired by disposition of the pending action and that interest is not adequately represented by existing parties." *In re Novatel Wireless Sec. Litig.*, Civil No. 08cv1689 AJB, 2014 WL 2858518 (S.D. Cal. June 23, 2014) (granting a third party's motion to intervene to object to proposed settlement—even after a five-month delay—because movant's investment in the company

---

[9] *See, e.g.*, Derivative Complaint, ¶¶ 72 (Individual Defendants "abdicated their duties"); 74 ("HP's officers and directors have also knowingly made false statements to the press…"); 117 (Individual Defendants ignored CFO Catherine Lesjak's "impassioned case against the acquisition before HP's board of directors").

[10] Mr. Wolinsky went on to suggest that, because Mr. Hussain would be entitled to a "judgment credit" for Ms. Whitman's role in HP's mismanagement of Autonomy, this was a "standard" and "routine" provision. Hearing Tr., 49:6–13. Of course, as Mr. Hussain has explained, this settlement is anything but "routine"—here, Ms. Whitman's contribution is zero. *See* Dkt. 170 (Hussain Reply re Mot. to Intervene) at 11–12; *cf. In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 857–58 (11th Cir. 2009) (approving bar order that was balanced by "crediting non-settling defendants in any future judgment with the greater of settling defendant's proportionate liability or the amount actually paid by the settling defendant") (emphasis added).

1 constituted a protectable legal interest).[11] This case is not a close call, but if it were, Rule 24(a)(2) is "construed broadly in favor of proposed intervenors." *U.S. ex rel. McGough v. Covington Technologies, Co.*, 967 F.2d 1394 (9th Cir. 1992).

In fact, when a settlement seeks to curtail the rights of non-parties, as this one does, intervention is the typical safeguard to protect their interests. *See, e.g.*, *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987) (noting that a prejudiced third party has standing to intervene and to object, while noting that "without intervention [its] capacity to effectively defend its interest would be both impaired and impeded"). Although Mr. Hussain <u>also</u> has standing to object as a shareholder, that additional avenue does not undercut his right to intervene. Moreover, Mr. Hussain's dual role—as a non-party target of the Settlement's broad Complete Bar Order and as an HP shareholder—means that he runs the risk of being bound by broad releases even without being a defendant in this suit. Because he will be put on notice of the proposed settlement, his due process rights are in a complicated no man's land. *Cf. Ortiz v. Fireboard Corp.*, 527 U.S. 815, 846 (1999) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (citations omitted); *Alvarado Partners LP v. Mehta*, 723 F. Supp. 540, 554 (D. Colo. 1989) ("Fundamental due process principles prohibit claim extinguishment against anyone not a party to this action."). To protect his constitutional and other legal rights, Mr. Hussain must, at a minimum, get that which intervention would assure him: the right to be heard at both preliminary and (should this case get there) final fairness hearings in order to effectively challenge both the bar against any future contribution claims and the valueless "judgment credit" HP claims protects him, and the right to the discovery he needs to meaningfully bring these challenges.

Perhaps realizing the weakness of its position, HP used the August 25 hearing to focus on a procedural technicality that it never raised in its opposition papers: that Rule 24(c) requires a

---

[11] *See also* Dkt. 165 (HP Opp.) at 4 ("Non-settling defendants are allowed to object only if … a settlement results in formal legal prejudice to them in their individual capacity…"); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) (holding that there is legal prejudice sufficient to "confer standing where a settlement invalidates the contract rights of one not participating in the settlement.") (citations omitted); *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("[A]n applicant has a sufficient interest to intervene when … the contractual rights of the applicant may be affected by a proposed remedy.").

7
PROPOSED INTERVENOR HUSSAIN'S SUPPLEMENTAL BRIEF RE: AUGUST 25 HEARING
CASE NO. 3:12-CV-06003-CRB

pleading as part of the motion to intervene. *See* Hearing Tr. (Aug. 25, 2014), 31:7–8. Ninth Circuit courts have rejected this type of "technical objection," especially where—as here—the proposed intervenor has "otherwise apprised [the Court] of the grounds for the motion." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In addition to mandating broad construction [of Rule 24(a) in favor of potential intervenors], our review is 'guided primarily by practical considerations,' not technical distinctions."). In this instance, the appropriate pleading would be a motion to challenge the settlement or an opposition to Plaintiffs' motion for preliminary approval; Mr. Hussain has plainly spelled out the legal and factual bases for his challenge—as well as the appropriate relief—in his motion to intervene. Dkts. 160, 170.

Of course, HP's concern lies not with procedural niceties: when Vincent Ho sought to intervene to challenge the payout, HP welcomed him with open arms—telling this Court not only that "Ho meets the requirements to intervene,"[12] but that "it would best serve the interests of judicial efficiency" to let him do so. Dkt. 164 at 2. What separates Messrs. Ho and Hussain is not the technicalities of their motions to intervene—there was no proposed new pleading attached to Ho's motion either—but that Mr. Ho has promised not to question the fairness of the settlement itself. *See* Dkt. 164 at ¶ 1 (stipulating that Ho will intervene "for the sole purpose of moving against HP for an award of attorneys' fees….").

Mr. Hussain is not interested in attorneys' fees and not amenable to a settlement buy-out, which puts him in a better position than others to intervene. *See, e.g.*, *id.*; Dkt. 174, 3 (Cook counsel proposing that the August 25 hearing be delayed to allow them "to have time to enter meaningful discussions with HP and the other defendants concerning the Settlement (and necessary modifications thereto)"); Hearing Tr. (Aug. 25, 2014), 31:18–19 (HP counsel explaining that "[w]e've already been talking to the objectors, the potential objectors").

In any event, whatever the other intervenors' concerns may be, they do not appear

---

[12] HP's position presumably means that it agrees that Mr. Ho's and Mr. Hussain's intervention motions are timely. Both were filed within three weeks of HP's motion for preliminary approval. "Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

8

859364

interested in challenging the Bar Order—the provision that <u>requires</u> that Mr. Hussain step in now.

In addition to his clear right to intervene in this matter, Mr. Hussain will also be entitled to object to this settlement as a Securities Holder at the appropriate time. That guarantee is guarded by Federal Rule of Civil Procedure 23.1(c) and spelled out in the parties' proposed settlement:

> Any Securities Holder who wishes to object to the fairness, reasonableness or adequacy of this Agreement or to any term(s) of this Agreement, or to review the Governance Revisions in order to decide whether to lodge an objection, may do so subject to the requirements set out in the Preliminary Approval Order.

Dkt. 149-2 (Stipulation), § V; *see also* Ferrara, *Shareholder Derivative Litigation* § 14.05[2] (2d ed. 2014) (explaining that, "[o]nce proper notice has been given to shareholders…, the court will undertake a complete and thorough review of the fairness and reasonableness of the proposed settlement…."); *Bushansky v. Armacost*, 12-CV-01597-JST, 2014 WL 2905143, at *1 (N.D. Cal. June 25, 2014) (describing the Rule 23.1(c) notice requirement as "guard[ing] against collusive settlement practices"); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *1 (granting final approval only after determining that the proposed settlement was "fundamentally fair, adequate, and reasonable").

### B. Whether he is an intervenor or objector, Mr. Hussain must be permitted to participate meaningfully.

Notwithstanding his right to intervene, Mr. Hussain is willing to proceed in this matter as an objector, as long as his right to participate meaningfully in these proceedings is protected.

First, Mr. Hussain should be permitted to participate at both the preliminary and final approval stages of these proceedings. Without the advocacy of would-be intervenors at this stage, it will be harder for the Court to determine, as it must, whether this settlement is indeed the product of serious, informed, non-collusive negotiations and whether the settlement falls within the range of possible approval. Moreover, if the Court wishes to guide or alter particular terms of the proposed settlement, it needs to do so <u>before</u> preliminary approval. *See supra* 5. The proposed settlement, however, contemplates that objections will be heard only <u>after</u> the settlement is preliminarily approved. *See, e.g.*, Hearing Tr. (Aug. 25, 2014), 31:23–32:1 (HP's lawyers repeatedly encouraging the Court to "preliminarily approve the settlement…, set a hearing, set a schedule for objections…."). As a result, if Mr. Hussain is to proceed as an objector, he should

be allowed to participate at any <u>preliminary</u> hearing—just as he could as an intervenor.

Second, if Mr. Hussain's participation is to be meaningful, he must be given access to whatever informal discovery has already been conducted.  For instance, the 200 documents disclosed in Delaware—which represent just <u>0.001%</u> of the 17.5 million documents Mr. Ferrara claims to have accessed—are undoubtedly relevant to the settlement.  *See, e.g.*, Hearing Tr., 31:18–21 (noting that HP has "been providing documents to potential objectors all along"); *id.* at 32:4–8 ("[W]e worked with the Steinbergs, we worked with Copeland, we provided documents. They actually saw the Demand Review Committee presentation that was shown to … Mr. Cotchett and Robbins Geller there, and … the client was there, and to Judge Walker.").  They should also be made available to Mr. Hussain and other potential objectors.  *See, e.g.*, *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993) (finding sufficient discovery where the objector had "access to all discovery materials in the action and an adequate time before the settlement hearing to examine them").

Whether Mr. Hussain is permitted to participate as an intervenor or as an objector, he is entitled to this discovery.  As an intervenor, Mr. Hussain would be entitled to the same discovery as any party.  Moreover, if Mr. Hussain proceeds as an objector, the Court can ensure that he has adequate access to discovery to render his participation meaningful.  *See, e.g.*, *In re: Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, para. 68) ("[I]n appropriate cases, the court will permit an 'objector discovery relevant to the objections.'").  Where, as here, there has been no discovery—or where an objector has not had "the opportunity to develop a record in support of his objections"—this Court can and should "grant [him] <u>additional</u> discovery."  *See* Ferrara, *Shareholder Derivative Litigation*, § 14.04[2] (emphasis added); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 620 (S.D. Cal. 2005) ("The criteria relevant to the Court's decision whether to permit objectors to conduct discovery are 'the nature and amount of previous discovery, reasonable basis for the evidentiary requests, and number and interests of objectors.'").  Indeed, where there is "evidence indicating that the settlement may be collusive," even discovery into the settlement negotiations themselves is fair game.  *Hemphill*, 225 F.R.D. at 620.  As noted above, other

objectors have already been afforded some discovery; there is no reason why Mr. Hussain should not, at a minimum, receive the same.

### III. THE PARTIES' "REVISED" SETTLEMENT AGREEMENT

Last night, Plaintiff's counsel submitted a revised settlement agreement, *see* Dkt. 201, which makes purely cosmetic changes. It hides the parties' fee arrangement from this Court and the company's shareholders, and attempts through sleight of hand to separate the *quid* (the broad releases and claims bars that protect HP insiders) from the *quo* (undisclosed future attorneys' fees and expenses—now simply "to be determined" later, when no one is looking).[13]

Over three weeks in February and March, the parties "reached an agreement in principle to resolve [these] cases." *See* Dkt. 149-1 (Walker Stipulation), ¶¶ 11–12. They then spent more than <u>five</u> weeks negotiating an appropriate pay-out—ultimately agreeing on a proposal that would heavily compensate Plaintiff's counsel "both for their [past] contributions to the governance revisions … and for their expected [future] role … in assisting HP…." *Id.* at ¶¶ 14–15. That agreement was finalized and "memorialized" in an engagement letter, which HP signed and which was "presented to this Court <u>in connection with</u> the proposed settlement." *Id.* at ¶ 15. As HP has repeatedly told this Court, its engagement of Plaintiff's counsel is a done deal.[14] Indeed, the very motion that HP now asks this Court to grant explains that, "<u>in recognition of the substantial benefits conferred upon HP</u>, HP … <u>has entered into</u> an engagement letter with the Settling Plaintiffs' Counsel…." Dkt 149 (Mot. for Prelim. Approval of Settlement), 12:15–17 (emphasis added). The parties already decided that the past services were worth a minimum of $18 million, with a chance for more. The idea that anything substantively different will result from HP and Plaintiff returning to Judge Walker—who already passed on to this Court their $18–$48 million fee deal after over five weeks of negotiation—is ludicrous.

---

[13] For the Court's convenience, a redline comparison showing the differences between the original June 30 Stipulation (Dkt. 149-2) and the revised September 3 Amended and Restated Stipulation (Dkt. 201) is attached hereto as <u>Exhibit A</u>.

[14] Plaintiffs' counsel's argument that his firm has not yet been retained because he has not yet signed the letter is sophistry. The engagement letter was sent from Mr. Cotchett to HP. HP signed it. Dkt. 149-2, Ex. A at 5. That is a contract. And when the Court asked why HP didn't just "go out and hire [Cotchett's] services," Cotchett explained that they already had. Hearing Tr. (Aug. 25, 2014), 16:20 (emphasis added).

11
PROPOSED INTERVENOR HUSSAIN'S SUPPLEMENTAL BRIEF RE: AUGUST 25 HEARING
CASE NO. 3:12-CV-06003-CRB

859364

Of course, HP is entitled to pay these or other lawyers whatever it wants, <u>outside of</u> the context of a judicially approved settlement; it can simply gift its corporate funds to lawyers not licensed to practice in England if it so wishes.  But here, there can be no doubt that the parties' revised (*i.e.*, now-hidden) fee arrangement is part and parcel of the larger settlement agreement that is before the Court.  *See, e.g.*, Dkt. 201 (Revised Stipulation), § IV.A ("Consistent with the substantial benefits <u>conferred upon</u> and expected to be conferred upon HP and its shareholders…, HP has agreed to pay attorneys' fees and expenses to Settling Plaintiffs' Counsel…."); Hearing Tr. (Aug. 25, 2014) ("THE COURT: … I don't get why, if you want their services, you can't go out and hire their services. … MR. COTCHETT: That's exactly <u>what they did</u>.") (emphasis added).  HP and Plaintiff's counsel can't change what has already happened by editing documents and sweeping potential future fee arrangements out of view.

As a result, any fee arrangements related to this settlement must be evaluated by the Court <u>prior</u> to preliminary approval—an exercise that the Settling Parties have made impossible by refusing to disclose to the Court or HP's shareholders just how much they will ultimately hand over.  *See, e.g.*, Dkt. 201 (Revised Stipulation), § IV.A (agreeing that HP will pay "Settling Plaintiffs' Counsel <u>in an amount to be determined</u>…"); 201-2 (Proposed Notice) at 4 (telling shareholders that "HP has agreed to pay $____ in attorneys' fees and expenses….").

The parties' latest proposal fails <u>each</u> of the preliminary approval tests.  The new, hidden fee arrangement:

- Cannot be "the product of serious, informed, non-collusive negotiations" if those negotiations have not even happened yet.  *See* Dkt. 202 (Molumphy letter) (explaining that the fees issue "will be submitted to binding arbitration");
- Has obvious deficiencies, given that the amount of compensation that the shareholders will pay to Plaintiff's counsel has not been disclosed and that the corporate insiders—who have contributed nothing—are protected from any future litigation;
- Grants preferential treatment to class representatives' counsel; and
- Falls outside the range of possible approval.  There is particular concern about the

12
PROPOSED INTERVENOR HUSSAIN'S SUPPLEMENTAL BRIEF RE: AUGUST 25 HEARING
CASE NO. 3:12-CV-06003-CRB

859364

fairness of settlement agreements "when counsel receive a disproportionate distribution of the settlement"—or, in this case, <u>all of it</u>.  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1021).

This "revised" settlement fails to address the Court's concern—that this *quid pro quo* involves nothing more than a broad release and bar of claims in exchange for future attorneys' fees.  Worse, HP and Plaintiff's counsel have now simply hidden their arrangement from this Court and HP's shareholders.[15]

## IV.     CONCLUSION

Whether Mr. Hussain is to proceed as an intervenor or an objector, the Court should order that:

1. Mr. Hussain will be afforded the opportunity to appear and object at any future hearings on preliminary or final approval, including a briefing schedule (following discovery) to challenge the proposed settlement and its Complete Bar Order;

2. Mr. Hussain will have access to limited discovery, including:

   i. disclosure of an unredacted copy of the amended complaint;

   ii. access to information concerning the "extensive presentation on the findings and recommendations," the "electronic databases containing tens of millions of documents," and the reports of interviews of "nearly 100 individuals" referenced in the Declaration of Judge Walker filed in connection with the proposed settlement;

   iii. the report of the "Independent Committee's findings and recommendations," which formed the basis for HP's Board's resolution "that there is no merit to the claims asserted against the named defendants in the Federal Action or the State Actions (other than as to Legacy Autonomy Official Michael Lynch)…."; and

   iv. the 200 documents (or 2668 pages) that HP provided to Delaware and California plaintiffs' counsel, *see Cook v. Hewlett-Packard Co.*, 2014 WL 311111, *3–4 (Del. Ch. Jan 30, 2014).

*  *  *

---

[15] Section X.L of the Revised Stipulation says that "[t]he Settling Parties expressly acknowledge that no other agreements or understandings not described in this Agreement exist among or between them." Dkt. 201 at 56. Are the Settling Parties willing to aver that no other agreements between them "<u>exist or are contemplated</u>"? Unless the answer is an unqualified "yes," then it is incumbent upon the Court to examine <u>all</u> fee arrangements—those that "exist" and those that are contemplated—as part of this preliminary approval process.

13
PROPOSED INTERVENOR HUSSAIN'S SUPPLEMENTAL BRIEF RE: AUGUST 25 HEARING
CASE NO. 3:12-CV-06003-CRB

859364

If HP truly believes that its proposed settlement deserves this Court's imprimatur—an assessment that its proposal is fundamentally fair and non-collusive—it should welcome these requests with open arms.

Dated:  September 4, 2014                                              KEKER & VAN NEST LLP

                     By: */s/ John W. Keker*
                        JOHN W. KEKER
                        JAN NIELSEN LITTLE
                        BROOK DOOLEY
                        NICHOLAS D. MARAIS

                        Attorneys for Proposed Intervenor
                        SUSHOVAN HUSSAIN