**EXHIBIT 3**

**DECLARATION OF MARC WOLINSKY IN SUPPORT OF HP'S MEMORANDUM
IN SUPPORT OF PRELIMINARY APPROVAL OF THE SETTLEMENT AND
IN OPPOSITION TO THE MOTIONS TO INTERVENE AND SEVER**

CONFIDENTIAL

# HEWLETT-PACKARD COMPANY
# BOARD OF DIRECTORS' RESOLUTION
# REGARDING SHAREHOLDER DERIVATIVE CLAIMS AND DEMANDS

WHEREAS the Board of Directors ("the Board") of Hewlett-Packard Company ("HP" or the "Company") has carefully considered (*i*) the facts and circumstances relating to the acquisition of Autonomy Corporation plc ("Autonomy"), the aftermath of the acquisition, the allegations raised in the lawsuits, proceedings, demands, and other matters arising from or related to the same set of operative facts, (*ii*) numerous other claims regarding the conduct of HP directors and officers, (*iii*) the nature and causes of injuries allegedly sustained by HP from the conduct asserted in the suits, proceedings, demands, and other matters, (*iv*) whether HP has meritorious claims against any responsible persons or entities in connection with the reviewed matters, (*v*) whether those persons or entities would be able to satisfy any judgment entered against them in favor of the Company, and (*vi*) the business and other considerations involved in deciding whether the assertion of any meritorious claims that might exist would be in HP's best interests; and

WHEREAS, in considering those issues, the Board has specifically considered the claims asserted in the actions filed in federal and state courts in California (the "Derivative Actions") and in shareholder demand letters brought and presented on behalf of certain of the Company's shareholders (the "Demand Letters"), and also has carefully considered potential claims as to certain individuals and entities against whom no claim has previously been asserted (collectively, with the asserted claims, the "Potential Claims");

WHEREAS the Board has carefully examined and considered (*i*) the presentations (as more fully described below) of Proskauer Rose LLP, Brown Rudnick LLP, and Choate Hall & Stewart LLP (collectively, "Committee Counsel"), (*ii*) the findings and recommendations of the Independent Committee of the Board (the "Committee") as embodied in a January 10, 2014 resolution (the "Committee Resolution") (attached as Exhibit A to this Resolution), (*iii*) all other reasonably available relevant information regarding the Potential Claims, (*iv*) discussions with the Committee's counsel at the January 15 and 16, 2014 Board meetings, and (*v*) the best interests of HP and its shareholders; and

WHEREAS, as current and/or former executive officers, Raymond Lane, Ann Livermore, and Margaret Whitman have voluntarily recused themselves from participating in the Board's vote on this Resolution concerning the Potential Claims solely to remove any argument that they are not sufficiently disinterested and independent to vote on this Resolution;

NOW, THEREFORE, the Board determines as follows:

1. On August 18, 2011, HP announced its decision to commence a tender offer for all of the shares of Autonomy (the "Acquisition"). The Acquisition closed on October 3, 2011. In the period following the Acquisition, Autonomy's financial performance fell below HP's pre-Acquisition forecasts, and HP eventually learned that Autonomy had engaged in

certain accounting and disclosure improprieties before the Acquisition.  HP ultimately took an $8.8 billion impairment charge relating to Autonomy for the fourth quarter of 2012.

2. The impairment charge led to the Derivative Actions and Demand Letters, which assert allegations relating to the Acquisition, HP's management of Autonomy after the Acquisition, the impairment charge, and other matters.

3. In response to the Derivative Actions and Demand Letters, the Board adopted a Resolution on January 17, 2013 (the "January 2013 Resolution") creating the Committee and appointing Gary Reiner, G. Kennedy Thompson, and Ralph Whitworth as its members.  The Committee members chose Mr. Whitworth as Chair of the Committee.  On July 18, 2013, following Mr. Thompson's resignation from the Board, the Board appointed Robert Bennett (who had joined the Board in 2013) to the Committee.

4. The January 2013 Resolution delegated to the Committee "the authority to (*i*) investigate, review, and evaluate the facts and circumstances alleged in the [Derivative Actions and Demand Letters]; (*ii*) make a recommendation to the Board of Directors whether HP should commence litigation concerning any of the claims asserted in the [Derivative Actions and Demand Letters] and authorize the commencement of and direct the prosecution of any litigation that the Board of Directors may authorize in response to the [Derivative Actions and Demand Letters]; and (*iii*) evaluate and make a recommendation to the Board of Directors whether some or all of the claims asserted in the [Derivative Actions and Demand Letters] should otherwise be pursued by HP and, in connection therewith, adopt any new or modified corporate policies or procedures or other internal corrective measures as the Committee deems appropriate."

5. The Board Resolution further authorized the Committee "to retain, at the expense of HP, such legal and other advisers as the Committee, in its sole discretion, deems necessary and appropriate in connection with the discharge of the duties of the Committee and each of its members," and "to take any and all actions it deems appropriate" respecting the Derivative Actions and Demand Letters.

6. The Committee retained Committee Counsel and the professional advisors and consultants described in the Committee Resolution to advise and assist the Committee in reviewing the matters raised by the Derivative Actions, Demand Letters, and other Potential Claims.  The scope and thoroughness of that review, together with the Committee's oversight of and involvement in it, are explained in detail in the Committee Resolution and in Committee Counsel's supporting presentation information (the "Committee Counsel Presentation").

7. On January 10, 2014, Committee Counsel delivered a copy of the Committee Resolution, as well as the Committee Counsel Presentation, to those members of the Board who will vote on this Board Resolution.  The Board (including the Committee members) met on January 15, 2014 to receive a presentation from the Committee and its counsel and to consider the Committee Resolution.

8. At the January 15, 2014 meeting, the Board, taking into account the findings and recommendations in the Committee Resolution, considered and deliberated on the

2

issues raised by the Derivative Actions, the Demand Letters, and the other Potential Claims, including (among other things) (*i*) the scope and thoroughness of Committee Counsel's review, the Committee Counsel Presentation and other presentations made at the Board meeting, and the Committee Resolution, (*ii*) the Committee members' and Board members' independence and disinterestedness, (*iii*) the Potential Claims, (*iv*) the costs, damages and liabilities incurred by the Company as a consequence of the conduct underlying the Potential Claims, (*v*) the legal principles applicable to the Potential Claims, (*vi*) the application of those legal principles to the Potential Claims, (*vii*) the potential availability of insurance proceeds for any of the Potential Claims, (*viii*) the benefits and costs of pursuing any of the Potential Claims, including various business and prudential considerations and the potential impact on collateral proceedings, (*ix*) potential prospective remedies, and (*x*) potential responses to the Derivative Actions and Demand Letters.

    9. After hearing from the Committee and its counsel, as well as from Company counsel, on all of these issues, and after discussing and deliberating on them with the Committee's counsel, the Board conveyed its findings and decisions regarding the disposition of the Derivative Actions, Demand Letters, and other Potential Claims to the Committee's counsel and directed them to prepare a Resolution for the Board consistent with those findings and decisions. The Board then met on January 16, 2014 to discuss and deliberate on this Resolution.

    10. In making the determinations set out below, and in the exercise of its business judgment, the Board considered, among other things,

    a. the findings and recommendations of the Committee, as set out in the Committee Resolution;

    b. the costs, damages, and liabilities incurred by the Company as a consequence of the conduct underlying the Potential Claims;

    c. the merits of the Potential Claims;

    d. the potential defenses to those claims;

    e. the substantive and procedural provisions of applicable law;

    f. the provision in the Company's Certificate of Incorporation exculpating the Company's directors from financial liability for breaches of the duty of care;

    g. the prospects for recovery of damages;

    h. the defendants' and potential defendants' ability to pay a significant judgment or settlement amount;

    i. the potential availability or unavailability of insurance coverage for the Company (or its subsidiaries) and/or the defendants or potential defendants;

          j.      the costs of the pursuit of Potential Claims by or on behalf of the Company (or its subsidiaries) against any defendant or potential defendant, including any potential indemnification and advancement obligations under applicable law, corporate charters, corporate bylaws, contracts, agreements, or other corporate documents;

          k.      the potential impact that the pursuit of claims by or on behalf of the Company (or its subsidiaries) could have on other investigations or proceedings, including the pending securities and ERISA class actions and governmental investigations in the United States and the United Kingdom;

          l.      any applicable arbitration provisions in contracts with defendants or potential defendants;

          m.      the potential distractions and other business considerations that could result from an action by or on behalf of HP (or its subsidiaries) against some or all of the defendants or potential defendants, including, where applicable, (*i*) the potential for compromising the Company's strategic development, diversification and growth initiatives, (*ii*) the distraction of key employees from their day-to-day business operations, (*iii*) the demands that litigation would impose on in-house counsel tasked with prosecution of those claims, (*iv*) the burden that litigation would impose on the Company's directors, officers, and employees in complying with discovery and trial proceedings and monitoring the progress of the litigation, (*v*) the risk that litigation against the Company's own directors and officers could damage morale within the Company, potentially diminishing employees' enthusiasm for their work, creating mistrust, and leading to employee attrition, (*vi*) the potential for reputational injury resulting from the pursuit of Potential Claims, including the collateral effects on the Company if the defendants or potential defendants assert wrongdoing by HP, (*vii*) the potential for counterclaims and countersuits resulting from the Company's pursuit of Potential Claims, (*viii*) the potential for positive reaction if the Company is perceived as taking deserved action against wrongdoers, and (*ix*) the potential for aggravating relationships with third parties, such as HP's legacy and/or current financial, legal and accounting advisors, if HP were to pursue Potential Claims that implicated their work; and

          11.      the potential availability of contribution claims if the Company pays a judgment or settlement in the securities class action and/or the ERISA class action.

* * * * *

      NOW, THEREFORE, in view of the foregoing, and after carefully considering the Committee Counsel Presentation, the Committee Resolution, Committee counsel's presentation at the Board meeting, and all other information reasonably available to the Board concerning the Potential Claims and the bests interests of the Company, and after the Board's discussions and deliberations described above, the Board (other than Mr. Lane, Ms. Livermore, and Ms. Whitman, who voluntarily recused themselves from participating in the Board's vote, and other than Mr. Bennett solely as to the Committee's and the Board's consideration of Potential Claims against Perella Weinberg Partners) – in the good-faith exercise of its business judgment – hereby concludes and resolves as follows:

1. **Adoption of Committee Resolution:**  RESOLVED that the Committee's conclusions and recommendations are hereby adopted and that the Committee Resolution is incorporated by reference in this Resolution.[1]

2. **Committee Counsel's Review:**  FURTHER RESOLVED that the inquiries undertaken by Committee Counsel (who were neither dominated by nor beholden to HP's management), as assisted by their experts and consultants, were reasonable, were undertaken in good faith, and were sufficiently thorough to allow the Committee and the Board to reasonably rely (where they deemed it appropriate to do so) on counsel's presentation, supported by the Committee's expert advisors and consultants, in discharging their duties, and to allow the Committee and the Board to determine what responses to the Potential Claims (including, without limitation, litigation or other action against current and former directors, officers, advisors, or employees) have merit or are otherwise in the best interests of the Company and its shareholders.

3. **Committee's Work:**  FURTHER RESOLVED that the Committee's work and the Committee Resolution were reasonable, were undertaken in good faith, and were sufficiently thorough to allow the Board members to reasonably rely (where they deemed it appropriate to do so) on them in discharging their duties, and to allow the Board to determine what responses to the Potential Claims (including, without limitation, litigation or other action against current and former directors, officers, advisors, or employees) have merit or are otherwise in the best interests of the Company and its shareholders.

4. **Board Independence and Disinterestedness:**  FURTHER RESOLVED, that Marc Andreessen, Shumeet Banerji, Rajiv Gupta, Gary Reiner, Patricia Russo, Ralph Whitworth, Robert Bennett, James Skinner and Raymond Ozzie (other than Robert Bennett to the extent that he voluntarily recused himself from the Committee's and the Board's consideration of any Potential Claims as to Perella Weinberg Partners, and as to whom the Board therefore makes no determination concerning his independence as to Perella Weinberg Partners) – and each former director who served on the Board at the time the first shareholder derivative action concerning the Acquisition was filed – is or would have been sufficiently disinterested and independent under the standards established by Delaware law to consider a pre-suit shareholder demand concerning the Potential Claims and to consider and make decisions concerning the Committee's findings, conclusions, and recommendations, in that no such director (*i*) has a substantial likelihood of being held personally liable for money damages arising from the Potential Claims, (*ii*) has a personal financial interest that might conflict with the interests of the Company, (*iii*) is or was dominated or controlled by any other director or any other person or entity reviewed in connection with the Potential Claims, (*iv*) has a disabling business, personal, financial, political, or philanthropic relationship with any other director, person, or entity reviewed in connection with the Potential Claims, or (*v*) is otherwise subject to any external

---

[1] Terms capitalized but not defined in this Resolution shall have the meaning given to them in the Committee Resolution.

influence that would prevent him or her from bringing his or her own judgment to bear on the issues in question.

     5.    **HP Directors:**  FURTHER RESOLVED that each current or former **director of the Company**, in connection with actions taken or not taken concerning the Potential Claims (including the Acquisition, the Integration, and the Impairment):

     a.    Is exculpated from financial liability to the Company to the fullest extent consistent with Del. Gen. Corp. L. § 102(b)(7), pursuant to a provision of the Company's Certificate of Incorporation;

     b.    Sufficiently informed himself or herself of all reasonably available material information before making decisions relating to the Potential Claims;

     c.    Discharged his or her duties without engaging in gross negligence, without exhibiting a reckless indifference to or a deliberate disregard of the Company's stockholders, and without participating in actions that were outside the bounds of reason;

     d.    In discharging his or her duties, relied on, in appropriate circumstances, information, opinions, reports, or other statements prepared by

     i.    One or more officers or employees of the Company whom the director reasonably believed to be reliable and competent regarding the relevant issues, and

     ii.    Independent experts and advisors whom the director reasonably believed to be reliable and competent regarding the relevant issues;

     e.    Acted in a manner he or she believed to be in the best interests of the Company and its shareholders, did not act in his or her own self-interest, and did not allow any personal, business, or financial interest possessed by a director (including himself or herself), officer, or controlling shareholder and not shared by the Company's shareholders generally to take precedence over the Company's best interests;

     f.    Discharged his or her duties in good faith, without engaging in an intentional failure to act in the face of a known duty to act, and without demonstrating a conscious disregard for his or her duties;

     g.    Did not intentionally cause the Company to violate positive law;

     h.    Was capable of exercising his or her own independent judgment concerning the Potential Claims free of domination or control by a third party;

     i.    Fulfilled his or her duty of oversight and assured himself or herself that an adequate process was in place to allow the Board to fulfill its oversight responsibilities concerning the Potential Claims (including the integration of Autonomy into HP and the impairment charge taken for Autonomy) by

      i. Not failing to implement any reporting, information system, or controls at the Company, and

      ii. Having implemented such systems or controls, not failing to monitor or oversee operations or otherwise disabling himself or herself from being informed of risks or problems at the Company that required his or her attention;

    j. Did not knowingly, deliberately, recklessly, grossly negligently, or negligently misinform or mislead the Company, its shareholders, or the market in his or her public disclosures or in any other dissemination of information in connection with the Potential Claims;

    k. Did not engage in any so-called "abuse of control" in connection with any of the Potential Claims;

    l. Did not receive any improper personal benefit in connection with the Potential Claims;

    m. Did not irrationally squander or give away corporate assets or otherwise engage in or permit corporate waste in relation to the Potential Claims;

    n. Did not violate federal or state securities laws or other laws in connection with the Potential Claims;

    o. Was not unjustly enriched in connection with any of the Potential Claims; and

> Therefore, (*i*) there is no merit to any claim for (*a*) breach of the fiduciary duty of care (for which the directors are exculpated from financial liability in any event), (*b*) breach of the fiduciary duty of loyalty for self-dealing or acting in bad faith, (*c*) breach of the fiduciary duty of loyalty for failing to provide adequate oversight, (*d*) breach of the fiduciary duty of disclosure, (*e*) corporate waste, (*f*) abuse of control, (*g*) unjust enrichment, or (*h*) violation of federal or state securities laws or other laws against any current or former director of the Company arising from any actions taken or not taken concerning the Potential Claims; (*ii*) no current or former director would likely be subject to liability concerning the Potential Claims; (*iii*) considering the above and the other factors set out elsewhere in the Committee Resolution and this Resolution, it would not be in the best interests of the Company and its shareholders to pursue litigation or other action against any current or former director of the Company in his or her capacity as a director concerning the Potential Claims; and (*iv*) all present directors are considered independent and disinterested in this matter in the future.

6.     **HP Officers:**  FURTHER RESOLVED that each current or former **officer of the Company**, with the exclusion of Michael Lynch (whose conduct as an HP officer is addressed separately below), as to actions taken or not taken concerning the Potential Claims:

a.     Sufficiently informed himself or herself of all reasonably available material information before making decisions relating to the Potential Claims;

b.     Discharged his or her duties without engaging in gross negligence, without exhibiting a reckless indifference to or a deliberate disregard of the Company's stockholders, and without participating in actions that were outside the bounds of reason;

c.     In discharging his or her duties, relied on, in appropriate circumstances, information, opinions, reports, or other statements prepared by

i.     One or more other officers or employees of the Company whom the officer reasonably believed to be reliable and competent regarding the relevant issues, and

ii.    Independent experts and advisors whom the officer reasonably believed to be reliable and competent regarding the relevant issues;

d.     Acted in a manner he or she believed to be in the best interest of the Company and its shareholders, did not act in his or her own self-interest, and did not allow any personal, business, or financial interest possessed by a director, officer (including himself or herself), or controlling shareholder and not shared by the Company's shareholders generally to take precedence over the Company's best interests;

e.     Discharged his or her duties in good faith, without engaging in an intentional failure to act in the face of a known duty to act, and without demonstrating a conscious disregard for his or her duties;

f.     Did not intentionally cause the Company to violate positive law;

g.     Was capable of exercising his or her own independent judgment concerning the Potential Claims free of domination or control by a third party;

h.     Fulfilled his or her managerial responsibilities and assured himself or herself that an adequate process was in place to allow himself or herself to fulfill his or her managerial responsibilities;

i.     Did not knowingly, deliberately, recklessly, grossly negligently, or negligently misinform or mislead the Company, its shareholders, or the market in his or her public disclosures or in any other dissemination of information in connection with the Potential Claims;

    j. Did not engage in any so-called "abuse of control" in connection with any of the Potential Claims;

    k. Did not receive any improper personal benefit in connection with the Potential Claims;

    l. Did not irrationally squander or give away corporate assets or otherwise engage in or permit corporate waste in relation to the Potential Claims;

    m. Did not violate federal or state securities laws or other laws in connection with the Potential Claims;

    n. Was not unjustly enriched in connection with any of the Potential Claims;

    o. As to James Murrin, did not engage in improper exercises of options for or sales of HP stock in connection with any of the Potential Claims; and

> Therefore, (*i*) there is no merit to any claim for (*a*) breach of the fiduciary duty of care, (*b*) breach of the fiduciary duty of loyalty for self-dealing or acting in bad faith, (*c*) breach of the fiduciary duty of disclosure, (*d*) corporate waste, (*e*) abuse of control, (*f*) unjust enrichment, or (*g*) violation of federal or state securities laws or other laws against any current or former officer of the Company arising from any actions taken or not taken concerning the Potential Claims; (*ii*) no such current or former officer would likely be subject to liability concerning the Potential Claims; and (*iii*) considering the above and the other factors set out elsewhere in the Committee Resolution and this Resolution, it would not be in the best interests of the Company and its shareholders to pursue litigation or other action against any such current or former officer of the Company in his or her capacity as an officer concerning the Potential Claims; *provided, however*, that nothing in this paragraph applies to Michael Lynch's conduct as an HP officer.

    7. **Autonomy:**  FURTHER RESOLVED that, as to whether the Company and/or Hewlett-Packard Vision B.V. ("Bidco") have claims against **Autonomy** under English law for misrepresentations and omissions in Autonomy's published information, other publicly available information, and other information conveyed to the Company (or Bidco):

    a. Bidco has a claim against Autonomy under English law, with precise causes of action to be framed based on advice from the Committee's experts at Erskine Chambers ("Erskine Chambers"); and

    b. Bidco, with advice from Erskine Chambers and the Committee's counsel, should send a letter asserting such claim to Autonomy, and then take any further steps to

obtain redress as necessary and appropriate under English law; *provided, however,* that the assertion of any claim against Autonomy should be deferred, for a period of time to be determined by the Committee, to give Company counsel and the Committee's counsel an opportunity to explore whether the claims can be resolved without further proceedings.

        8.      **Lynch and Hussain (Pre-Acquisition):**  FURTHER RESOLVED that, as to whether the Company, Bidco, and/or Autonomy have claims against **Michael Lynch and Sushovan Hussain for their conduct** *before* **the Acquisition**:

        a.      **Bidco** has claims against Lynch and Hussain under English law, with precise causes of action to be framed based on advice from Erskine Chambers;

        b.      **Autonomy** has claims against Lynch and Hussain under English law, with precise causes of action to be framed based on advice from Erskine Chambers;

        c.      In connection with their English-law claims, Bidco and Autonomy, with advice from Erskine Chambers and the Committee's counsel, should take such actions as are necessary and appropriate under English law (including compliance with any applicable pre-action protocols) to commence proceedings in England against Lynch and Hussain; *provided, however,* that the commencement of any proceedings in England against Lynch and Hussain should be deferred, for a period of time to be determined by the Committee, to give Company counsel and the Committee's counsel an opportunity to explore whether the claims can be resolved without further proceedings;

        d.      HP (and/or Bidco) has claims against Lynch and Hussain under California law arising out of their dealings with HP (and/or Bidco) in relation to the Acquisition; and

        e.      In connection with the California-law claims:

        i.      The Company should embrace the allegations asserted against Lynch in *Noel v. Whitman*, pending in California Superior Court for the County of Santa Clara; and

        ii.      The Company should seek to realign itself as plaintiff in the *Noel* case, add Hussain as a defendant, add any other applicable claims against Lynch, and seek a stay of the *Noel* litigation (at least as to the claims against Lynch and Hussain) pending disposition of the claims to be asserted against Lynch and Hussain in the United Kingdom; *provided, however,* that the assertion of any claim against Lynch and Hussain should be deferred, for a period of time to be determined by the Committee, to give Company counsel and the Committee's counsel an opportunity to explore whether the claims can be resolved without further proceedings.

        9.      **Lynch and Hussain (Post-Acquisition):**  FURTHER RESOLVED that,
REDACTED FOR PRIVILEGE

10

REDACTED FOR PRIVILEGE

      10.    **Other Autonomy Directors and Officers:**  FURTHER RESOLVED that,

R                         REDACTED FOR PRIVILEGE

      11.    **Deloitte:**  FURTHER RESOLVED that, as to whether the Company, Bidco, and/or Autonomy have claims against **Deloitte LLP**:

      a.    Autonomy has claims against Deloitte under English law, with precise causes of action to be framed based on advice from the Committee's experts at Erskine Chambers; and

      b.    Autonomy, with advice from Erskine Chambers and the Committee's counsel, should take such actions as are necessary and appropriate under English law (including compliance with any applicable pre-action protocols) to commence proceedings in England against Deloitte; *provided, however,* that the commencement of any proceedings against Deloitte should be deferred, for a period of time to be determined by the Committee, to give Company counsel and the Committee's counsel an opportunity to explore whether the claims can be resolved without further proceedings.

      12.    **Professional Advisors:**  FURTHER RESOLVED that, as to **KPMG, Ernst & Young LLP, Barclays Capital, Perella Weinberg Partners, Freshfields Bruckhaus Deringer, Gibson Dunn & Crutcher LLP, Slaughter and May, and Morgan, Lewis & Bockius LLP**, the Board determines – after considering the potential claims and the other factors set out in the Committee Resolution and this Resolution – not to assert any claims against those actual or potential defendants.

      13.    **Qatalyst:**  FURTHER RESOLVED that,
                        REDACTED FOR PRIVILEGE

      14.    **Autonomy Customers:**  FURTHER RESOLVED that,
                        REDACTED FOR PRIVILEGE

11

claims appear to exist at least as to certain of those customers, but the Board reserves the right to reconsider this determination.

15. **Demand Futility/Refusal:** FURTHER RESOLVED that the derivative plaintiffs should have served demands on the Company before filing suit, because pre-suit demands would not have been futile.

16. **Response to Actions and Demands:** FURTHER RESOLVED that the Company should move, at a time deemed appropriate by the Committee in consultation with the Committee's counsel and Company counsel, to dismiss all pending derivative actions and rebuff all pending shareholder demand letters except to the extent described above, with any such motions to dismiss asserting that (*i*) pre-suit demand was not excused because a demand would not have been futile, and (*ii*) the complaints fail to state a claim or are otherwise without merit in any event; *provided, however,* that any such dismissals should preserve HP's, Bidco's, and/or Autonomy's rights to assert claims as otherwise stated in this Resolution.

17. **Reforms:** FURTHER RESOLVED that the Committee's recommendations for further M&A reforms, as informed by recommendations from plaintiffs' counsel in *Noel v. Whitman* and *Gould v. Whitman* and by the allegations in Lead Plaintiff's consolidated complaint, should be considered by management and presented for consideration by the Board within 180 days or, for good cause, such other time as deemed appropriate by the Finance and Investment Committee.

18. **Discussions with Plaintiffs' Counsel:** FURTHER RESOLVED that the Company, acting through its counsel and Committee Counsel, shall provide – at the Committee's discretion – this Resolution to counsel for the derivative plaintiffs and demanding shareholders and explore whether any resolution of those claims and demands is feasible consistent with this Resolution.

19. **SFO and FRC:** FURTHER RESOLVED that the Committee, acting through its counsel, shall keep the UK Serious Fraud Office and the UK Financial Reporting Council advised of this Resolution and any proceedings instituted pursuant to them, and otherwise respond to any inquiries from those agencies.

20. **Continued Oversight:** FURTHER RESOLVED that the Committee, in consultation with the Company and its counsel, shall oversee, direct, and monitor the implementation of this Resolution (including the negotiation of a potential resolution with Autonomy, Lynch, Hussain, and Deloitte), and that the Committee's counsel shall report to the Committee concerning such implementation. Nothing in this Resolution is intended to supersede the January 17, 2013 Resolution creating the Committee.