**EXHIBIT 5**

**DECLARATION OF MARC WOLINSKY IN SUPPORT OF HP'S MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF THE SETTLEMENT AND IN OPPOSITION TO THE MOTIONS TO INTERVENE AND SEVER**



# STOCK NOTIFICATION AND AWARD AGREEMENT

| | | | |
|---|---|---|---|
| **Name:** | Hussain,Sushovan | **Employee ID**: | 21808745 |
| **Country:** | United Kingdom | | |

| | |
|---|---|
| **Grant Date:** | 16-Nov-2011 |
| **Grant Number:** | AUTHP288 |
| **Award Amount:** | 68,817 |
| **Award Type/Sub-Type:** | RSA/RSU |
| **Plan:** | HP 2004 Amended & Restated SIP |
| **Vesting Schedule:** | 1/3 per year, on each anniversary of the grant date, for 3 years |

## Restricted Stock Units

THIS STOCK NOTIFICATION AND AWARD AGREEMENT, as of the Grant Date noted above between Hewlett-Packard Company, a Delaware Corporation ("Company"), and the employee named above ("Employee"), is entered into as follows:

WHEREAS, the continued participation of the Employee is considered by the Company to be important for the Company's continued growth; and

WHEREAS, in order to give the Employee an incentive to continue in the employ of the Company (or its Affiliates or Subsidiaries), to accept ancillary agreements designed to protect the legitimate business interests of the Company that are made a condition of this award and to participate in the affairs of the Company, the HR and Compensation Committee of the Board of Directors of the Company or its delegates ("Committee") has determined that the Employee shall be granted restricted stock units representing hypothetical shares of the Company's common stock ("RSUs"), with each RSU equal in value to one share of the Company's $0.01 par value common stock ("Shares"), subject to the restrictions stated below and in accordance with the terms and conditions of the Plan named above ("Plan"), a copy of which can be found on the Equity Award Programs website or by written or telephonic request to the Company Secretary.

THEREFORE, the parties agree as follows:

1. Grant of Restricted Stock Units.
   Subject to the terms and conditions of this Stock Notification and Award Agreement and of the Plan, the Company hereby grants to the Employee the number of RSUs set forth above.

2. Vesting Schedule.
   The interest of the Employee in the RSUs shall vest according to the vesting schedule set forth above, or if earlier, in accordance with Section 8, below. Unless, the provisions of Section 8 apply, the Employee must remain in the employ of the Company on a continuous basis through the close of business on the last Vesting Date, as set forth above, and the Employee must be in compliance with the requirements and conditions provided for in the Plan and this Stock Notification and Award Agreement for the interest of the Employee in the RSUs to become fully vested on that date.

3. Benefit Upon Vesting.
   Within 75 days of each vesting date set forth on the above vesting schedule, the Company shall deliver or pay, as applicable, to the Employee Shares or a combination of cash and Shares, as the Company determines in its sole discretion, with a value equal to:

   (a)  the number of RSUs that have become vested as of such vesting date, multiplied by the fair market value (as defined in the Plan) of a Share on the date on which such RSUs vested; plus

   (b) a dividend equivalent payment determined by:

       (1) Multiplying, separately, the number of RSUs that became vested as determined in Section 3(a) by the dividend per Share on each dividend payment date between the Grant Date and the applicable vesting date to determine the dividend equivalent amount for each applicable dividend payment date;

  (2) dividing the amount determined in (1) above by the fair market value of a Share on the dividend payment to determine the number of additional whole and fractional RSUs to be credited to the Employee; and

  (3) multiplying the number of additional RSUs determined in (2) above by the fair market value of a Share on the vesting date to determine the aggregate value of dividend equivalent payments for such vested RSUs;

provided, however, that if any aggregated dividend equivalent payments in paragraph (b)(3) above to be delivered in Shares results in a payment of a fractional share, such fractional share shall be rounded up to the nearest whole share.

4. Restrictions.
Except as otherwise provided for in this Stock Notification and Award Agreement, the RSUs or rights granted hereunder may not be sold, pledged or otherwise transferred until the RSUs become vested in accordance with the vesting schedule set forth above. The period of time between the date hereof and the date the RSUs become fully vested is referred to herein as the "Restriction Period."

5. Custody of Restricted Stock Units.
The RSUs subject hereto shall be held in escrow in a restricted book entry account with the Company's transfer agent in the name of the Employee.  Upon termination of the Restriction Period, if the Company determines, in its sole discretion, to deliver Shares pursuant to Section 3 above, such Shares shall be released into an unrestricted book entry account with the Company's transfer agent; provided, however, that a portion of such Shares shall be surrendered in payment of required withholding taxes in accordance with Section 12 below, unless the Company, in its sole discretion, establishes alternative procedures for the payment of required withholding taxes.

6. No Stockholder Rights.
RSUs represent hypothetical Shares.  During the Restriction Period, the Employee shall not be entitled to any of the rights or benefits generally accorded to stockholders.

7. Termination of Employment.
Except as otherwise provided for in this Stock Notification and Award Agreement, if the Employee's employment with the Company is terminated at any time for any reason prior to the lapse of the Restriction Period, all unvested RSUs granted hereunder shall be forfeited by the Employee.

8. Disability or Retirement of the Employee.
If the Employee's termination of employment is due to the Employee's total and permanent disability or retirement, in accordance with the applicable retirement policy, all outstanding and unvested RSUs shall immediately vest subject to the condition that the Employee shall have executed a current Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD") that is satisfactory to the Company, and shall not engage in any conduct that creates a conflict of interest in the opinion of the Company.

9. Death of the Employee.
In the event of the Employee's death prior to the end of the Restriction Period, then within 90 days of the Employee's death the Employee's estate or designated beneficiary shall have the right to receive a pro rata payment of cash, Shares or combination of cash and Shares, as the Company determines in its sole discretion.  In the event of the Employee's death after the vesting date but prior to the payment associated with such the RSUs, then within 90 days of the Employee's death payment for such RSUs shall be made to the Employee's estate or designated beneficiary.

10. Deferral of Compensation.
Payments made pursuant to this Plan and this Stock Notification and Award Agreement are intended to comply with or qualify for an exemption from Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A").  The Company reserves the right, to the extent the Company deems necessary or advisable in its sole discretion, to unilaterally amend or modify the Plan and/or this Stock Notification and Award Agreement to ensure that all RSU Awards are made in a manner that complies with Section 409A (including, without limitation, the avoidance of penalties thereunder), provided however, that the Company makes no representations that the RSU Awards will be exempt from any penalties that may apply under Section 409A and makes no undertaking to preclude Section 409A from applying to this RSU Award.

11. Accelerated or Delayed Delivery.
Notwithstanding anything in this Stock Notification and Award Agreement to the contrary, the Company, in its sole discretion may accelerate or delay the delivery of any RSUs. If the RSUs are subject to Section 409A, such acceleration or delay shall be only under the circumstances, and to the extent, permitted by Section 409A.  Further, in the event the Company elects to accelerate delivery of any RSUs subject to Section 409A or pay cash in exchange for the cancellation of any RSUs subject to Section 409A as the result of a Change in Control pursuant to the Plan such acceleration or exchange shall only be effective to the extent the event constitutes a change in control event for purposes of Section 409A. In all other circumstances delivery will be made in accordance with the normal vesting schedule.

12. Taxes.
 (a) The Employee shall be liable for any and all taxes, including income tax, social insurance, payroll tax, payment on account, employer taxes or other tax-related items related to the Employee's participation in the Plan and legally applicable to or otherwise recoverable from the Employee (such as fringe benefit tax) by the Company and/or the Employee's employer (the "Employer") whether incurred at grant, vesting, sale, prior to vesting or at any other time ("Tax-Related Items").  In the event

that the Company or the Employer is required, allowed or permitted to withhold taxes as a result of the grant or vesting of RSUs, or subsequent sale of Shares acquired pursuant to such RSUs, or due upon receipt of dividend equivalent payments, the Employee shall surrender a sufficient number of whole Shares, make a cash payment or make adequate arrangements satisfactory to the Company and/or the Employer to withhold such taxes from Employee's wages or other cash compensation paid to the Employee by the Company and/or the Employer at the election of the Company, in its sole discretion, or, if permissible under local law, the Company may sell or arrange for the sale of Shares that Employee acquires as necessary to cover all applicable required withholding taxes that are legally recoverable from the Employee (such as fringe benefit tax) and required social security contributions at the time the restrictions on the RSUs lapse, unless the Company, in its sole discretion, has established alternative procedures for such payment. However, with respect to any RSUs subject to Section 409A, the Employer shall limit the surrender of Shares to the minimum number of Shares permitted to avoid a prohibited acceleration under Section 409A. The Employee will receive a cash refund for any fraction of a surrendered Share or Shares in excess of any and all Tax-Related Items. To the extent that any surrender of Shares or payment of cash or alternative procedure for such payment is insufficient, the Employee authorizes the Company, its Affiliates and Subsidiaries, which are qualified to deduct tax at source, to deduct from the Employee's compensation all Tax-related Items. The Employee agrees to pay any Tax-Related Items that cannot be satisfied from wages or other cash compensation, to the extent permitted by law.

To avoid negative accounting treatment, the Company and/or the Employer may withhold or account for Tax-Related Items by considering applicable minimum statutory withholding amounts or other applicable withholding rates. If the obligation for Tax-Related Items is satisfied by withholding in Shares, for tax purposes, the Employee is deemed to have been issued the full number of Shares subject to the vested RSUs, notwithstanding that a number of the Shares are held back solely for the purpose of paying the Tax-Related Items due as a result of any aspect of the Employee's participation in the Plan.

(b) Regardless of any action the Company or the Employer takes with respect to any or all Tax-Related Items, the Employee acknowledges and agrees that the ultimate liability for all Tax-Related Items is and remains the Employee's responsibility and may exceed the amount actually withheld by the Company or the Employer. The Employee further acknowledges that the Company and/or the Employer: (i) make no representations nor undertakings regarding the treatment of any Tax-Related Items in connection with any aspect of this grant of RSUs, including, but not limited to, the grant, vesting or settlement of RSUs, the subsequent delivery of Shares and/or cash upon settlement of such RSUs or the subsequent sale of any Shares acquired pursuant to such RSUs and receipt of any dividends or dividend equivalent payments; and (ii) notwithstanding Section 10, do not commit to and are under no obligation to structure the terms or any aspect of this grant of RSUs to reduce or eliminate the Employee's liability for Tax-Related Items or to achieve any particular tax result. Further, if the Employee has become subject to tax in more than one jurisdiction between the date of grant and the date of any relevant taxable or tax withholding event, as applicable, the Employee acknowledges that the Company and/or the Employer (or former employer, as applicable) may be required to withhold or account for Tax-Related Items in more than one jurisdiction. The Employee shall pay the Company or the Employer any amount of Tax-Related Items that the Company or the Employer may be required to withhold or account for as a result of the Employee's participation in the Plan or the Employee's receipt of RSUs that cannot be satisfied by the means previously described. The Company may refuse to deliver the benefit described in Section 3 if the Employee fails to comply with the Employee's obligations in connection with the Tax-Related Items.

(c) In accepting the RSUs, the Employee consents and agrees that in the event the RSUs become subject to an employer tax that is legally permitted to be recovered from the Employee, as may be determined by the Company and/or the Employer at their sole discretion, and whether or not the Employee's employment with the Company and/or the Employer is continuing at the time such tax becomes recoverable, the Employee will assume any liability for any such taxes that may be payable by the Company and/or the Employer in connection with the RSUs. Further, by accepting the RSUs, the Employee agrees that the Company and/or the Employer may collect any such taxes from the Employee by any of the means set forth in this Section 12. The Employee further agrees to execute any other consents or elections required to accomplish the above, promptly upon request of the Company.

13. Data Privacy Consent.
The Employee understands that the Company, its Affiliates, its Subsidiaries and the Employer hold certain personal information about the Employee, including, but not limited to, name, home address and telephone number, date of birth, social insurance number or other identification number, salary, nationality, job title, any shares of stock or directorships held in the Company, details of all RSUs, options or any other entitlement to shares of stock awarded, canceled, purchased, exercised, vested, unvested or outstanding in the Employee's favor for the exclusive purpose of implementing, managing and administering the Plan ("Data"). The Employee understands that the Data may be transferred to any third parties assisting in the implementation, administration and management of the Plan, that these recipients may be located in the Employee's country or elsewhere and that the recipient country may have different data privacy laws and protections than the Employee's country. HP is committed to protecting the privacy of the Employee's Data in such cases. By contract with both the HP affiliate and with HP vendors, the people and companies that have access to the Employee's Data are bound to handle such data in a manner consistent with the HP Privacy Policy and law. HP also performs due diligence and audits on its vendors in accordance with good commercial practices to ensure their capabilities and compliance with those commitments.

The Employee may request a list with the names and addresses of any potential recipients of the Data by contacting the local human resources representative. The Employee understands that Data will be held only as long as is necessary to implement, administer and manage participation in the Plan.

14. Plan Information.

The Employee agrees to receive copies of the Plan, the Plan prospectus and other Plan information, including information prepared to comply with laws outside the United States, from the [Equity Award Programs website](#) referenced above and stockholder information, including copies of any annual report, proxy and Form 10-K, from the investor relations section of the HP website at [www.hp.com](#).  The Employee acknowledges that copies of the Plan, Plan prospectus, Plan information and stockholder information are available upon written or telephonic request to the Company Secretary. The Employee hereby consents to receive any documents related to current or future participation in the Plan by electronic delivery and agrees to participate in the Plan through an on-line or electronic system established and maintained by the Company or another third party designated by the Company.

15. Acknowledgment and Waiver.
    By accepting this grant of RSUs, the Employee acknowledges and agrees that: (i) the Plan is established voluntarily by the Company, it is discretionary in nature and, subject to Section 18(d), may be modified, amended, suspended or terminated by the Company at any time; (ii) the grant of RSUs is voluntary and occasional and does not create any contractual or other right to receive future grants of Shares or RSUs, or benefits in lieu of Shares or RSUs, even if Shares or RSUs have been granted repeatedly in the past; (iii) all decisions with respect to future grants, if any, will be at the sole discretion of the Company and/or the Committee; (iv) the Employee's participation in the Plan shall not create a right to further employment with the Employer and shall not interfere with the ability of the Employer to terminate the Employee's employment relationship at any time and it is expressly agreed and understood that employment is terminable at the will of either party, insofar as permitted by law;  (v)  the Employee is participating voluntarily in the Plan; (vi)  RSUs and their resulting benefits are extraordinary items that are outside the scope of the Employee's employment contract, if any; (vii) RSUs and their resulting benefits are not intended to replace any pension rights or compensation; (viii) RSUs and their resulting benefits are not part of normal or expected compensation or salary for any purposes, including, but not limited to calculating any severance, resignation, termination, redundancy, dismissal, end of service payments, bonuses, long-service awards, pension or retirement or welfare benefits or similar payments insofar as permitted by law and in no event should be considered as compensation for, or relating in any way to, past services for the Company, the Employer or any Subsidiary or Affiliate; (ix) this grant of RSUs will not be interpreted to form an employment contract or relationship with the Company, and furthermore, this grant of RSUs will not be interpreted to form an employment contract with the Employer or any Subsidiary or Affiliate;  (x) the future value of the underlying Shares is unknown and cannot be predicted with certainty; (xi) no claim or entitlement to compensation or damages shall arise from forfeiture of the RSUs resulting from termination of Employee's employment by the Company or the Employer (for any reason whatsoever and whether or not in breach of local labor laws), and in consideration of the grant of the RSUs to which the Employee is otherwise not entitled, the Employee irrevocably agrees never to institute any claim against the Company or the Employer, waives his or her ability, if any, to bring any such claim, and releases the Company and the Employer from any such claim; if, notwithstanding the foregoing, any such claim is allowed by a court of competent jurisdiction, then, by participating in the Plan, the Employee shall be deemed irrevocably to have agreed not to pursue such claim and to have agreed to execute any and all documents necessary to request dismissal or withdrawal of such claims; (xii) notwithstanding any terms or conditions of the Plan to the contrary, in the event of termination of the Employee's employment (whether or not in breach of local labor laws), the Employee's right to receive benefits under this Stock Notification and Award Agreement after termination of employment, if any, will be measured by the date of termination of Employee's active employment and will not be extended by any notice period mandated under local law (e.g., active employment would not include a period of "garden leave" or similar period pursuant to local law); (xiii) the Committee shall have the exclusive discretion to determine when the Employee is no longer actively employed for purposes of the RSUs.

16. No Advice Regarding Grant.
    The Company is not providing any tax, legal or financial advice, nor is the Company making any recommendations regarding the Employee's participation in the Plan, or the Employee's acquisition or sale of the underlying Shares.  The Employee is hereby advised to consult with his or her own personal tax, legal and financial advisors regarding his or her participation in the Plan before taking any action related to the Plan.

17. Additional Eligibility Requirements Permitted.
    In addition to any other eligibility criteria provided for in the Plan, the Company may require that the Employee execute a separate document agreeing to the terms of a current ARCIPD in a form acceptable to the Company and/or that the Employee be in compliance with the ARCIPD throughout the entire vesting period and through the date the RSU is to be awarded or settled. If such separate document is required by the Company and the Employee does not accept it within 75 days of the Grant Date or such other date as of which the Company shall require execution of a current ARCIPD in its discretion, this RSU Award shall be cancelled and the Employee shall have no further rights under this Stock Notification and Award Agreement.

18. Miscellaneous.
    (a) The Company shall not be required to treat as owner of RSUs and any associated benefits hereunder, any transferee to whom such RSUs or benefits shall have been transferred in violation of any of the provisions of this Stock Notification and Award Agreement.

    (b) The parties agree to execute such further instruments and to take such action as may reasonably be necessary to carry out the intent of this Stock Notification and Award Agreement.

    (c) Any notice required or permitted hereunder shall be given in writing and shall be deemed effectively given upon delivery to the Employee at his address then on file with the Company.

    (d) The Plan is incorporated herein by reference. The Plan and this Stock Notification and Award Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and

agreements of the Company and the Employee with respect to the subject matter hereof, other than the terms of any severance plan applicable to the Employee that provides more favorable vesting, and may not be modified adversely to the Employee's interest except by means of a writing signed by the Company and the Employee.  Notwithstanding the foregoing, nothing in the Plan or this Stock Notification and Award Agreement shall affect the validity or interpretation of any duly authorized written agreement between the Company and the Employee under which an Award properly granted under and pursuant to the Plan serves as any part of the consideration furnished to the Employee.  This Stock Notification and Award Agreement is governed by the laws of the state of Delaware.

(e) If the Employee has received this or any other document related to the Plan translated into a language other than English and if the meaning of the translated version is different than the English version, the English version will control.

(f) The provisions of this Stock Notification and Award Agreement are severable and if any one or more provisions are determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions shall nevertheless be binding and enforceable.

(g) Notwithstanding Section 18(f), the Company's obligations under this Stock Notification and Award Agreement and the Employee's agreement to the terms of an ARCIPD, if any, are mutually dependent.  In the event that the Employee's ARCIPD is breached or found not to be binding upon the Employee for any reason by a court of law, then the Company will have no further obligation or duty to perform under the Plan or this Stock Notification and Award Agreement.

(h) Any capitalized terms not defined herein shall have the same meaning they have in the Plan.

(i) Appendix.
Notwithstanding any provisions in this Stock Notification and Award Agreement, the grant of the RSUs shall be subject to any special terms and conditions set forth in the Appendix to this Stock Notification and Award Agreement for the Employee's country.  Moreover, if the Employee relocates to one of the countries included in the Appendix, the special terms and conditions for such country will apply to the Employee, to the extent the Company determines that the application of such terms and conditions is necessary or advisable in order to comply with local law or facilitate the administration of the Plan.  The Appendix constitutes part of this Stock Notification and Award Agreement.

(j) Imposition of Other Requirements.
The Company reserves the right to impose other requirements on the Employee's participation in the Plan, on the RSUs and on any Shares acquired under the Plan, to the extent the Company determines it is necessary or advisable in order to comply with local law or facilitate the administration of the Plan, and to require the Employee to sign any additional agreements or undertakings that may be necessary to accomplish the foregoing.

(a) All rights granted and/or Shares delivered under this Stock Notification and Award Agreement are subject to claw back under the Company policy as in effect from time to time.

**HEWLETT-PACKARD COMPANY**

*[signature: Meg Whitman]*

Meg Whitman
CEO and President


*[signature: Michael J. Holston]*

Michael J. Holston
Executive Vice President, General Counsel and Secretary


**RETAIN THIS STOCK NOTIFICATION AND AWARD AGREEMENT FOR YOUR RECORDS**

**Important Note:**  Your award is subject to the terms and conditions of this Stock Notification and Award Agreement and to HP obtaining all necessary government approvals.  If you have questions regarding your award, please discuss them with your manager.

APPENDIX

**AMENDED AND RESTATED
HEWLETT-PACKARD COMPANY 2004 STOCK INCENTIVE PLAN**

**STOCK NOTIFICATION AND AWARD AGREEMENT
FOR NON-U.S. EMPLOYEES**

This Appendix includes additional terms and conditions that govern the RSU Award granted to the Employee if the Employee resides in one of the countries listed herein.  This Appendix is part of the Stock Notification and Award Agreement.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Stock Notification and Award Agreement or the Plan.

**ANGOLA**

Securities Notice
The Plan is not an offer to the public in Angola. RSUs are granted only to employees of HP and its subsidiaries and affiliates.  Any securities granted under the Plan are not negotiable in Angola.

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to legal considerations in Angola, the RSUs granted to Employees in Angola shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

Exchange Control Notice
All proceeds from the vesting or sale of shares and any cash dividends are required to be repatriated to Angola.

**AUSTRALIA**

Australian Addendum and Offer Document
The Employee's right to participate in the Plan and the RSUs granted under the Plan are subject to the terms and conditions stated in the Australian Addendum, the Offer Document, the Plan, the Stock Notification and Award Agreement and this Appendix.

**AUSTRIA**

Consumer Protection Notification
The Employee may be entitled to revoke his or her RSUs on the basis of the Austrian Consumer Protection Act under the following conditions:

(i) If the Employee agrees to accept the RSUs under the Plan, the Employee may be entitled to revoke the Stock Notification and Award Agreement.  The revocation must be made within one week of the day the Employee accepts the Stock Notification and Award Agreement.

(ii) The revocation must be in written form to be valid.  It is sufficient if the Employee returns the Stock Notification and Award Agreement to the Company or the Company's representative with language which can be understood as his or her refusal to conclude or honor the Stock Notification and Award Agreement.  It is sufficient if the revocation is sent within the period discussed above.

**AZERBAIJAN**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to legal considerations in Azerbaijan, the RSUs granted to Employees in Azerbaijan shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

**BRAZIL**

Intent to Comply with Law
By accepting the RSUs, the Employee acknowledges agreement to comply with applicable Brazilian laws and report and pay any and all applicable taxes associated with the vesting of the RSUs, the sale of any Shares acquired upon vesting of the RSUs and the receipt of any dividends.

Labor Law Acknowledgment
This provision supplements Section 15, Acknowledgment and Waiver, of the Stock Notification and Award Agreement:

The Employee also acknowledges agreement that, for all legal purposes: (i) the benefits provided to the Employee under the Plan are unrelated to his or her employment; (ii) the Plan is not a part of the terms and conditions of the Employee's employment; and (iii) the income from the RSUs, if any, is not part of the Employee's remuneration from employment.


**CANADA**

Payout of RSUs in Shares Only
Pursuant to its discretion under Section 2(gg) of the Plan, with respect to all Employees residing in Canada, the Company will convert all vested RSUs only into an equivalent number of Shares.  Employees residing in Canada (or in the event of death, such Employee's legal representative) will not receive an equivalent cash payment with respect to vested RSUs.

Data Privacy
The following provision supplements Section 13, Data Privacy Consent, of the Stock Notification and Award Agreement:

The Employee hereby authorizes the Company and the Company's representatives to discuss with and obtain all relevant information from all personnel, professional or not, involved in the administration and operation of the Plan.  The Employee further authorizes the Company and any Subsidiary or Affiliate and the administrator of the Plan to disclose and discuss the Plan with their advisors.  The Employee further authorizes the Company and any Subsidiary or Affiliate to record such information and to keep such information in the Employee's employee file.

*The following provisions will also apply to Employees who are resident in Quebec:*

Consent to Receive Information in English
The parties acknowledge that it is their express wish that the Stock Notification and Award Agreement, as well as all documents, notices and legal proceedings entered into, given or instituted pursuant hereto or relating directly or indirectly hereto, be drawn up in English.

*Les parties reconnaissent avoir exigé la rédaction en anglais de la convention («Stock Notification and Award Agreement»), ainsi que de tous documents, avis et procédures judiciaires, exécutés, donnés ou intentés en vertu de, ou liés directement ou indirectement à, la présente convention.*

Plan Document Acknowledgment
In accepting the grant of RSUs, Employee acknowledges that he or she has received a copy of the Plan, has reviewed the Plan and the Stock Notification and Award Agreement in their entirety and fully understands and accepts all provisions of the Plan and the Stock Notification and Award Agreement.


**CHINA**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to exchange control restrictions in China, the RSUs granted to Employees in China shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.


**CONGO (BRAZZAVILLE)**

Exchange Control Notice
All proceeds from the vesting or sale of shares and any cash dividends are required to be repatriated to Congo (Brazzaville).


**HONG KONG**

*Securities Warning*
*The RSUs and any Shares issued at vesting of the RSUs do not constitute a public offering of securities under Hong Kong law and are available only to the Employees.  The Stock Notification and Award Agreement, including this Appendix, the Plan and other incidental communication materials have not been prepared in accordance with and are not intended to constitute a "prospectus" for a public offering of securities under the applicable securities legislation in Hong Kong, nor have the documents been reviewed by any regulatory authority in Hong Kong.  The RSUs and any related documentation are intended only for the personal use of the Employee and may not be distributed to any other person.  If the Employee is in any doubt about any of the contents of the Stock Notification and Award Agreement, including this Appendix, or the Plan, the Employee should obtain independent professional advice.*

Payout of RSUs in Shares Only
Pursuant to its discretion under Section 2(gg) of the Plan, with respect to all Employees residing in Hong Kong, the Company will convert all vested RSUs only into an equivalent number of Shares. The Employees residing in Hong Kong (or in the event of death, such the Employee's legal representative) will not receive an equivalent cash payment with respect to vested RSUs.

Nature of Scheme
The Company specifically intends that the Plan will not be an occupational retirement scheme for purposes of the Occupational Retirement Schemes Ordinance.

**HUNGARY**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to legal considerations in Hungary, the RSUs granted to Employees in Hungary shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

**ISRAEL**

Israeli Sub-Plan
The RSUs are granted to the Employee pursuant to the Israeli Sub-Plan to the Amended and Restated Hewlett-Packard Company 2004 Stock Incentive Plan (the "Israeli Sub-Plan"), and are subject to the terms and conditions stated in the Israeli Sub-Plan, the Plan and the Stock Notification and Award Agreement, including this Appendix. By accepting the RSUs, the Employee acknowledges and agrees to be bound by the terms of the Israeli Sub-Plan.

The RSUs and Shares issued upon vesting of such RSUs are intended to qualify for the tax treatment available in Israel pursuant to the provisions of the "capital gain route" under Section 102 of the Israeli Tax Ordinance, including the provisions of the Income Tax (Tax Abatement on the Grant of Shares to Employees) Regulations 2003 (the "Regulations"), and any tax ruling or agreement obtained by the Company or the Employer with regard to the Plan.

Custody of RSUs
The following provisions replace Section 5, Custody of Restricted Stock Units, of the Stock Notification and Award Agreement:

5. Custody of Restricted Stock Units.
    (a) The RSUs subject hereto shall be held in trust by Tamir Fishman, as trustee (the "Trustee") and further recorded in a restricted book entry account in the name of the Employee. Each RSU will be deemed granted on the date stated above, provided that (i) the Company has provided a copy of this Agreement to the Trustee and (ii) the Employee has signed all documents required pursuant to applicable law and under the Plan. Upon completion of the Restriction Period, Shares issued pursuant to Section 3 above shall be deposited with the Trustee (as further detailed below) in lieu of the RSUs previously held by the Trustee; provided, however, that a portion of such Shares shall be surrendered in payment of taxes in accordance with Section 12 of this Stock Notification and Award Agreement, unless the Company, in its sole discretion, establishes alternative procedures for the payment of such taxes.

    (b) Without derogating from the above, the Shares and the rights granted hereunder to the Employee shall further be held in accordance with the undertakings of the Company and Tamir Fishman, as Trustee, under a Trust Agreement in accordance with Section 102(b)(2) of the Israeli Tax Ordinance. Under the conditions of Section 102(b)(2), the RSUs and the Shares may be issued to the Employee only through the Trustee. To receive the tax treatment provided for in Section 102(b)(2), the RSUs and the Shares must be issued to the Trustee for a period of no less than twenty-four (24) months from their Grant Date and deposit with the Trustee (the "Lock-Up Period"). In order for the tax benefits of Section 102(b)(2) to apply, as long as the RSUs are held by the Trustee, the RSUs or the underlying Shares may not be sold, transferred, assigned, pledged or mortgaged (other than through a transfer by will or by operation of law), nor may they be the subject of an attachment or security interest, and no power of attorney or transfer deed shall be given in respect thereof prior to the payment of the tax liability. Upon the conclusion of the Lock-Up Period the Trustee may release the Shares issued hereunder to the Employee only after (i) the receipt by the Trustee of an acknowledgment from the Income Tax Authority that the Employee has paid all applicable tax due pursuant to the Ordinance and Section 102, or (ii) the Trustee withholds any applicable tax due pursuant to the Ordinance and Section 102. Notwithstanding the foregoing, in the event the Employee shall elect to release the Shares prior to the conclusion of the Lock-up Period, the sanctions under Section 102 shall apply to and shall be borne solely by the Employee.

    (c) The Employee understands that in the event of a distribution of rights, including an issuance of stock dividend or bonus shares, in connection with the RSU (the "Additional Rights"), all such Additional Rights shall be deposited with and/or issued to the Trustee for the benefit of the Employee, and shall also be subject to the provisions of Section 102(b)(2). The Lock-Up Period for such Additional Rights shall be measured from the commencement of the Lock-Up Period of the RSU to be issued hereunder, from which the Additional Rights were declared.

Death of the Employee
The following provision supplements Section 9, Death of the Employee, of the Stock Notification and Award Agreement:

As long as the Shares are held by the Trustee for the benefit of the Employee, all rights of the Employee over the Shares cannot be transferred, assigned, pledged or mortgaged, other than by will or laws of descent and distribution.

\*         \*         \*         \*         \*

**TO BE SIGNED BY THE ISRAELI EMPLOYEE WITH A COPY RETURNED TO PAYROLL ADMINISTRATION:**

I have read and understood this Stock Notification and Award Agreement. I understand that the rights and the Shares granted to me under this Stock Notification and Award Agreement are subject to the terms and provisions of Section 102(b)(2) of the Israel Tax Ordinance and its related rules and I hereby accept such rights and Shares subject to such terms and provisions. I acknowledge that my holding, sale and transfer of the Shares and/or any Additional Rights is therefore subject to various restrictions and limitations that are imposed by such section and its related rules, of which I am aware and with which I agree to comply.

**Signed by:** _____

**Date:** _____

**ITALY**

Plan Document Acknowledgment
The Employee acknowledges having read and specifically and expressly approves the following sections of the Stock Notification and Award Agreement: Section 2 ("Vesting Schedule"), Section 4 ("Restrictions"), Section 5 ("Custody of Restricted Stock Units"), Section 12 ("Taxes"), Section 14 ("Plan Information"), Section 15 ("Acknowledgment and Waiver"), Section 16 ("No Advice Regarding Grant"), Section 18(c) ("Notices"), Section 18(e) ("Language"), Section 18(i) ("Appendix"), Section 18(j) ("Imposition of Other Requirements") and the above Data Privacy section included in this Appendix.

**KAZAKHSTAN**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to legal considerations in Kazakhstan, the RSUs granted to Employees in Kazakhstan shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

**MEXICO**

The following provisions supplement Section 15, Acknowledgment and Waiver, in the Stock Notification and Award Agreement:

Labor Law Acknowledgment
By accepting the RSUs, the Employee acknowledges that he or she understands and agrees that:
(i) the RSUs are not related to the salary and other contractual benefits granted to the Employee by the Employer; and (ii) any modification of the Plan or its termination shall not constitute a change or impairment of the terms and conditions of employment.

Policy Statement
The invitation the Company is making under the Plan is unilateral and discretionary and, therefore, the Company reserves the absolute right to amend it and discontinue it at any time without any liability to the Employee.

The Company, with its registered office at 3000 Hanover Street, Palo Alto, California 94304, U.S.A., is solely responsible for the administration of the Plan and participation in the Plan and the acquisition of Stock does not, in any way, establish an employment relationship between the Employee and the Company since the Employee is participating in the Plan on a wholly commercial basis and the sole employer is the Employer, as applicable, nor does it establish any rights between the Employee and Employer.

Plan Document Acknowledgment
By accepting the RSUs, the Employee acknowledges he/she has received a copy of the Plan, has reviewed the Plan and the Agreement in their entirety and fully understands and accepts all provisions of the Plan and the Stock Notification and Award Agreement.

In addition, by signing below, the Employee further acknowledges that having read and specifically and expressly approved the terms and conditions in Section 15 of the Stock Notification and Award Agreement, in which the following is clearly described and established: (i) participation in the Plan does not constitute an acquired right; (ii) the Plan and participation in the Plan is offered by the Company on a wholly discretionary basis; (iii) participation in the Plan is voluntary; and (iv) the Company and its Subsidiaries and Affiliates are not responsible for any decrease in the value of the Shares underlying the RSUs.

Finally, the Employee does not reserve any action or right to bring any claim against the Company for any compensation or damages as a result of participation in the Plan and the Employee therefore grants a full and broad release to his/her Employer and the Company and its Subsidiaries and Affiliates with respect to any claim that may arise under the Plan.

**Spanish Translation**

*Las siguientes disposiciones complementan la Sección 15, Reconocimiento y Renuncia, en el Acuerdo:*

*Reconocimiento de la Ley Labora*
*Al aceptar las Unidades de Acciones, el Empleado reconoce que entiende y acepta que: (i) las Unidades de Acciones no se encuentran relacionadas con el salario ni con otras prestaciones contractuales concedidas al Empleado por parte del Empleador; y (ii) cualquier modificación del Plan o su terminación no constituye un cambio o desmejora de los términos y condiciones de empleo.*

*Declaración de Política*
*La invitación por parte de la Compañía bajo el Plan, es unilateral y discrecional; por lo tanto, la Compañía se reserva el derecho absoluto de modificar el mismo y discontinuarlo en cualquier tiempo, sin ninguna responsabilidad para el Empleado.*

*La Compañía, con oficinas registradas ubicadas en 3000 Hanover Street, Palo Alto, California 94304, U.S.A. es la única responsable por la administración del Plan y de la participación en el mismo y la adquisición de Acciones Comunes no establece de forma alguna, una relación de trabajo entre el Empleado y la Compañía, ya que la participación del Empleado en el Plan es completamente comercial y el único empleador el Empleador en caso de ser aplicable, así como tampoco establece ningún derecho entre el Empleado y su Empleador.*

*Reconocimiento del Documento del Plan*
*Por medio de la aceptación las Unidades de Acciones, el Empleado reconoce que ha recibido una copia del Plan, que el mismo ha sido revisado al igual que la totalidad del Acuerdo y, que ha entendido y aceptado completamente todas las disposiciones contenidas en el Pan y en el Acuerdo.*

*Adicionalmente, al firmar abajo, el Empleado reconoce que ha leído, y que aprueba específica y expresamente los términos y condiciones contenidos en la Sección 15 del Acuerdo, en la cual se encuentra claramente descrito y establecido que: (i) la participación en el Plan no constituye un derecho adquirido; (ii) el Plan y la participación en el mismo es ofrecida por la Compañía de forma enteramente discrecional; (iii) la participación en el Plan es voluntaria; y (iv) la Compañía, así como sus Subsidiarias y Afiliadas no son responsables por cualquier detrimento en el valor de las Acciones Comunes en relación con las Unidades de Acciones.*

*Finalmente, el Empleado declara que no se reserva ninguna acción o derecho para interponer una demanda en contra de la Compañía por compensación, daño o perjuicio alguno como resultado de su participación en el Plan y en consecuencia, otorga el más amplio finiquito a su Empleador, así como a la Compañía, a sus Subsidiarias y Afiliadas con respecto a cualquier demanda que pudiera originarse en virtud del Plan.*

**PERU**

Labor Law Acknowledgment
The following provision supplements Section 15, Acknowledgment and Waiver, of the Stock Notification and Award Agreement:

By accepting the RSUs, the Employee acknowledges that the RSUs are being granted *ex gratia* to the Employee with the purpose of rewarding him or her.

**RUSSIA**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to legal and tax considerations in Russia, the RSUs granted to Employees in Russia shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

The following provisions are added as a new Section 19 of the Stock Notification and Award Agreement:

19. Compliance with Laws And Regulations In Russia:
    (a) I understand that to participate in the Plan, I must comply with all applicable laws and regulations in Russia.

    (b) A copy of this Stock Notification and Award Agreement has been sent to me by the Company as an offer from the territory of the United States of America and my signing hereof shall be deemed an acceptance of such offer; this Stock Notification and Award Agreement shall be deemed to have been concluded at the location of the Company at the following address: 3000 Hanover Street, Palo Alto, California, 94304, USA.

    (c) All actions and proceedings seeking to enforce any provision of, or based on any right arising out of, this Stock Notification and Award Agreement must be brought against either of the parties in the courts of the State of Delaware, County of New Castle,

or, if it has or can acquire jurisdiction, in the United States District Court for the District of Delaware, and each of the parties consents to the exclusive jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

(d) I will comply with the Russian foreign exchange legislation in force at the relevant time.

(e) I will be solely responsible for (i) the proper declaration of all income received in accordance with the Plan and (ii) the payment of all relevant taxes in connection with the receipt of such income as required by applicable Russian law.

(f) I agree to execute such further instruments and to take such other action as may be necessary to facilitate my participation in the Plan.

**SAUDI ARABIA**

Securities Law Notice
This document may not be distributed in the Kingdom except to such persons as are permitted under the Offers of Securities Regulations issued by the Capital Market Authority.

The Capital Market Authority does not make any representation as to the accuracy or completeness of this document, and expressly disclaims any liability whatsoever for any loss arising from, or incurred in reliance upon, any part of this document. Prospective purchasers of the securities offered hereby should conduct their own due diligence on the accuracy of the information relating to the securities. If the Employee does not understand the contents of this document he or she should consult an authorized financial advisor.

**SENEGAL**

Tax Registration Notice
The Employee is required to submit a copy of this Stock Notification and Award Agreement to the tax authorities within one month of date the RSUs are granted and to pay any applicable registration fee.  It is the employee's responsibility to submit the registration and pay the fee.

**SRI LANKA**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to legal considerations in Sri Lanka, the RSUs granted to Employees in Sri Lanka shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

**SOUTH AFRICA**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to exchange control restrictions in South Africa, the RSUs granted to Employees in South Africa shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

Tax Reporting Information
By accepting the RSUs, the Employee agrees to notify his or her Employer of the amount of income realized at vesting of the RSUs.  If the Employee fails to advise his or her Employer of the income at vesting, he or she may be liable for a fine.  The Employee will be responsible for paying any difference between the actual tax liability and the amount withheld.

**SPAIN**

Acknowledgment and Waiver
The following provisions supplement Section 15, Acknowledgment and Waiver, of the Stock Notification and Award Agreement:

By accepting the grant of RSUs, the Employee acknowledges that he or she consents to participation in the Plan and has received a copy of the Plan.

The Employee understands that the Company has unilaterally, gratuitously and discretionally decided to grant RSUs under the Plan to individuals who may be employees of the Company or its Subsidiaries or Affiliates throughout the world.  The decision is a limited decision that is entered into upon the express assumption and condition that any grant will not economically or otherwise bind the Company or any of its Subsidiaries or Affiliates on an ongoing basis.  Consequently, the Employee understands that the RSUs are granted on the assumption and condition that the RSUs or the Shares acquired upon vesting shall not become a part of any

employment contract (either with the Company or any of its Subsidiaries or Affiliates) and shall not be considered a mandatory benefit, salary for any purposes (including severance compensation) or any other right whatsoever. In addition, the Employee understands that this grant would not be made to the Employee but for the assumptions and conditions referred to above; thus, the Employee acknowledges and freely accepts that should any or all of the assumptions be mistaken or should any of the conditions not be met for any reason, then the RSUs shall be null and void.

**UKRAINE**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to exchange control restrictions in the Ukraine, the RSUs granted to Employees in the Ukraine shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

**UNITED KINGDOM**

Payout of RSUs in Shares Only
Pursuant to its discretion under Section 2(gg) of the Plan, with respect to all Employees residing in the United Kingdom, the Company will convert all vested RSUs only into an equivalent number of Shares. Employees residing in the United Kingdom (or in the event of death, such Employee's legal representative) will not receive an equivalent cash payment with respect to vested RSUs.

Joint Election for Transfer of Secondary Class 1 National Insurance Contributions to the Employee
By accepting the RSUs, the Employee agrees to accept any liability for secondary Class 1 national insurance contributions ("Employer NICs"), which may be payable by the Company or the Employer in connection with the RSUs. To accomplish the foregoing, the Employee agrees to make an election between himself or herself and the Employer (the "Election"), in the form specified and/or approved for such Election by HMRC and provided to the Employee by the Company or the Employer, and any other consents or elections required to accomplish the transfer of the Employer NICs to the Employee. The Employee further agrees to enter into such other joint elections as may be required between himself or herself and any successor to the Company and/or the Employer. The Employee agrees to enter into an Election prior to the vesting of the RSUs. If the Employee does not enter into an Election within 75 days of the Grant Date set forth in this Stock Notification and Award Agreement, this RSU Award shall be cancelled and the Employee shall have no further rights under this Stock Notification and Award Agreement.

**UZBEKISTAN**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to exchange control restrictions in Uzbekistan, the RSUs granted to Employees in Uzbekistan shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.

Exchange Control Notice
All proceeds from the vesting or sale of shares and any cash dividends are required to be repatriated to Uzbekistan via a U.S. dollar account at a Uzbek bank.

**VIETNAM**

Payout of RSUs in Cash Only
Pursuant to the Company's discretion under Section 2(gg) of the Plan and notwithstanding the language in Section 3 of the Stock Notification and Award Agreement, due to exchange control restrictions in Vietnam, the RSUs granted to Employees in Vietnam shall be settled in cash only (less any Tax-Related Items or other withholding obligations set forth in Section 12 of the Stock Notification and Award Agreement in accordance with applicable law and/or fees) and do not provide any right for the Employee to receive Shares.