GREENFIELD & GOODMAN LLC
Richard D. Greenfield
(Admitted *Pro Hac Vice*)
Ilene F. Brookler (SBN 269422)
Marguerite R. Goodman
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 917-495-4446
whitehatrdg@earthlink.net
ibrookler@gmail.com

*Attorneys for Proposed Intervenor*
*A.J. Copeland*

[Additional Counsel Appeal on Signature Page]

Attorneys for A.J. Copeland

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HEWLETT PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master File No. 3:12-cv-06003-CRB<br><br>**A.J. Copeland's Notice of Motion, Motion And Memorandum of Points And Authorities In Support of Motion To Deny Preliminary Approval of Revised Settlement Agreement**<br><br>Date: September 26, 2014<br>Time: 10:00 a.m.<br>Dept.: Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3) ......................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

SUMMARY OF ARGUMENT ..................................................................................................1

I.     FACTUAL BACKGROUND ........................................................................................2

II.    ARGUMENT .................................................................................................................4

     A.    PRELIMINARY APPROVAL REQUIRES A CAREFUL ASSESSMENT OF THE PROPOSED SETTLEMENT .......................................................4

     B.    THE PROPOSED SETTLEMENT IS DEFICIENT AND PRELIMINARY APPROVAL SHOULD BE DENIED ..............................................................6

         1.    The Consideration Is Inadequate ...............................................................6

         2.    The Releases And Bar Order Are Overly Broad .......................................9

         3.    The Proposed Notice Is Defective And Incomprehensible ......................11

         4.    Whether As An Intervenor Or An Objector, Mr. Copeland Should Be Permitted to Conduct Discovery Prior to Preliminary Approval ....................................................................................................12

III.   CONCLUSION ............................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992);.................................................................................................3

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...................................................................................................12

*Bushansky v. Armacost*,
  2014 WL 2905143 (N.D. Cal. June 25, 2014).....................................................................11

*Cohen v. Uniroyal*,
  80 F.R.D. 480 (E.D.Pa. 1978)..............................................................................................11

*Cook v. Hewlett-Packard Co.*,
  2014 WL 311111 (Del. Ch. Jan 30, 2014)...........................................................................14

*Cordy v. USS-Posco Indus.*,
  2013 WL 4028627 (N.D. Cal. Aug. 1, 2013) ........................................................................6

*Garner v. Wolfinbarger*,
  430 F. 2d 1093(5th Cir 1970), *cert. denied*, 401 U.S. 974, ................................................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................................5

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
  225 F.R.D. 616 (S.D. Cal. 2005) ...................................................................................12, 13

*In re Chiron Corp. Securities Litig.*,
  2007 WL 4249902 (N.D. Cal. November 30, 2007) .............................................................7

*In re HP Laser Printer Litig.*,
  2011 U.S. Dist. LEXIS 98759 (C.D. Cal., August 31, 2011)................................................7

*In re MRV Commc'ns, Inc. Derivative Litig.*,
  2013 WL 2897874 (C.D. Cal. June 6, 2013) ..................................................................4, 11

*In re: Mercury Interactive Corp. Securities Litigation*,
  618 F.3d 988 (9th Cir. 2010) .................................................................................................8

*In re Nasdaq Market-Makers Antitrust Litig.*,
  1997 WL 805062 (S.D.N.Y. Dec. 31, 1997) .........................................................................6

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  961 F. Supp. 2d 708 (E.D. Pa. 2014).....................................................................................4

*In re Oracle Cases*,
  2005 WL 3278775 (Cal. Super. Ct. Nov. 22, 2005).............................................................10

*In re Oracle Secs. Litig.*,
  829 F. Supp. 1176 (N.D. Cal. 1993)......................................................................................8

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................................. 4

*Petrone v. Veritas Software Corp.*,
  496 F3d 962 (9th Cir. 2007) ................................................................................................... 8

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................................ 13

*Strategic Asset Mgmt., Inc. v. Nicholson*,
  2004 WL 1192088 (Del. Ch. May 20, 2004) ........................................................................ 10

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) .................................................................................................. 4

*Zimmerman v. Zwicker & Associates, P.C.*,
  2011 WL 65912 (D.N.J. Jan. 10, 2011) .................................................................................. 6

**Rules**

F. R. Civ. P. 23(e) ......................................................................................................................... 5

F.R. Civ. P. 23(h) .......................................................................................................................... 8

F. R. Civ. P. 23.1(c) ............................................................................................................... 11, 12

F. R. Civ. P. 24(a) ......................................................................................................................... 4

F. R. Civ. P. 24(c) ......................................................................................................................... 3

**Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
  Procedure*: Civil 3D § 1839 at 195 (2014) ............................................................................ 5

American Law Institute, *Principles of the Law of Aggregate Litigation* (2010) ............................ 5

*Ferrara, Shareholder Derivative Litigation* (2d ed. 2014) ................................................... 11, 12

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 26, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard, A.J. Copeland ("Mr. Copeland"), a shareholder of Hewlett-Packard Company ("HP" or "the Company") at all relevant times, plaintiff in two pending shareholder derivative actions,[1] and a proposed intervenor herein,[2] will move the Court to deny Plaintiff's Motion for Preliminary Approval of Proposed Settlement. The "revisions" to the proposed settlement are mere "window dressing" and do nothing to address this Court's many concerns, as articulated at the hearing on August 25, 2014, when this Court denied preliminary approval of the parties' original proposed settlement. Mr. Copeland files this motion based on the grounds set forth with particularity in his accompanying Memorandum of Points and Authorities in Support, the pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing.

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

Whether the parties' revised proposed settlement and proposed notice should be preliminarily approved, which requires a finding that such settlement is within the range of possible approval, is presumptively fair, the product of serious, informed and non-collusive negotiations, has no obvious deficiencies and does not improperly grant preferential treatment. Fed. R. Civ. P. 23.1 (c).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Summary of Argument:** Mr. Copeland submits this Memorandum in support of his motion to deny preliminary approval of the parties' Amended and Revised Stipulation of

---

[1] Mr. Copeland is plaintiff in two separate shareholder derivative actions pending in this Court and assigned to the Honorable Edward J. Davila. The first action, *Copeland v. Lane, et al.*, Case No. 5:11-cv-01058 (EJD) was filed on March 7, 2011 and a Second Amended Complaint was filed on November 1, 2012. (Doc. 1 and 114, respectively) ("*Copeland I*"). It has been dismissed and is on appeal to the Ninth Circuit, where it is fully briefed. On February 10, 2014, Mr. Copeland filed a second shareholder derivative complaint, *Copeland v. Apotheker, et al.*, Case No. 5:14-cv-0622 (EJD) ("*Copeland II*")(Doc. 1), asserting, *inter alia*, claims for violation of Section 14(a) and 10(b) of the Exchange Act in connection with the 2013 and 2014 Proxy Statements, as well as, *inter alia*, claims arising from the transactions that are the subject of the proposed settlement.
[2] Mr. Copeland filed a Motion to Intervene and Memorandum of Points and Authorities in support thereof on September 8, 2014. Doc. 212. That motion will also be heard on September 26, 2014.

1

Settlement filed September 3, 2014. (Doc. 201) (the "Stipulation").

## I. FACTUAL BACKGROUND

On June 30, 2014, the parties executed the Stipulation and moved for preliminary approval of the proposed settlement. (Doc. 149-2, 149). On August 25, 2014, the Court held a hearing on Plaintiff's preliminary approval motion and stated that it would not approve, as part of a settlement, the proposed arrangement pursuant to which Plaintiff's counsel would be engaged by HP, effectively, to monitor, HP's pursuit of certain claims against the principal officers of Autonomy Corporation plc ("Autonomy") and others following the conclusion of the settlement. The Court expressed other concerns and questions about the proposed settlement, including, *inter alia*, whether the Company may well have made certain proposed corporate governance reforms notwithstanding the proposed settlement, the value of the reforms to HP's shareholders in relation to the value of the claims being released and whether Plaintiff's counsel have conflicts of interest that render their representation of Plaintiff and the Company inadequate.

On September 3, 2014, Plaintiff filed the Stipulation. (Doc. 201).[3] The Stipulation does nothing to cure certain fatal flaws of the proposed settlement, address the Court's expressed concerns (other than to eliminate the back-ed retention of Plaintiff's counsel by HP) or address fundamental questions of the breadth of the releases and the proposed notice that purports to describe them. Specifically, the issue of the fees of Plaintiff's counsel is now obscured entirely from both HP's shareholders and the Court, since such fees are to be mediated through binding arbitration (with the same mediator who signed off on the prior fee arrangement) at some unspecified future date. Stip., ¶ 10. (Doc. 209-1). The settling parties' are thus asking the Court to preliminarily approve the settlement without knowing a key provision of the overall settlement (i.e. what HP's shareholders will be required to pay in attorneys' fees), which provision will also not be part of the notice to HP's shareholders.

Additionally, the broad releases and total claims bar, which will serve to insulate HP's

---

[3] A redlined version of the Amended Stipulation, which shows how it differs from the original Stipulation, is attached as Exhibit A to Proposed Intervenor Hussain's Supplemental Brief Re: August 25 Hearing (Doc. 209-1), which is incorporated herein by reference.

former officers and directors from valuable claims that HP owns that have been asserted by Mr. Copeland and others, are completely unsupported by the settlement's "consideration," which consists entirely of undisclosed corporate governance reforms, which, in the circumstances, among other things: (1) the Company may well have instituted absent this litigation; and, (2) are of questionable and at a minimum unsubstantiated "value" to the shareholders of HP. There remains no monetary component to the proposed settlement, other than an as yet undetermined amount of money to be paid to Plaintiff's counsel. Moreover, the largely convoluted and ambiguous release of claims/persons language of the Stipulation not only stretches well beyond the claims Plaintiff litigated in this case (and thus can legitimately ask the Court to release) but, to the extent referred to in the even more undecipherable proposed notice to HP's shareholders, violates fundamental principles of due process.

The form of notice that the parties have requested the Court to authorize is materially defective in that it is devoid of any meaningful or understandable disclosure regarding the scope of the claims and persons that will be barred and released if the proposed settlement is approved. The proposed notice states that if approved "Plaintiff and all other holders of HP securities will release the individuals and entities identified as 'Releasees' consistent with the terms of the Release in the Agreement." Proposed Notice, Doc. 201-2, p. 4. In turn, the Stipulation contains a non-exhaustive 49-part definition of "Released Claims" that is so opaque, confusing and convoluted as to be virtually incomprehensible even to counsel but would clearly release most of the most valuable claims asserted in *Copeland I and II*, many of which are not the subject of this litigation.

Mr. Copeland requests that *prior* to preliminary approval the Court permit him to (i) challenge the scope of proposed releases, (ii) address the unfair and collusive nature of the parties' proposed settlement; and (iii) access limited discovery as requested through his motion to intervene and further herein.[4] It is anticipated that, *inter alia*, such discovery will

---

[4] Mr. Copeland anticipates that the parties hereto will oppose his request to intervene for, among other reasons, that he did not attach a proposed pleading to the motion as required by F. R. Civ. P. 24(c). Ninth Circuit courts have rejected this type of "technical objection," especially where—as here—the proposed intervenor has "otherwise apprised [the Court] of the grounds for the motion." *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 474 (9th Cir.

3

generate evidence that HP has not been properly represented by its counsel of record in this litigation, having acted principally in the interests of the Company's officers and directors for whom such counsel *de facto* represented in negotiating for, among other benefits to them, unconscionably broad releases. If for no other reason, the settlement should not be preliminary approved because of the failure of HP's interests to be validly put first and foremost by its counsel of record.

## II.  ARGUMENT

### A.  PRELIMINARY APPROVAL REQUIRES A CAREFUL ASSESSMENT OF THE PROPOSED SETTLEMENT

Approval of a derivative action is a two-step process, "similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement deserves preliminary approval and then, after notice of the settlement is provided to class members, determines whether final approval is warranted." *In re MRV Commc'ns, Inc. Derivative Litig.*, CV 08-03800 GAF, 2013 WL 2897874, at *1 (C.D. Cal. June 6, 2013). Preliminary approval is not just a "rubber stamp" from this Court—it establishes an important initial presumption that the settlement is fair. *See, e.g., In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *In re Nat'l Football League Players' Concussion Injury Litig.,* 961 F. Supp. 2d 708, 714–15 (E.D. Pa. 2014) (denying preliminary approval)

---

1992); *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) ("In addition to mandating broad construction [of Rule 24(a) in favor of potential intervenors], our review is 'guided primarily by practical considerations,' not technical distinctions."). In this instance, the appropriate pleading would be the instant motion to challenge the settlement and in opposition to Plaintiffs' motion for preliminary approval.  Mr. Copeland has clearly spelled out the legal and factual bases for his opposition to preliminary approval —as well as the appropriate relief— herein and in his motion to intervene.  Interestingly, HP's concern lies not with procedural niceties: when Vincent Ho sought to intervene to challenge the payout, HP told this Court not only that "Ho meets the requirements to intervene," but that "it would best serve the interests of judicial efficiency" to let him do so. Dkt. 164 at 2. What separates Messrs. Ho and Copeland is not the technicalities of their motions to intervene—there was no proposed new pleading attached to Ho's motion either—but that Mr. Ho, unlike Mr. Copeland, has promised not to question the fairness of the settlement itself.  *See* Dkt. 164 at ¶ 1 (stipulating that Ho will intervene "for the sole purpose of moving against HP for an award of attorneys' fees….").

4

("Judicial review must be exacting and thorough. The task is demanding because the adversariness of litigation is often lost after the agreement to settle.").

Moreover, certain issues need to be raised and addressed at this preliminary stage, if at all. *See, e.g.,* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.03 cmt. a (2010) ("If problems with the proposed settlement are apparent to the court, it is in the interest of the court and the parties to address those issues promptly, before significant time and resources are invested in notifying the class of the proposed settlement."). If the Court wishes to guide or alter discrete terms of the proposed settlement—like the overreaching, unreasonable and intentionally opaque "Complete Bar Order," which restricts the rights of Mr. Copeland (as well as those of other HP shareholders) and would release pending claims he has been pursuing for more than four years with no valuable consideration, it needs to do so *before* preliminary approval, particularly given the material shortcomings in the notice referred to herein. *See, e.g., Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)[5] ("Neither the district court nor this court have the ability to 'delete, modify or substitute certain provisions.' The settlement must stand or fall in its entirety.") (citations omitted).[6]

Before the Court grants preliminarily approval, it must satisfy itself that the agreement adequately meets at least four criteria:

- It appears to be the product of serious, informed, non-collusive negotiations;
- It has no obvious deficiencies;
- It does not improperly grant preferential treatment to class representatives or segments of the class; and

---

[5] Although *Hanlon* involved a class action—rather than derivative—settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions …are relevant by analogy" here. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*: Civil 3D § 1839 at 195 (2014).

[6] *See also* Dkt. 201 (Revised Stipulation of Settlement), § IX.B.2 (noting that the Agreement <u>shall</u> terminate "at the sole option and discretion of the Company, the Settling Individual Defendants, the Settling Professional Advisor Defendants or the Settling Plaintiffs if (i) the Court, or any appellate court, rejects, <u>modifies</u> or denies approval of any portion of the Agreement or the proposed Settlement that the terminating Settling Party reasonable and in good faith determines is material, including, without limitation, the <u>Complete Bar Order</u>….") (emphases added).

5

- It falls within the range of possible approval.

*Cordy v. USS-Posco Indus.,* 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013) (Tigar, J.) (denying preliminary approval because, among other problems, plaintiffs "provide[d] no information about the maximum amount that the putative class members could have recovered"); *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007) (Walker, J.); *see also, e.g., In re Nasdaq Market-Makers Antitrust Litig.,* 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997).

The fourth of those factors—whether the settlement "falls within the range of the possible approval"—also requires that the Court weigh, at this *preliminary* stage, "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.,* 484 F.Supp.2d at 1080 (N.D. Cal. 2007). If the parties' proposed *quid pro quo* is unbalanced, there is no basis for a presumption of fairness and the Court should deny preliminary approval. *See, e.g., Zimmerman v. Zwicker & Associates, P.C.,* CIV. 09-3905 RMB, 2011 WL 65912, at *3 (D.N.J. Jan. 10, 2011) (denying preliminary approval of class action settlement because "there is a phantom benefit to the class but yet the class is required to release their FDCPA claims" and "the scope of the proposed release and agreement not to sue is over inclusive").

### B. THE PROPOSED SETTLEMENT IS DEFICIENT AND PRELIMINARY APPROVAL SHOULD BE DENIED

#### 1. The Consideration Is Inadequate

Despite Plaintiff's unsubstantiated claim that "the settlement confers substantial benefits upon HP…," (Doc. 149 at 3) —the Company is getting no money at all, its shareholders are being asked to settle for undisclosed, indeed essentially secret, "governance reforms" and will be required to pay as-yet-undetermined amount in attorneys fees.[7] Courts in

---

[7] Indeed, the settling parties have already decided that the **past** services of Plaintiffs' counsel are arguably worth a minimum of $18 million. The parties previously spent more than five weeks negotiating and appropriate pay-out to Plaintiff's counsel, ultimately agreeing on a proposal that would heavily (and this Court has decided inappropriately), compensate Plaintiff's counsel "both for their [past] contributions to the governance revisions … *and* for their expected [future] role … in assisting HP …." (Doc. 149-1) (Walker Stipulation, ¶¶ 14-15). The notion that anything substantially different will result from the revised proposal that HP and Plaintiff return to Judge Walker for binding arbitration – when he and they have already passed on to this Court their $18-$48 million fee deal after over five weeks of

6

this district have not hesitated to deny preliminary approval where the proposed settlement does not reflect the merits of the case and where, as here, substantial questions exist as to the adequacy of the notice and independence of those negotiating the proposed settlement. *See, e.g., In re Chiron Corp. Securities Litig.*, 2007 WL 4249902 (N.D. Cal. November 30, 2007) (The judiciary is not a "rubber stamp" for settlements that do not reflect the merits of the case.). According to the Revised Proposed Notice to Shareholders, "HP will implement certain governance reforms related to HP's evaluation of potential mergers and acquisitions …" (Doc. 201-2, Ex. B, p. 3). There is nothing of record as to the purported value of these governance reforms or which demonstrate that they were initiated pursuant to the proposed settlement and not beforehand.

Moreover, details regarding the proposed "Governance Revisions" will *only* be made available to HP shareholders who may be potential objectors and pursuant to a set of procedural "hoops" that are designed to discourage shareholder review. Any shareholder wishing to review the proposed Governance Revisions will be required to submit a written request to counsel for HP, provide certain personal information, *and* agree to be bound by a confidentiality agreement, any breach of which "shall be deemed a breach of a court order." Notice, Doc. 201-2, p. 5; Proposed Preliminary Approval Order, Doc. 201-2, ¶12a.

Thus, in order to even review the consideration provided by the proposed settlement, shareholders must take on onerous and wholly unnecessary confidentiality obligations, the breach of which is automatically considered a breach of court order, subjecting them to possible prosecution or other liability. The proposed settlement is thus structured to *discourage* both transparency and full disclosure of the settlement terms and objections and vetting of those terms by the shareholders of HP. As counsel for HP and Plaintiff are well aware, courts have rejected proposed settlements where the procedure to object was onerous and recognized that objections to proposed settlements should not be discouraged. *See, e.g., In re HP Laser Printer Litig.*, 2011 U.S. Dist. LEXIS 98759 (C.D. Cal., August 31, 2011)(objectors to proposed settlements are helpful in reviewing those settlements and should

---

negotiations – defies logic and is extremely unlikely.

7

not be discouraged); *Petrone v. Veritas Software Corp.*, 496 F3d 962, 972 (9th Cir. 2007) (court cannot analyze the fairness of a proposed settlement without giving class members adequate opportunity to object).

Worse still, as the Court noted on August 25, these so-called reforms may well have been implemented even without this litigation. In explaining his rejection of Oracle's proposed derivative settlement—which conferred nothing but the sort of cosmetic corporate changes proposed here—Judge Walker specifically chastised Oracle for failing to provide "evidence to support derivative plaintiffs' counsel's argument … that their lawsuit, rather than some other stimulus, actually caused Oracle to make these changes.… Fear of further class actions, such as the potentially costly one involved here, must also have provided Oracle with good reason to change its business practices. Notably, the corporation itself has not offered an independent analysis of these issues." *In re Oracle Secs. Litig.,* 829 F. Supp. 1176, 1184 (N.D. Cal. 1993).

Finally, the fees to be paid by HP to plaintiff's counsel are not disclosed. The parties' revised (and now hidden) fee arrangement is, beyond question, part of the larger total settlement package that is before the Court. *See, e.g.,* Doc. 201 (Revised Stipulation), § IV.A ("Consistent with the substantial benefits conferred upon and expected to be conferred upon HP and its shareholders ..., HP has agreed to pay attorneys' fees and expenses to Settling Plaintiffs' Counsel …"); Hearing Tr. (Aug. 25, 2014)("The Court: ….I don't get why, if you want their services, you can't go out and hire their services …. Mr. Cotchett: That's exactly what they did."). HP and Plaintiff's counsel cannot erase what has already happened with respect to attorneys' fees by crossing out a few paragraphs and sweeping potential future fee arrangements under the rug.[8]

---

[8] *In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) is illustrative of the due process issue that arises in the context of notices, both with respect to settlements and fee applications. *Mercury* holds that, in the context of failing to provide timely support in the record to support a fee application of plaintiffs' counsel therein, Rule 23(h) was clearly violated. The 9th Circuit concluded that the District Court abused its discretion when it set an objection deadline before the deadline for lead counsel to file their fee motion. The Court stated that: "the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion." Here, of course, it was not the Court's abuse of its discretion that is at the core of this issue but the settling parties' proposal of a Preliminary Approval Order that does not even

As a result of the history of prior negotiations and attorney fee agreements, any fee arrangement that is part of this settlement *must* be evaluated by the Court prior to preliminary approval, which the parties' have now made impossible by structuring the amount of attorneys' fees to be negotiated/mediated *after* preliminary approval and notice to shareholders. *See, e.g.*, Doc. 201 (Stipulation), § IV.A (agreeing that HP will pay "Settling Plaintiffs' Counsel in an amount to be determined …"); Doc. 201-2 (Proposed Notice) at p. 4 (telling shareholders that "HP has agreed to pay $___ in attorneys' fees and expenses….").

## 2. The Releases And Bar Order Are Overly Broad

In contrast to the inadequate and possibly non-existent consideration offered by the proposed settlement, Mr. Copeland and the other HP shareholders would be forced to surrender a great deal by way of the overly broad releases and complete Bar Order of the proposed settlement. Indeed, this settlement will leave the Individual Defendants in a *better* position than they would have been absent this litigation ever having been filed. In particular, the *non-exhaustive* 49-part definition of "Released Claims", which, as discussed *infra*, is incomprehensible in any event, provides that the Individual Defendants cannot be sued *even for violations that have nothing to do with the Autonomy acquisition*, including:

- HP's "alleged historical … overpayment for acquisitions"—that is, acquisitions generally, not just the Autonomy transaction (e.g., as alleged in *Copeland I and II*);[9]

- The compensation that HP pays Meg Whitman—which, at last count, had climbed from $15.3 million in 2012 to $17.6 million in 2013;

---

require them to specify what fee Plaintiff's counsel would seek from the proposed mediator prior to the objection cut-off date or even the final approval hearing. Moreover, the proposed notice does not disclose that the mediator had previously been instrumental in negotiating the fees potentially payable to Plaintiff's counsel.  It thus appears that the settling parties have ignored their due process obligations to HP's shareholders since they would have no way of knowing whether or not to object to the fee that would be sought, let alone the mediation process incorporated into the new settlement. Given the absence of anything in the record to support either the settlement or the integral fee determination methodology, the Court should not approve either preliminarily or otherwise.

[9] Other recent write-downs include an $8 billion write-down of EDS announced in August 2012; a $1.2 billion write-down of Compaq announced in May 2012; and a $1.67 billion write-down announced in November 2011 in connection with the failed Palm acquisition and related business closures.  These failed acquisitions are the subject of claims in the recently filed complaint in *Copeland II* and would be released and barred by the proposed settlement.

9

- HP's "hiring and compensation policies and practices"—including, for instance, Leo Apotheker's nearly $10 million in severance pay (e.g., as alleged in *Copeland I and II*;

- "[A]ny allegedly false or misleading proxy statements filed by the Company in 2013 (e.g., as alleged in *Copeland II*)"—not limited to the Autonomy acquisition in any way; and

- "[A]ny sales of [Individual Defendants'] personally held HP stock."

*See* Dkt. 201 at 20–21.

However unclear and opaque it is, there is no doubt that the proposed settlement would release most of the valuable claims alleged in *Copeland I* and *Copeland II*, many of which are unrelated to the Autonomy acquisition. A shareholder reading the notice would not have the slightest knowledge of what these claims are, let alone who is being released. A review of the Stipulation itself would not materially alter the level of information provided to the Company's shareholders.

Compounding the scope of the release language of the Stipulation and notice is the boilerplate language that has, regrettably, become commonplace, namely the release of any claims that Plaintiff as a representative of HP's shareholders may have conferred upon them by the provisions of Section 1542 of the California Civil Code.

For their part, Whitman, Apotheker, and the other Individual Defendants have refused to acknowledge any wrongdoing[10] or pay any money. If anything, they are now further damaging the Company by using corporate funds to pay Plaintiffs' counsel—a tactic that has been rejected in other cases. *See, e.g., In re Oracle Cases*, 4180, 2005 WL 3278775, at *1 (Cal. Super. Ct. Nov. 22, 2005) (rejecting a proposed settlement where attorneys' fees were to be borne by the company, before accepting revisions that made clear that attorneys' fees "will not result in any harm to the corporation as [they are] being paid entirely by [CEO Larry] Ellison"); *see also Strategic Asset Mgmt., Inc. v. Nicholson,* CIV.A. 20360-NC, 2004 WL 1192088, at *2 (Del. Ch. May 20, 2004) (denying proposed settlement because "the Settling

---

[10] *See* Doc. 201(Amended Stipulation) at p. 2 ("[T]he Board resolved … that there is no merit to the claims asserted against the named defendants" in these actions); *id.* at pp. 3-4 ("[T]he Settling Individual Defendants … expressly deny all assertions of wrongdoing or liability arising out of the allegations in the Federal Action, the State Actions, any other shareholder derivative actions or the shareholder demands…").

10

Defendants are charged in SAMI's derivative complaint with having breached their fiduciary duties, but they apparently are not contributing to the settlement (not even to the payment of attorneys' fees)."). In addition, they have already authorized the payment of as much as $50 million to counsel for the so-called Demand Review Committee ("DRC") of the Board which, effectively, "whitewashed" the conduct of HP's officers and directors, thus facilitating a no-cash settlement.[11]

### 3. The Proposed Notice Is Defective And Incomprehensible

Before the Court can grant preliminary approval, it must determine that the proposed notice to shareholders is adequate to inform them of the proposed settlement and meets minimum due process requirements. Proper notice is a prerequisite to this Court review of the substantive fairness and reasonableness of the proposed settlement. S*ee e.g., Ferrara, Shareholder Derivative Litigation* § 14.05[2] (2d ed. 2014)[12] (explaining that, "[o]nce proper notice has been given to shareholders…, the court will undertake a complete and thorough review of the fairness and reasonableness of the proposed settlement…."); *Bushansky v. Armacost,* 12-CV-01597-JST, 2014 WL 2905143, at *1 (N.D. Cal. June 25, 2014) (describing the Rule 23.1(c) notice requirement as "guard[ing] against collusive settlement practices*"); In re MRV Commc'ns, Inc. Derivative Litig.,* 2013 WL 2897874, at *1 (granting final approval only after determining that the proposed settlement was "fundamentally fair, adequate, and reasonable").

Here, as indicated above, the proposed notice with respect to, *inter alia*, the claims and persons being released and the purported benefits of the settlement to HP is confusing and contradictory.

---

[11] The purported justification for the broad release of HP's officers and directors is the report of the DRC, referred to as "Whitewash Committee Reports." A settlement based upon such a highly suspect report should not be allowed to proceed absent discovery of it. Shareholders such as Mr. Copeland, if permitted by the Court, can not only obtain the well-hidden report (and incorporate it in the record to be considered by the Court, but is entitled to break through claims of attorney-client privilege and work product. See, *Garner v. Wolfinbarger*, 430 F. 2d 1093(5th Cir 1970), *cert. denied*, 401 U.S. 974, *Cohen v. Uniroyal*, 80 F.R.D. 480, 482 (E.D.Pa. 1978).
[12] Ralph Ferrara was the principal author of this treatise and counsel to the DRC.

### 4. Whether As An Intervenor Or An Objector, Mr. Copeland Should Be Permitted To Conduct Discovery Prior To Preliminary Approval

In addition to his clear right to intervene, as outlined in his motion to intervene, Mr. Copeland will also be entitled to object to this settlement as an HP shareholder. That guarantee is guarded by Federal Rule of Civil Procedure 23.1(c) and spelled out in the parties' proposed settlement:

> Any Securities Holder who wishes to object to the fairness, reasonableness or adequacy of this Agreement or to any term(s) of this Agreement, or to review the Governance Revisions in order to decide whether to lodge an objection, may do so subject to the requirements set out in the Preliminary Approval Order.

Dkt. 149-2 (Stipulation), § V; *See also, e.g., Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1314 (3d Cir. 1993) (finding sufficient discovery where the objector had "access to all discovery materials in the action and an adequate time before the settlement hearing to examine them").

Whether Mr. Copeland is permitted to participate as an intervenor or as an objector, he is entitled to this discovery if for no other reason than to enable him to fully substantiate the factual as well as legal basis for his objections. As an intervenor, Mr. Copeland would be entitled to the same discovery as any party. Moreover, if Mr. Copeland proceeds as an objector, the Court can ensure that he has adequate access to discovery to render his participation meaningful. *See, e.g., In re: Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 994 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, para. 68) ("[I]n appropriate cases, the court will permit an 'objector discovery relevant to the objections.'"). Where, as here, there has been no non-adversarial discovery—or where an objector has not had "the opportunity to develop a record in support of his objections"—this Court can and should "grant [him] additional discovery." *See Ferrara, Shareholder Derivative Litigation*, § 14.04[2] (emphasis added); *Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 620 (S.D. Cal. 2005) ("The criteria relevant to the Court's decision whether to permit objectors to conduct discovery are 'the nature and amount of previous discovery, reasonable basis for the evidentiary requests, and number and interests of

12

objectors.'"). Indeed, where there is "evidence indicating that the settlement may be collusive," even discovery into the settlement negotiations themselves is fair game. *Hemphill*, 225 F.R.D. at 620.

### III. CONCLUSION

The parties' latest proposal fails each of the preliminary approval tests. The new, hidden fee arrangement:

- Cannot be "the product of serious, informed, non-collusive negotiations" if those negotiations have not even happened yet. *See* Dkt. 202 (Molumphy letter) (explaining that the fees issue "will be submitted to binding arbitration");

- Has obvious deficiencies, given that the amount of compensation that the shareholders will pay to Plaintiff's counsel has not been disclosed and that the corporate insiders—who have contributed nothing—are protected from any future litigation; and

- Falls outside the range of possible approval. There is particular concern about the fairness of settlement agreements "when counsel receive a disproportionate distribution of the settlement"—or, in this case, all or most of it. *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1021).

This "revised" settlement fails to address the Court's concern—that this *quid pro quo* involves nothing more than a broad release and bar of claims in exchange for future attorneys' fees. Worse, HP and Plaintiff's counsel have now simply hidden their arrangement from this Court and HP's shareholders.[13] Moreover, as set forth above, the proposed notice fails as a violation of HP shareholders' fundamental due process rights.

---

[13] Section X.L of the Revised Stipulation says that "[t]he Settling Parties expressly acknowledge that no other agreements or understandings not described in this Agreement exist among or between them." Dkt. 201 at 56. Are the Settling Parties willing to aver that no other agreements between them "exist or are contemplated"? Unless the answer is an unqualified "yes," then it is incumbent upon the Court to examine all fee arrangements—those that "exist" and those that are contemplated—as part of this preliminary approval process.

13

Whether Mr. Copeland is to proceed as an intervenor or an objector, the Court should order that: (1) Mr. Copeland be afforded the opportunity to appear and object at any future hearings on preliminary or final approval, including a briefing schedule (following discovery) to challenge the proposed settlement and its Complete Bar Order; (2) Mr. Copeland will have access to limited discovery, including:

    i.    disclosure of an unredacted copy of the amended complaint;

    ii.    access to information concerning the "extensive presentation on the findings and recommendations," the "electronic databases containing tens of millions of documents," and the reports of interviews of "nearly 100 individuals" referenced in the Declaration of Judge Walker filed in connection with the proposed settlement;

    iii.    the report of the "Independent Committee's findings and recommendations," which formed the basis for HP's Board's resolution "that there is no merit to the claims asserted against the named defendants in the Federal Action or the State Actions (other than as to Legacy Autonomy Official Michael Lynch)….";

    iv.    the 200 documents (or 2668 pages) that HP provided to Delaware and California plaintiffs' counsel, *see Cook v. Hewlett-Packard Co.,* 2014 WL 311111, *3–4 (Del. Ch. Jan 30, 2014); and

    v.    All documents which refer to or are communications between and among counsel for the parties and counsel for the DRC regarding the proposed settlement.

\* \* \*

These requests are necessary and appropriate if this proposed settlement is to receive this Court's approval given the serious questions already raised regarding its substantive and procedural fairness and adequacy to HP's shareholders.

| | | |
|---|---|---|
| 1 | Dated: September 10, 2014 | /s/ Richard D. Greenfield |
| | | Richard D. Greenfield (*admitted pro hac vice*) |
| 2 | | Ilene F. Brookler (SBN 269422) |
| | | Marguerite R. Goodman |
| 3 | | GREENFIELD & GOODMAN, LLC |
| | | 250 Hudson Street, 8th Floor |
| 4 | | New York, NY 10013 |
| | | Tel: 917-495-4446 |
| 5 | | ibrookler@gmail.com |
| | | whitehatrdg@earthlink.net |
| 6 | | twowhitehats@earthlink.net |

Scott R. Shepherd
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063
Tel: 610-891-9880
sshepherd@sfmslaw.com

Rose F. Luzon (SBN 221544)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Tel.: 619-235-2416
rluzon@sfmslaw.com

Attorneys for A.J. Copeland

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September, 2014, I caused this document to be filed and served via the Court's ECF system on all counsel of record.

/s/Richard D. Greenfield
Richard D. Greenfield
