Patrice L. Bishop (182256)
pbishop@ssbla.com
STULL, STULL & BRODY
9430 W. Olympic Blvd., Suite 400
Beverly Hills, CA  90212
Tel:    310-209-2468
Fax:    310-209-2087

Counsel for HP Shareholder
Morris Akerman

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Master File No. 12-cv-06003 CRB |
| This Document Relates To: | NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) VACATING THE ORDER APPOINTING DERIVATIVE LEAD PLAINTIFF AND LEAD COUNSEL, AND (2) SETTING A BRIEFING SCHEDULE FOR THE FILING OF NEW MOTIONS TO APPOINT DERIVATIVE LEAD PLAINTIFF AND LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES |
| ALL ACTIONS. | |
| | DATE:          February 13, 2015 |
| | TIME:          10:00 a.m. |
| | CRTRM:       6, 17th Floor |
| | JUDGE:        Hon. Charles R. Breyer |

**TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 13, 2015, at 10:00 a.m. before the Honorable Charles R. Breyer, located at Courtroom 6 on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, movant and interested party Morris Akerman ("Movant" or "Akerman"), by and through his counsel, will and hereby does move this Court for an order regarding the appointment of lead plaintiff and lead counsel.

More specifically, Movant seeks an order: (1) vacating the Court's March 4, 2013 Order (dkt. 65) to the extent it concerns the appointment of Lead Counsel and Lead Plaintiff of this derivative action (*id*. at 10:6-13:25, 15:5-7), and (2) and setting a briefing schedule for the filing of new motions to appoint new lead plaintiff and lead counsel, and for such other or further relief which may be appropriate.

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether, in consideration of the history of this litigation, it is appropriate to vacate this Court's March 4, 2013 Order to the extent it concerns the appointment of Lead Counsel and Lead Plaintiff of this derivative action (see *id*. at 10:6-13:25, 15:5-7).

2.       Whether it is appropriate to set a briefing schedule for the filing of new motions to appoint new lead plaintiff counsel and lead counsel of this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       INTRODUCTION**

There are now essentially two ways this case can proceed – it can either reach a settlement approved by the Court or it can be prosecuted.  Lead Counsel, while unquestionably otherwise qualified, is not in a position to lead *this* case in either direction based upon the history of this litigation.  Lead Plaintiff who has or should have been directing Lead Counsel is in a similarly precarious position in light of the history of this litigation.

Movant Akerman, an HP shareholder (*see* Dkt. Nos. 255, 255-1; Ex. A. to Declaration of Patrice L. Bishop filed in currently herewith) who previously responded to the Court's invitation (Dkt. No. 242) to provide his views (Dkt. Nos. 254-55) as an interested party on the Second Amended Settlement Stipulation (Dkt. No. 249), therefore moves for the above requested order

NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) VACATING THE ORDER APPTING. LEAD PLAINTIFF AND LEAD COUNSEL; AND (2) SETTING A BRIEFING SCHEDULE FOR NEW MOTIONS; MPA MASTER FILE NO. 12-cv-06003 CRB

vacating certain parts of Order appointing the Lead Plaintiff and Lead Counsel (dkt. at 10:6-13:25, 15:5-7) and setting a briefing scheduling for the filing of new motions for appointment.  Akerman contends that such an order would assist the Court in determining which shareholder(s) and counsel are best-qualified to serve, for the benefit of HP and its shareholders, as lead plaintiff and lead counsel as this action proceeds.

## II.     RELEVANT PROCEDURAL HISTORY

In just over three months Lead Plaintiff and Lead Counsel submitted three separate stipulations of settlement for this Court's approval.  *See*, Dkts. 149, 201, 242-44.  During oral argument the Court found part of the initial proposed stipulation settlement (dkt. 149, the "First Settlement") unacceptable, *see, e.g.* dkt. 199 at 18:16-18, and questioned other terms of the First Settlement.  *Id.* at 9:3-11:14.  After further discussions with various counsel, the Court set a further hearing date and, among other things, ordered that a revised stipulation of settlement be filed.  *Id.* at 63:8-20.   During the next oral argument the Court expressed concern regarding certain terms of the revised proposed stipulation of settlement (dkt. 201, the "First Revised Settlement"), particularly the breadth of the releases, including the release of potentially unknown claims.  *See*, *e.g.* Dkt. 238 at 13:25-14:3, 15:1-17, 15:24-16:13, 16:24-17:18, 18:1-5, 18:15-19, 18:25-19:12, 19:16-20:10, 21:5-10, 21:14-16, 24:6-25:1, 26:9-11, 26:14-15; *see also* dkt. 265 at 6:25-28.

Ten days after the Court took the First Revised Settlement under submission (*Id.* at 43:23-24), a Second Amended and Revised Stipulation of Settlement (dkt. 242, the "Second Amended Settlement") was filed.  On December 19, 2014, this Court issued its Order Denying Motion for Preliminary Approval of Second Amended Settlement (dkt. 265) holding that "[t]he releases in the Second Amended Settlement lack a tether to the subject of this litigation, leaving it without clearly defined limits and defeating this Court's ability to determine that the Settlement is a fundamentally fair, adequate, and reasonable resolution of shareholder claims."  *Id.* at 2:6-9.  The Court further held that "[i]n In light of the unresolved vagueness and breadth of the releases in the Second Amended Settlement, and therefore the parties' abdication of their responsibility to satisfy this Court that [Hewlett Packard Company ('HP"] and its shareholders have received adequate

NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) VACATING THE ORDER APPTING. LEAD PLAINTIFF AND LEAD COUNSEL; AND (2) SETTING A BRIEFING SCHEDULE FOR NEW MOTIONS; MPA MASTER FILE NO. 12-cv-06003 CRB

- 2 -

1  consideration, the motion for preliminary approval of the Second Amended Settlement is

2  DENIED." *Id.* at 9:17-21.

3  **III.    ARGUMENT**

4        Akerman does not believe that Lead Plaintiff and Lead Counsel should be given a *fourth*

5  attempt to clear the preliminary approval stage.   Lead Plaintiff and Lead Counsel's First

6  Settlement arguably, among other things, favored Lead Counsel's interests with an $18 million

7  retention that the Court refused to approve.  Dkt. 199 at 18:16-18.  In response, Lead Counsel

8  informed the Court that the retention fee was severable from the remaining terms of the settlement.

9  *Id.* at 15:17-17:1.  After the Court stated that the alleged severability term was vague, counsel for

10  HP volunteered to file an amended stipulation.  *Id.* at 22:10-24:20.   The First Revised Settlement

11  was the resulting document.  *See, e.g.*, Dkt. 202.  As outlined above, during oral argument

12  regarding the motion for preliminary approval of the First Revised Settlement, the Court explicitly

13  informed Lead Counsel that the First Revised Settlement contained an overly broad release.  *See*,

14  *e.g.* Dkt. 238 at 13:25-14:3, 15:1-17, 15:24-16:13, 16:24-17:18, 18:1-5, 18:15-19, 18:25-19:12,

15  19:16-20:10, 21:5-10, 21:14-16, 24:6-25:1, 26:9-11, 26:14-15; *see also* dkt. 265 at 6:25-28.

16  Despite this, Lead Counsel agreed to and filed the Second Amended Settlement without narrowing

17  the release as the Court cautioned.  *See* Dkt. 7:7-10 ("Gone are the expansive definitions and long

18  list of examples of released claims that are unrelated to the Autonomy Acquisition. But it does not

19  appear to this Court that brevity of form was accompanied by brevity of substance.").

20        Indeed, the Second Amended Settlement gave away too much (by way of release) for

21  insufficient (if any) contemporaneous consideration to merit preliminary approval.  HP's Demand

22  Review Committee had already developed a set of governance reforms prior to meeting with Lead

23  Plaintiff and Lead Counsel regarding potential settlement.  Dkt. 238 at 7:9-14.  Moreover, the

24  governance reforms had actually been adopted independent of Court approval of any agreement

25  reached in the instant action. Dkt. 238 at 7:18-23. Movant sees only three differences between the

26  effectuation of the now-rejected Second Amended Settlement—which would not benefit the

27  Company—and the granting of a motion to dismiss by defendants: (1) there would be no right to

28  appeal the settlement; (2) the discharged claims would be broader than those dismissed in

NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) VACATING THE ORDER APPTING. LEAD
PLAINTIFF AND LEAD COUNSEL; AND (2) SETTING A BRIEFING SCHEDULE FOR NEW MOTIONS; MPA
MASTER FILE NO. 12-cv-06003 CRB

connection with a motion to dismiss, and (3) plaintiffs' attorneys would get paid if the settlement were approved.

Here, all three proposed stipulations of settlement agreed to by Lead Plaintiff and Lead Counsel were patently defective. Lead Plaintiff and Lead Counsel should not be allowed to proffer a fourth settlement – having repeatedly sold the Company short – particularly after the Court found that the parties abdicated their responsibility to justify the settlement. Dkt. 265 at 9:17-21. How can the Court have confidence that any fourth proposed stipulation of settlement will fall within the arm's-length range of reasonableness such that approval is justified? And, for the reasons that follow, it is almost a certainty that Lead Plaintiff and Lead Counsel will try to settle the case yet again, in a fourth attempt to meet the standard for preliminary approval.

Moreover, Lead Counsel has made significant concessions about this strength of this case. After Mr. Wolinsky, counsel for HP, noted at the first preliminary approval hearing on August 25, 2014, with respect to the merits of the instant litigation, there are "two major hurdles": (1) "Delaware Section 102(b)(7), the exclamation provision in the charter of Hewlett-Packard, which bars any claims against directors except for breach of loyalty" (which breach of loyalty claims Mr. Wolinsky then called non-substantial and practically non-existent), and, (2) that the Demand Review Committee did an extensive investigation before concluding to take certain affirmative actions and concluded that "any objection would have an extremely high burden to overcome both 102(b)(7) and the affirmative decision of the Board of Directors which ultimately is charged with protecting [the] best interests of the company[,]" dkt. 199 at 32:12-33:16, Mr. Cochett, Lead Counsel, added: "Over and above that, let me just say . . . [a]s adequately just pointed out, Delaware law is very clear, and once we got into the 35,000 documents [reviewed by the demand review committee] and everything, *we had concluded we couldn't rise to that level, we think.*" *Id.* at 33:18, 34:6-9 (emphasis added). In other words, Akerman understands Lead Counsel as having stated, in open Court, that he does not believe he will be able to successfully prosecute these claims.

NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) VACATING THE ORDER APPTING. LEAD PLAINTIFF AND LEAD COUNSEL; AND (2) SETTING A BRIEFING SCHEDULE FOR NEW MOTIONS; MPA MASTER FILE NO. 12-cv-06003 CRB

The hurdles identified by Mr. Wolinsky make this case difficult to prosecute.  That said, first, they are not surprising.  That HP's Certificate of Incorporation[1] adopted 8 Del. C. § 102(b)(7) to protect its Board is not hidden.  *See* Certification of Incorporation of Hewlett-Parkard Company, Article X.A. ("[t]o the fullest extent permitted by the Delaware General Corporation Law . . . no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.")  Neither is it surprising that HP is taking limited affirmative action.  Then CEO Whitman disclosed on a conference call in November of 2012, before this action was filed, and upon announcing the Autonomy write-down, that HP had discovered accounting fraud and that the board "feels terribly" about missing the same at the time of the acquisition.  *See* http://cnnmon.ie/1eV85y4.  Even with these two significant hurdles identified by Mr. Wolinsky being public a week before the first complaint was filed, and although this case is complex and of there are a number of uncertainties and risks, there were multiple experienced and knowledgeable counsel who presumably assessed the risks and wanted to serve as lead counsel of the seven consolidated derivative actions.  There still is interest in a leadership role in this case, as is evidenced from recent briefing.  That is so because while there are hurdles that must be cleared, the significant potential value of the case if those hurdles are cleared is not just a function of the likelihood of recovery; it a function of the expected value of the case, taking into account the size of recovery based upon allegations of mismanagement resulting in a waste of approximately $8.8 billion in Company assets.

The above hurdles, which were, individually and collectively, neither unforeseeable nor unlikely, did not prevent a leadership dispute and did not prevent multiple firms from filing actions and trying to control the course of this case, and from continuing to do so today.  Leadership of these consolidated and coordinated derivative actions should not rest in a firm that has repeatedly failed to obtain preliminary approval on proposed settlements and that has conceded that it does not believe the facts will bear out such that they can successfully prosecute

---

[1] *Available at* media.corporate-ir.net/media_files/irol/71/71087/corpgov/cert_of_incorportion_[-]021198.pdf.

1  the Company's claims and obtain meaningful relief.  Rather, the case should be led by a Lead

2  Counsel and Lead Plaintiff that believe they can successfully prosecute the Company's claims and

3  who are able to pursue a strategy for obtaining a fair resolution of this action.

4  **IV.    CONCLUSION**

5          Based on the foregoing, Movant respectfully requests this Court vacate its Order

6  appointing Lead Plaintiff and Lead Counsel in this derivative action (dkt. at 10:6-13:25, 15:5-7)

7  and set a briefing schedule for the filing of new motions for the appointment of derivative lead

8  plaintiff and lead counsel.

9

10                                                  STULL, STULL & BRODY

11

12  Dated:  January 8, 2015            By:      _s/ Patrice L. Bishop_____
                                                Patrice L. Bishop
13                                              STULL, STULL & BRODY
                                                9430 West Olympic Blvd., Suite 400
14                                              Beverly Hills, CA  90212
                                                Tel:    (310) 209-2468
15                                              Fax:    (310) 209-2087
                                                Email:  pbishop@ssbla.com
16
                                                Counsel for HP Shareholder
17                                              Morris Akerman

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) VACATING THE ORDER APPTING. LEAD
PLAINTIFF AND LEAD COUNSEL; AND (2) SETTING A BRIEFING SCHEDULE FOR NEW MOTIONS; MPA
MASTER FILE NO. 12-cv-06003 CRB