**GREENFIELD & GOODMAN LLC**
Richard D. Greenfield (admitted *pro hac vice*)
Marguerite R. Goodman
Ilene F. Brookler (SBN 269422)
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (917) 495-4446
Fax: (212) 355-9592
ibrookler@gmail.com

Attorneys for Proposed Intervenor
A.J. Copeland

(Additional counsel on signature page)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION**<br><br>**This Document Relates To:**<br><br>**ALL ACTIONS.** | ) **Master File No. C-12-6003-CRB**<br>)<br>) **PROPOSED INTERVENOR A.J.**<br>) **COPELAND'S NOTICE OF MOTION,**<br>) **MOTION AND MEMORANDUM OF**<br>) **POINTS AND AUTHORITIES IN SUPPORT**<br>) **OF MOTION FOR PRELIMINARY**<br>) **INJUNCTION AND DISCOVERY IN**<br>) **FURTHER SUPPORT THEREOF**<br>)<br>) Date:        February 27, 2015<br>) Time:        10:00 a.m.<br>) Dept.        Courtroom 6, 17th Floor<br>) Judge:       Hon. Charles R. Breyer |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................. ii

STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3)) .......................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 3

    I.      SUMMARY OF ARGUMENT ........................................................ 3

    II.     PROCEDURAL BACKGROUND ................................................. 6

          A.  The Copeland Shareholder Actions ........................................... 6

          B.  The Parties' Attempts To Settle Rather Than Litigate ............. 7

    III.    RELIEF SOUGHT .......................................................................... 10

    IV.    ARGUMENT .................................................................................. 11

          A.  Legal Standard For Injunctive Relief ....................................... 13

          B.  All Prerequisites For Entry Of Injunctive Relief Are Present And The Equities Clearly Tip In Mr. Copeland's Favor ................... 17

               1.  Irreparable Harm Is Likely Absent An Injunction ............. 17

               2.  Serious Questions Exist Such That The *Status Quo* Should Be Preserved and Plaintiffs Have Demonstrated a High Likelihood Of Success On The Merits ................. 19

               3.  The Balance Of Equities Strongly Favors An Injunction ... 20

               4.  Public Interest ...................................................................... 21

          C.  This Court has Inherent Authority to Appoint a Special Master ... 21

          D.  Limited Expedited Discovery Should Be Granted ................... 23

  V.  CONCLUSION ................................................................................ 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. News Corp.*,
2005 WL 415095 (Del. Ch. Feb. 3, 2005) ....................................................................27

*Alliance for the Wild Rockies v. Cottrell*,
632 F. 3d 1127 (9th Cir. 2011) ...........................................................................13, 14

*Alliantgroup, L.P. v. Feingold*,
2009 WL 1109093 (S.D. Tex. April 24, 2009)...............................................................25

*Amoco Production Co.*,
480 U.S. 531 (1987)...........................................................................................14

*Baytree Capital Assoc. v. Quan*,
2008 U.S. Dist. LEXIS 87872 (C.D. Cal., August 18, 2008)........................................13

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ...............................................................................12

*Bend v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*,
584 F.2d 308 (9th Cir. 1978) ..............................................................................14

*Burke v. Smith*,
252 F. 3d 1260 (11th Cir. 2001) ........................................................................16

*Cassim v. Bowen*,
824 F.2d 791 (9th Cir. 1987) ...........................................................................13

*Cintron v. Vaughn*,
2007 U.S. Dist. LEXIS 87260 (D. Conn. November 28, 2007) ...................................22

*City of New York v. Michalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) .............................................................................22

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
340 F.3d 810 (9th Cir. 2003) ............................................................................15

*Edudata Corp. v. Scientific Computers, Inc.*,
599 F. Supp. 1084 (D.Minn. 1984).......................................................................25

ii

*Federal Trade Commission v. Skybiz.com, Inc.,*
  2001 WL 34134696 (N.D. Okla.) ...................................................................25

*Forrest v. Baeza,*
  58 Cal. App. 4th 65 (1997) ...........................................................................12

*Gilder v. PGA Tour, Inc.,*
  936 F2d 417 (9th Cir. 1991) .........................................................................15

*In re Application to Enforce Admin. Subpoenas of SEC v. Nicita,*
  2008 U.S. Dist. LEXIS 3353 (S.D. Cal., January 16, 2008) .........................26

*In re Chiron Corp. Sec. Litig.,*
  2007 WL 4249902 (N.D. Cal., November 30, 2007) ....................................20

*In re Focus Media Inc.,*
  387 F. 3d 1077 (9th Cir. 2004) .....................................................................19

*In Re Int'l Jensen Shareholders Litig.,*
  1996 WL 422345 (Del. Ch. July 13, 1996) ..................................................26

*In re Oracle Sec. Litig.,*
  829 F. Supp. 1176 (N.D. Cal. 1993) .......................................................13, 21

*In re Pure Resources, Inc. Shareholders Litig.,*
  808 A.2d 421 (Del. Ch. 2002) ......................................................................26

*In re Syncor ERISA Litig.,*
  516 F.3d 1095 (9th Cir. 2008) ......................................................................21

*In re: Estate of Ferdinand Marco,*
  25 F.3d 1467 (9th Cir. 1994) ........................................................................19

*Johnson v. Mammoth Recreations, Inc.,*
  975 F.2d 604 (9th Cir. 1992) ........................................................................25

*Klein v. FPL Group, Inc.,*
  2004 U.S. Dist. LEXIS 919 (S.D. Fla., January 20, 2004) ...........................13

*Lands Council v. McNair,*
  537 F.3d 981 (9th Cir. 2008) ...................................................................14, 15

*Legacy Trading Group, LLC v. Unico, Inc.,*
  2007 U.S. Dist. LEXIS 92715 (S.D. Cal., December 18, 2007) ....................15

iii

*Lewis v. Shaffer Stores Co.,*
   218 F. Supp. 238 (S.D.N.Y. 1963) ..................................................................12

*Linney v. Cellular Alaska P'ship,*
   151 F. 3d 1234 (9th Cir. 1998) ......................................................................21

*Messinger v. United Canso Oil & Gas, Ltd.,*
   80 F.R.D. 730 (D. Ct. 1978) ...........................................................................12

*Murphy v. Washington Am. League Base Ball Club, Inc.,*
   116 U.S. App. D.C. 362 (D.C. Cir. 1963) ......................................................12

*Musheno v. Gensemer,*
   897 F. Supp. 833 (M.D. Pa. 1995) ..................................................................12

*Oakland Tribune, Inc. v. Chronicle Publishing Co.,*
   762 F.2d 1374 (9th Cir. 1985) ........................................................................15

*ODS Technologies, L.P. v. Marshall,*
   832 A.2d 1254 (Del. Ch. 2003) ......................................................................26

*Petereit v. S.B. Thomas, Inc.,*
   63 F.3d 1169 (2d Cir. 1995) ...........................................................................19

*Philadelphia Newspaper Corp.,*
   1998 WL 404820 (E.D. Pa. July 15, 1998) ....................................................25

*Providence Property & Cas. Ins. Co. v. Peoplelease Corp.,*
   2007 WL 2241492 (E.D. Tex. Aug. 3, 2007) .................................................25

*Public Util. Comm'n v. FERC,*
   814 F.2d 560 (9th Cir. 1987) ..........................................................................18

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
   944 F.2d 597 (9th Cir. 1991) ..........................................................................18

*Ruiz v. Estelle,*
   679 F.2d 1115 (5th Cir. 1982) ........................................................................22

*Save Strawberry Canyon v. Dep't of Energy,*
   2009 U.S. Dist. LEXIS 38180 (N.D. Cal. April 22, 2009) .............................15

*Schneider v. Feinberg,*
   345 F.3d 135 (2d Cir. 2003) ...........................................................................22

iv

*Schwimmer v. U.S.*,
  232 F.2d 855 (8th Cir. 1956) ........................................................................22

*SEC v. Alanar, Inc.*,
  2007 U.S. Dist. LEXIS 63949 (S.D. Ind. August 28, 2007)...........................23

*SEC v. Trabulse*,
  526 F. Supp. 2d 1008 (N.D. Cal. 2007)..........................................................23

*SEC v. WorldCom, Inc.*,
  2002 U.S. Dist. LEXIS 14201 (S.D.N.Y. 2002)..............................................22

*Secs. & Derivative Litig. v. Reserve Mgmt. Co.*,
  673 F. Supp. 2d 182 (S.D.N.Y. 2009) ............................................................23

*Semitool, Inc. v Tokyo Electron Am.*,
  208 F.R.D. 273 (N.D. Cal., April 19, 2002) ...................................................25

*Stone City v. County of San Francisco*,
  968 F. 2d 850 (9th Cir. 1992) ........................................................................22

*SW Voter Regis. Educ. Project v. Shelly*,
  344 F.3d 914 (9th Cir. 2003) ........................................................................15

*Tracfone Wireless, Inc. v. King Trading, Inc.*,
  2008 WL 918243 (N.D. Tex. Mar. 13, 2008)..................................................25

*Travelers Cas. & Sur. Co. of Am. v. Williams Bros.*,
  2013 U.S. Dist. LEXIS 145267 (D. Nev. October 4, 2013) ................................13, 16, 19

*United States v. Apple, Inc.*,
  2014 U.S. Dist. LEXIS 5795 (S.D.N.Y., January 16, 2014) ..........................21

*United States v. Clifford Matley Family Trust*,
  354 F.3d 1154 (9th Cir. 2004) ......................................................................22

*United States v. Yonkers Bd. Of Educ.*,
  29 F.3d 40 (2d Cir. 1994) .............................................................................22

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008)....................................................................................13, 14

*Winter; Miracle Blade LLC v. Ebrands Commerce Group LLC*,
  207 F. Supp. 2d 1136 (D. Nev. 2002)..............................................................16

PROPOSED INTERVENOR A.J. COPELAND'S NOTICE OF MOTION, MOTION AND MEMO. OF POINTS AND
AUTHORITIES ISO MOTION FOR PRELIM. INJUNCTION AND DISCOVERY IN FURTHER SUPPORT THEREOF

*Wirtz v. Rosenthal*,
   388 F.2d 290 (9th Cir. 1967) ......................................................................................25

**<u>Rules</u>**

Fed. R. Civ. P. 15 ..............................................................................................................25

Fed. R. Civ. P. 23(e) .........................................................................................................21

Fed. R. Civ. P. 34 ..............................................................................................................25

Fed. R. Civ. P. 53 ..............................................................................................................22

Fed. R. Civ. P. 65 ..............................................................................................................14

vi

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 27, 2015 at 10:00 AM, or as soon thereafter as counsel may be heard, A.J. Copeland ("Mr. Copeland"), a long-time shareholder of Hewlett-Packard Company ("HP" or the "Company"), a proposed intervenor herein (*see* Renewed Motion to Intervene filed January 12, 2015) (Doc. 269), and the named plaintiff in two pending shareholder derivative actions, will move the Court for entry of a preliminary injunction appointing a Special Master to, *inter alia*, represent the interests of Nominal Defendant, HP, in the litigation of this case, including any ongoing settlement negotiations with Plaintiff's Lead Counsel and counsel for HP and the individual defendants.[1] Mr. Copeland also seeks limited discovery in further support of this motion, as outlined below, and leave to supplement the record after completion of such discovery. In light of the parties' repeated, unsuccessful attempts to negotiate a proposed settlement principally focused upon HP's acquisition of Autonomy, plc. ("Autonomy" and the "Autonomy debacle") that merits *even the preliminary approval* of this Court and the record that has been created, it is clear that an independent third-party vested with protecting the interests of *Nominal Defendant HP,* as opposed to the individual defendants and others, is necessary. The record clearly demonstrates that HP's counsel, Wachtell Lipton Rosen & Katz LLP ("Wachtell"), has failed in its advocacy to put the Company's interests before those of the individual defendants and other culpable parties (collectively, the "Proposed Releasees") and HP's retention of it warrants termination.[2]

As this Court recognized at the preliminary approval hearing held on September 26, 2014,[3] particular scrutiny must be paid to the consideration offered and the scope of the releases

---

[1] An appropriate source of such a Special Master would be a retired federal judge affiliated with JAMS.

[2] It is not unreasonable to assume that Wachtell was retained by HP's General Counsel who, in turn, reports to defendant Whitman, the Company's Chief Executive Officer, and one of the principal wrongdoers in the Autonomy debacle.

[3] This Court recognized that "… being able to represent both the individual officers and directors and the company in this regard puts you in somewhat of a difficult situation." Transcript of

in derivative cases and particularly where, as here, counsel for the parties originally proposed a settlement that provided for an $18 million retainer and up to $48 million in fees for Lead Counsel in connection with future litigation by the Company and no monetary or even meaningful consideration of any kind for HP's shareholders.  The illusory "consideration" of certain purported corporate governance reforms, which were underway in any event and would have left in place all current personnel and members of the Board of Directors ("Board"), was coupled with extreme and unjustifiably broad releases of the individual defendants and others. In each of the three proposed settlements, Wachtell effectively "wore two hats," nominally representing HP but, *de facto*, demanding little or nothing of value for its client, while concurrently advocating the broad releases that the Court ultimately rejected.  All of the misaligned incentives that tainted Wachtell's representation of HP in connection with the negotiation of the first three settlement agreements remain and it is clear that HP's counsel is not capable of independently and objectively consenting to the litigation proceeding on its merits or, as has already happened, negotiating a new settlement for the benefit of HP and its shareholders. Under these circumstances, a Special Master is needed to protect the interests of HP with respect to, *inter alia*, determining what counsel should be representing HP, determining whether the case should be litigated on its merits and/or overseeing any future settlement negotiations to ensure that they are carried out for the Company's benefit.

Mr. Copeland files this motion based on the grounds set forth with particularity in his integral Memorandum of Points and Authorities in Support, the pleadings and papers on file in this matter, and upon such evidence and arguments as may be presented to the Court at the time of hearing.

---

Proceedings before The Honorable Charles R. Breyer, September 26, 2014, p. 23, Exhibit A hereto.

PROPOSED INTERVENOR A.J. COPELAND'S NOTICE OF MOTION, MOTION AND MEMO. OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIM. INJUNCTION AND DISCOVERY IN FURTHER SUPPORT THEREOF

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

1.      Whether the Court should grant Mr. Copeland's motion for injunctive relief and appoint a Special Master to oversee any ongoing settlement negotiations between or among the parties.

2.      Whether Mr. Copeland should be granted leave to conduct limited, expedited discovery and thereafter supplement the record with respect to his request for injunctive relief.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      SUMMARY OF ARGUMENT**

This litigation arises out of the acquisition of Autonomy by HP (the "Acquisition").  As this Court is aware, the parties to this action have submitted *three* proposed Stipulations of Settlement for preliminary approval, all of which have been denied.  Each of the proposed settlements contained provisions that put the interests of Plaintiffs' Lead Counsel and the Prospective Releasees above those of HP, the purported beneficiary of this litigation.  Each of the proposed settlements failed to provide any valuable consideration to the shareholders while, at the same time, benefitting Plaintiffs' Lead Counsel and the Prospective Releasees through lucrative future retention agreements and impermissibly broad releases of claims both related and unrelated to this litigation.

Specifically, the original Stipulation of Settlement, submitted June 30, 2014 (Doc. 149), contained an extremely broad and virtually incomprehensible release of claims, including a plethora of claims totally unrelated to the Acquisition that is the focus of this litigation.

The Amended and Restated Stipulation of Settlement ("Amended Settlement"), submitted September 3, 2014 (Doc. 201), *inter alia*, contained a description of released claims that extended much more broadly than liability related to the Acquisition, as well as a "laundry list" of unrelated claims purporting to release the Proposed Releasees from all sorts of potential claims, both related and unrelated to the Autonomy acquisition.  This Court expressed its concerns about the scope of the proposed releases at the preliminary approval hearing on

3

September 26, 2014.  Additionally, the Amended Settlement contained illusory and/or non-existent consideration for the broad releases, as the corporate governance changes supposedly negotiated in exchange had already been proposed, accepted and implemented by the Company and were not dependent on approval of the settlement.

On October 6, 2014, before the Court had ruled on preliminary approval, the parties submitted yet a third proposed settlement – the Second Amended and Restated Stipulation of Settlement (Doc. 242) ("Second Amended Settlement"), which ostensibly narrowed the scope of the released claims to address the concerns expressed by the Court at the September 26, 2014 hearing.  However, as this Court recognized in denying preliminary approval of the Second Amended Settlement, the revised releases were *still* unacceptable because they "lack a tether to the subject of this litigation, leaving it without clearly defined limits and defeating this Court's ability to determine that the Settlement is a fundamentally fair, adequate, and reasonable resolution of shareholder claims."  Order Denying Motion for Preliminary Approval of Second Amended Settlement, p. 2 (Doc. 265).

Although the Second Amended Settlement removed the long list of examples of released claims and expansive and incomprehensible definitions, it still released a plethora of claims unrelated to the Acquisition, the scope of which and potential value to shareholders could not possibly be determined but "could be staggering and could run the temporal and substantive gamut of HP's history and practices."  *Id.* at 9.  As such, the Court held that "[i]n light of the unresolved vagueness and breadth of the releases in the Second Amended Settlement, and therefore the parties' abdication of their responsibility to satisfy this Court that HP and its shareholders have received adequate consideration, the motion for preliminary approval of the Second Amended Settlement is DENIED."  *Id.*

The parties and their counsel have permanently tainted the settlement process by putting their own interests before those of HP's shareholders not once, but three times, by advocating for settlements that benefitted Plaintiffs' Lead Counsel and the Individual Defendants, while

PROPOSED INTERVENOR A.J. COPELAND'S NOTICE OF MOTION, MOTION AND MEMO. OF POINTS AND
AUTHORITIES ISO MOTION FOR PRELIM. INJUNCTION AND DISCOVERY IN FURTHER SUPPORT THEREOF

providing no monetary compensation or anything of meaningful value to HP.  In exchange, HP's shareholders would have released wide-ranging and valuable claims for no consideration.

In order to protect HP with respect to any future proceedings, Mr. Copeland maintains that it is necessary for the Court to, in effect, "turn the clock back" from the settlement process and put the representation of HP's interests back on solid footing.  This would begin, in the first instance, making an objective, disinterested and unbiased determination whether it is in the Company's best interests for this litigation to proceed on the merits.  Since the inception of this litigation, the directors who have been sued, directly and through an incredibly-tainted "Demand Review Committee ("DRC")," composed of personally culpable directors, have created a foundation for Wachtell to maintain that no HP shareholders could prevail on their claims, which position Plaintiffs' Lead Counsel regretfully accepted as valid.

Mr. Copeland seeks the appointment of a Special Master to, in the first instance, make his or her own independent determination as to whether the claims made against the individual defendants should be pursued and, if so, by who and under what terms and conditions.[4] Furthermore, counsel appointed to represent HP should be accountable to and directed by the Special Master, rather than by the individual defendants.  In the event that the possibility of settlement negotiations arises once more, it would be the Special Master who would direct the negotiations on behalf of HP, rather than the impossibly conflicted HP Board members named as defendants.

While Mr. Copeland believes the current record and course of conduct by the parties and their counsel alone supports his request, he seeks limited and targeted expedited discovery going to the settlement negotiations that have already taken place and the potential conflicts of interest of the negotiating counsel to further amplify the record with respect to his request for injunctive relief.

---

[4] For example, the Special Master could determine that it is in the Company's best interests if the claims of the plaintiffs were allowed to proceed and litigated by them or, as an alternative, "taken over" and litigated by HP (as it proposed to do with respect to the non-Proposed Releasees).

5

## II.     PROCEDURAL BACKGROUND[5]

### A.     The Copeland Shareholder Actions

Mr. Copeland is the plaintiff in two separate shareholder derivative actions commenced in this Court and assigned to the Hon. Edward J. Davila.  The first action, *Copeland v. Lane, et al.,* Case No. 5:11-cv-01058 (EJD), was commenced March 7, 2011 following pre-suit demands and a Second Amended Complaint ("SAC") was filed on November 1, 2012. (Doc. 1 and 114) ("*Copeland I*").  *Copeland I* attacks, *inter alia*, HP's series of costly and ill-considered acquisitions, including the Autonomy transaction, and also asserted claims for violation of Section 14(a) of the Exchange Act in connection with HP's 2010 and 2011 Proxy Statements, breach of fiduciary duty and waste of corporate assets.  The matter was dismissed by Memorandum and Order entered May 6, 2013 (Doc. 162, 163).  On May 31, 2013, Mr. Copeland timely filed an appeal to the Ninth Circuit (Case No. 13-16251) (*Copeland I* Appeal), which appeal is fully briefed and remains pending. (Doc. 164.)

Thereafter, after further pre-suit demands in letters dated July 12, 2013 and January 6, 2014, on February 10, 2014, Mr. Copeland filed a second shareholder derivative complaint, *Copeland v. Apotheker, et al.,* Case No. 5:14-cv-0622 (EJD) ("*Copeland II*"), asserting claims for violation of Section 14(a) of the Exchange Act in connection with the 2013 and 2014 Proxy Statements and the failed acquisition of Autonomy, respectively, as well as targeted claims pursuant to Section 10(b) of the Exchange Act, breach of fiduciary duty, corporate waste and unjust enrichment. While the *Copeland II* Complaint includes allegations of wrongdoing in connection with the Autonomy Acquisition that is the subject of this action, it is far broader in scope, asserting claims for securities fraud and other wrongdoing by current and former officers and directors of HP including, *inter alia*, allegations of serious wrongdoing by current and former officers and directors of HP including, *inter alia*, allegations of serious violations of the

---

[5] Because this Court is fully aware of the facts surrounding this action, and in the interests of brevity, Mr. Copeland has omitted a detailed recitation of the substantive claims asserted.

Foreign Corrupt Practices Act and the cover-up of such conduct (pursuant to which HP was forced to pay $108 million in fines in 2014, as well as many millions of dollars in defense expenses), as well as the individual defendants' breaches of HP's own corporate policies and procedures. [6]

On September 8, 2014, Mr. Copeland filed a motion to intervene in this action to oppose preliminary approval of the Amended Settlement Agreement, conduct limited discovery and protect his interests and those of the other HP shareholders with respect to the release of claims asserted against certain of HP's former officers and directors. (Doc. 212.) Mr. Copeland's motion to intervene was denied as moot when the Court denied preliminary approval of the Second Amended and Restated Settlement Agreement by Order entered December 19, 2014. (Doc. 266.) On January 12, 2015, Mr. Copeland renewed his motion to intervene, which is now pending. (Doc. 269.)

### B.    The Parties' Attempts To Settle Rather Than Litigate

Bolstered by a continuously evolving report of the DRC that was expanding to encompass a settlement providing the broadest of releases, the parties to this action began formally negotiating such a settlement in or around February 2014, although it appears that informal negotiations had begun many months beforehand. Upon information and belief, notwithstanding the extremely strong evidence of the culpability of the proposed releases, in particular, defendants Apotheker, Whitman and the members of HP's Board, who proceeded with the Acquisition despite, *inter alia*, their individual and collective knowledge that Autonomy would not cooperate in HP's "due diligence" investigation of it, the DRC's evolving Report provided a useful tool for Wachtell to argue that plaintiffs' case was hopeless. Plaintiffs' Lead

---

[6] In addition to *Copeland II*, between November 2012 and December 2012, several other shareholder derivative actions were filed in this Court in connection with the Autonomy Acquisition and related events. On February 21, 2013, this Court consolidated all of the then-pending federal shareholder derivative suits before it. In addition to the federal actions, derivative complaints were filed in California and Delaware state courts.

Counsel, faced with such a "whitewash report" and the incentives offered by the prospect of pa generous fee with no "heavy lifting," pursued the possibility of a settlement vigorously,[7]

The negotiating parties, through their principal counsel, Wachtell and plaintiffs' Lead Counsel reached an agreement in principle to settle by mid-March, 2014. (Doc. 149, p. 7.)  On June 30, 2014, Lead Plaintiff filed a motion for preliminary approval and this Court scheduled a preliminary approval hearing, which took place on August 25, 2014, (Doc. 190), at which hearing the Court denied preliminary approval.  The Amended Settlement Agreement was filed on September 3, 2014 (Doc. 201) and a preliminary approval hearing was held on September 25, 2014, at which time this Court expressed serious reservations about the Amended Settlement in the face of strenuous objections filed by Mr. Copeland and other shareholders of HP, and took the matter under advisement.  (Doc. 235.)  Thereafter, on October 6, 2014, the parties submitted the First Amended Settlement Agreement. (Doc. 243.)  Once again, Mr. Copeland and others submitted their objections to preliminary approval, arguing the inadequacy of the proposed settlement, conflicts on the part of Wachtell in negotiating the settlement, and the over-breadth of the releases and fundamental due process failings with respect to the proposed notice to HP shareholders.  By Order entered on December 19, 2014, this Court denied preliminary approval of the Second Amended Settlement, holding that "[t]he unknown scope and potential value of released claims leaves this Court unable to determine 'the strength of the plaintiffs' case' and whether the 'amount offered in settlement' is fairly and reasonably commensurate." (Doc. 265, p. 8.)  This Court further recognized:

> In exchange for their release of claims, HP shareholders receive the benefit of certain
> corporate governance reforms that have already been instituted – although, as HP admits,
> the 'nature and extent and depth of the fraud that was committed on HP' makes it
> doubtful that 'changing the process really would have resulted in … something different'

---

[7] With knowledge that a settlement was likely, and before it was well-advanced, Wachtell permitted Lead Counsel to proceed with unprecedented and non-adversarial "confirmatory discovery," pursuant to which HP and its auditor revealed documents and provided witnesses for interviews who documented the utter irresponsibility of the Acquisition under the prevailing circumstances.

in the Autonomy acquisition … and therefore these reforms may have little or no value in relation to the allegations in the complaint. In theory, settlement of the derivative suit should benefit the current shareholders. … *But as it now stands, the Second Amended Settlement 'confers a substantial benefit on the individual defendants and derivative plaintiffs' counsel,' a benefit whose magnitude remains impossible to ascertain, while 'the brunt of the derivative settlement' falls upon HP and its shareholders – the allegedly aggrieved parties.*

*Id.* at p. 9, internal citations omitted (emphasis added).

The purported justification for the proposed settlements was that the litigation risk to plaintiffs (who failed to make pre-suit demands upon HP's Board as they were required to do under the prevailing circumstances) as a result of the highly-suspect "report" by the DRC and its counsel which, incredibly, found no actionable wrongdoing on the part of any of HP's senior officers, directors or professional advisors and sought to lay all responsibility for the debacle on Autonomy's CEO, CFO and auditors.  The DRC members, as Mr. Copeland can demonstrate, are hardly independent.  Such "whitewash reports" have, regrettably, become all too common and, to say the least, frequently cannot pass an objective "smell test."  Mr. Copeland and his counsel, who were denied access to the report itself, have been provided with certain material facts by counsel to the DRC but are bound by a confidential agreement not to disclose what they learned about the DRC's investigation and conclusions.  Notwithstanding such agreement, Mr. Copeland, by this motion, seeks access to*, inter alia,* the report and other related documents.

On September 16, 2014, Mr. Copeland's counsel sent a demand letter to the HP Board demanding that the Board cause HP to withdraw from the Amended Settlement Agreement because of the obvious flaws and lack of meaningful consideration for HP's shareholders.  Notwithstanding such demand, as the Court is well aware, HP's Board ignored the demands made by Mr. Copeland and proceeded, unsuccessfully, to attempt to get preliminary approval for the most recent iterations as well.  The same counsel are again trying to come up with a new proposal that will somehow address the concerns expressed by the Court to date.

## III.    RELIEF SOUGHT

Notwithstanding the roles of well-qualified counsel and an independent mediator, the negotiating parties submitted three proposed "settlements," all of which make a mockery of shareholder derivative litigation and corporate governance.  This Court, wisely, has refused to grant preliminary approval to any of them, recognizing the lack of consideration and illusory management-initiated corporate changes underway from the outset and already fully accepted by the Company prior to approval of the settlement.  What has become clear is that HP's Board members, through the Company's counsel Wachtell, were attempting to purchase, with HP shareholders' money, unjustly broad releases of claims asserted against by Mr. Copeland and others. The proposed releases, not surprisingly, include each of HP's Board members and their predecessors.  Such releases, even in their narrowest versions, were confusingly broad-based and amorphous and would have barred the Company and its shareholders from pursuing such claims against, not only HP's officers and directors in connection with the ill-fated acquisition of Autonomy, but other claims arising from the corporate governance failings of the HP Board, as asserted in Mr. Copeland's complaints.  Plaintiffs' Lead Counsel, meanwhile, abdicated their responsibility to HP's shareholders by failing, three times, to properly protect the interests of HP or obtain any monetary or other meaningful consideration for it, while signing off on impermissibly broad releases.  This is not surprising, given the lucrative incentives and substantial counsel fees Wachtell was willing to provide on behalf of the Company.

Because of the inherent and irreconcilable conflicts of interests of HP's Board, its DRC and Wachtell, as well as the demonstrated inability of the parties to negotiate an acceptable resolution of this litigation, Mr. Copeland seeks the appointment of a Special Master.  It is clear that neither the Board members, the DRC nor Wachtell, are capable of advancing solely in the interest of HP.  Likewise, it is now clearly apparent that neither the members of the Board nor HP's counsel are capable of advancing solely the Company's interests and not their own in dealing with their continuing efforts to resolve this litigation or pursuit of these and unrelated

claims advanced by Mr. Copeland and others in related litigation. Based upon the events that have transpired, which have now irretrievably corrupted the process and permanently tainted the credibility of the parties and counsel involved, it is a virtual certainty that none of the parties hereto will deal with the prosecution and/or settlement of this litigation objectively and solely in the best interests of HP.

The appointment of a Special Master is necessary to ensure that the Company's best interests are protected and not compromised by the defense of the individual defendants or the material conflicts of interests on the part of HP's legal counsel. Should the Company's interests continue to be represented as they are at present, HP will be irreparably harmed by this litigation, as it has in the past, by having no loyal representative of the Company aggressively pursuing its interests to the exclusion of those of the proposed releasees.

## IV.     ARGUMENT

Mr. Copeland seeks a narrowly-tailored injunction (Exhibit B hereto) appointing a Special Master to represent the Company's interests in making a fundamental determination of whether the claims alleged by plaintiffs in this and related cases should be actively litigated and/or whether, and under what circumstances, settlement negotiations should proceed. As outlined above, appointment of a Special Monitor is appropriate here because HP's Board and its counsel, who have unsuccessfully attempted to resolve this litigation three times, are all irreconcilably conflicted and incapable of objectively safeguarding the interests of the Company and its shareholders. Moreover, the advocacy of the interests of the proposed releasees at the expense of HP have been apparent in each of the three proposed settlements and have cast a dark and long shadow over any confidence HP's shareholders may have had in the ability of Wachtell, HP's present counsel, to protect the Company's interests, as opposed to the interests of the proposed releasees. In such a climate, an objective third-party charged with overseeing the integrity of this litigation is vitally necessary. Absent the Court's forceful intervention, it is clear that the parties hereto, as well as their counsel, do not intend to proceed differently and will

consistently defend themselves and their conduct as appropriate and continue to sell out the interest of HP.

In a derivative lawsuit such as this, the corporation is only a "nominal" defendant, because any relief that plaintiffs obtain from the individual defendants is supposed to accrue to the benefit of that corporation, making it the real party in interest.  *E.g. Messinger v. United Canso Oil & Gas, Ltd.*, 80 F.R.D. 730, 733 (D. Ct. 1978).  Thus, the corporation in a derivative action "is in the anomalous position of being both a plaintiff and a defendant."  *Musheno v. Gensemer*, 897 F. Supp. 833, 835 (M.D. Pa. 1995).

Here, of course, Wachtell nominally only represents HP.  However, as its papers submitted and oral arguments in support of the three failed settlement proposals demonstrate, it is, *de facto*, representing two masters; *i.e.* on the one hand, the individual defendants and on the other, the Company.  Because an attorney's simultaneous representation of clients with adverse interests implicates the duty of loyalty, there is, for the most part, a *per se* rule of disqualification.  In keeping with this view, courts around the country have either strongly discouraged or prohibited dual representation of the corporation and individual defendants in derivative litigation because of the potential conflict of interest between counsel's duties to the corporation and counsel's relationship with the individual defendants.  *See, e.g., Forrest v. Baeza,* 58 Cal. App. 4th 65, 84, 67 Cal. Rptr. 2d 857 (1997)("Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud."); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993) ("We have no hesitation in holding that – except in patently frivolous cases – allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel.").  *See also Lewis v. Shaffer Stores Co.*, 218 F. Supp. 238 (S.D.N.Y. 1963)(in derivative action it would be wise for the corporation to retain independent counsel, who have no previous connection with the corporation); *Murphy v. Washington Am. League Base Ball Club, Inc.*, 116 U.S. App. D.C. 362, 324 F.2d 394, 397-98 (D.C. Cir. 1963).

Such independent counsel, courts have emphasized, must have had no prior ties to the individual defendants or the corporation.  *See Messing, supra*, 439 F. Supp. at 780-83; *see also In re Oracle Sec. Litig*., 829 F. Supp. 1176, 1190 (N.D. Cal. 1993) (requiring that the corporation in a derivative action retain independent counsel "having no prior relationship with the corporation or the independent defendants.").

Where, as here, Wachtell has purportedly represented the interests of HP but has, in actuality, protected the interests of the individual defendants and others, its ability to solely advocate in favor of HP has been compromised and will continue to be.  *See Baytree Capital Assoc. v. Quan,* 2008 U.S. Dist. LEXIS 87872 (C.D. Cal., August 18, 2008)(disqualifying counsel in shareholder derivative action who purported to represent both the corporation and alleged wrongdoers and directing company to retain independent counsel having no prior relationship with the corporation or the individual defendants*); Klein v. FPL Group, Inc.,* 2004 U.S. Dist. LEXIS 919 (S.D. Fla., January 20, 2004)(no finding of independence where, among other things, the same directors authorizing the wrongdoing at issue were also involved in investigating the demand and counsel who drafted the committee report were also involved in "independently" advising the board as to the merits of the report).

### A.     Legal Standard For Injunctive Relief

A party seeking a preliminary injunction must fulfill one of two standards, described in the Ninth Circuit as "traditional" and "alternative."  *See Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).  Under the traditional standard, a court may issue preliminary relief if it finds that: (1) the moving party will likely succeed on the merits; (2) the moving party will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities favor the moving party; and (4) an injunction is in the public interest.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct 365, 374, 172 L. Ed. 2d 249, 261 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127 (9th Cir. 2011); *Travelers Cas. & Sur. Co. of Am. v. Williams Bros.,* 2013 U.S. Dist.

LEXIS 145267; 2013 WL 5537191 (D. Nev. October 4, 2013).[8]  Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Amoco Production Co.*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987); *see also* Federal Rule of Civil Procedure 65, authorizing the issuance of injunctive relief and outlining the contents and scope of injunctions.

Under the alternative standard, the Ninth Circuit applies a "sliding scale" test under which injunctive relief is appropriate, among other circumstances, in cases of obvious irreparable injury but where the plaintiff is only able to show that "serious questions" going to the merits were raised.  *See, e.g., Bend v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314-15 (9th Cir. 1978), *cert dismissed*, 441 U.S. 937 (1979).  In the Ninth Circuit, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.  This has been referred to as the "sliding scale" approach.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d at 1131.[9]  The inquiry under the alternative standard was recently articulated as follows:

> [a] preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor.  In addition to balancing the hardships to the parties, [courts] also must take into account the public's interest.

*Lands Council v. McNair*, 537 F.3d 981, 1003 (9th Cir. 2008) (*en banc*).

---

[8] These factors are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent.  *Winter v. NRDC, Inc.*, 55 U.S. at 32; *Amoco Production Co.*, 480 U.S. at 546, n. 12 ("The standard for preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

[9] The Ninth Circuit has specifically held that the sliding scale approach survived the Supreme Court's decision in *Winter*, which rejected only the Ninth Circuit's previous approach of finding the *"possibility"* of irreparable harm sufficient, in some circumstances, to justify a preliminary injunction.  Under *Winter*, the court concluded that plaintiffs must establish that irreparable harm is *likely*, not just possible.

This formulation represents two points on the sliding scale in which the required degree

of irreparable harm increases as the probability of success decreases.  *See Oakland Tribune, Inc.*

*v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).  "[T]he less certain the district

court is of the likelihood of success on the merits, the more plaintiffs must convince the district

court that the public interest and balance of hardships tip in their favor."  *Lands Council v.*

*McNair*, 537 F. 3d at 1003, *quoting SW Voter Regis. Educ. Project v. Shelly*, 344 F.3d 914, 198

(9th Cir. 2003).  Thus, a stronger showing of irreparable harm to plaintiff might offset a lesser

showing of likelihood of success on the merits.  *See, e.g., Clear Channel Outdoor, Inc. v. City of*

*Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

Under this approach, "'serious questions' refers to questions which cannot be resolved

one way or the other at the hearing on the injunction and as to which the court perceives a need

to preserve the *status quo* lest one side prevent resolution of the questions … by altering the

*status quo*.  *See, e.g, Legacy Trading Group, LLC v. Unico, Inc.*, 2007 U.S. Dist. LEXIS 92715,

2007 WL 4463974 (S.D. Cal., December 18, 2007), *quoting Gilder v. PGA Tour, Inc.*, 936 F2d

417, 422 (9th Cir. 1991).  Furthermore, "serious questions" are substantial, difficult, and

doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

*Id.*

District courts in the Ninth Circuit have recognized the importance of the court's inherent

discretion to preserve the *status quo* with provisional relief until the merits are sorted out by

weighing, on a sliding scale, the various factors necessary for entry of injunctive relief.  In *Save*

*Strawberry Canyon v. Dep't of Energy*, 2009 U.S. Dist. LEXIS 38180, 2009 WL 109888, at *1-3

(N.D. Cal. April 22, 2009), the court stated:

> It would be most unfortunate if the Supreme Court or the Ninth Circuit had eliminated
> the longstanding discretion of a district judge to preserve the status quo with provisional
> relief until the merits could be sorted out in cases where clear irreparable injury would
> otherwise result and at least 'serious questions' going to the merits are raised …

> Can it possibly be that the Supreme Court and Ninth Circuit have taken away the ability of district judges to preserve the status quo pending at least some discovery and further hearing on the merits of such cases?

*See also Travelers Cas. & Sur. Co. of Am. v. Williams Bros.*, 2013 U.S. Dist. LEXIS 145267, at *5-6; 2013 WL 553719, *citing Winter*; *Miracle Blade LLC v. Ebrands Commerce Group LLC,* 207 F. Supp. 2d 1136 (D. Nev. 2002) (affirming the sliding scale approach where the elements of the preliminary injunction test are balanced, with the exception of irreparable harm; the moving party must demonstrate that irreparable injury is likely in the absence of an injunction).

Because there exist "serious questions" as to whether HP's interests have been properly represented by its Board and legal counsel (as they have not been), prompt intervention by the Court is necessary to protect HP's interests.  The request for the appointment of a Special Master herein is akin to the appointment of a guardian *ad litem* when a minor or incompetent person's interests are not being represented in an action.  It is well established that where, as here, it is evident that fundamental conflicts of interest such as those which exist between a parent and a minor, where the parents cannot fairly or objectively represent the child's interests, the district court has a duty to determine whether a guardian *ad litem* is needed.  *See, e.g. Burke v. Smith*, 252 F. 3d 1260, 1264 (11th Cir. 2001).  Here, of course, HP is the functional equivalent of the child whose interests cannot fairly be represented by its Board members, who are among the individual defendants.

As set forth below, all elements necessary for entry of an injunction are present.  Mr. Copeland has more than adequately demonstrated the existence of "serious questions" going to the merits of HP's demonstrated inability, through counsel accountable to the defendant members of the Company's Board, to represent the Company's interests exclusively, HP's present inability to fairly and disinterestedly determine whether the litigation should proceed on its merits and/or be settled represents a clear tipping in Mr. Copeland's favor.  Such inability, if unrestrained by the Court and/or a Special Master, will lead to irreparable harm to HP and the public interest.  HP must be required to take non-collusive litigation positions which solely

16

benefit the Company and its shareholders, on whose behalf such litigation is required to be prosecuted.

### B.  All Prerequisites For Entry Of Injunctive Relief Are Present And The Equities Clearly Tip In Mr. Copeland's Favor

#### 1.  Irreparable Harm Is Likely Absent An Injunction

There can be little doubt that Mr. Copeland and the other shareholders of HP are likely to suffer irreparable harm absent an injunction appointing a Special Master to oversee the Company's reaction to this litigation including any possible settlement negotiations.  HP has already suffered massive monetary and reputational damage as a result of the individual defendants' wrongdoing and breach of fiduciary duties in the management of the Company, both in connection with the ill-fated and costly Autonomy debacle, as well, extensive other wrongdoing as particularized in *Copeland I* and *Copeland II*.  Adding insult to injury, the settling parties have now attempted *three times* to release broad and valuable claims belonging to HP for no monetary or other meaningful consideration, while at the same time absolving the individual defendants and a broad variety of proposed releasees of *all* responsibility for the alleged wrongdoing.  Absent injunctive relief and the appointment of a Special Master, irreparable harm is almost certain to continue to occur in the form of continued collusive and unjustifiable negotiations, purportedly on behalf of HP, as well as the continued waste of corporate assets and resources to defend against the allegations of wrongdoing by the individual defendants, who should be held personally accountable.  This course of conduct threatens to further harm HP's reputation and, more significantly, cause it to take litigations positions that cannot, once taken, be undone or for which cash damages are recoverable.  In addition, the requested injunctive relief is necessary to prevent further waste of the Company's assets, since these expenditures are *not* for HP's benefit, but solely for the benefit of the proposed releasees.  While the amounts wasted by HP's Board in continuing its previously rejected approach to this litigation may be recoverable in a new shareholder derivative suit for damages, this fact should in no way minimize the need for an independent Special Master to step into the shoes of the Company's

17

Board to make disinterested critical litigation strategy and other decisions.  If Board members are left in their present roles vis-à-vis this litigation, HP is likely to be irreparably harmed, even with this Court's oversight of any potential settlement.

The appointment of a Special Master is necessary to ensure that the Company's interests are not compromised by the defense of the individual defendants and/or material conflicts of interest on the part of HP's legal counsel.  Additionally, while this Court can continue to deny approval of proposed settlements that are not fair, reasonable and adequate, it cannot impose its terms or interject itself in the negotiation process to advocate on behalf of HP itself.  Thus, the role of the Special Master is quite different from that of the Court in reviewing and passing upon a settlement.  What is needed here is an independent advocate for HP who can make the disinterested and unbiased decisions related to this litigation that its Board has not and cannot make.

An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial.  *See, e.g., Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987). While economic injury alone does not support a finding of irreparable harm because such injury can be remedied by a damage award, here Mr. Copeland is alleging that valuable claims he has asserted in related litigation will be released with no consideration, claims which, if released, can never again be prosecuted.  Moreover, Mr. Copeland, along with the other shareholders of HP, stand to lose, forever, not only valuable claims, but also the ability to leverage the individual defendants' culpability into any meaningful corporate governance changes at the Company going forward, which changes are vitally necessary to prevent further erosion of shareholder confidence, reputation and assets.

Courts in this Circuit and others have consistently recognized that damage to reputation and goodwill, and competitive advantage or business opportunity, generally constitute irreparable harm because they are difficult to quantify.  *See, e.g., Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)(finding possibility of

irreparable harm, based on alleged injury to advertising effort and goodwill, which are difficult to value).  Irreparable harm is further found where the wrongful conduct of a defendant threatens the existence of the business itself.  *See, e.g., Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1186 (2d Cir. 1995).

Loss of valuable claims for relief belonging to shareholders of a company for inadequate consideration is analogous to the dissipation of corporate assets, which has been found to constitute irreparable harm and injunctions may be issued for such harm in cases that also seek monetary damages.  *E.g., Travelers Cas. v. Williams*, 2013 U.S. Dist. LEXIS 145267 at *34 (D. Nev. October 4, 2013); *In re: Estate of Ferdinand Marco*, 25 F.3d 1467, 1480 (9th Cir. 1994)(enjoining defendants from dissipating assets during litigation because money damages would be an inadequate remedy if assets are dissipated and the judgment is ultimately uncollectible); *In re Focus Media Inc.*, 387 F. 3d 1077, 1087-87 (9th Cir. 2004)(same).

There is no doubt that irreparable harm is likely to occur absent the requested injunctive relief.

**2.    Serious Questions Exist Such That The *Status Quo* Should Be Preserved And Plaintiffs Have Demonstrated A High Likelihood Of Success On The Merits**

As outlined in his renewed motion to intervene filed on January 12, 2015, (Doc. 269), there exist serious and disabling conflicts of interest that have prevented this litigation to be conducted by HP in its own interests.  The results of these overlapping and conflicting loyalties and incentives is nowhere more apparent than in the three now-rejected settlements negotiated and advocated, most vigorously, by counsel for the Company.

As discussed in detail in his renewed motion to intervene, HP's counsel, reporting to the members of the Board and senior management who are defendants themselves, has been shown to be incapable of negotiating a fair, reasonable and adequate resolution of the shareholder claims at issue herein for the Company's benefit, let alone the broader claims asserted in *Copeland I* and *Copeland II*.  At a bare minimum, serious questions going to the independence, objectivity and adequacy of the advocacy of HP's interests herein exist that require the

19

appointment of a Special Master and the preservation of the *status quo.* Preservation of the *status quo* will allow the Special Master time to make, *inter alia,* a disinterested determination as to whether this litigation should be addressed; *e.g.* by prosecuting the case on the merits and/or attempting to negotiate a settlement that benefits HP consistent with the releases to be provided. Of course, any such determinations would be made within the context of the Special Master's evaluation of the strengths and potential weakness of plaintiffs' case.  To date, what plaintiffs' Lead Counsel has already put into the record a compelling case for the liability of HP's former CEO, Leo Apotheker, present CEO, Margaret Whitman, and the members of the Company's Board.  Based solely upon what Lead Counsel has placed in the record at this point, there is a compelling argument that plaintiffs have an overwhelming likelihood of succeeding on the merits.[10]

### 3.    The Balance Of Equities Strongly Favors An Injunction

Here, the balance of equities clearly tips in favor of Mr. Copeland's request for the appointment of a Special Master.  The complaint herein, as well as those in *Copeland I* and *Copeland II,* allege an ongoing, pervasive and widespread pattern of enormously costly wrongdoing that, at a minimum, has resulted and will result in substantial damages to HP, both monetary and reputationally.  Further, this Court's categorical rejection of three successive proposed settlement agreements negotiated and advocated by the parties hereto and their counsel, is *prima facie* evidence that HP's Board (consisting of individual defendants and other wrongdoers) is incapable of objectively and disinterestedly evaluating the claims at issue and making the fundamental decision as to how this litigation should proceed (solely from the Company's perspective) and negotiating a settlement that is fair, reasonable and adequate to HP. *See, e.g., In re Chiron Corp. Sec. Litig.,* 2007 WL 4249902 (N.D. Cal., November 30, 2007)(denying preliminary approval where settlement was negotiated under questionable

---

[10] Plaintiffs' Lead Counsel only drew selectively from the enormous quantity of documents and interview testimony provided to the DRC and, presumably, to Lead Counsel.

circumstances, including issues of possible collusion, inadequate representation and lack of

effort to maximize the net recovery of absent class members); *In re Oracle Sec. Litig.*, 829 F.

Supp. 1176 (N.D. Cal., August 9, 1993) (denying preliminary approval of derivative settlement

for lack of consideration benefiting current shareholders of company).

### 4.   Public Interest

There is a strong judicial policy that favors settlements, particularly in complex

shareholder and class action litigation.  *See, e.g., In re Syncor ERISA Litig.,* 516 F.3d 1095, 1100

(9th Cir. 2008); *Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1238 (9th Cir. 1998) (The

purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair

settlements affecting their rights).  There also is a strong public interest in good corporate

governance and in holding corporate wrongdoers accountable.  Here, the appointment of a

Special Master will further such public interest and enhance the credibility of any ultimate result

by making certain that any further proceedings herein are undertaken for and in the best interest

of HP.

### C.   This Court Has Inherent Authority To Appoint A Special Master

As demonstrated above, injunctive relief is both appropriate and necessary under the

circumstances to preserve the *status quo* and ensure that the interests of HP's potential benefit

from this litigation is not erased by impossibly-conflicted members of its Board and counsel who

advocate for undeserving releasees.  As part of the requested injunctive relief, this Court has the

inherent equitable power to appoint a Special Master for the limited purposes set forth in the

proposed injunction; such relief has been granted in similar situations and is necessary to protect

the interests of the Company from collusion and irreparable harm.

This court has the inherent equitable power to appoint a Special Master under the terms

set forth in the proposed injunction.  (Ex. B hereto) *See, e.g., United States v. Apple, Inc.,* 2014

U.S. Dist. LEXIS 5795, at *42-43; 2014 WL 171159 (S.D.N.Y., January 16, 2014)(appointing

corporate monitor as part of injunction).  "[A]s with any other [equitable] remedial tool," a

district court has "broad discretion" to appoint a compliance monitor.  *United States v. Yonkers Bd. Of Educ.*, 29 F.3d 40, 44 (2d Cir. 1994) (per curiam); *City of New York v. Michalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("The power of the federal courts to appoint special masters to monitor compliance with their remedial orders is well established.").  This well-established principle has been recognized and applied by the Ninth Circuit.  *See, e.g., Stone City v. County of San Francisco*, 968 F. 2d 850, 859, n. 18 (9th Cir. 1992), *cert. denied*, 122 L. Ed. 2d 358, 113 S. Ct. 1050 (1993) (courts have repeatedly approved the use of special masters to monitor compliance with court orders and consent decrees).

This inherent authority is in addition to the Court's authority to appoint a special master pursuant to Fed. R. Civ. P. 53.  *Ruiz v. Estelle*, 679 F.2d 1115, 1161, n. 240 (5th Cir. 1982), *citing Schwimmer v. U.S.*, 232 F.2d 855, 865 (8th Cir. 1956), *cert. denied*, 352 U.S. 833 (1956)(citation omitted) ("[b]eyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a federal district court has the inherent power to supply itself with a special master] for the administration of justice when deemed by it essential."); *Cintron v. Vaughn*, 2007 U.S. Dist. LEXIS 87260 (D. Conn., November 28, 2007) (recognizing court's inherent power to appoint a special master, in addition to authority granted by Rule 53).  Once appointed, a special master has "broad discretion to regulate the manner in which he will complete his duties."  *United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1161 (9th Cir. 2004); *see also Schneider v. Feinberg*, 345 F.3d 135, 149 (2d Cir. 2003).

Courts have appointed monitors to oversee the operations of corporate defendants and protect the interests of investors.  For example, in *SEC v. WorldCom, Inc.*, 2002 U.S. Dist. LEXIS 14201; 2002 WL 1788032 (S.D.N.Y. 2002), the court appointed a Corporate Monitor to oversee all compensation paid by WorldCom to prevent unjust enrichment as a result of the conduct alleged in the complaint and to ensure that the assets of WorldCom were not dissipated by payments that were not necessary to the operation of its business.  The court sought to create an officer of the court with sufficient powers to assure that WorldCom, its employees,

shareholders and the general public, would be protected from the types of excesses and wrongdoing that plagued it in the past, thus helping to restore a level of confidence in the company and serving in the public interest.

Similarly, in *SEC v. Trabulse*, 526 F. Supp. 2d 1008 (N.D. Cal. 2007), the SEC charged a hedge fund and its manager with defrauding investors by misrepresenting the fund's profitability and misusing fund assets.  The SEC sought to enjoin the manager from violating the securities laws and making distributions to himself pending further order, and ancillary relief in the form of the appointment of a monitor to oversee the operations of defendants, requiring a verified accounting, preventing destruction of documents and permitting expedited discovery.  Finding that the SEC had shown that defendant was "prone to misleading investors," the Court granted the injunction and the ancillary relief, finding "a need for an objective party of oversee his conduct as he continues to manage funds." *Id.* at 1019.  The monitor was further charged with reviewing the overall operation of the fund and preparing a report setting forth a summary of the overall operation of the funds.  *Id; see also Secs. & Derivative Litig. v. Reserve Mgmt. Co.,* 673 F. Supp. 2d 182 (S.D.N.Y. 2009) (appointing monitor to oversee distribution of fund assets and to review claims); *SEC v. Alanar, Inc.,* 2007 U.S. Dist. LEXIS 63949; 2007 WL 2479318 (S.D. Ind. August 28, 2007) (noting in procedural history that court had entered a permanent injunction and appointed and Independent Monitor with a mandate to protect the interests of investors with final approval over day-to-day operations of defendants).

### D.   Limited Expedited Discovery Should Be Granted

Mr. Copeland believes there is sufficient evidence in the record, as referred to herein, to prevail on this motion for a preliminary injunction.  Nevertheless, he also believes that there exists even more damning evidence which will demonstrate how and why the three rejected settlements so favored the proposed releases and provided little or nothing of value to HP.  Such further evidence will be made available to the Court if Mr. Copeland is permitted to take narrowly-focused discovery of the settling parties and the DRC.  Mr. Copeland believes that the

fruits of such discovery will reveal far greater collusiveness than that which the Court has already suggested exists.

Thus, it is vitally necessary that there be discovery of the negotiations leading to the proposed settlements, the investigation, findings and recommendations of HP's purportedly independent DRC, as well as any potential conflicts of interest and all relationships between and among HP (through its Board members and senior management), their counsel and the DRC and its counsel.  Indeed, informal settlement negotiations were well underway long before the DRC had even completed its report in January 2014.

Mr. Copeland believes that credible evidence exists which will show that HP's counsel knew, well in advance of the finalization of the DRC report, that it would amount to a "whitewash" of the Company's officers and directors and was specifically written so as to encompass the broadest of releases.  There is little doubt that Wachtell used this fact as a negotiating tactic to obtain broad releases of HP's claims against the proposed releasees.  Mr. Copeland and his counsel, who made several pre-suit and one post-suit demand upon HP's Board and is the plaintiff in two shareholder derivative actions pending against HP's Board, as well as a proposed intervenor herein, is well-suited to conduct such discovery in further aid of his motion.

Here, Mr. Copeland seeks expedited, but limited discovery with respect to all communications among or between counsel for any of the settling parties, including counsel for the DRC, regarding any proposed settlement of this or any related litigation and/or the DRC's investigation.  This discovery is both appropriate and necessary in connection with Mr. Copeland's request for injunctive relief to further amplify the record and is narrowly tailored to the issues at hand.[11]  Mr. Copeland asks that the Court, upon consideration of this motion, set a briefing schedule which, before any party is obligated to respond, allows Mr. Copeland to file a supplement to his opening brief including any further evidence that supports the motion.

---

[11] Should the Court be so inclined, Mr. Copeland will submit in advance such requested discovery for the Court's consideration.

24

In evaluating a request for expedited discovery in order to prepare for a preliminary injunction hearing, courts in this District apply a general "good cause" standard and examine the discovery requests in light of the entirety of the record and the reasonableness of the requests in light of all the surrounding circumstances. *See, e.g., Semitool, Inc. v Tokyo Electron Am.*, 208 F.R.D. 273; 202 U.S. Dist. LEXIS 8961 (N.D. Cal., April 19, 2002) (granting motion for expedited discovery from defendants); s*ee also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) and *Wirtz v. Rosenthal,* 388 F.2d 290 (9th Cir. 1967), applying the general good cause standard employed in Rules 15 and 34, respectively.  Further, "[e]xpedited discovery has been ordered where it would 'better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Philadelphia Newspaper Corp.*, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (quoting *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D.Minn. 1984), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 429 (8th Cir. 1985)); *Federal Trade Commission v. Skybiz.com, Inc.,* 2001 WL 34134696, at *12 (N.D. Okla.) (granting a temporary restraining order and expedited discovery in anticipation of a preliminary injunction).

Courts routinely grant expedited discovery in anticipation of a motion for preliminary injunction.  *See Skybiz.com, Inc.,* 2001 WL 34134696, at *12 (providing that in anticipation of preliminary injunction motion the Commission was permitted to depose any witness at any time after the date of the order upon three business days' notice and defendants were ordered to respond to any interrogatories, requests for admissions, or requests for production of documents within four business days after service of the discovery request); *see also Tracfone Wireless, Inc. v. King Trading, Inc.*, No. 3-08-CV-0398, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) (finding expedited discovery necessary so that plaintiffs can determine whether to seek a preliminary injunction); *Providence Property & Cas. Ins. Co. v. Peoplelease Corp.*, 2007 WL 2241492, at *2 (E.D. Tex. Aug. 3, 2007) (permitting expedited discovery prior to consideration of preliminary injunction motion); *Alliantgroup, L.P. v. Feingold*, 2009 WL 1109093, at *2 (S.D.

Tex. April 24, 2009) (granting motion for expedited discovery prior to hearing on temporary injunction).

Delaware law is also instructive as to expedited discovery proceedings since its courts routinely handle shareholder derivative litigation challenging corporate governance.[12]  For example, Delaware courts routinely permit a plaintiff to conduct discovery on an expedited basis because of the potential for irreparable harm to shareholders if a merger or acquisition is consummated as a result of an inadequate process and inadequate disclosures.  *Allen v. News Corp.*, No. Civ-A-979-N, 2005 WL 415095 (Del. Ch. Feb. 3, 2005); *ODS Technologies, L.P. v. Marshall,* 832 A.2d 1254, 1262 (Del. Ch. 2003); *In re Pure Resources, Inc. Shareholders Litig.*, 808 A.2d 421, 452 (Del. Ch. 2002).  In anticipation of a motion for injunctive relief, the Delaware courts recognize the need for expedited discovery.  *See In Re Int'l Jensen Shareholders Litig.,* No. CIV-A-14992, 1996 WL 422345, (Del. Ch. July 13, 1996) (holding that [a] party's request to schedule an application for a preliminary injunction and to expedite the discovery related thereto is normally routinely granted and exceptions to that norm are rare).

Here, good cause exists for limited expedited discovery regarding the settlement negotiations undertaken by the parties, the settlement proposals exchanged and communications among and between the parties' counsel and counsel for the DRC regarding any proposed settlement and/or the DRC's investigation and conclusions.  Most of the documents that would be requested in discovery, such as the settlement proposals exchanged, are not privileged.  To the extent any privilege is claimed, the burden rests with the individuals claiming the privileged nature of any communications they seek to protect.  If raised, Mr. Copeland will address any such claims of privilege in an appropriate reply or supplemental brief when such documents and their recipients/authors have been identified via an appropriate privilege log.  *See, e.g., In re Application to Enforce Admin. Subpoenas of SEC v. Nicita*, 2008 U.S. Dist. LEXIS 3353, at *8

---

[12] HP is incorporated in Delaware.

26

(S.D. Cal., January 16, 2008) (In determining whether a corporate officer may claim an attorney-client privilege in communications with the corporation the burden rests with the individual to evidence the privileged nature of the communications they seek to protect).

The slower pace of normal pretrial discovery will clearly prejudice Mr. Copeland and HP since, by the time discovery responses are due, the previous settling parties are likely to take additional actions prejudicial to the interests of the Company.  Such prejudicial action may well include negotiation of another proposed settlement that is not in the best interest of HP's shareholders and does not adequately compensate them for the release of valuable claims, without any consideration of whether settlement is even warranted.  Because Mr. Copeland is seeking a very limited universe of documents and the parties will not be prejudiced by the discovery he seeks, his motion should be granted.

## V.        CONCLUSION

WHEREFORE, for the foregoing reasons and based on the authority cited, Proposed Intervenor, A.J. Copeland, respectfully request that his motion for a preliminary injunction and limited expedited discovery in further support thereof be granted.

Dated: January 15, 2015                    /s/ Richard D. Greenfield
                                            Richard D. Greenfield (*Admitted pro hac vice*)
                                            Ilene F. Brookler (SBN 269422)
                                            Marguerite R. Goodman
                                            GREENFIELD & GOODMAN, LLC
                                            250 Hudson Street, 8th Floor
                                            New York, NY  10013
                                            Tel: 917-495-4446
                                            ibrookler@gmail.com
                                            whitehatrdg@earthlink.net
                                            twowhitehats@earthlink.net

                                            Scott R. Shepherd
                                            SHEPHERD, FINKELMAN, MILLER
                                            & SHAH, LLP
                                            35 E. State Street
                                            Media, PA  19063
                                            Tel: 610-891-9880
                                            sshepherd@sfmslaw.com

PROPOSED INTERVENOR A.J. COPELAND'S NOTICE OF MOTION, MOTION AND MEMO. OF POINTS AND
AUTHORITIES ISO MOTION FOR PRELIM. INJUNCTION AND DISCOVERY IN FURTHER SUPPORT THEREOF

Rose F. Luzon (SBN 221544)
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA  92101
Tel.: 619-235-2416
rluzon@sfmslaw.com

*Attorneys for Proposed Intervenor*
*A.J. Copeland*

28

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of January, 2015, I caused the foregoing document to be filed and served via the Court's ECF system on all counsel of record.

<u>/s/ *Richard D. Greenfield*</u>
Richard D. Greenfield