JOSEPH W. COTCHETT (Cal. SBN 36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (Cal. SBN 168009)
mmolumphy@cpmlegal.com
NANCY L. FINEMAN (Cal. SBN: 124870)
nfineman@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Lead Counsel for Plaintiff Stanley Morrical,*
*derivatively on behalf of Hewlett-Packard Company*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION | **Master File NO. C-12-6003-CRB** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THIRD AMENDED AND RESTATED STIPULATION OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:  April 3, 2015**<br>**Time:  10:00 a.m.**<br>**Dept.:  Courtroom 6, 17th Floor**<br>**Hon. Charles R. Breyer** |

⊛
LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA Master File No. C-12-6003-CRB**

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.      INTRODUCTION AND STATEMENT OF ISSSUES TO BE DECIDED .................. 2

II.     OVERVIEW OF THE LITIGATION ................................................................ 3

        A.      The Federal Action ................................................................. 3

        B.      The State Actions ................................................................... 4

        C.      Formation of the Demand Review Committee and Internal Investigation . 5

        D.      Settlement Negotiations and Revisions to Settlement Terms .................... 6

        E.      The Third Amended and Restated Settlement ............................................ 7

III.    ARGUMENT ................................................................................................. 9

        A.      Legal Standard for Preliminary Approval.................................................... 9

        B.      The Settlement Was Reached After Extensive, Arm's-Length
                Negotiations, and Reflects a Well-Informed, Reasoned Analysis of the
                Strength of the Case, and the Risks and Benefits of Further Litigation ... 10

        C.      The Release Is Limited to Autonomy-Related Claims ............................ 11

        D.      The Corporate Governance Reforms Provide Substantial Benefits to HP
                and Its Shareholders, and Will Now Be Extended To HP's Newly Formed
                Entity Resulting From the Separation........................................................ 12

        E.      The Proposed Attorneys' Fees Are Fair and Reasonable ......................... 15

        F.      The Notice Program is Robust and Routinely Applied in Derivative
                Actions ..................................................................................................... 16

IV.     CONCLUSION.................................................................................................. 18

⊛
LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

---

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cohn v. Nelson*
  375 F. Supp. 2d 844 (E.D. Mo. 2005)................................................................. 15

*Feuer* v. *Thompson, Wells Fargo, et al.*
  2012 WL 6652597 (N.D. Cal. Dec. 13, 2012) ..................................................... 17

*Goldman* v. *Northrop Corp.*
  603 F.2d 106 (9th Cir. 1979) .............................................................................. 13

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 9

*Hensley v. Eckerhart*
  461 U.S. 424 (1983)............................................................................................ 15

*In re Atmel Corp. Deriv. Litig.*
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) .................................................... 17

*In re F5 Networks, Inc. Derivative Litigation*
  No. C06-794 RSL (W.D. Wash. Jan. 6, 2011) ..................................................... 14

*In re NVIDIA Corp. Derivative Litig.*
  No. C-06-06110-SBA (JCS) (N.D. Cal. Dec. 22, 2008)................................ 10, 14

*In re PMC-Sierra Inc. Deriv. Litig.*
  No. C-06-05330, Order  (N.D. Cal. Jan. 26, 2010)............................................. 17

*In re Rambus Inc. Derivative Litigation*
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ......................................................... 9

*In re Tableware Antitrust Litig.*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 9

*Ingram v. Coca-Cola Co.*
  200 F.R.D. 685 (N.D. Ga. 2001)......................................................................... 15

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) .............................................................................. 9

*Maher* v. *Zapata Corp.*
  714 F.2d 436 (5th Cir. 1983) .............................................................................. 12

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA    ii
Master File No. C-12-6003-CRB

*Mego Financial Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir.2000) ............................................................................................ 9

*Officers for Justice v. Civil Service Commission*
    688 F.2d 615 (9th Cir.1982) .................................................................................. 9, 10, 11

**Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................... 9

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 3, 2015, at 10 a.m., or as soon thereafter as counsel may be heard, plaintiff Stanley Morrical (on behalf of himself and derivatively on behalf of Hewlett-Packard Company) ("Federal Plaintiff") will move before the Honorable Charles R. Breyer, United States Senior District Judge, at the United States District Court, Northern District of California, 450 Golden Gate Avenue, Courtroom 6, San Francisco, California 94102, to grant preliminary approval of the settlement set forth in the Third Amended and Restated Stipulation of Settlement dated January 21, 2015 ("Third Amended Settlement"), filed contemporaneously herewith.[1]

The Motion is based on the Memorandum of Points and Authorities in Support of Preliminary Approval of Third Amended and Restated Derivative Settlement, the attached (1) Third Amended Settlement, (2) redline comparison to the Second Amended Settlement, and (3) Declaration of David F. Larcker, the papers previously filed in this action, including the Declaration of the Honorable Vaughn R. Walker, United States District Judge (Ret.) (dkt. 149-1) and his Arbitration Decision (dkt. 233-1), as well as such additional evidence or argument as may be submitted to the Court.

---

[1]     All capitalized terms used herein shall have the same meanings as set forth in the Third Amended Settlement.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION AND STATEMENT OF ISSSUES TO BE DECIDED**

This Memorandum is submitted in support of preliminary approval of the Third Amended and Restated Stipulation of Settlement ("Third Amended Settlement"), which resolves derivative claims brought on behalf of nominal defendant Hewlett-Packard Company ("HP" or the "Company") against certain of its current and former officers and directors relating to HP's acquisition of Autonomy.  The Third Amended Settlement reflects two substantive revisions.

*First*, the Settling Parties agreed to limit the scope of the release to Autonomy-Related Claims, which the Court previously found is "a fair and reasonable resolution of derivative litigation related to the Autonomy acquisition."  December 19, 2014 Order Denying Motion for Preliminary Approval of Second Amended Settlement ("December 19, 2014 Order") (dkt. 265) at 1.  Notably, the release does <u>not</u> extend to "claims arising from the allegations in the Complaints," which language the Court held was vague and arguably covered conduct unrelated to Autonomy.  *Id.* at 1-2.

*Second*, the Settling Parties revised the settlement consideration to take account of HP's October 2014 announcement that HP would split its business into two publicly traded companies. The Settling Parties agreed as part of the Third Amended Settlement that, subject to the Court approving the settlement, the state-of-the-art governance reforms adopted as part of the settlement will be implemented not only at HP but also at the separate corporation spun by HP.

The Third Amended Settlement confers substantial benefits on HP and is a fair and reasonable resolution of derivative claims brought on HP's behalf.  Accordingly, Federal Plaintiff Stanley Morrical respectfully requests the Court to enter the [Proposed] Order Preliminarily Approving Third Amended and Restated Derivative Settlement and Providing for Notice ("Notice Order"), lodged herewith, which provides for:

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   **2**
Master File No. C-12-6003-CRB

a) granting preliminary approval of the Third Amended Settlement,

b) directing that notice be given to HP shareholders, and

c) scheduling a hearing at which the Court will consider final approval of the Third Amended Settlement, including a request for award of attorneys' fees and a service award for Morrical.

## II.      OVERVIEW OF THE LITIGATION

### A.      The Federal Action

Between November 2012 and December 2012, several shareholder derivative actions were filed in the United States District Court for the Northern District of California in connection with HP's acquisition of Autonomy Corporation plc:  (i) *Riccardi v. Lynch, et al.*, 12-cv-06003, filed November 27, 2012; (ii) *Espinoza v. Lynch, et al.*, 12-cv-06025, filed November 27, 2012; (iii) *Bascheri v. Apotheker, et al.*, 12-cv-06091, filed November 30, 2012; (iv) *Bertisch v. Apotheker, et al.*, 12-cv-06123, filed December 3, 2012; (v) *City of Birmingham Retirement and Relief System v. Apotheker, et al.*, 12-cv-06146, filed December 18, 2012; (vi) *Tola v. Lynch, et al.*, 12-cv-06423, filed December 18, 2012; (vii) *Morrical v. Whitman, et al.*, 12-cv-06434, filed December 19, 2012; and (viii) *Weissmann v. Apotheker, et al.*, 3:13-cv-0557, filed February 7, 2013.  All eight of these federal shareholder derivative cases were assigned or transferred to the Honorable Charles R. Breyer.

On February 21 and March 4, 2013, the District Court consolidated three categories of cases: "derivative shareholder suits, nonderivative securities class actions, and ERISA suits" which all "share[d] common facts."  Order Consolidating Cases, Appointing Lead Plaintiffs, and Appointing Lead Counsel and Interim Lead Counsel (dkt. 65).  At that time, all pending derivative actions were "demand futile" suits alleging that it would have been futile to make a demand on the Board of Directors to bring suit.  *See* Stip. (dkt. 61).  Shortly thereafter, the Court appointed Morrical as lead plaintiff in the shareholder derivative actions, and the law firm of Cotchett, Pitre & McCarthy, LLP as lead counsel.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA    **3**
Master File No. C-12-6003-CRB

On May 2, 2013, Morrical filed a Consolidated Shareholder Derivative Complaint in the Federal Action.  The Federal Complaint asserts that a pre-suit demand on HP's Board of Directors ("Board") would have been futile, and alleges misconduct by the Settling Individual Defendants in connection with HP's failed acquisition of Autonomy.  Consolidated Shareholder Compl. (dkt. 75).  As alleged, hundreds of millions of dollars of Autonomy's pre-acquisition revenue had been improperly recorded, key Autonomy documents were missing, and HP had substantially overpaid for Autonomy.  *Id.* at ¶ 290.  HP's own internal investigation concluded that it had been the victim of a fraud in the Autonomy deal and, as a result, HP wrote down 85 percent of the purchase price, a loss of approximately $8.8 billion.  *Id.*

The Federal Complaint also alleges that the Settling Professional Advisor Defendants aided and abetted the Settling Individual Defendants' alleged breach of fiduciary duty, and acted unlawfully in providing fairness opinions to the Board.  Morrical alleges that these failures caused the Company to sustain damages in the form of a significant impairment charge, costs and expenses incurred in connection with HP's internal investigation into Autonomy's accounting improprieties, potential securities litigation, and its loss of reputation and goodwill.

**B.      The State Actions**

On July 26, 2013, HP shareholder James R. Gould, Jr. filed a shareholder derivative action in state court in Santa Clara County, California, styled *Gould v. Whitman, et al.*, Case No. 1:13-cv-250220 (Cal. Super. Ct., Santa Clara Cty.).  On August 16, 2013, HP shareholder Leroy Noel filed another shareholder derivative action in state court in Santa Clara County, California, styled *Noel v. Whitman, et al.*, Case No. 1:13-cv-251346 (Cal. Super Ct., Santa Clara Cty.).  On September 26, 2013, the Santa Clara County Superior Court consolidated the *Noel* matter with the *Gould* litigation.

The State Complaints, which also assert that a pre-suit demand on HP's Board would have been futile, make claims on behalf of HP against present and former HP directors and officers in connection with the Autonomy acquisition.  The complaint filed in the *Noel* action also alleges violations of certain California statutes by Autonomy's former Chief Executive

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA
Master File No. C-12-6003-CRB          4

Officer Michael Lynch in connection with pre-acquisition conduct arising out of his sale of Autonomy securities to HP.

###### C.   Formation of the Demand Review Committee and Internal Investigation

In response to the litigation, HP formed a Demand Review Committee ("DRC") in December 2012 to investigate the derivative claims.  Motion to Sever (dkt. 143) at 2, 4 (citing Compl., Ex. 1.; Opposition to Motion to Sever (dkt. 147) at 3.  The DRC retained Proskauer Rose LLP ("Committee Counsel") to assist with its internal investigation shortly thereafter. While the DRC evaluated the claims, the Court stayed the case.  *See* Orders Staying Case (dkts. 87, 123).

In April 2013, while the DRC was conducting its review, Committee Counsel met with counsel for Morrical ("Federal Counsel") to provide information and supporting materials regarding the DRC's mandate.  Committee Counsel met with Federal Counsel a second time, in November 2013, to provide an update regarding the status of the DRC's review, including the DRC's professional advisors' preliminary findings regarding the types of problematic transactions entered into between Autonomy and certain Autonomy business partners before the Acquisition.

Committee Counsel also met with counsel for the State Plaintiffs ("State Counsel") while the DRC was conducting its review.  At a December 2013 meeting, Committee Counsel provided State Counsel with an update regarding the status of the DRC's review and State Counsel provided Committee Counsel with the State Plaintiffs' governance proposals and their views on the allegations in the State Actions.

In January 2014, HP reported to the Court that the DRC had presented its finding and recommendations to the Board of Directors.  *See* Status Report (dkt. 129) at 2.  The Board resolved, among other things, that HP has claims against certain legacy Autonomy officials, including Lynch, Autonomy's former Chief Executive Officer, and Hussain, Autonomy's former Chief Financial Officer, as well as Autonomy's former auditors at Deloitte UK.  The Board also resolved that Committee Counsel, along with counsel for HP ("Company Counsel"), should

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   5
Master File No. C-12-6003-CRB

explore resolution of claims asserted in the Federal and State Actions and various other shareholder derivative actions and shareholder demand letters. The Board further instructed the Company's management to consider governance reforms to address the allegations in the Federal Action and proposals from State Plaintiffs.

**D.     Settlement Negotiations and Revisions to Settlement Terms**

In early February 2014, settlement negotiations commenced. Towards that end, Committee Counsel and Company Counsel held detailed, full-day, face-to-face meetings on February 18-20, 2014 with Federal Counsel and on February 21, 2014 with State Counsel. During those meetings, Committee Counsel briefed Federal Counsel and State Counsel on the DRC's findings and recommendations, the Board's decisions, and the governance enhancements. Walker Decl. (dkt. 149-1) at ¶¶ 7-10.

On February 24 and 25, 2014, HP and the Federal and State Plaintiffs participated in the first of seven face-to-face mediation sessions with Judge Walker. *Id.* at ¶ 24. Three weeks later, on March 11-13, 2014, HP and the Federal and State Plaintiffs participated in additional face-to-face mediation sessions with Judge Walker. *Id.* at ¶¶ 11-12. Ultimately, after numerous additional conversations, an agreement in principle was reached subject to, among other things, Court approval. *Id.*

The Settling Parties submitted the Settlement for preliminary approval. See Motion for Prelim. Approval (dkt. 149-2). HP concurrently filed an Administrative Motion to File Under Seal certain corporate governance reforms it would enact as part of the settlement (dkt. 150). Various parties moved to intervene to challenge the proposed settlement. *See* Motions to Intervene (dkts. 160, 172, 212).

At a hearing on August 25, 2014, the Court expressed concern over the terms of the proposed attorney retention clause, and how it impacted the remainder of the agreement. *See* Hearing Trans. (dkt. 199). At the hearing, the Settling Parties clarified that the attorney retention clause was and always had been severable. Thereafter, on September 3, 2014, the parties submitted a First Amended Settlement (dkt. 201), which removed the proposed retainer

⊛
LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA    **6**
Master File No. C-12-6003-CRB

agreement between HP and derivative plaintiff's counsel and confirmed that the provision was severable from the remainder of the agreement.

At a hearing on September 26, 2014, the Court expressed concern over the breadth and vagueness of the proposed release, which contained a non-exhaustive list of examples of claims being released by the agreement, including claims unrelated to the settled actions.  After the hearing but before the Court ruled on the Motion for Preliminary Approval of the First Amended Settlement, the parties filed the Second Amended Settlement (dkt. 242).  Rather than listing the types of released claims, the Second Amended Settlement proposed a two-part release, the first of which covered "all Autonomy-Related Claims," and the second of which covered all "Known Claims arising from the allegations in the Complaints."  *Id.* at ¶ 62.

On December 19, 2014, the Court issued its Order denying preliminary approval of the Second Amended Settlement.  December 19, 2014 Order (dkt 265).  While the Court found that the release of "all Autonomy-Related Claims" represented a "fair and reasonable resolution of derivative litigation related to the Autonomy acquisition," it held that the second clause's inclusion of claims "arising from the allegations in the Complaints" rendered the release impermissibly overbroad and could be construed to release claims unrelated to Autonomy.  *Id.* at 7.  The Court concluded that, absent a "tether to the subject of this litigation," the release "defeat[ed] the Court's ability to determine that the Settlement is a fundamentally fair, adequate, and reasonable resolution of shareholder claims."  *Id.* at 2; *see also* at 8 (distinguishing releases approved by other courts in Ninth Circuit, the Court held "the Released Claims at issue here are altogether different in that they share no orbit with the Autonomy nucleus of operative facts.").

### E.    The Third Amended and Restated Settlement

On October 6, 2014, HP announced plans to separate into two new publicly traded Fortune 50 companies:  one comprising HP's enterprise technology infrastructure, software and services businesses, which will do business as Hewlett-Packard Enterprise, and one that will comprise HP's personal systems and printing businesses, which will do business as HP Inc. (the "Separation").

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA     **7**
Master File No. C-12-6003-CRB

Following HP's announcement and the Court's December 19, 2014 Order, the Settling Parties engaged in further negotiations to address the Court's decision. On January 21, 2015, the Settling Parties entered into a Third Amended Settlement which makes certain changes to the prior versions. Most salient, the Settling Parties agreed to remove the clause of the release that the Court disapproved and to retain only the clause of the release – which is limited to Autonomy-Related Claims – that the Court deemed "fair and reasonable." *See* Third Amended Settlement at §I.A.61, §III.E.1.e.

The Third Amended Settlement also addressed HP's October 2014 announcement that HP would split its business into two public companies. Thus, the Settling Parties agreed that, subject to the Court approving the settlement, HP would implement the state-of-the-art governance reforms not only at HP but also at the newly-formed public company resulting from the Separation. *Id.* at §III.A.1-2.

These reforms will provide substantial value to HP and its newly formed company, as well as to their respective shareholders. The reforms provide for greater involvement in the M&A process by the Finance and Investment Committees of both companies, as well as both companies' Technology Committees. The due-diligence process would be enhanced, with additional training for persons taking part in each company's due-diligence efforts and due-diligence plans subject to greater oversight. There would be additional and enhanced oversight for larger transactions by key members of management in both companies, who will form newly chartered Risk Management Committees. And there would be periodic board- and management-level review of the companies' processes for evaluating, reviewing, and approving mergers and acquisitions, including the criteria for considering potential M&A partners.

Thus, the revised release addresses the concerns raised by the Court's December 19, 2014 Order, and the proposed settlement provides substantial benefits to HP. Accordingly, the proposed settlement should be preliminarily approved.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   **8**
Master File No. C-12-6003-CRB

III.     **ARGUMENT**

   A.     **Legal Standard for Preliminary Approval**

The Court's December 19, 2014 Order set forth the legal standard that it applied to preliminary approval of this derivative settlement, and is summarized below.

Federal Rule of Civil Procedure 23 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action.  Under Rule 23, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).

The Court must determine whether the settlement is "fundamentally fair, adequate and reasonable."  *In re Rambus Inc. Derivative Litigation*, No. c-06-3515-JF, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing Fed. R. Civ. P. 23(e); *Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.2000); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir.1982)).  "The preliminary determination establishes an initial presumption of fairness." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007) (citation omitted).  Further, "there is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  December 19, 2014 Order (dkt. 265) at 7 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).

In assessing a proposed settlement of a shareholder derivative suit, courts generally apply the same factors used when reviewing a settlement of a class action.  *Rambus*, 2009 WL 166689. These factors include "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *Mego*, 213 F.3d at 458 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "The relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case."  *Officers for Justice*, 688 F.2d at 625.

To determine whether a proposed settlement is "'within the range of possible approval,'" the Court must also ensure it is "'not the product of fraud or overreaching by, or collusion

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA     9
Master File No. C-12-6003-CRB**

between, the negotiating parties.'"  *In re NVIDIA Corp. Derivative Litigation*, No. c-06-06110, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting *Officers for Justice*, 688 F.2d at 625); see also *Mego*, 213 F.3d at 458.

> **B.    The Settlement Was Reached After Extensive, Arm's-Length Negotiations, and Reflects a Well-Informed, Reasoned Analysis of the Strength of the Case, and the Risks and Benefits of Further Litigation**

There can be no doubt that the settlement was reached as a result of good faith bargaining at arm's length without collusion.  Indeed, the settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, including at least seven, face-to-face mediation sessions overseen by Judge Walker, and many more negotiation sessions that followed.  Walker Decl. (dkt. 149-1) ¶¶ 6-12, 16-23.  The assistance of Judge Walker assured an arm's length process and a sound result for HP and its shareholders.

The result of these negotiations is a settlement that provides substantial benefits to the Company, while eliminating the expense, risk, and delay inherent in such complex litigation.  *Id.* at ¶¶ 7-12, 16-23.  Any evaluation of this settlement must recognize that "[t]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Although Morrical and his counsel believe that the claims asserted against the Settling Individual Defendants and the Settling Professional Advisor Defendants in the Federal Action are meritorious, liability is by no means a foregone conclusion.  Had Morrical continued to litigate, there was a risk that he would not have prevailed on defendants' pre-trial motions designed to eliminate or curtail the derivative claims, and premised on Delaware corporate law.  Even if Morrical prevailed at the pleading stage, significant risks remained in getting past the Settling Individual Defendants' and Settling Professional Advisor Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   **10**
Master File No. C-12-6003-CRB

The Third Amended Settlement eliminates these risks of continued litigation, while providing substantial benefits to HP and its shareholders in the form of state-of-the-art governance reforms and permitting HP to focus its attention on pursuing affirmative claims against those responsible for HP's losses relating to the Autonomy Acquisition — legacy Autonomy executives, Deloitte, and potentially other non-released third-parties.

Significant weight should be attributed to the belief of informed and experienced counsel that settlement is in the best interest of those affected. *Officers for Justice*, 688 F.2d at 625. Here, the Settling Parties independently considered the settlement and agreed that it is in the best interests of HP and its shareholders. Similarly, the full HP Board resolved that the Third Amended Settlement is in the best interests of the Company and its shareholders as well. Third Amended Settlement at 5. Finally, and most importantly, Morrical and his Federal Counsel devoted substantial time and resources investigating the underlying legal claims and defenses. As a result, Federal Counsel had unique knowledge of the strengths and weaknesses of the case and, combined with its experience in shareholder derivative actions, was were extremely well-informed about the case at the time they negotiated the settlement terms.

**C.    The Release Is Limited to Autonomy-Related Claims**

The release in the Third Amended Settlement represents "a fair and reasonable resolution of derivative litigation related to the Autonomy acquisition." December 19, 2014 Order (dkt. 265) at 1. Indeed, the settlement has been revised to only release Autonomy-Related Claims. The prior clause of the release that covered derivative claims unrelated to Autonomy but "arising from the allegations in the Complaints," which the Court disapproved, has been removed.

The definition of released claims contained in the Third Amended Settlement and the documents implementing the Stipulation provides — in its entirety — as follows:

⊛
LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

61. "Released Securities Holder/Company Claims" means all Autonomy-Related Claims that Settling Plaintiffs or any other Securities Holder asserted or could have asserted derivatively on behalf of the Company, or that the Company could have asserted directly in its own right, against any of the Releasees, as of, on or before the Final Settlement Date; provided, however, that Released Securities Holder/Company Claims shall not include Non-Released Preserved Claims, Non-Released Pending Claims, and direct Claims that Settling Plaintiffs or any other Securities Holder might have against a Releasee (such as claims made in the Securities Class Action and the ERISA Class Action).

Third Amended Settlement at §I.A.61.[2]

The release is appropriately and indisputably "tethered to the subject of this litigation." Only claims that have been or could have been asserted related to the Autonomy acquisition are being released, which is both "fair and reasonable."

### D. The Corporate Governance Reforms Provide Substantial Benefits to HP and Its Shareholders, and Will Now Be Extended to HP's Newly Formed Entity Resulting from the Separation

The principal benefit to HP consists of significant corporate governance revisions negotiated by Plaintiffs. These reforms will provide a substantial benefit to HP for years, and HP's Board has acknowledged that the Plaintiffs (and their vigorous pursuit of the derivative claims) contributed materially to their formulation for the benefit of HP and its shareholders.

A derivative "settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation." *Maher* v. *Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983).

---

[2] "Autonomy-Related Claims" is defined (as it was in the Second Amended Settlement that the Court considered) to "mean[] all Claims that arise from or relate in any way to the Acquisition, including, among other things, the due diligence regarding Autonomy, the fairness of the Acquisition and its terms, the integration of Autonomy and its products into the Company, the investigation and identification of wrongdoing at Autonomy, accounting-related issues, the Impairment Charge, the repurchase of HP stock while allegedly in the possession of material nonpublic information about Autonomy, and all public statements or omissions about any of the foregoing."

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   **12**
Master File No. C-12-6003-CRB

> [W]here, as here, the derivative suit is largely an attack on past corporate
> management practices, as well as on some present officers and directors, the
> dollar amount of a possible judgment, which is essentially the sole goal in the
> class action damage suit, is not the sole, and may well not be the most important,
> matter to be considered, for the effects of the suit on the functioning of the
> corporation may have a substantially greater economic impact on it, both long-
> and short-term, than the dollar amount of any likely judgment in its favor in the
> particular action.

*Id.* at 461.  Here, the Settlement provides a form of relief that the complaints specifically requested, and one that is perfectly appropriate in the circumstances.  *See Goldman* v. *Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979) ("Instead of choosing the course of securing the greatest possible money judgment from the Northrop officers, the parties and the court chose the course of terminating litigation and taking steps to assure that such conduct as had been disclosed could not occur in the future.").

As set forth in prior briefing, the governance reforms are directly tethered to Plaintiff's allegations related to HP's existing M&A practices and are intended to "assure that such conduct as had been disclosed could not occur in the future."  *Id.*  The reforms provide for, among other things, significantly enhanced procedures which will help create a corporate environment where the issues complained of are less likely to reoccur.  For example, the reforms include:

- The creation of a senior executive-level Risk Management Committee, with Board-approved charter, charged with ensuring that due diligence risk issues are identified and raised to the CEO and Board level;

- Implementation of a comprehensive internal electronic database, linking all the separate business units involved in M&A due diligence with over 500 specified due diligence items, ranging from valuation to integration;

- Reforms to the Board's Finance & Investment Committee and Investment Review Board, charged with oversight of M&A activity, relating to the composition and dissemination of due diligence prepared reports by advisors retained by the

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   13
Master File No. C-12-6003-CRB

Company, and a defined process review of M&A activities, with specific criteria and metrics for target selection, valuation and integration;

- Bolstering institutionalized due diligence education and training;

- Implementation of a new fairness opinion policy relating to outside advisor's independence, conflicts of interest, and the assumptions and qualifications used in written fairness opinions; and

- A new M&A due diligence policy, with a technology due diligence plan to be approved by Board's Technology Committee.

These reforms were brought about as a result of the efforts of Plaintiff, address the allegations in Plaintiff's complaint, and are causally connected to the efforts of the Settling Parties. Stanford University Professor David Larcker, one of the Country's foremost experts on corporate governance, and who worked with Federal Counsel during the negotiation process, opined that the reforms will provide substantial benefits to HP and its shareholders by changing HP's M&A practices and reducing the likelihood of future harm. Decl. of David F. Larcker at ¶¶ 2, 6-14. Similarly, as found by Judge Walker, who oversaw the negotiations, "the derivative action conferred a substantial benefit to HP by promoting and assisting in the development and implementation of new corporate governance measures designed to prevent future failures to detect accounting improprieties, misrepresentations and disclosure failures in the due diligence process leading up to large mergers and acquisitions." Arbitration Decision (dkt. 233-1) at 8.

The reforms thus amount to substantial consideration. Indeed, courts have repeatedly held that governance reforms such as these are extremely valuable to a corporation. For example, in granting approval of a shareholder derivative action settlement on behalf of Nvidia Corp., the district court held that, "[a]s corporate debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the economic well-being and success of a corporation." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), slip op. at 4 (N.D. Cal. Dec. 22, 2008); see also, *In re F5 Networks, Inc. Derivative Litigation*, No. C06-794 RSL, slip op. at 2 (W.D. Wash. Jan. 6, 2011) ("The Court finds that the corporate

1   governance measures implemented and/or maintained through the Settlement provide substantial

2   benefits to F5 and its shareholders."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005)

3   ("Courts have recognized that corporate governance reforms such as those achieved here provide

4   valuable benefits to public companies.") (citing cases).

5        Moreover, as additional consideration provided in the Third Amended Settlement, the

6   Settling Parties agreed that HP will cause the newly formed public company that will result from

7   the Separation of HP into two Fortune 50 companies to adopt the governance reforms described

8   above, subject to the Court's approval of the settlement.  Thus, both companies will now benefit

9   from these valuable corporate governance reforms, along with HP's shareholders, who will own

10   shares in both companies.

11       **E.**    **The Proposed Attorneys' Fees Are Fair and Reasonable**

12        In recognition of the substantial benefits conferred upon HP, HP has agreed to pay

13   attorneys' fees to Settling Plaintiffs' Counsel in an amount determined by binding arbitration by

14   Judge Walker, and subject to Court approval.

15        The United States Supreme Court has endorsed such a consensual resolution of attorneys'

16   fee issues.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees

17   should not result in a second major litigation.  Ideally, of course, litigants will settle the amount

18   of a fee.").  Moreover, where there is no evidence of collusion and no detriment to the parties,

19   the court should give "substantial weight to a negotiated fee amount."  *Ingram v. Coca-Cola Co.*,

20   200 F.R.D. 685, 695 (N.D. Ga. 2001); Walker Decl. (dkt. 149-1) at ¶¶13-15, 22.

21        Judge Walker was well-positioned to serve as an arbiter of fees, and the respective

22   contributions of Plaintiffs' counsel, having served as the mediator during the arm's-length

23   settlement negotiations.  He considered written briefs, and held a hearing with oral arguments,

24   before issuing a written decision supporting his award.  Arbitration Decision (dkt. 233).  As set

25   forth in the decision, Judge Walker awarded $7,171,998 in fees and $72,948.90 in expenses to

26   Cotchett Pitre & McCarthy LLP, and $1,528,002 in fees and $108,873.80 in expenses to Robbins

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   **15**
Master File No. C-12-6003-CRB

Geller Rudman & Dowd LLP.  *Id.* at 30-31.  The fee award was supported by legal authorities, both in federal court and in Delaware (where HP is incorporated), and is comparable to similar settlements involving the implementation of corporate reforms to address the underlying wrongdoing.  *Id.* at 20-23.

Finally, all of these amounts are subject to the approval of the Court, and if preliminary approval is granted, will be reflected in the updated form of notice sent to shareholders for their (and the Court's) consideration for final approval.

**F.     The Notice Program is Robust and Routinely Applied in Derivative Actions**

In the event the Court grants preliminary approval of the Settlement, Federal Plaintiff respectfully requests that the Court establish dates by which (i) notice of the Settlement will be distributed to HP shareholders, (ii) dates by which HP shareholders may comment on the Settlement, and (iii) a date for the final Settlement Hearing.

Since the Settlement includes Governance Revisions relating to HP's internal merger and acquisition processes, HP has summarized the reforms in its public filings in this Court but has filed the precise terms of the Governance Revisions under seal.  The proposed notice provides that HP shareholders who wish to review the precise terms of the Governance Revisions for the purpose of evaluating and potentially objecting to the Settlement, must submit a request to HP's counsel verifying their shareholder status and agreeing to be bound by an appropriate confidentiality agreement restricting the disclosure and use of the information.  See Settlement, Ex. B (Notice).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA   16
Master File No. C-12-6003-CRB

As set forth in the Notice Order, Morrical respectfully proposes the following schedule:

| | |
|---|---|
| Short-Form Notice of Proposed Derivative Settlement published in *The Wall Street Journal*, *New York Times*, *The San Francisco Chronicle*, and *Investors' Business Daily* ("Notice Date") | 10 business days after Court enters the Notice Order preliminarily approving Settlement |
| Filing of Notice of Proposed Derivative Settlement via a Form 8-K with the SEC | 10 business days after Court enters the Notice Order preliminarily approving Settlement |
| Filing of Motion for Final Approval of Derivative Settlement | 35 calendar days before the Settlement Hearing |
| Last day for HP shareholders to comment on the settlement | 20 calendar days before the Settlement Hearing |
| Last day for Settling Parties to submit any papers in opposition to any comments | 7 calendar days before the Settlement Hearing |

The notice program – including the form of notice[3] and proposed schedule – is similar to that used in other derivative settlements and provides due process to HP shareholders with respect to their rights. *Feuer* v. *Thompson, Wells Fargo, et al.*, 2012 WL 6652597, at *2-3 (N.D. Cal. Dec. 13, 2012) (approving parties' proposal to (1) publish notice in *The New York Times* and *The Wall Street Journal*, (2) file notice with a Form 8-K, and (3) maintain link on its website with notice and certain pleadings); *In re Atmel Corp. Deriv. Litig.*, 2010 WL 9525643, at *5 (N.D. Cal. Mar. 31, 2010) (requiring (1) press release, (2) link on company website, and (3) publication of summary notice in *Investor's Business Daily*); *In re PMC-Sierra Inc. Deriv. Litig.*, No. C-06-05330, Order at 2 (N.D. Cal. Jan. 26, 2010) (Dkt. 171) (approving publication notice).

Lead Plaintiff also proposes a final approval hearing date on Friday, <u>July 10, 2015</u>.

---

[3] The notice shall be published on two occasions in *The Wall Street Journal*, *The New York Times*, *The San Francisco Chronicle* and *Investor's Business Daily* as well as a post with the SEC and on HP's website.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Notice of Motion and Motion for Preliminary Approval of Third Amended and Restated Stipulation of Settlement; MPA    17
Master File No. C-12-6003-CRB

IV.    **CONCLUSION**

For all the reasons stated herein, Federal Plaintiff Stanley Morrical respectfully submits that the Third Amended Settlement is fair, reasonable, and adequate to HP and its shareholders, and requests that the Court preliminarily approve the settlement and submit it to the consideration of HP's shareholders on the schedule set forth above.

Dated:  January 22, 2015                    Respectfully Submitted,

                                            */s/  Mark C. Molumphy*
                                            Mark. C. Molumphy

                                            **COTCHETT, PITRE & McCARTHY, LLP**
                                            840 Malcolm Road, Suite 200
                                            Burlingame, CA 94010
                                            Telephone: (650) 697-6000
                                            Facsimile: (650) 697-0577

                                            *Lead Counsel for Plaintiff Stanley Morrical,*
                                            *derivatively on behalf of Hewlett-Packard Company*