1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE HEWLETT-PACKARD COMPANY               No. 3:12-cv-06003-CRB
     SHAREHOLDER DERIVATIVE
12   LITIGATION                                  **ORDER GRANTING MOTION FOR
                                                 PRELIMINARY APPROVAL OF
13                                               THIRD AMENDED SETTLEMENT,
     THIS DOCUMENT RELATES TO:                   SETTING SCHEDULING, AND
14                                               ADDRESSING MISCELLANEOUS
     ALL ACTIONS                                 RELIEF**
15
     _____/
16

17          Lead Plaintiff Stanley Morrical, derivatively on behalf of Hewlett-Packard Company

18   ("HP"), moves for preliminary approval of the parties' Third Amended and Restated

19   Stipulation of Settlement ("Third Amended Settlement") (dkt. 277).  This Court denied

20   preliminary approval of the parties' Second Amended and Restated Stipulation of Settlement

21   ("Second Amended Settlement") on December 19, 2014.  See Order re Second Amended

22   Settlement (dkt. 265).  There, the Court determined that while it was fair and reasonable to

23   release "all Autonomy-Related claims," the Second Amended Settlement faltered by also

24   releasing "all Known Claims arising from the allegations in the Complaints," which

25   potentially barred a much broader universe of claims unrelated to the Autonomy acquisition.

26   In lacking a tether to the core of this litigation, the scope of the releases in this latter clause

27   extended beyond what was fundamentally fair, adequate, and reasonable.

28          Subsequently, the parties filed the Third Amended Settlement now at issue, which

**United States District Court**
For the Northern District of California

1   revised its predecessor in two significant ways: by limiting the scope of the releases to

2   Autonomy-related claims, and by extending a set of corporate governance reforms to cover

3   both HP entities that will result from a planned division that was announced in October 2014.

4   After directing all interested parties to file views (dkt. 278) and considering all filings and

5   evidence, the Court determines that the Third Amended Settlement is within the range of

6   possible approval because it appears to be a fundamentally fair, adequate, and reasonable

7   resolution of shareholder claims.  Accordingly, the Court GRANTS the motion for

8   preliminary approval of the Third Amended Settlement.

9   **I.      BACKGROUND**

10          **A.      The Autonomy Acquisition**

11          This litigation stems from HP's failed acquisition of Autonomy, which resulted in a

12  write-down of 85% of the $11.7 billion purchase price.  Consol. Shareholder Compl. (dkt.

13  75) ¶ 2.  HP is a publicly-traded technology company incorporated in Delaware and

14  headquartered in Palo Alto, California.  Id. ¶ 32.  Autonomy was a publicly-traded software

15  company based in the United Kingdom and founded by individual defendant Michael R.

16  Lynch in 1996.  Id.  ¶¶  2, 75.

17          In September 2010, HP announced that it had hired Leo Apotheker as the new CEO.

18  Id. ¶ 76.  Four months after taking over as CEO, Apotheker announced that he intended to

19  quickly "transform" HP from a hardware producer into a software and services provider.  Id.

20  ¶ 77.  In April 2011, Apotheker and Lynch met to discuss a possible acquisition of

21  Autonomy.  Id. ¶ 90.  The following month, HP's Board approved Apotheker's proposal to

22  look into the acquisition and hired Barclays Bank PLC and Perella Weinberg Partners to

23  evaluate the possible deal.  Id. ¶ 92.  According to the Complaint, Apotheker aggressively

24  pushed the acquisition over CFO and Executive Vice President Catherine A. Lesjak's

25  objections.  Id. ¶ 117.  In July 2011, Apotheker and Lynch agreed to a deal-in-principal for

26  HP's acquisition of Autonomy, and due diligence on the deal occurred between July 28 and

27  August 18, 2011.  On August 18, 2011, HP and Autonomy released a joint press release

28  announcing the planned acquisition.  Id. ¶ 11–12.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    The next day, HP's stock price dropped by approximately 20%.  This was the first day

2    of the class period.  In the months that followed, whistleblower allegations emerged that

3    suggested HP had overpaid for Autonomy.  Id. ¶¶ 235–237.  Apotheker responded at an

4    investor conference to the market's negative reaction by making assurances that HP had been

5    "extremely tight and very professional" in evaluating the Autonomy deal.  Id. ¶ 13.

6    On September 22, 2011, a week before the Autonomy deal closed, Margaret Whitman

7    replaced Apotheker as CEO.  Id. ¶ 201.  Plaintiff alleges that Whitman and other HP

8    executives sought to withdraw the offer to purchase Autonomy, but were told that the United

9    Kingdom's takeover rules made this impossible.  The Autonomy acquisition closed in

10   October 2011.

11   After the transaction closed, HP began studying Autonomy's software revenue

12   recognition practices to optimize for United States Generally Accepted Accounting Practices.

13   Id. ¶ 253.  HP discovered that Autonomy's earnings and growth numbers were not what they

14   had seemed, and that integrating Autonomy into HP did not result in the anticipated revenue

15   or growth.  Id.  In an earnings conference call with investors in August 2012, Lesjak and

16   Whitman attributed weak revenue numbers to prevailing business trends and touted HP's

17   ability to leverage Autonomy as an integrated system.  Id. ¶¶ 267–68.

18   In May 2012, a whistleblower, identified as a senior member of HP's Autonomy unit,

19   came forward to raise concerns with HP's General Counsel about Autonomy's accounting

20   improprieties.  Id. ¶ 235.  Whitman learned of the allegations and immediately authorized

21   hiring PricewaterhouseCoopers LLP ("PwC") to conduct an investigation.  Id. ¶ 253.  While

22   the investigation was still ongoing, HP reported that its software segment results were

23   worsening and that it might record a goodwill impairment.  Id. ¶¶ 262–68.

24   On November 20, 2012, HP announced the results of the PwC investigation.  Id.

25   ¶ 289.  HP conceded that hundreds of million of dollars of Autonomy's pre-acquisition

26   revenue had been improperly recorded, that key Autonomy documents were missing, and that

27   HP had substantially overpaid for Autonomy.  Id. ¶ 290.  HP concluded that it had been the

28   victim of a fraud in the Autonomy deal and wrote down 85% of the purchase price, a loss of

United States District Court
For the Northern District of California

1    approximately $8.8 billion.  Id.  HP's stock dropped another 12% on this news.  Id. ¶ 294.

2    This was the final day of the class period.

3        **B.    Procedural Background**

4        Litigation ensued, with numerous plaintiffs filing related shareholder derivative

5    actions in 2012.  On February 21 and March 4, 2013, this Court consolidated three categories

6    of cases: "derivative shareholder suits, nonderivative securities class actions, and ERISA

7    suits" which all "share[d] common facts."  Order Consolidating Cases and Appointing Lead

8    Plaintiffs and Counsel (dkt. 65).  All then-pending actions were "Demand Futile" suits in that

9    the plaintiffs had not made a demand on the Board of Directors.  See Stip. (dkt. 61).

10       In response to the litigation, HP formed a Demand Review Committee ("DRC") in

11   December 2012 to investigate the derivative claims.  See Mot. to Sever (dkt. 143) at 2, 4

12   (citing Compl., Ex. 1.; Opp'n to Mot. to Sever (dkt. 147) at 3).  While the DRC evaluated the

13   claims, the Court stayed the case pursuant to stipulations.  See Orders Staying Case (dkts. 87,

14   123).  In January 2014, HP reported to the Court that the DRC had presented its findings and

15   recommendations to the Board of Directors and, on the basis of those recommendations, the

16   Board of Directors made certain unspecified decisions.  See Status Report (dkt. 129) at 2.

17       HP and the Demand Futile Plaintiffs reached a proposed settlement agreement in front

18   of Retired Chief Judge Vaughn R. Walker.  See generally Mot. for Prelim. Approval (dkt.

19   149-2); Walker Decl. (dkt. 149-1).  HP concurrently filed an Administrative Motion to File

20   Under Seal certain corporate governance reforms it would enact as part of the settlement

21   (dkt. 150).  Various parties moved to intervene to challenge the proposed settlement.  See

22   Mot. to Intervene (dkts. 160, 172, 212).

23       At a hearing on August 25, 2014, the Court expressed concern over the breadth and

24   vagueness of the proposed settlement's release clauses as well as the ambiguous severability

25   of the attorney retention clauses from the rest of the agreement.  See Hearing Trans. (dkt.

26   199).  On September 3, the parties submitted a First Amended Settlement (dkt. 201).  After a

27   hearing on September 26, 2014, but before the Court ruled on the Motion for Preliminary

28   Approval of the First Amended Settlement, the parties filed the Second Amended Settlement.

United States District Court
For the Northern District of California

1    In an Order on December 19, 2014, the Court denied preliminary approval of the Second

2    Amended Settlement on the grounds that it released too broad a list of potential claims.  See

3    Order re Second Amended Settlement at 1–2.  Specifically, the Court determined that while it

4    was fair and reasonable to release Autonomy-related claims, the second clause of the release

5    extended too broadly by barring "all Known Claims arising from the allegations in the

6    Complaints, that Settling Plaintiffs or any other Securities Holder asserted or could have

7    asserted derivatively on behalf of the Company."  Id.  Because it was impossible for the

8    Court or parties to determine the scope and merits of the claims released by this second

9    clause, and because it encompassed a universe of claims that strayed far beyond the

10   Autonomy acquisition at the heart of the litigation, the Court could not say it was a fair and

11   reasonable resolution of this action.  Id. at 2.

12        On January 22, 2015, the parties filed the instant motion for preliminary approval of

13   the Third Amended Settlement.  See Motion re Third Amended Settlement.  This Court

14   directed all interested parties to serve and file any views they wished to raise as to the Third

15   Amended Settlement, and allowed all interested parties to respond to those views.  See Order

16   re Views (dkt. 278).  Those filings are now before the Court.  See generally Docket.

17   **II.      LEGAL STANDARD**

18        Federal Rule of Civil Procedure 23 governs a district court's analysis of the fairness of

19   a settlement of a shareholder derivative action.  Under Rule 23, a derivative action "may be

20   settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ.

21   P. 23(e).  The Court must determine whether the settlement is "fundamentally fair, adequate

22   and reasonable."  In re Rambus Inc. Derivative Litig., No. c-06-3515-JF, 2009 WL 166689,

23   at *2 (N.D. Cal. Jan. 20, 2009) (citing Fed. R. Civ. P. 23(e); Mego Financial Corp. Sec.

24   Litig., 213 F.3d 454, 459 (9th Cir. 2000); Officers for Justice v. Civil Service Comm'n, 688

25   F.2d 615, 625 (9th Cir. 1982)).  "The preliminary determination establishes an initial

26   presumption of fairness."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079–80

27   (N.D. Cal. 2007) (citation omitted).  The district court must balance a number of factors,

28   including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely

United States District Court
For the Northern District of California

duration of further litigation; . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." Mego, 213 F.3d at 458 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).[1]  "The relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case."  Officers for Justice, 688 F.2d at 625.  To determine whether a proposed settlement is "'within the range of possible approval,'" the Court also ensures it is "'not the product of fraud or overreaching by, or collusion between, the negotiating parties.'"  In re NVIDIA Corp. Derivative Litig., No. C-06-06110-SBA, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting Officers for Justice, 688 F.2d at 625); see also Mego, 213 F.3d at 458.

## III.  DISCUSSION

And here we are again, with the Third Amended Settlement as the latest installment in a series of proposals to resolve derivative shareholder claims arising from the Autonomy acquisition.  But unlike the prior versions, the Third Amended Settlement explicitly limits the scope of the released claims to those related to the Autonomy acquisition.  Specifically, the Third Amended Settlement releases only "all Autonomy-Related Claims, that Settling Plaintiffs or any other Securities Holder asserted or could have asserted derivatively on behalf of the Company, or that the Company could have asserted directly in its own right, against any of the Releasees," except for certain preserved and pending claims that survive. See Third Amended Settlement ¶ 61.  Moreover, on October 6, 2014, HP announced plans to separate into two new publicly traded Fortune 50 companies: one comprising HP's technology infrastructure, software, and services business, which will do business as Hewlett-Packard Enterprise, and one comprising HP's personal systems and printing businesses, which will do business as HP Inc.  The Third Amended Settlement also adds that the governance reforms achieved as part of the settlement will be implemented at both

---

[1]    These cases and factors address the approval of settlements in the class action context, but courts apply them also when reviewing proposed settlements in shareholder derivative suits.  See, e.g., Rambus, 2009 WL 166689; see also 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3D § 1839 at 195 (2014) ("[C]ases involving dismissal or compromise under Rule 23(e) of nonderivative class actions . . . are relevant by analogy" to derivative suits.).

Hewlett-Packard Enterprise and HP Inc.  All other provisions are substantially the same as they appeared in the Second Amended Settlement.  See Third Amended Settlement Redline (dkt. 277-2).

The Court's core inquiry is to determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate," Fed. R. Civ. P. 23(e), such that it merits an "initial presumption of fairness," In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80.  This Court assesses a proposed settlement of a shareholder derivative suit at the preliminary approval stage by balancing a number of relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;" "the amount offered in settlement;" and "the experience and views of counsel."  See Rambus, 2009 WL 166689, at *2; Mego, 213 F.3d at 458. The district court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties.  Mego, 213 F.3d at 458; Officers for Justice, 688 F.2d at 625.

The Court is persuaded that the Third Amended Settlement meets all these criteria at the preliminary approval stage.  Having reviewed the motion for preliminary approval and the objecting and supporting views filed by interested parties, the Court finds no obvious deficiencies in the settlement agreement that would undermine an initial presumption of fairness.  The scope of the releases that has long troubled this Court appears to have been significantly and substantively narrowed.  The history of the settlement process is illustrative here.  The description of released claims as it appeared in the First Amended Settlement was broad and detailed, and extended much more broadly than liability related to the Autonomy acquisition to include a lengthy list of apparently unrelated examples: "alleged violations of federal or state securities laws," "the Company's hiring and compensation of its officers and directors," "the Company's share repurchase program," "the Company's historical strategy for and implementation of acquisitions," "allegedly false or misleading proxy statements filed by the Company in 2013," "the Company's foreign loan program," and "the adequacy of and compliance with the Company's internal controls," among others.  See First Amended Settlement at 14–15.

United States District Court
For the Northern District of California

After this Court expressed concerns about the extent to which these released claims appeared to go far beyond those related to the Autonomy acquisition, but before the Court ruled on preliminary approval, the parties amended again, and filed a Second Amended Settlement.  The most salient change appeared in the provisions related to the released claims, which had been changed into a brief and ostensibly straightforward two-part clause: first, "all Autonomy-Related Claims," and second, "all Known Claims arising from the allegations in the Complaints, that Settling Plaintiffs or any other Securities Holder asserted or could have asserted derivatively on behalf of the Company, or that the Company could have asserted directly in its own right, against any of the Releasees."  See Second Amended Settlement ¶ 62.  But because expansive allegations and descriptions in the various complaints arguably put in issue a range of HP practices as broad as the long list of examples in the First Amended Settlement, it appeared to the Court that the scope of released claims had not actually narrowed at all.

Not so in the Third Amended Settlement.  Although the scope of the release in this proposal is broad, it appears at the preliminary approval stage to be acceptable because the released claims are limited to those based upon the core of this litigation: the Autonomy acquisition.  This comports with the approach taken by the Ninth Circuit with respect to preliminary approval of settlement agreements in the class action context.  There, the court has explained that "[a] settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'"  See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (quoting Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008), and Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287 (9th Cir. 1992)); see also Cancilla v. Ecolab Inc., No. 12-cv-03001-CRB, 2014 WL 2943237, at *7 (N.D. Cal. June 30, 2014).  Thus, a court may approve releases that bar claims "ar[ising] from the same common nucleus of operative fact" alleged in the settled action.  See Class Plaintiffs, 955 F.2d at 1288.

United States District Court
For the Northern District of California

By tethering the released claims to those relating to Autonomy, the Third Amended Settlement allows this Court to weigh the release of Autonomy liability against the corporate governance reforms designed to address some of the circumstances that allowed the failed acquisition to occur.  The shareholders do not appear to be relinquishing any claims that lack a factual overlap with the substance of this litigation.  Although the strength of the plaintiffs' case is murky at best at this stage in the litigation, "[t]he very essence of a settlement is compromise," and the Court must look to whether the amount offered in settlement appears fairly and reasonably commensurate.  See Officers for Justice, 688 F.2d at 624; Mego, 213 F.3d at 458 (citing Hanlon, 150 F.3d at 1026).  "[D]erivative lawsuits are rarely successful," and various preliminary factors including limitations in HP's corporate charter and difficulties of proof give little reason to hope that the claims here would have prevailed against the odds.  See In re Pacific Enters. Sec. Litig., 47 F.3d 373, 377–78 (9th Cir. 1995).  The revisions to HP's mergers and acquisitions policies through the corporate governance reforms inure to the benefit of both HP entitites, and at this early stage of the ligitation, the trade-off of Autonomy-related claims for corporate governance reforms appears fair, reasonable, and adequate.

Moreover, the Third Amended Settlement appears to be the result of good-faith and arms'-length bargaining, with no evidence of fraud or collusion to taint the negotiations.  The mediation process was overseen by Retired Chief Judge Vaughn R. Walker, and the long road to a proposed settlement involved extensive negotiations conducted on behalf of all parties by experienced and informed counsel.

In light of the "'strong judicial policy that favors settlements'" and this Court's satisfaction that the Third Amended Settlement appears to represent a fair, reasonable, and adequate resolution of shareholder claims, preliminary approval is appropriate.  See id. (quoting Class Plaintiffs, 955 F.2d at 1276).  But the Court remains open to all objections and evidence that the notice and discovery periods may unearth, with an eye towards determining whether this imprimatur of fairness holds true at the final approval stage.

**United States District Court**
For the Northern District of California

1  **IV.    CONCLUSION AND DISPOSITIONS**

2      **A.    Pending Motions**

3          For the reasons stated above, the Court finds that the Third Amended Settlement is

4  within the range of possible approval and, accordingly, the Court GRANTS the motion for

5  preliminary approval of the Third Amended Settlement.  All discovery motions in connection

6  with final approval shall be heard by Magistrate Judge Elizabeth Laporte.  Proposed

7  Intervenor A.J. Copeland's motion for a preliminary injunction and discovery in further

8  support thereof (dkt. 276) is DENIED without prejudice for lack of standing and for lack of

9  any legal grounds to support it.  Copeland's renewed motion to intervene (dkt. 269), which

10  was expressly predicated on and justified by motions that have been denied, is DENIED

11  without prejudice.  HP's unopposed administrative motion to seal the corporate governance

12  revisions (dkt. 150) achieved as part of the Third Amended Settlement is GRANTED

13  because the Court finds compelling reasons to prevent public disclosure due to the detriment

14  that HP would suffer in the mergers and acquisitions process if competitors had access to this

15  sensitive corporate playbook, and because under these circumstances the public interest in

16  disclosure is appropriately balanced in the mechanism for shareholder access described in

17  subpart F, infra.  See Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178–79 (9th

18  Cir. 2006).  All other pending motions shall be referred to Magistrate Judge Laporte for her

19  determination as to whether they must be resolved prior to the hearing on final approval.  All

20  hearings on pending motions are VACATED as appropriate for resolution without oral

21  argument pursuant to Civil Local Rule 7–1(b), subject to being rescheduled as necessary

22  upon review by Magistrate Judge Laporte.  Lead Plaintiff's ex parte application to continue

23  hearings to the same date (dkt. 286) accordingly is DENIED AS MOOT.

24      **B.    Notice and Scheduling**

25          The Court approves, as to form and content, the Notice of Proposed Settlement that

26  appears at Exhibit B to the Third Amended Settlement, and finds that the notice procedures

27  outlined in subsection III.B.–C. of the Third Amended Settlement, meet the requirements of

28  due process and of Federal Rule of Civil Procedure 23.1, are the best procedures practicable

**United States District Court**
For the Northern District of California

under the circumstances, and provide due and sufficient notice to all interested persons of all matters relating to the Settlement.  HP will pay or cause to be paid all costs associated with providing the notice described in this Order. The Court adopts the notice schedule suggested by Lead Plaintiff, such that:

a.      the Settling Parties shall cause notice of the terms of the proposed Settlement and the final approval order, substantially in the form filed with the Court as Exhibit B to the Third Amended Settlement, to be published in The Wall Street Journal, The New York Times, The San Francisco Chronicle, and Investor's Business Daily, no later than 10 business days after the date of this Order;

b.      HP shall cause notice to be filed with the United States Securities and Exchange Commission as an attachment to a Form 8-K and shall cause the notice and the Third Amended Settlement to be published through a link located on the Investor Relations page of its website, no later than 10 business days after the date of this Order;

c.      the motion for final approval of the Settlement should be filed 35 calendar days before the final approval hearing;

d.      the last day for HP shareholders to comment on the Settlement is 20 calendar days before the final approval hearing;

e.      the last day for settling parties to file with the Court (and serve on each other) any papers they wish to submit in support of the proposed settlement is 15 calendar days before the final approval hearing;

f.      the last day for settling parties to file with the Court (and serve on each other) any papers they wish to submit in opposition to any comments or submissions is 7 calendar days before the final approval hearing; and

g.      HP, at or before the final approval hearing, shall cause proof of notice to be filed as set out in this Order.

**C.      Objections**

Securities holders who wish to object to the fairness, reasonableness, or adequacy of

the Third Amended Settlement or to any term(s) of the Third Amended Settlement must both serve on counsel and file with the Court a statement of objection, which must be received by no later than twenty days before the final approval hearing.  The securities holder may object on his, her, or its own, or through counsel hired at his, her or its own expense.  The securities holder's statement of objection should set out the specific reasons, if any, for each objection, including any legal support the securities holder wishes to bring to the Court's attention and any evidence the securities holder wishes to introduce in support of such objections.  The statement of objection must also include the following information about the securities holder or (if represented by counsel) about the attorney:  (i) name, (ii) address, (iii) telephone number, (iv) e-mail address, if available, and (v) evidence that the individual or entity on whose behalf the objection has been made is and has been a securities holder of HP stock at all relevant times.

**D.      Final Approval Hearing**

The final approval hearing shall be set for July 24, 2015, at 10:00 a.m., subject to any rescheduling by the Court as noted on the docket, before Judge Charles R. Breyer, in Courtroom 6, 17th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.  The Court reserves the right to continue the final approval hearing without further written notice to securities holders or anyone else other than the settling parties. At the final approval hearing, the Court will, among other things:

a.      determine finally whether the proposed Settlement, the terms and conditions of which are set out in the Third Amended Settlement, is fair, reasonable, adequate, and in the best interests of HP and its shareholders and should be approved by the Court;

b.      determine finally whether the form and method of notice to securities holders that will be implemented pursuant to the Third Amended Settlement and this Order (i) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law, (ii) sufficiently informed all relevant persons and entities about the Third Amended Settlement, the final approval hearing, and their ability to object

United States District Court
For the Northern District of California

1  to the Settlement, and (iii) were reasonable and constituted due, adequate, and

2  sufficient notice to all persons entitled to notice;

3  c.      determine finally whether the Federal Plaintiff fairly and adequately

4  represented the shareholders' and HP's interests;

5  d.      determine whether the proposed Order Approving Settlement and the proposed

6  Final Judgment (forms of which are attached in their entirety as Exhibits C and D to

7  the Third Amended Settlement) should be entered in this Federal action;

8  e.      determine whether the claims asserted against the settling Individual

9  Defendants and the settling Professional Advisor Defendants in the Federal action

10  should be dismissed with prejudice pursuant to the terms of the Third Amended

11  Settlement and whether the claims against Releasees should be fully and finally

12  released;

13  f.      determine whether the Court should enter a permanent injunction, as set out in

14  the proposed Order Approving Settlement at paragraph 12 or as modified by the

15  Court;

16  g.      determine whether the proposed Complete Bar Order, as set out in the proposed

17  Order Approving Settlement at paragraph 13, should be entered; and

18  h.      determine any other matters relating to the approval and implementation of the

19  Third Amended Settlement.

20  The Court may approve the Third Amended Settlement (with or without any

21  modifications executed by the settling parties) and enter an Approval Order at or after the

22  final approval hearing or any adjournment of the final approval hearing and dismiss the

23  claims asserted against the settling Defendants named in the Complaint on the merits and

24  with prejudice with or without further notice to any persons or entities other than the settling

25  parties.

26  **E.      Preliminary Injunction**

27  Pending final determination by the Court whether the Third Amended Settlement

28  should be approved, this Court preliminarily bars and enjoins all securities holders, any of

their respective representatives, trustees, successors, heirs, agents, and assigns, and anyone else purporting to act on behalf of or derivatively for HP, from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory or other proceeding (as well as filing a complaint in intervention in such proceedings in which the person or entity filing such complaint in intervention purports to be acting on behalf of or derivatively for any of the above) or order in any jurisdiction or forum based on or relating to any Autonomy-related claim that may be brought in a derivative capacity, save and except for in the United States District Court for the Northern District of California; provided however, that nothing in the preliminary injunction granted by the Court shall bar (i) HP or Autonomy (but not a securities holder acting on behalf of HP) from asserting Non-Released Preserved Claims in any pending or future judicial, administrative, regulatory, arbitration, or other proceeding, or (ii) any appropriate shareholder or HP from asserting any Non-Released Pending Claims, in any pending judicial proceeding, or (iii) any securities holder from asserting claims that are solely direct claims (including claims made in the Securities Class Action and/or the ERISA Class Action), and not claims made on behalf of HP, in any pending or future judicial, administrative, regulatory, arbitration, or other proceeding; provided further, that no part of this preliminary injunction shall bar HP or any defendant from seeking to stay or dismiss any other proceedings.

Notwithstanding the preliminary injunction set out in the preceding paragraph, certain rights are reserved:

a.     Neither HP nor Autonomy shall be barred or enjoined from asserting any Non-Released Preserved Claims, and neither the Releasees nor HP shall be barred or enjoined from asserting any defense, against any non-Releasee (including but not limited to Autonomy, Legacy Autonomy Officials, Autonomy Pre-Acquisition Advisors, or Autonomy Business Partners) in any pending or future judicial, administrative, regulatory, arbitration, or other proceeding;

b.     Neither HP nor any appropriate shareholder shall be barred or enjoined from

United States District Court
For the Northern District of California

asserting any Non-Released Pending Claims in any pending judicial proceeding;

c.      No securities holder shall be barred or enjoined from asserting claims that are solely direct claims (including claims made in the Securities Class Action and/or the ERISA Class Action) and not claims made on behalf of HP, in any pending or future judicial, administrative, regulatory, arbitration, or other proceeding; and

d.      The following Claims shall not be barred or enjoined:

(1)      by any of the settling parties, settling Plaintiffs' counsel, or Defendants' settlement counsel to enforce the terms of the Third Amended Settlement, the Approval Order, or the Judgment;

(2)      by HP to seek reimbursement for advanced attorneys' fees or expenses from any Releasee who has been determined, or may be determined, to be unindemnifiable with respect to any Released securities holder/HP claims;

(3)      by Defendants or Defendants' settlement counsel seeking reimbursement for fees and expenses incurred in representing any of HP, settling Individual Defendants, settling Professional Advisors or any other Releasee;

(4)      belonging to HP or any insured Releasee against any of HP's insurers arising out of or relating to any potentially applicable insurance contracts or other agreements; provided that any such claim must be asserted directly by HP or the insured Releasee in its, his, or her own right; and

(5)      by any Releasee who is or was employed or associated with HP, with respect to the rights of any such individual or entity under (i) pension plans, 401(k) plans, separation agreements, employment agreements, stock options, salary benefits or any other benefit plan, including health plans, in which such Releasee participates as a result of his or her current or former employment or association with HP, or (ii) indemnification, advancement or insurance coverage with respect to any claim made as to a Releasee that arises by reason of the fact that he or she is or was a director, officer, or employee of HP, or

United States District Court
For the Northern District of California

1           under a written agreement between the Releasee and HP or its affiliates

2           providing for indemnification, advancement, or insurance coverage.

3        **F.**       **Process to Review the Governance Revisions**

4           Securities holders who wish to review the governance revisions for the purpose of

5 evaluating and potentially objecting to the fairness, reasonableness, or adequacy of the Third

6 Amended Settlement or to any to any term(s) of the Third Amended Settlement must submit

7 a request to counsel for HP no later than twenty calendar days before the final approval

8 hearing. A request to review the governance revisions must include the following

9 information about the securities holder or (if represented by counsel) about the attorney: (i)

10 name, (ii) address, (iii) telephone number, (iv) e-mail address, if available, and (v) evidence

11 that the individual or entity on whose behalf the request is being made is a securities holder

12 of HP. Further, the requesting securities holder must agree to be bound by the

13 Confidentiality Agreement attached as Appendix A to this Order, restricting the disclosure of

14 the information and restricting the use of the information to evaluate whether to lodge an

15 objection to the fairness, reasonableness, or adequacy of the Third Amended Settlement.

16 Provided that the securities holder satisfies these conditions and agrees to abide by the

17 Confidentiality Agreement, HP shall provide such securities holder with a copy of the

18 governance revisions within five business days. Any breach of the Confidentiality

19 Agreement shall be deemed a breach of a court order.

20        **G.**       **Filing and Service of Submissions**

21           Any securities holder wishing to make a submission pursuant to this Order must serve

22 such submission on counsel and file it with the Court as follows:

23          a.       the submission must be filed with the Clerk of Court for the United States

24          District Court for the Northern District of California, Phillip Burton Federal Building

25          and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California

26          94102; and

27          b.       the submission must be served by facsimile, e-mail, and/or next-day (excluding

28          Saturday or Sunday) express delivery service upon each of the following counsel:

1    Counsel for Plaintiff Morrical:

2         Joseph W. Cotchett
          jcotchett@cpmlegal.com
3         Mark C. Molumphy
          mmolumphy@cpmlegal.com
4         Cotchett, Pitre & McCarthy, LLP
          840 Malcolm Road, Suite 200
5         Burlingame, California 94010
          Telephone:  (650) 697-6000
6         Facsimile:  (650) 697-0577

7    Counsel for State Plaintiffs Noel and Gould:

8         Darren J. Robbins
          DarrenR@rgrdlaw.com
9         Benny C. Goodman III
          BennyG@rgrdlaw.com
10        Robbins Geller Rudman & Dowd LLP
          655 West Broadway, Suite 1900
11        San Diego, California 92101
          Telephone:  (619) 231-1058
12        Facsimile:  (619) 231-7423

13
14   Counsel for HP:

15        Marc Wolinsky
          mwolinsky@wlrk.com
16        Wachtell, Lipton, Rosen & Katz
          51 West 52nd Street
17        New York, New York 10019
          Telephone:  (212) 403-1226
          Facsimile:  (212) 403-2226
18

19        Counsel for the settling parties are directed to inform each other promptly of any

20   submission served on them or that otherwise comes into their possession pursuant to this

21   Order.  Counsel for HP shall forward any submission served on them pursuant to this Order

22   to counsel for settling Individual Defendants and settling Professional Adviser Defendants.

23        **H.      Termination of Agreement**

24        This Order shall become null and void, and shall be without prejudice to the rights of

25   the parties in this Federal action or any other action (including the State actions), all of whom

26   shall be restored to their respective positions existing immediately before this Court entered

27   this Order, if the Third Amended Settlement is not finally approved by the Court or does not

28   become final, or if the Third Amended Settlement is terminated or does not become effective

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

for any reason.  In such event, (i) all provisions of the Third Amended Settlement other than its termination provisions shall become null and void and be of no further force or effect, (ii) neither the Third Amended Settlement (other than its termination provisions) nor any Court order regarding the Third Amended Settlement, including this Order, shall be used or referred to for any purpose whatsoever and (iii) none of the Third Amended Settlement, this Order, the negotiation of the settlements, or the statements or court proceedings relating to the settlements shall in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in this Federal action, the State actions, or any other judicial, administrative, regulatory, or other proceeding or action, except in a proceeding to enforce this provision of this Order.  Without limiting the foregoing, neither the Third Amended Settlement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity including, but not limited to, the Releasees, as a waiver by the Releasees of any applicable defense, or as a waiver by the Federal Plaintiff, the State Plaintiffs, or the Releasees of any claims, causes of action, or remedies, including claims as to non-Releasees.

## I.        Retention of Jurisdiction

Subject to the dispute-resolution provisions found at Subsection III.D. of the Third Amended Settlement, and to the referrals of the aforementioned matters to Magistrate Judge Laporte, this Court retains exclusive jurisdiction over the Federal action to consider all further matters arising out of or connected with the Third Amended Settlement, including a determination whether the proposed Settlement should be approved as fair, reasonable, and adequate and in the best interest of HP and its shareholders, and to enter an Order so finding.

**IT IS SO ORDERED.**

Dated: March 13, 2015

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

Appendix A

## <u>CONFIDENTIALITY AGREEMENT</u>

This Confidentiality Agreement (the "Confidentiality Agreement") is entered between nominal defendant Hewlett-Packard Company ("HP") and _____ ("Shareholder"), in connection with the action entitled *In re Hewlett-Packard Company Shareholder Derivative Litigation*, Master File No. 12 CV 6003 CRB (N.D. Cal.) (the "Action").

1.      **Scope**.  This Confidentiality Agreement shall govern the corporate governance enhancements that are being made under the Third Amended and Restated Stipulation of Settlement in the Action (and defined therein as the "Governance Revisions") and all information derived therefrom (collectively, the "Confidential Information").  This Confidentiality Agreement shall not apply to (a) information that is lawfully in the public domain; and (b) information known to Shareholder from a source who obtained the information lawfully and under no obligation of confidentiality to HP.

2.      **Permissible Uses**.  Shareholder may use Confidential Information solely (1) to evaluate whether to make an objection to the fairness, reasonableness, or adequacy of the Third Amended and Restated Stipulation of Settlement, or (2) to make an objection to the fairness, reasonableness, or adequacy of the Third Amended and Restated Stipulation of Settlement (the "Permissible Uses").

3.      **Permissible Disclosure**.  Shareholder may disclose Confidential Information solely to the officers, directors, employees, attorneys, or experts of Shareholder to whom disclosure is reasonably necessary for one of the Permissible Uses.  Before sharing Confidential Information under paragraph 3, Shareholder shall obtain the written agreement of such persons to be bound by this Confidentiality Agreement.

4.      **Objections; Court Filings**.  To the extent Shareholder wishes to rely on Confidential Information in a court filing, including a statement of objections to the Third Amended and Restated Stipulation of Settlement, material reflecting Confidential Information shall be filed under seal.

5.     **Compelled Disclosure**.  If Shareholder is served with a request, subpoena or court order that compels disclosure of any Confidential Information, Shareholder must promptly notify HP in writing, and in any event within two (2) business days, and provide with a copy of the subpoena or court order.  Shareholder shall cooperate with HP with respect to all reasonable procedures sought to be pursued to prevent disclosure of Confidential Information.

6.     **Unauthorized Disclosure**.  If Shareholder learns that, by inadvertence or otherwise, it or any of its officers, directors, employees or representatives has violated this Confidentiality Agreement, Shareholder must immediately (a) notify HP of the breach, (b) use its best efforts to retrieve all unauthorized copies of Confidential Information, (c) inform the person to whom unauthorized disclosure was made of the terms of this Confidentiality Agreement and (d) request such person to agree to be bound by this Confidentiality Agreement.

7.     **Disposal**.  Within 60 days after the Settlement is Final or terminated, Shareholder must return or destroy all Confidential Information, and certify to HP that Shareholder has done so.

8.     **Representations**.  Shareholder represents that it is a shareholder of HP and that it seeks to review the Governance Revisions only for one or more of the Permissible Uses.

9.     **Remedies**.  Shareholder agrees that money damages would not be an adequate remedy for breach of this Confidentiality Agreement, that HP may obtain specific performance of this Confidentiality Agreement and that any violation of this Confidentiality Agreement shall entitle HP to injunctive or other equitable relief as a remedy without proof of actual damages and without limiting any other remedies that HP might have.  Shareholder waives any requirement for the securing or posting of any bond in connection with any such remedy.

10.     **Notice**.  Any notice required to be made to HP under this Confidentiality Agreement shall be made to counsel for HP identified in the Preliminary Approval Order.

11.     **Entire Agreement; Choice of Law; Jurisdiction**.  This Confidentiality Agreement constitutes the entire agreement between the parties.  It shall be governed by and construed in accordance with the laws of the State of California.  In agreeing to be subject to the

Appendix A

terms of this Confidentiality Agreement, Shareholder agrees to submit to the jurisdiction of the

Court in which this Action is pending for all matters concerning the enforcement of the terms of

this Confidentiality Agreement.  Breach of this agreement shall be a breach of a court order.

Dated: _____, 2015


_____        _____