KEKER & VAN NEST LLP
JOHN W. KEKER - # 49092
jkeker@kvn.com
JAN NIELSEN LITTLE - # 100029
jlittle@kvn.com
BROOK DOOLEY - # 230423
bdooley@kvn.com
NICHOLAS D. MARAIS - # 277846
nmarais@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Proposed Intervenor
SUSHOVAN HUSSAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HEWLETT PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION. | Master File No. 3:12-cv-6003-CRB<br><br>**SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 15, 2015<br>Time: 10:00 a.m.<br>Dept.: Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on May 15, 2015 at 10:00 a.m., or at such other date and time as counsel may be heard, Proposed Intervenor Sushovan Hussain will renew his motion to intervene in *In re Hewlett-Packard Company Shareholder Derivative Litigation*, Master File No. C-12-06003-CRB, as a matter of right under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, by the Court's permission under Federal Rule of Civil Procedure 24(b)(1)(B). Mr. Hussain also requests that this Court either strike the proposed bar order from the parties' proposed settlement, or allow Mr. Hussain the discovery necessary to challenge the bar order.

Mr. Hussain's motion has been fully briefed since August 11, 2014. *See* Dkts. 160 (Hussain Motion), 165 (HP's Opposition), 169 (Plaintiff's Opposition), 170 (Hussain Reply). Mr. Hussain now renews his motion in light of Magistrate Judge Laporte's March 31, 2015 Order finding that his "motion bears on whether the Third Amended Settlement is 'fundamentally fair, adequate, and reasonable,'" and recommending that it "be resolved *prior* to the final approval hearing." Dkt. 332 at 2 (emphasis added).

Mr. Hussain's renewed motion to intervene is based on those grounds set forth with particularity in his prior submissions (*i.e.*, Dkts. 160, 170, 209, 222–23, 246, 293, 308), his accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing.

Dated: April 10, 2015

KEKER & VAN NEST LLP

By: */s/ John W. Keker*
JOHN W. KEKER
JAN NIELSEN LITTLE
BROOK DOOLEY
NICHOLAS D. MARAIS

Attorneys for Proposed Intervenor
SUSHOVAN HUSSAIN

---

SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779

**MEMORANDUM OF POINTS AND AUTHORITIES**

If HP has made one thing clear over the past six months, it's that it cannot stomach the thought of a fair fight. It has tried its case in the press, rather than the courts, waiting two-and-a-half years to begin proceedings against Mr. Hussain. Just this past month, it finally filed a claim in the UK, where it knows it can avoid the discovery it would face in the U.S. (Indeed, the company has brazenly told this Court that it would not—"never in a million years"—share relevant documents with Mr. Hussain.) And now, through its proposed "complete bar order," HP wants this Court to reach into a foreign jurisdiction and tie Mr. Hussain's hands behind his back—in an apparent attempt to limit his ability to take action against the very HP directors and officers whose infighting and mismanagement led to the Autonomy write-down.

Two significant developments have occurred since this Court preliminarily approved the parties' fourth proposed settlement last month:

*First*, Magistrate Judge Laporte found that Mr. Hussain's pending motion to intervene "bears on whether the Third Amended Settlement is 'fundamentally fair, adequate, and reasonable.'" Dkt. 332 at 2 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). As a result, Mr. Hussain's challenge should "be resolved prior to the final approval hearing." *Id.*

*Second*, the bar order's impact is now clearer than ever. Just ten days ago, HP finally moved forward with its threat to sue Mr. Hussain in the UK by filing a preliminary claim form. According to press reports, HP alleges that Messrs. Lynch and Hussain "engaged in fraudulent activities while executives at Autonomy,"[1] and seeks damages of over $5.1bn over that alleged fraud. But, while HP has announced its litigation in the press, it has chosen *not* to serve Mr. Hussain with either the claim form or any of the particulars—stifling Mr. Hussain's ability to prepare and file his defenses, counterclaims and contribution claims. Presumably, HP now intends to wait until it knows whether its directors and officers—including Ms. Whitman—can be forced out of the shadows and into court to be held accountable for their mismanagement.

---

[1] Bloomberg Business, *HP Sues Autonomy Co-Founder Lynch in U.K. for $5.1 Billion*, available at http://www.bloomberg.com/news/articles/2015-03-31/hp-sues-autonomy-co-founder-lynch-in-u-k-for-5-1-billion (last accessed April 8, 2015), attached hereto as **Exhibit A**.

1
SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO
INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779

For these reasons, and those laid out in his prior pleadings,[2] Mr. Hussain renews his motion to intervene to obtain necessary discovery and to challenge the proposed bar order.

## I. LIKE HP'S PROPOSED SETTLEMENT, ITS PURPORTED "BAR ORDER" IS FUNDAMENTALLY UNFAIR.

HP continues to seek this Court's blessing of a proposed settlement agreement that would allow the company to sue whomever it likes, but would ban Mr. Hussain—or "[a]ny and all persons and entities," whether party to this lawsuit or not—from ever

> commencing, prosecuting or asserting any claim against any Releasee[3] arising under state, federal, foreign, or common law, however styled (whether for indemnification or contribution or otherwise denominated, including, without limitation, claims for breach of contract, breach of fiduciary duty or misrepresentation), where the alleged injury of such person or entity is that person's or entity's alleged liability to the Company or Autonomy….

*See generally* Dkt. 277-2 at 6. How can this Court, sitting in equity, permit HP to sue Mr. Hussain in England while barring Mr. Hussain from seeking relief, including contribution, from the very officers and directors who caused Autonomy's and HP's injuries? What clearer sign is there of a due process violation than that HP wants to strip *non-party* bystanders of their legal rights—all the while arguing that they do not even "have standing to challenge the few legal aspects of the settlement that touch [them]"? Dkt. 165 at 1. This Court should not countenance HP's transparent efforts to tip the scales of justice so heavily in its favor.

HP and the settling defendants offer two half-hearted defenses of their proposed bar order:

In September, HP suggested that the bar order was ultimately inconsequential: *"English law does not recognize contribution claims in a suit for fraud,"* and, as a result, *"the bar order cannot affect a legal right that Hussain does not have."* Dkt. 224 at 20–21. In response, Mr. Hussain invited HP to stand behind its claim: "If HP believes that Mr. Hussain cannot seek

---

[2] Mr. Hussain incorporates by reference his prior efforts to intervene to challenge the proposed "bar order." *See generally* Dkts. 160, 170, 209, 222–23, 246, 293, 308.

[3] The definition of "Releasee" is, similarly, staggeringly broad. It includes not only "each and every one of … the Settling Individual Defendants," but also their professional advisors, "agents, principals, representatives, attorneys…, advisors, administrators, accountants, consultants and assigns," as well as any of HP's "past and present officers, directors, employees, officials, members, partners, principals, agents"—and, for good measure, their "spouses, marital communities, immediate family members, heirs, executors, beneficiaries, trusts, trustees, predecessors," and so on. *See* Dkt. 277-2 at 16.

2
SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO
INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779

contribution from the Individual Defendants, then HP can and should simply remove Mr. Hussain from its proposed bar order." Dkt. 222 at 12.  Unsurprisingly, HP quickly went quiet.

Then, acknowledging that the bar order would indeed hamper Mr. Hussain's ability to defend himself,[4] HP encouraged him to "embrace" the proposed bar order, because it *"gives him a judgment credit worth the full value of those [barred] claims—whatever that value may be."* Dkt. 165 at 5; Dkt. 224 at 21.  That argument, as Mr. Hussain has previously explained, is misguided and misleading for several reasons.

First, the Individual Defendants in this case are seeking broad releases while giving up *nothing* in return.  That not only makes this settlement unfair—it also sets it apart from those cases HP offers as support for its so-called "judgment credit."[5]  Here, unlike the cases HP relies on, there is no guaranteed *minimum* judgment credit: the Individual Defendants have not paid a single cent between them, making it all but impossible for this Court to assess whether such "payments" constitute appropriate contributions.  *See, e.g.*, *In re HealthSouth*, 572 F.3d 854, 861–62 (11th Cir. 2009) (explaining that the non-settling defendant had "a very significant bargaining chip" because all parties knew that any judgment would be offset by a *minimum* $445 million credit).

Second, although HP claims judgment credits are "routine," it fails to note that they are only routine vis-à-vis non-settling *parties*.[6]  Here, by contrast, HP seeks to silence unnamed

---

[4] *See, e.g.*, Dkt. 209 (Hussain Suppl. Br.), 6–9.  HP's counsel has conceded that the "bar order" was designed to strip Mr. Hussain of his right to sue HP's directors for their role in bungling the Autonomy acquisition.  *See* Hearing Tr. (Aug. 25, 2014), 48:19–49:3 ("Under the terms of this settlement, … [t]he one thing he can't do, H-P sues Mr. Hussain.  Mr. Hussain says, 'Yes, I may be liable to H-P for $8 billion, but I really think Meg Whitman mismanaged the company, and she should be—she should contribute to the judgment against me.'  *That lawsuit is barred*….").

[5] For more, *see* Dkt. 222 (Hussain's Suppl. Reply Brief), 12 n.14 and accompanying text (explaining that all three of the cases HP relies on—*In re HealthSouth Corp. Sec. Litig.*, *Franklin v. Kaypro Corp.*, and *Gerber v. MTC Elec. Technologies Co.*—involved substantial payments by the settling defendants, sometimes as high as $445 million).

[6] This is true in each of the "judgment credit" cases HP relies on.  *See generally* Dkt. 210 (HP Suppl. Br.) at 22; *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d at 856 (Scrushy "is a *non-settling defendant*…"); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1226 (9th Cir. 1989) ("The *nonsettling defendants* argue that the bar order impermissibly infringes their right to full contribution…."); *Gerber v. MTC Elec. Technologies Co.*, 329 F.3d 297, 299–300 (2d Cir. 2003) ("[T]he non-settling defendants … contend that the district court erred in approving the partial settlements without ensuring that their settlement judgment credit would be at least the total amount paid by the settling defendants…").

3
SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779

persons in other litigation anywhere in the world.

Third, even if the judgment credit did somehow provide adequate compensation,[7] it would only result—yet again—in HP and its shareholders bailing Ms. Whitman and others out for their mismanagement of the Autonomy acquisition. Given that those Individual Defendants have contributed *nothing* to this proposed settlement, there is no reason they should be protected.

## II. MR. HUSSAIN IS ENTITLED TO INTERVENE, TO CHALLENGE THE BAR ORDER, AND TO SEEK VITAL DISCOVERY.

If HP were committed to an equitable resolution of this particular dispute—and a fair fight in the UK—the simplest solution would be for it to eliminate its overbroad and unconstitutional "bar order." But Mr. Hussain has made this suggestion before, inviting HP to "simply remove [him] from its proposed bar order" and noting that doing so would "obviate [his] need to intervene and simplify this Court's task." Dkt. 222 at 12. And, over the past seven months, HP has silently and repeatedly ignored that proposal—belying any claim that the bar order will "ha[ve] no financial consequence to" those it seeks to silence. Dkt. 210 at 33.

Failing that, this Court should send HP away to eliminate or rewrite the proposed "bar order." This Court has refused to approve proposed settlements in this case twice before—rejecting a $48 million payout to Plaintiff's counsel and declining to accept overbroad release provisions—and, each time, HP has changed the settlement to offer new terms it hopes the Court will approve.

And, ultimately, if this Court prefers that Mr. Hussain himself step up to challenge the "bar order," he needs access to discovery to show this Court why—and the significant extent to which—his claims against Ms. Whitman and others are meritorious.[8] Without such discovery,

---

[7] HP has never offered any explanation as to *how* this "judgment credit" is supposed to work: Does it expect this Court to determine Ms. Whitman's (and others') role in the write-down? Or are HP's directors and officers agreeing to submit to jurisdiction in the UK? Certainly, HP has made clear that *it* believes the value of this "credit" to be *zero*. *See* Dkt. 209 at 4 n.7 and accompanying text (explaining that the Individual Defendants "have refused to acknowledge any wrongdoing or pay any money").

[8] Mr. Hussain recently laid out some of the evidence, "including evidence already available in the public record, to show that HP and the Individual Defendants made materially misleading statements to the market regarding the reasons for the company's November 20, 2012 write-down—statements that falsely and inaccurately pointed the finger at Mr. Hussain and other former members of Autonomy's management…." For more, *see* Dkt. 293 at 6–9.

4
SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779

the Court should not agree to HP's unjustified and unsubstantiated request that it sign off on a settlement agreement that gives Ms. Whitman and her cohorts a free pass—here and abroad—while they give *nothing* in return.

### III.   CONCLUSION

Since this case was first filed in 2012, HP and the Individual Defendants have done everything possible to avoid answering questions about their role in the botched Autonomy acquisition. They repeatedly sought to stay proceedings; they dodged any and all formal discovery; and, now, through their proposed bar order, they want this Court to silence anyone anywhere from holding HP's directors accountable. But for this Court's guidance, HP would already have paid tens of millions of dollars to Plaintiff's lawyers, signing away its shareholders' rights while receiving *nothing* from the Individual Defendants responsible for the $8.8 billion write-down. Now, whatever the merits of the rest of the proposed settlement, HP needs to modify its "proposed bar order" to exclude non-parties from its reach.

For the foregoing reasons, and those laid out in Mr. Hussain's prior briefs, the Court should either strike the proposed bar order from the settlement or grant Mr. Hussain's motion to intervene, to seek limited discovery, and to challenge the proposed settlement.[9]

Dated: April 10, 2015                                  KEKER & VAN NEST LLP

                                                       By:   */s/ John W. Keker*
                                                             JOHN W. KEKER
                                                             JAN NIELSEN LITTLE
                                                             BROOK DOOLEY
                                                             NICHOLAS D. MARAIS

                                                             Attorneys for Proposed Intervenor
                                                             SUSHOVAN HUSSAIN

---

[9] Mr. Hussain's specific requested relief is set out in previous filings. *See, e.g.*, Dkt. 160 at 9–10; Dkt. 170 at 13–14; Dkt. 209 at 13; Dkt. 222 at 15.

5
SUSHOVAN HUSSAIN'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO INTERVENE; MPA IN SUPPORT THEREOF
Case No. 3:12-cv-6003-CRB

928779