**REDACTED EXHIBIT 1**

1  WACHTELL, LIPTON, ROSEN & KATZ
   MARC WOLINSKY (*pro hac vice*)
2  GEORGE T. CONWAY III (*pro hac vice*)
   VINCENT G. LEVY (*pro hac vice*)
3  51 West 52nd Street
   New York, NY  10019
4  Tel./Fax:  212.403.1000/2000
   MWolinsky@wlrk.com
5  GTConway@wlrk.com
   VGLevy@wlrk.com
6
   FARELLA, BRAUN & MARTEL, LLP
7  NEIL A. GOTEINER, State Bar No. 83524
   235 Montgomery Street, 17th Floor
8  San Francisco, CA  94104
   Tel./Fax:  415.954.4400/4480
9  NGoteiner@fbm.com

10 Attorneys for Defendant
   HEWLETT-PACKARD COMPANY

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates to:  All Actions | Master File No. 12-CV-6003 CRB<br><br>**HEWLETT-PACKARD'S MEMORANDUM AND POINTS OF AUTHORITY IN OPPOSITION TO SUSHOVAN HUSSAIN'S MOTION TO INTERVENE TO CHALLENGE THE SETTLEMENT**<br><br>Dept.:  Courtroom 6, 17th Floor<br>Judge:  Hon. Charles R. Breyer |

HP OPP TO HUSSAIN MOT. TO INTERVENE
CASE NO. 12-CV-06003-CRB

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ..................................................................................................1

ARGUMENT .................................................................................................................................3

I. HUSSAIN IS NOT ENTITLED TO INTERVENE AND HAS NO VALID OBJECTION.....3

    A. Hussain's Motion Is Defective Under Rule 24(c)............................................................3

    B. Hussain Does Not Meet The Standard To Intervene and Will Not Suffer Formal Legal Prejudice..........................................................................................................3

II. HUSSAIN IS NOT ENTITLED TO DISCOVERY ................................................................7

CONCLUSION................................................................................................................................7

# TABLE OF AUTHORITIES

Page

**Cases**

*Arakaki* v. *Cayetano*,
   324 F.3d 1078 (9th Cir. 2003). ...................................................................................................... 4

*Beckman Indus., Inc.* v. *Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992). ....................................................................................................... 3

*Franklin* v. *Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ............................................................................................. 4, 5, 6

*Gerber* v. *MTC Elec. Techs. Co.*,
   329 F.3d 297 (2d. Cir. 2003) ..................................................................................................... 2, 6

*HealthSouth Corp Sec. Litig.*,
   572 F.3d 854 (11th Cir. 2009) .................................................................................................... 5, 6

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................................... 5

*In re PPA Products Liability Litig.*,
   227 F.R.D. 553 (W.D. Wash. 2004) .............................................................................................. 5

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 Civ. 3288 (DLC), 2005 WL 591189 (S.D.N.Y. Mar. 14, 2005) ........................................ 4

*Kremen* v. *Cohen*,
   No. 5:11-CV-05411 (LHK),
   2012 WL 2919332 (N.D. Cal. Jul. 17, 2012) ................................................................................. 3

*McReynolds* v. *Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ........................................................................................................... 5

*Smith New Court Secs. Ltd.* v. *Scrimgeour Vickers (Asset Mgmt) Ltd*
   [1997] A.C. 254  (H.L Eng.) .......................................................................................................... 5

*Waller* v. *Fin. Corp. of Am.*,
   828 F.2d 579 (9th Cir. 1987) .......................................................................................................... 4

**Statutes**

15 U.S.C. § 78u-4(f)(7)(A) ................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 24(c) ............................................................................................................................ 3

## SUMMARY OF ARGUMENT

In his latest attempt to challenge the proposed settlement's bar order and judgment credit, Sushovan Hussain presents himself as a "bystander[]." *See* Dkt. 333 at 2. A bystander? He is anything but. Hussain and his boss Michael Lynch perpetrated the massive fraud at the heart of this litigation, a fraud that is the subject of an ongoing criminal investigation in the United States — and that has led four HP subsidiaries, including Autonomy itself, to sue Lynch and Hussain in the Chancery Division of the High Court of Justice in London. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Hussain ostensibly complains, once again, that the bar order in the proposed derivative settlement doesn't exclude him. But this motion really isn't about the bar order. It's about his transparent effort to obtain discovery here, in a case and country in which he hasn't been sued, because he believes that the country in which he lives, and in which he has now been sued, won't give him the amount of discovery he'd like to have. And that is why he complains in meandering fashion that HP has sued him in a "foreign jurisdiction" that doesn't allow much discovery, England; that the bar order somehow "tie[s] Mr. Hussain's hands behind his back" in defending that English case; and that he needs *this Court* to give him "necessary discovery" to allow him "to prepare and file his defenses, counterclaims and contribution claims," Dkt. 333 at 1-2, or, more precisely, as he put it in one of his earlier briefs, he needs discovery "to show this Court why . . . his claims against Ms. Whitman are meritorious." *Id.* at 4.

Of course, none of these grievances have any bearing on matters properly before this Court — and even if they did, none has merit. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He complains that he has been sued in England, a "foreign jurisdiction." But England is not foreign to him. Hussain *is a British subject, and he lives and works in England.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ So Hussain is complaining because he has been sued in his own country, in the forum of his

own choice. That complaint, irrelevant to the legal issues before the Court, is not one that should draw sympathy.

As for the bar order, his hook to try to get discovery here, Hussain complains that it is unfair to him because he isn't a party to this case. But bar orders — including bar orders applying to non-parties like Hussain — are common in litigation; in fact, in securities class actions, Congress *mandated* them — as to both parties and non-parties — under the PSLRA. Not only that, the derivative settlement agreement here gives him a judgment credit that makes contribution unnecessary. The judgment credit, likewise common in settlements of this sort, eliminates any possible unfairness — it "adequately compensates [Hussain] for [any] indemnity and contribution claims" that he may have. *Gerber* v. *MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 306 (2d Cir. 2003) (Sotomayor, J.). For these and other reasons set out below, the bar order and judgment credit, taken together, give Hussain nothing about which to complain.

Thus, Hussain's meritless attack on the bar order only highlights his improper tactical objective. He seeks to embark upon a fishing expedition here, in this Court, in a settling case that threatens him with no harm at all, all in the vain hope that he will find something that might help him in the criminal investigation here, or in defending the lawsuit in England. But the settlement of this derivative suit, a suit that is supposed to be in the interests of HP and its shareholders, is the least appropriate vehicle imaginable to achieve Hussain's ends.

## ARGUMENT

### I. HUSSAIN IS NOT ENTITLED TO INTERVENE AND HAS NO VALID OBJECTION

#### A. Hussain's Motion Is Defective Under Rule 24(c)

As a threshold matter, Hussain's motion should be denied because he has still failed to comply with the unambiguous requirements of Fed. R. Civ. P. 24(c). That Rule mandates that an intervention "motion *must* . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." (Emphasis added.) When such a pleading is absent, as it is here, "the movant [must] describe[] the basis for intervention with sufficient specificity to allow the court to rule" on the intervention motion. *Beckman Indus., Inc.* v. *Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992).

Once again, Hussain still has not articulated in a pleading what claim he seeks to bring or what defense he wishes to assert. All he has ever done is make vague claims that Autonomy's failures should be laid at the feet of HP's officers and directors, not his own. But where is his answer to the claim, made in the complaint, that Autonomy's executives committed a fraud? There is none. And where are the factual allegations backing up his claim that HP's injury was caused by others? Not there. These failings alone provide a basis for the Court to deny' Hussain's motion. *E.g.*, *Kremen* v. *Cohen*, No. 5:11-CV-05411 (LHK), 2012 WL 2919332, at *9 (N.D. Cal. Jul. 17, 2012) ("Movant's failure to attach a pleading not only renders his motion to intervene procedurally deficient, but moreover deprives the Court of a basis for determining whether it has an independent basis . . . over the Movant's claims or defenses").

Hussain has had eight months since his initial motion to remedy the deficiency. The continued failure to comply with Rule 24(c), which Hussain dismisses as a technicality, is no accident. If Hussain were to file a pleading and make affirmative statements within it, he would make admissions that could be used against him in court. Remaining silent is, of course, common advice to would-be criminal defendants. But that is not an excuse for Hussain's failure to comply with the Federal Rules.

#### B. Hussain Does Not Meet The Standard To Intervene and Will Not Suffer Formal Legal Prejudice.

To intervene, Hussain also must demonstrate that: (1) he has a significant protectable interest relating to the property or transaction that is the subject of the action; and (2) the disposition

of the action may impair or impede his ability to protect that interest. *Arakaki* v. *Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). To object, Hussain must establish that the settlement will cause him "plain legal prejudice." *Waller* v. *Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987). He has not made either showing.

With respect to intervention, Hussain does not have a protectable interest in the subject matter of this action, which (wrongly) seeks to hold HP's present and former officers and directors responsible for the failed Autonomy acquisition, and does not assert any claims against Hussain himself. Hussain, likewise, will not suffer prejudice as a result of the disposition of the action. Hussain's argument on this second score is that the imposition of the bar order and judgment credit are unfair, comparing himself to a "bystander[]," and arguing that this Court "sitting in equity" should reject it. Dkt. 333 at 2. But the bar order, which only enjoins contribution claims, and the judgment credit, which provides Hussain a benefit, are not unfair to Hussain.

Bar orders that enjoin contribution claims are perfectly equitable, and they are routinely entered in settlements like this in courts across the country. The reason is plain: without the protections afforded by bar orders, "it is likely that no settlements" would be reached. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 591189, at *5 (S.D.N.Y. Mar. 14, 2005). As the Ninth Circuit has recognized, "[a]nyone foolish enough to settle without barring contribution is courting disaster" and would invite "the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented." *Franklin* v. *Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Indeed, Hussain does not dispute that bar orders are customary. Instead, he tries to distinguish bar orders that apply to non-settling defendants from those that apply to non-parties; he claims that, because he is a nonparty, the order goes too far.

That argument has no merit. To begin with, Hussain is not just any non-party; he is a central actor in the fraud that lies at the heart of the claims that are being compromised. HP shareholders demanded that the board take action to redress the injury that the company suffered, and it has done so, authorizing suit against the two Autonomy executives responsible for the company's injury. And, in fact, Lynch was named as a defendant in the derivative action filed in Santa Clara that is

being compromised as part of the settlement. Moreover, both Lynch and Hussain are named defendants in the derivative action that HP shareholder Rodney Cook filed in Delaware.

More to the point, given the rule of damages that will apply in the action against him in England, Hussain will have no basis upon which to seek contribution against officers or directors of HP. Under English law, damages from fraud are limited to losses directly flowing from the misrepresentations, and would not include any avoidable losses attributable to any alleged HP failings post-acquisition. As a result, damages are measured *at the time the fraud is complete*, or here, when HP's subsidiary closed on the Autonomy acquisition. *Smith New Court Secs. Ltd.* v. *Scrimgeour Vickers (Asset Mgmt) Ltd.* [1997] A.C. 254 at 256-257 (H.L Eng.) (Lord Brown-Wilkinson). As a result, Hussain's (false) allegations that HP officers and directors mismanaged Autonomy after the deal closed can have no bearing on Hussain's liability to the plaintiffs in the English proceeding. Hussain cannot be not liable for, and therefore cannot (and need not) seek contribution with respect to, any harm HP suffered after the deal closed. The bar order does not harm him.

In any event, courts routinely enter bar orders that prohibit contribution claims by non-parties.[1] The Ninth Circuit's acknowledgment that "[a]nyone foolish enough to settle without barring contribution is courting disaster," *Kaypro Corp.,* 884 F.2d at 1229, applies to bar orders against both non-settling parties and non-parties, because either class of person could seek contribution from the settling party at a later date and thereby deprive the settling party of the global peace that it thought it had purchased.

Indeed, Congress has recognized the value of bar orders preventing contribution claims even from non-parties. Under the PSLRA, Congress imposed a statutory bar on contribution claims "*by any person* against the settling covered party." 15 U.S.C. § 78u-4(f)(7)(A) (emphasis added). Thus, bar orders — whether against a non-settling party or a non-party — legitimately advance the "strong judicial policy in favor of settlements." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297,

---

[1] *E.g.*, *In re HealthSouth Corp Sec. Litig.*, 572 F.3d 854, 857 n.5 (11th Cir. 2009) (rejecting objection to bar order that covered claims asserted by "Non-Settling Defendants and *all other persons*") (emphasis added)); *In re PPA Products Liability Litig.*, 227 F.R.D. 553, 568 (W.D. Wash. 2004) (approving a bar order that applied to non-settling defendants and all other persons).

330 (E.D.N.Y. 2010) (quoting *McReynolds* v. *Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)). And that's exactly the purpose the bar order in this case.

Contrary to Hussain's repeated assertions, moreover, the bar order would not prohibit *all* cross- and counterclaims. Instead, the bar order covers only claims "where the alleged injury of such person or entity is that person's or entity's alleged liability to the Company" on account of the Autonomy acquisition. Docket 277-1 at ¶13. In other words, the bar order *only* prohibits Hussain from bringing contribution claims, or contribution claims disguised as other claims. And the bar order does nothing to preclude Hussain from asserting claims that do not relate to Autonomy at all.

In any event, the bar order also provides a judgment credit that "corresponds to the percentage of responsibility of the applicable Releasee(s) for the loss to the Company or Autonomy." *Id.* Judgment credits are a standard feature of bar orders, and have been routinely upheld by courts. *Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989); *In re HealthSouth Corp Sec. Litig.*, 572 F.3d 854 (11th Cir. 2009); *Gerber* v. *MTC Elec. Techs. Co.*, 329 F.3d 297 (2d. Cir. 2003). Where, as here, the judgment credit impacts "a central figure in the violations," the credit "constitutes very significant compensation." *HealthSouth*, 572 F.3d at 866. Thus, the judgment credit negates any claim of prejudice, because it "adequately compensates [Hussain] for [his] indemnity and contribution claims . . . ." *Gerber*, 329 F.3d 297 at 306 (2d Cir. 2003) (Sotomayor, J.).

Hussain also attacks the judgment credit because the settlement contains no monetary component, and thus, no "minimum judgment credit." But Hussain has not cited a single authority providing that there must be a monetary settlement for a judgment credit to be effective.[2] And, logically, there is no reason for there to be one. In the English proceeding, Hussain will be free to litigate the extent to which he contends that HP caused the damage that the English plaintiffs seek to recover from him. If Hussain prevails on that defense, the judgment that HP's subsidiaries get

---

[2] The case that he does cite, *In re HealthSouth*, is inapposite. The court in *HealthSouth* approved a bar order that provided a credit worth "the *greater of* [1] settling defendant's proportionate liability *or* [2] the amount actually paid by the settling defendant." *HealthSouth*, 572 F.3d at 857-58. The amount paid by the settling defendant was relevant because the law prevents double recovery. The concern is irrelevant here because there could not be any double recovery.

against him will be offset by any amount that he can prove was attributable to HP — regardless of whether those others paid a dime in a prior settlement. For all of these reasons, Hussain's challenge to the judgment credit is without merit.

## II.   HUSSAIN IS NOT ENTITLED TO DISCOVERY

In any event, there is no basis for Hussain to usurp this settlement to obtain discovery to advance his criminal and civil defense. The legitimacy of the bar order presents a legal, not a factual issue. For purposes of deciding that legal question, the Court can assume (counterfactually) that Hussain has claims where his injury arises from his liability to HP on account of the Autonomy acquisition. The Court should have no sympathy for Hussain when he argues that it is unfair for HP's subsidiaries to sue him in his home forum. And the Court certainly should not permit Hussain to turn an action that was filed to protect HP's interests into a vehicle for Hussain to advance his own interests at the expense of HP.

### CONCLUSION

Hussain's motion still fails to meet the basic requirements for intervention. For tactical reasons, he has failed to submit a required pleading. Hussain also has failed to demonstrate that he will suffer cognizable legal prejudice: The bar order and judgment reduction provision of the settlement agreement that protect his interests, such as they are, are plain vanilla, and are in a form that has been approved by numerous courts. And as the Ninth Circuit has recognized, its provisions are necessary to promote settlements. His motion to intervene should be denied as an unalloyed and improper attempt to seek discovery.

Dated: April 29, 2015

WACHTELL, LIPTON, ROSEN & KATZ

By: _____
  Marc Wolinsky
  George T. Conway III
  Vincent G. Levy
  51 West 52nd Street
  New York, NY  10019
  Telephone:  (212) 403-1000
  Facsimile:  (212) 403-2000

FARELLA BRAUN & MARTEL, LLP
Neil A. Goteiner
235 Montgomery Street
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

*Attorneys for Defendant Hewlett-Packard Company*