1  JOSEPH W. COTCHETT (Cal. SBN 36324)
jcotchett@cpmlegal.com
2  MARK C. MOLUMPHY (Cal. SBN 168009)
mmolumphy@cpmlegal.com
3  NANCY L. FINEMAN (Cal. SBN 124870)
nfineman@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
5  840 Malcolm Road, Suite 200
Burlingame, CA 94010
6  Telephone: (650) 697-6000
7  Facsimile: (650) 697-0577

8  *Lead Counsel for Plaintiff Stanley Morrical,*
*derivatively on behalf of Hewlett-Packard Company*
9

10

11  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

12

13  IN RE HEWLETT-PACKARD COMPANY
14  SHAREHOLDER DERIVATIVE LITIGATION

Master File No. C-12-6003-CRB

15

16  THIS DOCUMENT RELATES TO:

**DECLARATION OF MARK C.**
**MOLUMPHY IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF**
**THIRD AMENDED SETTLEMENT**

17       ALL ACTIONS

18

19  Date:  July 24, 2015
Time:  10:00 a.m.
20  Dept.:  Courtroom 6, 17th Floor
Hon. Charles R. Breyer

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB

# TABLE OF CONTENTS

**Page**

I.    OVERVIEW ............................................................................................................ 1

II.   THE LITIGATION ................................................................................................ 2

    A.    The Federal Derivative Action.................................................................... 2

    B.    The California Writ Action .......................................................................... 3

    C.    Appointment of Lead Counsel and the Consolidated Complaint ................ 4

    D.    Mediation and Settlement Negotiations...................................................... 5

    E.    Settlement Modifications ............................................................................ 7

    F.    The Third Amended and Restated Settlement ........................................... 8

    G.    Preliminary Approval, Exclusions from Bar Order, and Notice................. 9

III.  THE THIRD AMENDED SETTEMENT SHOULD BE FINALLY APPROVED........ 10

    A.    The Settlement Provides Substantial Benefits to HP ............................... 10

    B.    The Settlement Was Negotiated at Arm's-Length, By Experienced Counsel, and With the Assistance of a Well-Respected Mediator ............................. 11

    C.    The Settlement Takes Into Account the Benefits, Risks, Complexity and Expense of Further Litigation.................................................................... 11

    D.    The Judgment of Counsel that the Settlement is Fair and Reasonable Further Supports Approval ...................................................................... 12

IV.   ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED ...................... 13

    A.    The Fee Negotiations and Arbitration....................................................... 13

    B.    Substantial Benefits to HP ........................................................................ 13

    C.    Time and Effort Expended........................................................................ 14

    D.    Complexity of Legal and Factual Issues ................................................... 15

    E.    Contingent Representation and Risk of Non-Recovery............................. 16

    F.    Cotchett Pitre's Standing and Ability ....................................................... 17

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;**
**Master File No. C-12-6003-CRB**                                                                    i

G.    Lodestar Cross-Check ........................................................................ 18

H.    Reimbursement of Cotchett Pitre's Expenses ...................................... 19

V.    A SERVICE AWARD TO STANLEY MORRICAL SHOULD BE APPROVED......... 19

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;**
**Master File No. C-12-6003-CRB**                                                                                    ii

I, MARK C. MOLUMPHY, declare as follows:

**I.     OVERVIEW**

1.      I am a partner with the law firm of Cotchett Pitre & McCarthy ("Cotchett Pitre" or "Federal Counsel"), the Court-appointed Lead Counsel representing derivative plaintiff Stanley Morrical ("Morrical" or "Federal Plaintiff") in the above-captioned action (the "Federal Action").

2.      As Lead Counsel, my firm has devoted substantial time and advanced significant costs in the prosecution of this case since its inception in 2012.  I, along with my partner, Joseph Cotchett, personally participated in all stages of this case, and supervised other experienced attorneys and paralegals to work on matters at my direction.  Unless otherwise indicated, the statements in this Declaration are made based on my personal knowledge, and if called to do so, I could and would competently testify to them.

3.      I submit this Declaration in support of Federal Plaintiff's Motion for Final Approval of the Third Amended Settlement ("Motion"), based on the terms set forth in the Third Amended and Restated Stipulation of Settlement dated January 21, 2015 (dkt. 277-1), as supplemented and amended by the Agreement Excluding Sushovan Hussain From Bar Order and Related Release (dkt. 349-1) and the Agreement Excluding Michael Lynch From Bar Order and Related Release (dkt. 359-1), collectively referred to herein as the "Third Amended Settlement" or "Agreement."  I also submit this Declaration in support of final approval of HP's agreement to pay attorneys' fees and expenses as determined by the Arbitration Decision, and to approve a service award to Federal Plaintiff.  The purpose of this Declaration is to briefly set forth the procedural history and prosecution of the Federal Action, the writ of mandate action filed by Federal Plaintiff ("California Writ Action"), and derivative state court actions pending in California filed by other HP shareholders and eventually stayed in deference to the Federal Action ("State Actions" and collectively, the "Actions"), as well as the negotiations that led to the Agreement.

4.      Pursuant to the Agreement, HP has agreed to implement a series of unique and valuable corporate governance reforms ("Governance Revisions"), including significant improvements to its Mergers & Acquisitions ("M&A") processes.  Due to their confidential nature and proprietary value to HP, the reforms were previously filed under seal and, on July 16, 2014,

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;     1
Master File No. C-12-6003-CRB

HP's Board passed a resolution and adopted the Governance Revisions in their current form.  Based on the Court's Order Granting Motion for Preliminary Approval of Third Amended Settlement ("Preliminary Approval Order"), the Governance Revisions have been made available to HP shareholders upon request, and I understand that several shareholders have taken advantage of this opportunity.  The Governance Revisions have been separately lodged with the Court by HP, under seal, in support of the Motion for Final Approval of the Third Amended Settlement.

5. As discussed in the Motion, the Agreement resolves all Autonomy-Related shareholder derivative claims brought in the Actions.

6. The Agreement is the product of substantial effort, vigorous advocacy, and many months of arm's-length, mediator-guided negotiations conducted by skilled and experienced counsel.   As a result of the prosecution and settlement of the Actions, HP has agreed to important new corporate governance reforms which directly address Plaintiffs' allegations related to the Company's M&A policies and procedures, and which are designed to address the wrongdoing alleged in the Actions and increase the effectiveness of the governing Board.  The facts submitted herein demonstrate that the Agreement is fair, reasonable, and adequate, and in the best interests of HP and its shareholders, and that the agreed amount of attorneys' fees and litigation expenses to be paid to Federal and State Counsel, and the agreed service award to Federal Plaintiff, is fair and reasonable.

## II.   THE LITIGATION

### A.   The Federal Derivative Action

7. On August 18, 2011, HP announced that it was planning to acquire Autonomy, following a period of due diligence conducted by its employees, and overseen by its executive management.

8. On November 29, 2012, just over one year later, HP announced that it was taking an $8 billion impairment charge relating to the acquisition, the majority of which was attributable to "accounting improprieties and disclosure failures" at Autonomy before the Acquisition.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB

2

9.      In November and December 2012, seven shareholder derivative actions were filed in United States District Court for the Northern District of California, including a complaint filed by Cotchett Pitre and Federal Plaintiff, Stanley Morrical, on December 19, 2012.

10.     Unlike the other federal court complaints, Cotchett Pitre and Morrical made a shareholder inspection demand for HP's internal "books and records" relating to the Autonomy transaction pursuant to California statute on HP prior to filing his complaint.  Cotchett Pitre had also conducted substantial investigation about the underlying due diligence process, and issues of integration of the Autonomy software technology, called IDOL, and was able to file a complaint unique in its scope and detail.

**B.      The California Writ Action**

11.     Between December 2012 and January 2013, Cotchett Pitre and Morrical continued to vigorously pursue the shareholder inspection demand.  HP was initially resistant to producing documents, asserting a number of objections.  Eventually, Morrical served a demand under Delaware's inspection statute, in tandem with the California statute.  However, HP continued to object to production of internal HP records.

12.     On January 4, 2013, Morrical filed a Petition for Writ of Mandate in Santa Clara Superior Court.  A copy of the Writ Petition is attached hereto as **Exhibit A**.  As the Writ, and accompanying exhibits demonstrate, Cotchett Pitre and Morrical were intent on obtaining internal records from HP relating to the Autonomy deal.  Before its deadline to answer the Writ, HP relented and produced the requested information.  To Cotchett Pitre's knowledge, this was the first shareholder inspection action filed anywhere in the country against HP, and the documents obtained through the Writ proceedings were eventually utilized to draft a comprehensive, consolidated complaint, and later provided to other HP shareholders.

13.     On January 17, 2013, i.e., one month after Morrical filed his derivative complaint and two weeks after Cotchett Pitre successfully sued to open HP's "books and records" up for inspection by Morrical, HP's Board voted to form a special committee, referred to as a "Demand Review Committee" or "DRC" to review the allegations in the derivative actions and to

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB                                                                                                           3

1    recommend, among other things, whether governance reforms were necessary, as alleged in

2    Morrical's derivative complaint.

3        **C.    Appointment of Lead Counsel and the Consolidated Complaint**

4        14.    On March 4, 2013, on a contested motion, Cotchett Pitre was appointed by this Court

5    to serve as lead counsel of the consolidated federal derivative actions, and Morrical was appointed

6    as lead plaintiff.

7        15.    As of March 2013, only one California state court action had been filed in San

8    Mateo County, the *Ho* action.  In April 2013, the parties in Ho voluntarily agreed to stay their

9    action in deference to the Federal Action.  Subsequent actions were then filed in Santa Clara

10   Superior Court, including the *Noel* and *Gould* actions, and like *Ho*, were also stayed in favor of the

11   Federal Action.

12       16.    In April 2013, Cotchett Pitre met with lawyers at the Proskauer firm, counsel to HP

13   reporting to the DRC, to discuss the DRC's mandate.  Cotchett Pitre and Proskauer attorneys also

14   discussed the case, including HP's M&A practices in place during the Autonomy acquisition.

15       17.    Cotchett Pitre also continued with its active investigation into the pertinent claims.  I,

16   and other attorneys at Cotchett Pitre, met with potential witnesses, including former employees

17   involved in the Autonomy acquisition and integration efforts, as well as representatives from HP's

18   accounting firm that was retained to work on the Autonomy due diligence.  Cotchett Pitre also

19   reviewed documents relating to the transaction, including the KPMG report, and followed up with

20   meetings with experts in the fields of accounting and transactional work.  Cotchett Pitre also

21   engaged in an extensive analysis of the IDOL technology, and Michael Lynch's statements relating

22   to the implementation of the product line at HP.

23       18.    On May 3, 2013, Cotchett Pitre filed a 180-page Consolidated Complaint on behalf

24   of Morrical.  Consolidated Complaint (dkt. 75).  To this day, more than two years later, the

25   Consolidated Complaint represents the most complete and comprehensive description of the

26   HP/Autonomy acquisition by any shareholder plaintiff, and includes detailed allegations against

27   certain of HP's officers and directors relating to the role in the acquisition and post-acquisition

28   statements to the marketplace.  Drawing from Morrical's and Cotchett Pitre's exhaustive

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB**                                                                4

investigation, the Consolidated Complaint also includes detailed allegations against professional advisors retained by HP and its Board relating to the acquisition.

19.     On May 23, 2013, soon after the Consolidated Complaint was filed, Cotchett Pitre was contacted by counsel for the DRC requesting a voluntary stay of the Federal Action so that HP and its DRC could evaluate the allegations in the Consolidated Complaint.  Cotchett Pitre agreed to a stay to July 31, 2013, which was then entered by the Court.

20.     In late July 2013, HP requested a second stay, this time of indefinite duration, noting the breadth of the Consolidated Complaint's allegations.  Cotchett Pitre refused to agree to an indefinite stay, and the matter was presented to the Court.  On September 11, 2013, Judge Breyer ordered a stay on the condition that HP's DRC complete its investigation based on the issues presented by the Consolidated Complaint and present its findings by January 17, 2014.

### D.     Mediation and Settlement Negotiations

21.     During the five months between September 2013 and January 2014, Cotchett Pitre and Morrical continued to <u>actively</u> investigate the claims and potential defenses in the action, the Company's M&A policies and procedures, and how the Company could be protected from similar harm going forward.  Cotchett Pitre and its investigators located and interviewed additional witnesses relating to the Autonomy acquisition and the due diligence process.  Cotchett Pitre and Morrical also asked for and obtained additional documents from HP relating to the transaction, consistent with its prior shareholder inspection demands.

22.     Cotchett Pitre also continued to communicate and meet in-person with counsel from Proskauer, counsel for the DRC.  These meetings included a frank exchange of information, as well as Cotchett Pitre's findings relating to HP's existing processes and policies.  For example, at a November 12, 2013 meeting at Cotchett Pitre's offices in California, I and my partner, Joseph Cotchett, met with counsel for the DRC and discussed the Autonomy transaction at length, including the DRC's advisors' preliminary findings about the types of problematic transactions involving Autonomy.  Morrical was kept advised of these discussions and offered his valuable input to Cotchett Pitre about HP's existing processes.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB                                                                                    5

23.     Following the meeting, Cotchett Pitre continued its own independent investigation of the transactions, including an analysis of relevant accounting and due diligence rules with the assistance of experts in the field.  At the same time, having had the benefit of HP's internal books and records produced in response to Morrical's inspection demand, as well as additional information provided by the DRC's representatives, Cotchett Pitre continued to work with a prominent corporate governance expert, Stanford Professor James Larcker, concerning HP's existing governance practices and how they could be improved to benefit HP and its shareholders. In addition, I worked closely with State Counsel to integrate corporate governance reforms that State Plaintiffs previously submitted to the DRC.

24.     In January 2014, as the stay on the Federal Action was set to expire, and HP's DRC was required by Court order to complete its investigation, the DRC's counsel contacted Cotchett Pitre and proposed mediation.  The parties decided to pursue formal mediation efforts, utilizing the assistance of former U.S. District Court Judge Vaughn Walker (Ret.) ("Judge Walker").

25.     On February 18, 19 and 20, 2014, Joseph Cotchett and I met with representatives from the DRC, including Proskauer, and were briefed on the DRC's Resolution which included its conclusions.  The process was extensive, including reference to specific evidence and expert evaluations of the pertinent accounting, due diligence and legal issues, both under United States and United Kingdom law.  *See also*, Declaration of Hon. Vaughn Walker (dkt. 149-1), at ¶¶7-8 (detailing items discussed).  Following these meetings, Cotchett Pitre continued to communicate with the DRC's counsel and exchanged additional information and documents pertinent to the acquisition and due diligence process, and also held follow-up meetings and conversations with Morrical about the DRC's conclusions.

26.     On February 24 and 25, 2014, Cotchett Pitre participated in a mediation with counsel for HP, the DRC, and various counsel in the State Action.  The negotiations were both arms-length and hard-fought, with Judge Walker's close supervision.  While no resolution was reached, the parties continued to exchange information about the relevant claims during the sessions.

27.     Indeed, over the next several weeks, Joseph Cotchett and I continued to speak frequently with the DRC's and Defendants' Counsel, both in person and by phone, and held

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB                                                                                                    6

extensive communications to follow up on proposals from the mediation, in consultation with Morrical.  In addition, we maintained regular contacts with Judge Walker, who was helping to facilitate discussions between the numerous party and DRC representatives.  The parties also exchanged numerous letters and other written communications discussing their respective proposals for settlement, including changes to HP's existing M&A processes, Board and Board committee structures, due diligence requirements, and training of HP employees relating to issues raised by the Autonomy acquisition.  I also personally participated in negotiating, in consultation with State counsel and our retained corporate governance expert, Professor Larcker, specific reforms for HP going forward, including those relating to the composition, reporting structure, and oversight duties of a Risk Management Committee.

28.     On March 11, 12 and 13, Cotchett Pitre participated in another round of mediation discussions with counsel for HP, the DRC, and various counsel in the State Actions.  On March 13, 2014, in consultation with our client, an agreement was reached as to the substantive terms of the Settlement, including a set of comprehensive governance reform targeting and designed at improving HP's M&A processes going forward ("Governance Revisions").  The parties did not engage in any fee negotiations prior to reaching agreement on the reforms and, instead, agreed to separate fee negotiations in the future to be overseen by Judge Walker.

29.     Following the mediation, we asked for and obtained additional information relating to the Autonomy acquisition, including documents referenced in the DRC presentations and interviews of key witnesses involved in the transaction.  For example, we interviewed Shane Robison, HP's former Vice President and Chief Technology Officer, who helped lead HP's due diligence process and evaluation of Autonomy.  I also traveled to Europe and, along with State Counsel, interviewed Leo Apotheker, HP's former Chief Executive Officer, who led HP's negotiations with Autonomy and Michael Lynch.

**E.     Settlement Modifications**

30.     On June 30, 2014, the Settling Parties submitted the Settlement for preliminary approval.  *See* Motion for Prelim. Approval (dkt. 149-2).  However, the Court expressed concern over a proposed attorney retention clause, whereby HP would have the ability to retain Federal and

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB     7

State Counsel to assist in pursuing claims against Autonomy-related individuals.  The Settlement provided that the clause was severable, and the remaining settlement terms were not conditioned on the retention of counsel.

31.     On September 13, 2014, the Settling Parties submitted the First Amended Settlement (dkt. 201) which removed the attorney retention term and provided instead that attorneys' fees and expenses would be determined through a binding arbitration with Judge Walker, and subject to Court approval.  However, the Court subsequently expressed concern over the breadth and vagueness of the proposed release, which contained a release of claims that did not relate to HP's acquisition of Autonomy.

32.     On October 6, 2014, the Settling Parties filed the Second Amended Settlement (dkt. 242), which proposed a two-part release, the first of which covered "all Autonomy-Related Claims," and the second of which covered all "Known Claims arising from the allegations in the Complaints."  *Id.* at ¶ 62.

33.     On December 19, 2014, the Court issued its Order denying preliminary approval of the Second Amended Settlement.  December 19, 2014 Order (dkt 265).  While the Court found that the release of "all Autonomy-Related Claims" represented a "fair and reasonable resolution of derivative litigation related to the Autonomy acquisition," it held that the second clause's inclusion of claims "arising from the allegations in the Complaints" rendered the release overbroad and could be construed to release claims unrelated to Autonomy.  *Id.* at 7.

## F.     The Third Amended and Restated Settlement

34.     On October 6, 2014, HP announced plans to separate into two new publicly traded Fortune 50 companies: one comprising HP's enterprise technology infrastructure, software and services businesses, which will do business as Hewlett-Packard Enterprise, and one that will comprise HP's personal systems and printing businesses, which will do business as HP Inc.

35.     On January 21, 2015, following HP's announcement and further negotiations to address concerns raised by the Court in its preliminary approval Order, the Settling Parties entered into a Third Amended and Restated Stipulation of Settlement which made certain

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;    8
Master File No. C-12-6003-CRB

changes to the prior versions, and the Settling Parties moved for preliminary approval.  Motion

for Prelim. Approval (dkt. 277).  The Settling Parties agreed to remove the clause of the release

that the Court disapproved and to retain only the clause of the release – which is limited to

Autonomy-Related Claims – that the Court deemed "fair and reasonable."  Third Amended

Settlement (dkt. 277-1) at §I.A.61, §III.E.1.e.

36.     The Settling Parties also addressed HP's October 2014 announcement that HP

would split its business into two public companies, and agreed that, subject to the Court

approving the settlement, HP would implement the Governance Revisions not only at HP Inc.,

but also at HP Enterprise, the newly-formed public company resulting from the Separation.  *Id.*

at §III.A.1-2.

G.     **Preliminary Approval, Exclusions from Bar Order, and Notice**

37.     On March 13, 2015, the Court granted preliminary approval of the Third

Amended Settlement and ordered that notice be provided to HP shareholders.  Preliminary

Approval Order (dkt. 319).

38.     On May 22, 2015 and June 9, 2015, following a hearing on Sushovan Hussain's

motion to intervene, the Settling Parties entered into separate agreements excluding Sushovan

Hussain and Michael Lynch, respectively, from the proposed bar order and release provided in

the Third Amended Settlement.  Hussain and Lynch Agreements (dkt. 349 and 359).  All other

terms in the Third Amended and Restated Stipulation of Settlement remained the same.  Thus,

the Third Amended and Restated Stipulation of Settlement, together with the Hussain and Lynch

Agreements, are collectively referred to herein as the "Agreement."

39.     The Court-approved notice was published in various newspapers and posted with

the SEC and on HP's website.  Declaration of Marc Wolinsky (Dkt. 360).

40.     The Governance Revisions, summarized in the Agreement, the Court-approved

notice, and in HP's public filings in this Court, have also been made available to HP shareholders

for their review.  Based on my conversations with HP's counsel, a number of shareholders have

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB

9

taken advantage of this opportunity and, to my knowledge, no shareholder has raised any issue with respect to access to the proposed reforms.

41.    As HP and its Board have stated in the Agreement, the Governance Revisions are mandatory, the direct result of the litigation and efforts of lead counsel, and materially beneficial to HP.  *See* Third Amended and Restated Stipulation of Settlement (dkt 277-1) at §II, F, 2 at p. 30 (the Settlement "confer[s] substantial material benefits on the Company through further enhancement of the Company's merger and acquisition policies and procedures as set out in the Governance Revisions") and §III.A.1 at p. 37 ("HP shall implement the Governance Revisions, respecting which HP acknowledges that the Settling Plaintiffs and Settling Plaintiffs' Counsel contributed to the formulation of, and constructively informed the Independent Committee's and the Board's recommendations regarding, such Revisions.").

42.    Further, HP's Board has approved and adopted the Governance Revisions in all respects, finding that they were "in the best interests of the Company and its Shareholders."

## III.    THE THIRD AMENDED SETTEMENT SHOULD BE FINALLY APPROVED

### A.    The Settlement Provides Substantial Benefits to HP

43.    The Governance Revisions provide substantial benefits to HP and its shareholders. Specifically, the Settlement requires HP to adopt a series of unique and industry-leading corporate Governance Revisions, negotiated at length and with the direct participation of recognized experts on corporate governance.  The changes not only address the specific allegations relating to HP's acquisition of Autonomy that gave rise to these proceedings, but anticipate future issues and attempt to significantly strengthen HP's and HP Enterprise's corporate practices going forward.

44.    The reforms unquestionably add value for HP and its shareholders, including detailed new policies and procedures which will improve HP's M&A activities, and reforms relating to the composition, defined duties and increased role of HP's Risk Management Committee, the coordination of M&A activity throughout HP's business units, the evaluation of technology integration in due-diligence plans, and due diligence training and education.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB                                                                                      10

**B.    The Settlement Was Negotiated at Arm's-Length, By Experienced Counsel, and With the Assistance of a Well-Respected Mediator**

45.    As detailed above, the terms of the Settlement were negotiated by the parties at arm's-length, and reached only after extensive, protracted settlement discussions among counsel for the Plaintiffs, HP, and the Individual Defendants, with the assistance of Judge Walker serving as mediator.  Consistent with the parties' hard-fought and aggressive litigation of the Actions, my firm spent substantial time and effort investigating the alleged wrongdoing and litigating the Plaintiffs' claims, at the same time we pursued settlement discussions.  Once settlement negotiations commenced, it took the parties several months to finally reach a settlement and to document and present the final terms of the Agreement to the Court for approval.  The parties also did not engage in any fee negotiations prior to reaching agreement on the reforms and, instead, agreed to separate fee negotiations to be overseen by Judge Walker.

**C.    The Settlement Takes Into Account the Benefits, Risks, Complexity and Expense of Further Litigation**

46.    While Plaintiffs believe that the claims asserted in the Actions were meritorious, liability was by no means a foregone conclusion.  Indeed, in negotiating the Agreement, we were cognizant of the significant litigation risks of recovery in the Actions.  We carefully weighed the benefits of the Agreement against the substantial risks of continued litigation and concluded that the benefits will result in a very favorable resolution of the derivative claims and allow HP to prevent a recurrence of similar matters in the future and to put these disputed matters to rest.

47.    Defendants vigorously denied the claims, and there is a significant risk that Plaintiffs would not prevail if Defendants filed motions to dismiss, let alone prevail on subsequent dispositive motions or at a trial.  Even if Plaintiffs got past the pleading stage, Defendants would continue to assert that they exercised sound business judgment, acted in good faith and in a manner they believed to be in the best interest of HP and its shareholders.  The continued litigation of these issues would subject HP and its shareholders to the substantial risk of no recovery.  Based upon the record and applicable law, there were serious risks in overcoming Defendants' potential defenses and in establishing liability.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB

11

48.     The Actions also presented complex issues of law and fact, and the amount of time and expense to resolve them would have been significant.  If not for this Agreement, the case would have continued to be fiercely contested by the defendants, all at the expense of HP, which is obligated to indemnify its officers, directors and advisors for defense costs.  Continued litigation would undoubtedly involve numerous and substantial depositions, expert discovery, and motion practice, including motions to dismiss, motions for summary judgment, and trial.  Moreover, any judgment favorable to Plaintiffs would likely be the subject of post-trial motions and appeal, which would prolong the case for years with the ultimate outcome still uncertain. The Agreement eliminates the very real risk that HP might recover nothing after years of costly litigation, and guarantees HP and its shareholders immediate, substantial, and lasting benefits.

**D.     The Judgment of Counsel that the Settlement is Fair and Reasonable Further Supports Approval**

49.     I along with my partner, Joseph Cotchett, and other attorneys at my firm, have extensive experience in shareholder derivative litigation, and applying the relevant law applicable to the shareholder derivative claims at issue in this case.  A copy of my firm's resume is attached hereto as **Exhibit B**.  Joseph Cotchett and I were also personally involved in all aspects of this case from its inception, including investigation and preparation of the complaints, the simultaneous prosecution of a shareholder inspection action in California Superior Court, review of HP records produced in the inspection action, and the extensive negotiations with HP, the DRC, and its counsel to resolve the derivative claims.  I and others at my firm also conducted a careful analysis of the law and a thorough examination of the facts relating to the allegations, with the assistance of a prominent corporate governance expert, Stanford Professor David Larcker.  As a result, we were well versed in the strengths and weaknesses of the claims and defenses at the time the Agreement was negotiated, and believe that the Agreement is fair, reasonable and in the best interests of HP and its shareholders.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;     **12**
Master File No. C-12-6003-CRB

## IV.   ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

### A.   The Fee Negotiations and Arbitration

50.    Pursuant to the Agreement, and in recognition of "the substantial benefits conferred upon and expected to be conferred upon HP and its shareholders in connection with the Governance Revisions," HP agreed to pay Cotchett Pitre $7,171,998 in attorneys' fees and $72,948.90 in expenses, and agreed to pay State Counsel, Robbins Geller, $1,528,002 in attorneys' fees and $108,873.80 in expenses.  See Third Amended Settlement (dkt. 277-1) at §IV.A, p. 38.  These amounts were determined in binding arbitration by Judge Walker, and subject to the review and approval of this Court.  *Id.*

51.    Judge Walker's awards are reflected in his Arbitration Decision, previously filed with the Court.  Arbitration Decision (dkt. 233-1).  Judge Walker held an Arbitration hearing on September 17, 2014 to consider counsel's application for fees and expenses, considered written and oral argument, and issued his Arbitration Decision on September 25, 2014, along with materials providing the basis for his decision.  *Id.*  As discussed below, HP's agreement to pay fees and expenses pursuant to Judge Walker's Arbitration Decision should be approved.

### B.   Substantial Benefits to HP

52.    The Governance Revisions provide substantial benefits to HP and its shareholders, and were negotiated at length and with the direct participation of a well-respected mediator, Judge Walker, along with recognized experts on corporate governance.

53.    The Governance Revisions are the direct result of the filing and prosecution of the derivative actions, which were actively litigated long before mediation even took place.  The DRC did not even exist until after the derivative actions were filed, and after Cotchett Pitre and its client, Stanley Morrical, successfully filed a Writ Petition in Santa Clara Superior Court to gain access to HP's internal books and records.

54.    David Larcker, Professor of Accounting at the Graduate School of Business at Stanford, the director of the School's Corporate Governance Research Program, and one of the Country's foremost experts in corporate governance, has also opined that HP's reforms will provide substantial value to HP by reducing the likelihood of similar harm in the future.  Professor Larcker

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB**                                                                                          **13**

1    also cites academic research establishing that companies adopting stronger corporate governance

2    reforms increased shareholder value, that companies with strong governance had higher firm value,

3    higher profits, higher sales growth, and lower capital expenditures, and that the value of strong

4    corporate governance to a corporation only increases with the size and market capitalization of the

5    corporation.  See Larcker Declaration (dkt. 277-3) at ¶¶9-14.  HP is one of the world's largest

6    corporations with a market capitalization in excess of $58 billion.

### C.    Time and Effort Expended

8    55.    The fee awards are consistent with the substantial amount of time and work

9    undertaken by Cotchett Pitre to prosecute the Federal Action, and the complex legal and factual

10    issues it raised.

11    56.    The underlying Autonomy acquisition was one of the largest in HP's history.

12    Cotchett Pitre's investigation involved the review of thousands of documents and witnesses literally

13    located world-wide, and related to complex business and accounting issues in both the US and UK.

14    Cotchett Pitre did not shy away from this burden, affirmatively making shareholder inspection

15    demands under both Delaware and California law, and pursuing a Writ proceeding in Santa Clara

16    Superior Court to compel HP to produce relevant records.  Cotchett Pitre worked hard to identify

17    and interview former employees of HP and Autonomy, including Leo Apotheker and Shane

18    Robison, the key HP executives responsible for the due diligence process and negotiations with

19    Autonomy's CEO, Michael Lynch, which interviews took place both in the United States and in

20    Europe.  Cotchett Pitre was also the only derivative shareholder firm to interview representatives of

21    KPMG, HP's outside accountant retained to evaluate Autonomy, and the reports that it prepared.

22    57.    The case also was document intensive.  By virtue of its shareholder demands, as well

23    as subsequent mediation efforts, Cotchett Pitre's team performed an exhaustive review and

24    evaluation of deal documents from both sides of the Autonomy transaction, as well as a

25    comprehensive review of HP Board and Board Committee presentations, fairness opinions and

26    valuation materials, and other documents relating to Autonomy deal.  Cotchett Pitre also actively

27    consulted with experts with specialized knowledge of the pertinent accounting, due diligence, and

28    governance issues.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB    **14**

58.     In addition, due to the derivative nature of the Actions, Cotchett Pitre spent considerable time investigating the backgrounds and interrelationships of HP's Board in order to properly determine whether a demand to initiate legal action would be futile.  Counsel also conducted appropriate legal research and economic analysis to assess the proper legal claims, forum, damages, and relief necessary for HP and its shareholders.

### D.     Complexity of Legal and Factual Issues

59.     Given the nature of the case, involving claims under federal and Delaware state law, against officers, directors and professional advisors, related to the evaluation, acquisition and integration of a foreign-based corporation for billions of dollars, this case presented immense complexity, both in terms of the legal claims at issue and the gathering of evidence relevant to those claims, which was located in both the United States and United Kingdom.

60.     As a Delaware corporation, complex legal issues were presented, including demand futility, the business judgment rule, exculpation protections to directors, and the impact of HP's formation of a Demand Review Committee.

61.     As for demand futility, there were complexities in establishing HP Board lacked independence because they faced a substantial likelihood of personal liability for approving the deal.  Further, under Delaware's business judgment rule, directors are presumed to have acted in good faith, on an informed basis, and in the best interests of the corporation.  Directors are also immunized from liability, even for bad decisions, if they reasonably rely on information provided by management or outside professionals, and HP's Board retained several law firms, an accountant, and two professional bankers in connection with the Autonomy acquisition.  Cotchett Pitre had to evaluate all of these complexities.

62.     As to HP's directors, Cotchett Pitre had to address the HP charter provision, authorized by Delaware statute, exculpating the directors for breaches of duty of care, and its need to establish bad faith or violation of a duty of loyalty, arguably requiring evidence that the directors acted with intent to wrong the corporation and advance their personal interests. Similarly, in pursuing HP's officers, Cotchett Pitre needed to establish a violation of their duty of care by acting with gross negligence, a standard that Delaware courts have interpreted to require

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB

15

proof that HP's officers took actions "which [were] without the bounds of reason" and "so grossly off-the-mark as to amount to reckless indifference or a gross abuse of discretion." *See, e.g.*, *Metropolitan Life Ins. Co.* v. *Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *7 (Del. Ch. Sept. 13, 2012); *Solash* v. *Telex Corp.*, 1988 WL 3587, at *9 (Del. Ch. Jan. 19, 1998).

63.    The action also involved complex issues related to the due diligence process, standards applied to evaluate UK corporations, and the ultimate price paid based on fairness opinions provided by outside advisors.  Thus, Cotchett Pitre had to assess both US and UK laws pertaining to due diligence and accounting standards, and any pertinent differences.  My firm consulted with UK authorities in London, including the Financial Conduct Authority, as well as experts on pertinent due diligence issues.

64.    Even had we overcome the demand futility hurdle, HP would have undoubtedly filed a motion to dismiss based on the results of the DRC's investigation and recommendations.  Thus, Cotchett Pitre had to understand and anticipate the legal impact of the DRC's decision to pursue Autonomy officials (and not to pursue HP officials).

### E.    Contingent Representation and Risk of Non-Recovery

65.    The Federal Action was undertaken by Cotchett Pitre on a wholly contingent basis.

66.    From the outset, my firm understood that it was embarking on a complex, expensive and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the case would require.  In undertaking that responsibility, Cotchett Pitre was obliged to ensure that sufficient attorney resources were dedicated to the prosecution of the litigation and that funds were available to compensate staff and to pay for the considerable out-of-pocket expenses cases like this entail.

67.    Because of the nature of complex litigation, where cases commonly last several years, contingent litigation firms not only have to pay regular overhead, but also advance the expenses of the litigation.  With an average lag time of several years for cases to conclude, the financial burden on contingent counsel is far greater than on a firm paid on a monthly basis.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;    16
Master File No. C-12-6003-CRB

68. It is axiomatic that a law firm handling complex, contingent litigation does not always win. Tens of thousands of hours have been expended in worthy, yet losing efforts. Indeed, many shareholder derivative lawsuits have been dismissed at the pleading stage in both federal and state courts across the country, including several in this District. Even if an action is not dismissed with prejudice at the pleading or summary judgment stage, there is still no guarantee of recovery. Plaintiffs who succeed at trial may find their judgment overturned on appeal.

69. Lawsuits also result in no fee for counsel after the discovery of facts unknown when the case commenced, or changes in the law during the pendency of a case, or a decision of a judge or jury following a trial on the merits.

70. Despite these risks, Courts have repeatedly held that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. Vigorous private enforcement of the federal securities laws and state corporation laws can occur only if private plaintiffs can obtain parity in representation with that available to large corporate interests. The Supreme Court has long recognized the value of derivative actions. In *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 548, (1949), the Supreme Court stated: "This remedy [derivative actions], born of stockholder helplessness, was long the chief regulator of corporate management afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests. It is argued, and not without reasons, that without it there would be little practical check on such abuses." To carry out this important public policy, Cotchett Pitre respectfully submits that fees should be awarded to adequately compensate private plaintiffs' counsel for undertaking the considerable risks in a shareholder derivative action.

## F. Cotchett Pitre's Standing and Ability

71. Cotchett Pitre is one of the foremost securities and derivative litigation firms in the United States, and the attorneys who worked on this litigation have decades of experience in derivative litigation. See Firm Resume, **Exhibit B**.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement; Master File No. C-12-6003-CRB

17

72.     As discussed above, and in the attached brief, Cotchett Pitre utilized its standing and ability during all phases of this case to benefit HP and its shareholders, including but not limited to: (1) identifying witnesses, investigation, and filing an extraordinarily detailed complaint; (2) pursuit of simultaneous inspection demands under California and Delaware law, and related Writ proceedings in California Superior Court; (3) taking a hard line on HP's efforts to stay the case, and ultimately obtaining a Court order requiring HP's Demand Review Committee to conduct and complete its investigation by January 2014; (4) continuing its vigorous investigation to ensure that it had all information necessary *before* it agreed to meet with HP's DRC and to engage in substantive dialogue and negotiations relating to settlement; and (5) negotiating and documenting a comprehensive settlement agreement.

### G.     Lodestar Cross-Check

73.     At the time of the Arbitration before Judge Walker on September 17, 2014, attorneys and paralegals at my firm had collectively devoted approximately 5,670 hours of time on HP's behalf.  Since then, additional time has been spent relating to the settlement and motions, notice and responding to shareholder inquiries, and objector discovery served on Morrical and my firm along with related discovery motions.  As of June 16, 2015, attorneys and paralegals at my firm have collectively spent 6,446 hours of time on this case.

74.     The number of hours is reasonable and reflects the diligent work my firm provided at all stages of this case.  That said, at my direction, we attempted to be as efficient as possible and to avoid duplication of effort.

75.     At the time Judge Walker conducted the September 2014 Arbitration, Cotchett Pitre's lodestar was $2,631,327.  As of June 16, 2015, my firm's lodestar was $3,061,169.  Both lodestar totals reflect the total hours spent multiplied by the standard hourly rates charged by my firm.  A copy of my firm's lodestar reports as of September 16, 2014 and June 16, 2015, respectively, identifying each attorney or paralegal who worked on this case, their position, the year they were admitted to the bar, the total amount of hours, and their hourly rate, is attached hereto as **Exhibit C**.  Copies of resumes for attorneys who worked on this case, as well as descriptions of the paralegals who worked on the case, are attached hereto as **Exhibit D**.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;**   **18**
**Master File No. C-12-6003-CRB**

76.     Cotchett Pitre's hourly rates are consistent with the prevailing rates for counsel working in securities and derivative litigation in California.  My firm's hourly rates, and lodestar amounts based on such rates, have been approved by courts in other cases.  See Order, **Exhibit E**.

77.     Cotchett Pitre's hourly rates used to calculate its lodestar do <u>not</u> already reflect the contingent risk of non-payment.  To the contrary, my firm's hourly rates reflect those paid by numerous existing clients, paying on a non-contingent, hourly basis.  See **Exhibit F** (representative fee agreements currently used by firm, redacted to remove identities of clients).

### H.     Reimbursement of Cotchett Pitre's Expenses

78.     Judge Walker's Arbitration Decision also approved reimbursement to Cotchett Pitre of $72,948.90 in costs incurred as of September 16, 2014.  All of these expenses were necessary and incurred in reaching the successful resolution of this matter.  A true and correct copy of a report itemizing CPM's costs by category is attached as **Exhibit G**.  While Cotchett Pitre has incurred additional expenses since September 2014, it does not seek reimbursement for such costs.

## V.     A SERVICE AWARD TO STANLEY MORRICAL SHOULD BE APPROVED

79.     In consideration for his time and effort in bringing and prosecuting the Federal Action, HP agreed to pay Federal Plaintiff Stanley Morrical a service award of $25,000.  Third Amended Settlement (dkt. 277-1) at 39, §IV, C.

80.     Morrical provided substantial assistance to my firm throughout this case.  He was actively involved in every stage, including the pre-filing investigation.  Morrical also made a separate shareholder "books and records" inspection request pursuant to California and Delaware inspection statutes and, when HP failed to produce all requested records, served as the named plaintiff in a Petition for Writ of Mandate action brought against HP in California Superior Court, resulting in the production of key internal records relating to HP's due diligence process and Board supervision.  Morrical also consulted with my firm regarding case strategy, attended hearings, and closely monitored and reviewed the settlement negotiations and documentation.  After preliminary approval was granted, Morrical was served with and responded to document requests and interrogatories by objecting shareholders.  In sum, Morrical has been an active participant in the

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB                                                                                          19

1  litigation, devoting several hundred hours of time and effort, and his participation has greatly

2  benefitted the derivative litigation.

3        I declare under penalty of perjury under the laws of the United States of America that the

4  forgoing is true and correct.  Executed June 19, 2015 at Burlingame, California.

5

6          *Mark C. Molumphy*

        Mark C. Molumphy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Declaration of Mark C. Molumphy in Support of Motion for Final Approval of Third Amended Settlement;
Master File No. C-12-6003-CRB**

20