WACHTELL, LIPTON, ROSEN & KATZ
MARC WOLINSKY (*pro hac vice*)
GEORGE T. CONWAY III (*pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel./Fax:  212.403.1000/2000
MWolinsky@wlrk.com
GTConway@wlrk.com

FARELLA, BRAUN & MARTEL, LLP
NEIL A. GOTEINER, State Bar No. 83524
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Tel./Fax:  415.954.4400/4480
NGoteiner@fbm.com

*Attorneys for Defendant Hewlett-Packard Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Master File No. C-12-6003 CRB **HEWLETT-PACKARD COMPANY'S RESPONSE TO ORDER DENYING PENDING ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL** |
| This Document Relates to:  All Actions | Dept.:  Courtroom 6, 17th Floor Judge:  Hon. Charles R. Breyer |

On July 28, 2015, this Court issued an Order denying all outstanding motions to seal and invited HP to identify "a limited amount of *exceptionally sensitive information* that truly deserves protection." Order Denying Pending Administrative Motions to File Under Seal (Docket #411) at 4 n.1 (internal quotation marks omitted). In accordance with that admonition, HP carefully reviewed the documents that HP, the directors, and the objectors previously moved to file under seal in light of the Court's directive.

HP recognizes that there is "a strong presumption in favor of access" to judicial records, and that it "bears the burden of overcoming this strong presumption by meeting the compelling reasons standard." *Kamakana* v. *City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks omitted). Under that standard, HP "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178-79 (internal quotation marks, citation, and alteration omitted).

While this standard is understandably stringent, HP believes it is met with respect to three specific categories of information contained in the following documents: (1) HP's mergers and acquisitions (M&A) policies and procedures, as reflected in the governance reforms adopted by HP as part of the settlement, as well as earlier versions of the reforms and HP's pre-settlement M&A policies and procedures; (2) unredacted versions of the resolutions adopted by the Demand Review Committee ("DRC") and by HP's board; and (3) the identity of the Autonomy official who made allegations to HP's general counsel in May 2012.

**I.    HP'S M&A POLICIES AND PROCEDURES, INCLUDING THE DRAFTS AND FINAL VERSION OF THE GOVERNANCE REFORMS SHOULD REMAIN SEALED.**

HP's mergers and acquisition policies and procedures, including HP's M&A policies and procedures before and after the Autonomy acquisition, the governance revisions, and drafts thereof,

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL
MASTER FILE NO. C-12-6003 CRB

should be sealed because they constitute trade secrets comprising the kind of "exceptionally sensitive" information that courts have routinely recognized as appropriately sealed. *O'Connor* v. *Uber Techs., Inc.*, 2015 WL 355496, at *3 (N.D. Cal. Jan. 27, 2015). *See, e.g.*, *Barnes* v. *Hershey Co.*, 2015 WL 1814293, at *2 (N.D. Cal. Apr. 21, 2015) (Breyer, J.) (sealing exhibits "because they contain confidential and private information about Hershey's business strategy and trade secrets, including internal operations information, account assignments and divisions, financial information regarding specific clients, and Hershey's organization structure and sales strategies); *Cowan* v. *GE Capital Retail Bank*, 2015 WL 1324848, at *2-3 (N.D. Cal. Mar. 24, 2015) (sealing a bank's "internal procedures for addressing cardholder fraud notifications, as well as risk management and legal compliance in investigating fraud" because "these documents are confidential trade secrets").[1]

This Court has already held that there are "compelling reasons to prevent public disclosure" of the governance revisions "due to the detriment that HP would suffer in the mergers and acquisitions process if competitors had access to this sensitive corporate playbook."[2] Order Granting Motion for Preliminary Approval ("Prelim. Appr. Or.") (Docket #319) at 10 (citing *Kamakana*, 447 F.3d at 1178-79).[3]

---

[1] M&A policies and procedures fall squarely within the Ninth Circuit's definition of trade secrets. "The Ninth Circuit has adopted the definition of 'trade secrets' set forth in the Restatement of Torts, holding that '[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.' . . . 'Generally [a trade secret] relates to the production of goods. . . . It may, however, relate . . . to other operations in the business . . . .'" *GPNE Corp.* v. *Apple Inc.*, 2015 WL 4381244, at *1 (N.D. Cal. July 16, 2015) (quoting *Clark* v. *Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)).

[2] As HP has previously explained, the reforms that the parties submitted to the Court on June 30, 2014 were subject to HP's management's review and the HP board's approval. On June 19, 2015, HP filed an administrative motion seeking to file under seal the governance revisions as adopted by the board. *See* HP's Admin. Mot. to Seal (Docket #367) at 2-3.

[3] HP did not understand the Order to be overruling the Court's prior decision that the corporate Governance Revisions were appropriately sealed.

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL
MASTER FILE NO. C-12-6003 CRB

2

Rishi Varma, HP's Senior Vice President and Deputy General Counsel for Corporate Securities and Mergers and Acquisitions, previously submitted a declaration articulating the likely detriment HP and its shareholders would suffer should the reforms be disclosed. "[P]ublic disclosure of the Governance Revisions would make known to potential counterparties the timeline associated with HP's ability to approve a proposal or final transaction, as well as the key business and legal diligence areas on which HP is likely to focus." Wolinsky Decl. Ex. 1 at 3 (Declaration of Rishi Varma in Support of Plf.'s Admin. Mot. to Seal Documents Pursuant to Civ. L. R. 7-11 and 79-5(d)). A "potential counterparty can be expected to use this knowledge to its advantage during the diligence process as well as during negotiations on deal and price terms, which can only constrain HP's ability to negotiate in high-stakes situations." *Id.* For example, a competitor eyeing the same potential target "may try to create artificial deadlines that interfere with HP's processes." *Id.* Or the "competitor may try to trigger review processes at HP to slow down HP's response while the competitor advances in diligence or bidding." *Id.* "And there are countless other ways for the competitor to seek to take advantage of its knowledge of HP's M&A approval process. It can only harm HP competitively for other companies to have a roadmap to HP's approval process." *Id.*

The Court has also ruled that, "under these circumstances, the public interest in disclosure is appropriately balanced in the mechanism for shareholder access." Prelim. Appr. Or. at 10. Any HP shareholder is welcome to review the governance revisions by entering into a confidentiality agreement with HP, as objectors A.J. Copeland and Harriet Steinberg did. Moreover, HP has described the reforms in the Notice and in numerous public filings. *See, e.g.*, Docket #210 (HP brief) at 13-14 (describing the reforms); Docket #399 (HP brief) at 47-48 (describing the reforms). While these descriptions provide a complete picture of the governance revisions HP adopted as a result of the settlement, they omit confidential business information that could be used to HP's detriment in the M&A process.

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL
MASTER FILE NO. C-12-6003 CRB

3

In light of these considerations, HP seeks to file under seal the governance revisions approved by HP's board and filed with the Court on June 19, 2015. The objectors and HP have also filed prior versions of the governance revisions, and HP seeks to seal those versions as well, as HP is likely to suffer the same detriment if earlier versions of the reforms fall into the hands of HP's competitors. Earlier versions of the governance revisions contain many of the same reforms adopted by HP's board. Competitors could use these prior versions to piece together HP's current M&A policies and procedures to their competitive advantage.

In addition, HP seeks to place under seal documents containing or detailing the M&A policies and procedures HP had in place prior to its adoption of the governance revisions, as approximately 90% of those policies and procedures remain in effect. Rather than replace the old policies, the governance revisions built upon and enhanced the critical checkpoints that were previously in place and remain in effect today. In short, HP would suffer the same harm if those documents were released to the public.

## II. THE UNREDACTED VERSIONS OF THE DRC AND BOARD RESOLUTIONS SHOULD REMAIN SEALED.

Redacted versions of the January 2014 DRC and board resolutions have been publicly available on the Court's docket since September 4, 2014. *See* Docket #211-1 (DRC Resolution), #211-3 (HP board resolution). In Steinberg's objection, however, Steinberg cited an unredacted version of the DRC Resolution that HP produced to Steinberg pursuant to a books and records demand under 8 Del. C. § 220. The objectors' supplemental objection likewise cited an unredacted version of the board resolution, and filed the unredacted version as an exhibit. The redacted portions of those documents are not relevant to the fairness and adequacy of the proposed settlement and contain material protected by the attorney-client privilege and work-product doctrine. There is no reason to infringe on those protections by making the unredacted copies of those resolutions public (or disclosing privileged material from those resolutions).

1       As HP has previously explained to the Court, "the redacted portions of the [DRC and board resolutions] primarily reflect legal advice by the DRC's counsel regarding HP's potential claims against Michael Lynch and Sushovan Hussain." Order Denying Discovery (Docket #348) at 2. HP was willing to produce the unredacted resolutions in response to Steinberg's books and records demand because producing documents in the context of a shareholder's non-adversarial books and records request does not operate as a waiver of privilege. *See Wal-Mart Stores, Inc.* v. *Ind. Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1278 (Del. 2014); *see also Grimes* v. *DSC Commc'ns Corp.*, 724 A.2d 561, 568 (Del. Ch. 1998). To further ensure there was no waiver of privilege, HP required Steinberg to execute a confidentiality agreement with respect to the unredacted resolutions, in which she promised that, except as HP otherwise agreed, "all Confidential Inspection Material and its contents received by Stockholders . . . shall . . . be used solely for the proper purposes of the Demand as permitted under 8 Del. C. § 220." Wolinsky Decl. Ex. 2 at 3.[4]

Despite Steinberg's agreement to the contrary, Steinberg cited portions of the unredacted version of the DRC Resolution in her objection. *See* Steinberg Br. 13:24-26, 14:1-2 (citing DRC Resolution at 25).[5] The objectors likewise cited the unredacted version of the board resolution in their supplemental objection to the settlement and submitted that document to the Court as well. *See* Supp. Br. at 4; Supp. Br. Ex. 50.[6]

---

[4] Moreover, Magistrate Judge Laporte rejected the objectors' request to obtain the unredacted versions of both documents, holding that the objectors had no "need for these documents" because "HP's subsidiaries have since brought suit against Lynch and Hussain." Or. Denying Discovery at 2.

[5] Steinberg did not file the unredacted DRC Resolution as an exhibit. However, Steinberg's brief discusses material that is not in the unredacted version of the DRC Resolution. Based on the discussion, Steinberg's brief could not be discussing the redacted version.

[6] In a footnote to the Proposed Sur-Reply, Steinberg argues that she cited the documents for a permissible purpose. The case Steinberg cites in support of this contention recognizes that evaluating the good faith and reasonableness of a board's decision to refuse a shareholder demand is a legitimate purpose under Section 220. *See La. Mun. Police Empls. Ret. Sys.* v. *Morgan Stanley & Co.*, 2011 Del. Ch. LEXIS 42, at *19 (Del. Ch. Mar. 4, 2011). The case does not suggest that Steinberg was permitted to use documents obtained in the Section 220 context to object to a fair, reasonable, and adequate settlement in violation of her commitment to seek HP's prior permission, let alone that the use would permit a shareholder to waive the company's privilege.

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL                               5
MASTER FILE NO. C-12-6003 CRB

While HP is fully cognizant of the Court's desire that the public be able to access as much of the judicial record in this case as possible, HP is obligated to continue protecting privileged material so as to avoid being deemed to have waived privilege either as to those documents themselves or, even worse, as to privileged materials bearing on the same subject matters. The fact that the resolutions contain privileged material provides a compelling basis to seal the redacted portions. *See Salcido* v. *Chappell*, 2012 WL 6126368, at *1 (N.D. Cal. Dec. 10, 2012) (concluding there are "compelling reasons justify[ing] the sealing of materials containing privileged attorney-client communications as well as work product information").

The harm to HP from an inadvertent waiver of privilege could be significant. As the Court knows, HP is engaged in litigation in the U.K. against Lynch and Hussain, has initiated a pre-action protocol against Deloitte UK, and is cooperating with the U.S. authorities in their criminal investigation of the Autonomy fraud. The redacted portions of the resolutions that the objectors cited in their brief reflect HP's privileged consideration of these same matters. For example, Steinberg cites a redacted portion of the DRC Resolution preliminarily estimating the injury caused to HP as a result of Lynch's and Hussain's fraud. Neither these materials, nor the materials that underlie them, should be made available to the company's adversaries.

Should the Court determine that the unredacted versions of the DRC Resolution and board resolution be made public, HP respectfully requests that it do so using the proposed order filed concurrently herewith so as to ensure that the production is not deemed to be a waiver. *See* Fed. R. Evid. 502(d).

### III. THE IDENTITY OF THE AUTONOMY OFFICIAL WHO MADE ALLEGATIONS TO HP'S GENERAL COUNSEL IN MAY 2012 SHOULD REMAIN SEALED.

In the unredacted version of the objectors' joint supplemental brief (Docket #391), the objectors disclosed the identity of "Whistleblower No. 4," the legacy Autonomy executive who made allegations to HP's general counsel on May 25, 2012 regarding pre-acquisition accounting improprieties at Autonomy. Supp. Br. 11:11. Additionally, the objectors attached slides from the DRC deck to their supplemental brief, which identify Whistleblower No. 4 by name. Supp. Br. Ex.

53 (Supp. Abraham Sealing Decl. Ex. 4) at HP_DER3_00013091, HP_DER3_00013096, HP_DER3_00013097.

The case law is clear that while public access to court records is important, some documents are not subject to the public right of access because they have "traditionally been kept secret for important policy reasons." *Times Mirror Co.* v. *United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). Two categories that the Ninth Circuit has expressly held do not necessitate public disclosure are "grand jury transcripts and warrant materials in the midst of a *pre-indictment* investigation." *Kamakana*, 447 F.3d at 1178 (emphasis added).

While keeping Whistleblower No. 4's name confidential does not involve a grand jury transcript or warrant materials, the same public policy concerns are at issue here. As the Supreme Court has noted: "[t]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved." *United States* v. *United States Dist. Court*, 407 U.S. 297, 320-21 (1972). Whistleblower No. 4 is likely a significant witness in the ongoing government investigations. The whistleblower's identity has never been made public and should not be made public now. The premature disclosure of Whistleblower No. 4's identity could interfere with the ongoing investigations by making the whistleblower a target of intimidation or harassment. As the Ninth Circuit explained in *Kamakana*, compelling reasons for sealing exist when "court files [may] become a vehicle for improper purposes." 447 F.3d at 1179.

Separately, HP has a strong interest in protecting the identities of employees who bring issues, like the pre-acquisition accounting issues at Autonomy, to the company's attention. *See, e.g.*, *Mgmt. Info. Techs., Inc.* v. *Alyeska Serv. Co.*, 151 F.R.D. 478, 481 (D.D.C. 1993) (describing case law, studies, and newspaper accounts documenting the harm to employees who speak out on issues of public concern and denying motions to compel documents that would disclose identity of whistleblower). Accordingly, compelling grounds exist to keep Whistleblower No. 4's identity confidential.

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL                                  7
MASTER FILE NO. C-12-6003 CRB

## IV. CONCLUSION

For the reasons set forth above, HP respectfully requests that the documents or portions thereof listed in the table below be sealed or redacted as appropriate.[7]

HP respectfully requests permission to refile the relevant documents under seal or with the proposed redactions, as appropriate. To the extent any material below is included in documents originally filed by the objectors, HP respectfully requests that they be ordered to make the redactions or to refrain from filing certain documents in their entirety when they resubmit unsealed versions of their filings.

| Document | Portion to Be Sealed | Citations | Explanation |
|---|---|---|---|
| The governance revisions, as approved by the HP board | Entire document | Docket #367-3 Steinberg Ex. 21 Copeland Ex. P | Contains sensitive corporate and trade secret information |
| The charter for the Risk Management Committee, adopted as part of the final reforms | Entire document | Steinberg Ex. 22 | Contains sensitive corporate and trade secret information |
| The governance revisions, as approved by the HP board, in redline form | Entire document | HP Ex. 31 | Contains sensitive corporate and trade secret information |
| The reforms referenced in the January 2014 board resolution and shared with plaintiffs' counsel at the outset of the negotiations that resulted in settlement | Entire document | Copeland Ex. Q | Contains sensitive corporate and trade secret information |

---

[7] Exhibit 3 to the accompanying Wolinsky Declaration is an example of how HP believes the objectors should be compelled to refile the pages to Supp. Br. Ex. 53 (Supp. Abraham Sealing Decl. Ex. 4) at HP_DER3_00013091, HP_DER3_00013096, and HP_DER3_0001309.

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL                                                8
MASTER FILE NO. C-12-6003 CRB

| | | | |
|---|---|---|---|
| Reforms undertaken by HP management, but not approved by the HP board, before the DRC was involved | Entire document | Steinberg Ex. 10<br>Copeland Ex. R | Contains sensitive corporate and trade secret information |
| Detailed description of reforms undertaken by HP management, but not approved by the HP board, before the DRC was involved | HP_DER3_00013835, HP_DER3_00013837-HP_DER3_00013838, HP_DER3_00014973-HP_DER3_00014988, HP_DER3_00015092-HP_DER3_00015095 | Copeland Ex. D<br>Steinberg Ex. 1<br>HP Ex. 28<br>HP Ex. 29 | Contains sensitive corporate and trade secret information |
| The formal policies that were in place related to prospective mergers and acquisitions as of August 18, 2011 | Entire document | Steinberg Ex. 3 | Contains sensitive corporate and trade secret information |
| Detailed description of the formal policies that were in place related to prospective mergers and acquisitions as of August 18, 2011 | HP_DER3_00012640-HP_DER3_00012644, HP_DER3_00012646-HP_DER3_00012647 HP_DER3_00012649-HP_DER3_00012653, HP_DER3_00012655-HP_DER3_00012657-HP_DER3_00012661, HP_DER3_00012663-HP_DER3_00012665, HP_DER3_00012668-HP_DER3_00012671, HP_DER3_00012675-HP_DER3_00012676 | Steinberg Ex. 1<br>Copeland Ex. D | Contains sensitive corporate and trade secret information |
| A chart comparing versions of the governance revisions | Entire document | Steinberg Ex. 23 | Contains sensitive corporate and trade secret information |
| Steinberg Objection | Page 13, lines 24-26 | Docket #384 | Quotes privileged information from the DRC Resolution |
| Supplemental Brief | Page 4, lines 15-20 | Docket #391 | Quotes privileged information from the Board Resolution |

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL
MASTER FILE NO. C-12-6003 CRB

9

| | | | |
|---|---|---|---|
| Privileged Board Resolution | Entire document to be replaced by version filed at Docket #211-3 | Supp Br. Ex. 50 (Supp. Abraham Decl. Ex. 1) | Contains privileged information and produced in the context of a books and records demand under 8 Del. C. § 220. |
| Copeland Objection | Page 27, lines 10-20<br>Page 28, lines 7-9; 17-18; 20-25<br>Page 29, lines 3-5<br>Page 30, lines 10-21<br>Page 31, lines 1-4<br>Page 31, lines 17-23<br>Page 35, lines 25-27 | Docket # 379 | Quotes and describes in detail the governance reforms which contain sensitive corporate and trade secrets |
| Supplemental Brief | Page 11, line 11 | Docket # 391 | Identifies Whistleblower No. 4 by name |
| Identification of Whistleblower No. 4 by name | HP_DER3_00013091, HP_DER3_00013096, HP_DER3_00013097 | Supp Br. Ex. 53 (Supp. Abraham Sealing Decl. Ex. 4) | Identifies Whistleblower No. 4 by name |
| Detailed information about the operation, structure, and composition of the Risk Management Committee | Entire Document | Copeland Ex. O | Contains sensitive corporate and trade secret information |

Dated: July 31, 2015

WACHTELL, LIPTON, ROSEN & KATZ

By: _____
    Marc Wolinsky
    George T. Conway III
    51 West 52nd Street
    New York, NY  10019
    Telephone:  (212) 403-1000
    Facsimile:  (212) 403-2000

FARELLA BRAUN & MARTEL, LLP
    Neil A. Goteiner
    235 Montgomery Street
    San Francisco, CA  94104
    Telephone:  (415) 954-4400
    Facsimile:  (415) 954-4480

*Attorneys for Defendant Hewlett-Packard Company*

HP'S RESPONSE TO ORDER DENYING
PENDING ADMINISTRATIVE MOTIONS
TO FILE UNDER SEAL
MASTER FILE NO. C-12-6003 CRB

11