1  ALLEN J. RUBY (STATE BAR NO. 47109)
   Allen.Ruby@skadden.com
2  TIMOTHY A. MILLER (STATE BAR NO. 154744)
   Timothy.Miller@skadden.com
3  RICHARD S. HORVATH, JR. (STATE BAR NO. 254681)
   Richard.Horvath@skadden.com
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
5  Palo Alto, California 94301
   Telephone:   (650) 470-4500
6  Facsimile:    (650) 470-4570

7  Attorneys for Defendants
   RAYMOND J. LANE, MARC L. ANDREESSEN,
8  SHUMEET BANERJI, RAJIV L. GUPTA,
   JOHN H. HAMMERGREN, ANN M. LIVERMORE,
9  GARY M. REINER, PATRICIA F. RUSSO,
   G. KENNEDY THOMPSON, RALPH V. WHITWORTH,
10 LAWRENCE T. BABBIO, JR., SARI M. BALDAUF,
   and DOMINIQUE SENEQUIER

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16 IN RE HEWLETT-PACKARD COMPANY          MASTER DOCKET
   SHAREHOLDER DERIVATIVE LITIGATION
17                                         NO. C-12-6003 CRB

18 THIS DOCUMENT RELATES TO ALL ACTIONS   **DIRECTORS' (1) JOINDER IN
                                          HEWLETT-PACKARD
19                                         COMPANY'S RESPONSE TO
                                          OBJECTIONS TO FINAL
20                                         APPROVAL OF THE THIRD
                                          AMENDED AND RESTATED
21                                         STIPULATION OF SETTLEMENT
                                          AND (2) RESPONSE TO
22                                         OBJECTIONS TO FINAL
                                          APPROVAL OF THIRD AMENDED
23                                         AND RESTATED STIPULATION
                                          OF SETTLEMENT**

24                                         Dept.:  Courtroom 6, 17th Floor
25                                         Judge:  Honorable Charles R. Breyer
                                          Date:    July 24, 2015, 10:00 a.m.
26

27

28

---

1

## TABLE OF CONTENTS

2

**PAGE**

3   TABLE OF AUTHORITIES ................................................................................... ii

4   ISSUE TO BE DECIDED (N.D. CAL. CIVIL L.R. 7-4) ...........................................1

5       I.      INTRODUCTION. ...........................................................................1

6       II.     SKADDEN, AND NOT WACHTELL, REPRESENTS THE DIRECTORS.........1

7       III.    THE CLAIMS AGAINST THE DIRECTORS ARE WITHOUT MERIT
               AND VALUELESS TO HP...............................................................2

8

9             A.     The Objectors Have Not Shown Self-Interest By The Directors.................3

10             B.     Any Claim That The Directors Acted In "Bad Faith" In Approving
                 The Acquisition Of Autonomy Is Completely Implausible. ........................3

11       IV.    CONCLUSION..................................................................................8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>PAGE(S)</u>

3

### <u>CASES</u>

4  *Ash v. McCall*,
       No. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ...................................... 4, 6

5
   *In re BioClinica, Inc. Shareholder Litigation*,
6      No. 8272-VCG, 2013 WL 5631233 (Del. Ch. Oct. 16, 2013)................................ 2, 4, 5

7  *In re China Automotive Systems Inc. Derivative  Litigation*,
       2013 Del. Ch. LEXIS 217 (Del. Ch. Aug. 2013)...................................................... 7
8
   *In re Del Monte Foods Co. Shareholders Litigation*,
9      25 A.3d 813 (Del. Ch. 2011) ................................................................................. 7

10 *Dent v. Ramtron International Corp.*,
       No. 7950–VCP, 2014 WL 2931180 (Del. Ch. June 30, 2014) ............................ 3, 4
11
   *In re Goldman Sachs Group., Inc. Shareholder Litigation*,
12     No. 5215-VCG, 2011 WL 4826104 (Del. Ch. Oct. 12. 2011)................................. 3

13 *In re HP Securities Litigation*,
       Master File No. C-12-6003 CRB, 2013 WL 6185529 (N.D. Cal. Nov. 26, 2013)........................ 4
14
   *In re Lear Corp. Shareholder Litigation*,
15     967 A.2d 640 (Del. Ch. 2008) ............................................................................... 7

16 *Lyondell Chemical Co. v. Ryan*,
       970 A.2d 235 (Del. 2009) ............................................................................... 4, 5, 7
17
   *McCall v. Scott*,
18     239 F.3d 808 (6th Cir. 2001) ................................................................................. 7

19 *Mills Acquisition Co. v. Macmillan, Inc.*,
       559 A.2d 1261 (Del. 1989) ...............................................................................
20
   *In re Oclaro, Inc. Derivative  Litigation*,
21     No. C-11-3176 EMC, 2014 WL 4684993 (N.D. Cal. Sept. 19, 2014) ..................... 6

22 *Stone ex rel. AmSouth Bancorporation v. Ritter*,
       911 A.2d 362 (Del. 2006) ................................................................................... 4, 7
23
   *In re Toys "R" Us Shareholder Litigation*,
24     877 A.2d 975 (Del. Ch. 2005) ............................................................................... 7

25 *In re Walt Disney Co. Derivative Litigation*,
       906 A.2d 27 (Del. Ch. 2005) ................................................................................. 3
26
   *In re Walt Disney Co. Derivative Litigation*,
27     907 A.2d 693 (Del. Ch. 2005) ............................................................................... 3

28

*Wood v. Baum,*
   953 A.2d 136 (Del. 2008) ............................................................................. 3

## **STATUTES**

8 Del. C. § 102 ............................................................................................... 3, 7

**ISSUE TO BE DECIDED**
**(N.D. CAL. CIVIL L.R. 7-4)**

1.      Whether, given the significant legal protection afforded to the directors of a Delaware corporation, the proposed Third Amended and Restated Stipulation of Settlement (the "Settlement") is within the range of what is fair, reasonable, and adequate to Hewlett-Packard Company ("HP") and its shareholders such that the Court should grant final approval of the settlement as to the Directors?[1]

## I.      INTRODUCTION.

The current and former Directors of HP join in the arguments by the company in its Response to Objections to Final Approval of the Third Amended and Restated Stipulation of Settlement ("HP's Response"). The Directors respectfully submit this memorandum to underscore HP's arguments that: (i) A.J. Copeland erroneously asserts that Wachtell, Lipton, Rosen & Katz ("Wachtell") "de facto" represents the Directors in this action and represented them in connection with the Settlement; and (ii) Copeland and Harriet Steinberg (together, the "Objectors") fail to show that the Autonomy-Related Claims against the Directors have merit. Because there is absolutely no basis in the allegations of the Consolidated Shareholder Derivative Complaint, the Objectors' complaints, the record before the Court, or common sense to assign any value to the claims against the Directors, the Court should grant final approval of the Settlement.

## II.      SKADDEN, AND NOT WACHTELL, REPRESENTS THE DIRECTORS.

On October 29, 2014, the Directors confirmed that Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") – not Wachtell or any other firm – has at all relevant times represented the Directors in their individual capacities in this litigation, including in connection with the proposed settlement of the derivative claims brought against them.[2]  (*See* Dkt. 262 at 1.)  Wachtell represents

---

[1]      The "Directors" shall mean Raymond J. Lane, Marc L. Andreessen, Shumeet Banerji, Rajiv L. Gupta, John H. Hammergren, Ann M. Livermore, Gary M. Reiner, Patricia F. Russo, G. Kennedy Thompson, Ralph V. Whitworth, Lawrence T. Babbio, Jr., Sari M. Baldauf, and Dominique Senequier.  Unless otherwise noted herein, all citations and internal quotation marks are omitted and all emphasis is added.

[2]      Defendant Margaret C. Whitman, who also served as a director before and after the Autonomy acquisition, has been represented by all relevant times by Cooley LLP, not Wachtell.

1

1 HP. (*Id.*) Copeland is wrong both (i) to continue hounding his insinuations that Wachtell

2 represented the Directors and (ii) to claim that his insinuations have gone unchallenged. (*Compare*

3 Copeland Objection at 42 n. 46 (Dkt. 379) (Copeland asserting that "no lawyer representing the

4 Individual Defendants (or anyone else) has taken issue with [his] claim that Wachtell effectively

5 represented the Individual Defendants in negotiating each of the proposed settlements, including

6 the January 22 proposal") *with* Dkt. 262 at 1 (Directors objecting to Copeland's insinuation that

7 Wachtell, and not Skadden, represented them).)

8 **III.    THE CLAIMS AGAINST THE DIRECTORS ARE WITHOUT MERIT AND**
9 **VALUELESS TO HP.**

10        The Directors respectfully submit that in considering whether to grant final approval to the

11 proposed Settlement, the Court should assign zero value to the claims espoused by the Objectors

12 that the Directors acted in "bad faith" by allegedly ignoring "red flags" about Autonomy before

13 approving the acquisition. (*See, e.g.*, Copeland Objection at 9-14 (Dkt. 379); *see also* Steinberg

14 Objection at 1, 3, 6-12, 21-23, 28-29 (Dkt. 383-6).)  As demonstrated in detail by HP and in the

15 findings of the Demand Review Committee ("DRC"), neither of the Objectors has shown that the

16 Directors ignored "red flags" or otherwise acted in "bad faith" in approving the Autonomy

17 acquisition. (*See* HP's Response at Section III.B.2 (Dkt. 398-4).)

18        Under well-settled Delaware law, where, as here, HP's Certificate of Incorporation contains

19 a provision exculpating its outside directors, Plaintiff or Objectors must plead and prove facts

20 demonstrating disloyalty or "bad faith" by the Directors to recover money damages on behalf of

21 HP. (*See* Horvath Decl. Ex. A, at X.A (Dkt. 263-1).)  *See, e.g.*, *In re BioClinica, Inc. S'holder*

22 *Litig.*, No. 8272-VCG, 2013 WL 5631233, at *4 (Del. Ch. Oct. 16, 2013) (Requiring plaintiff to

23 plead disloyalty or bad faith because, "[p]ursuant to 8 Del. C. § 102 (b)(7), the exculpation

24 provision in BioClinica's certificate of incorporation absolves its directors from monetary damages

25 arising out of breaches of the duty of care.").  Similarly, Delaware law expressly allows Directors

26 to rely in good faith upon the opinions and reports of HP's officers and employees and those of its

27 external professionals or experts. 8 Del. C. § 141(e).  No objecting shareholder disputes the

28

2

protection afforded the Directors by HP's Certificate of Incorporation.  And they do not dispute the significant hurdle that the certificate imposes on their ability to plead and prove facts stating a non-exculpated claim.  Nor do the Objectors dispute the protection Delaware law affords to Directors relying in good faith on a corporation's internal and external experts.

## A.   THE OBJECTORS HAVE NOT SHOWN SELF-INTEREST BY THE DIRECTORS.

The Objectors do not claim that the Directors approved the Autonomy acquisition or took any other action as a result of self-dealing activity or to obtain a material financial benefit for themselves not shared with shareholders in general (*e.g.*, by personally benefitting from the Autonomy transaction).  *See In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 751 (Del. Ch. 2005) (a typical claim for disloyal conduct is one "when a fiduciary either appears on both sides of a transaction or receives a personal benefit not shared by all shareholders"), *aff'd*, 906 A.2d 27 (Del. 2006).  Unable to allege a material self-interest by the Directors different from HP's shareholders, the Objectors' **only** recourse is to demonstrate bad faith, a showing that the Objectors or any other shareholder cannot hope to make.

## B.   ANY CLAIM THAT THE DIRECTORS ACTED IN "BAD FAITH" IN APPROVING THE ACQUISITION OF AUTONOMY IS COMPLETELY IMPLAUSIBLE.

The Objectors have not shown the "extreme set of facts" needed to prove bad faith by the Directors in approving the Autonomy transaction.  *Dent v. Ramtron Int'l Corp.*, No. 7950–VCP, 2014 WL 2931180, at *7 (Del. Ch. June 30, 2014).

To demonstrate "bad faith," the Objectors must prove that the Directors "acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper."  *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008).  "Examples of this include situations where the fiduciary **intentionally breaks the law**, 'where the fiduciary **intentionally acts with a purpose other than that of advancing the best interests of the corporation**,' or 'where the fiduciary **intentionally fails to act in the face of a known duty to act**, demonstrating a **conscious disregard** for his duties.'"  *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *13 (Del. Ch. Oct. 12, 2011) (quoting *In re Walt Disney Co. Deriv. Litig.*, 906

3

1   A.2d 27, 67 (Del. 2006)).  Any such claim against the Directors is totally implausible.

2          Delaware courts have repeatedly emphasized the heavy burden plaintiffs must carry to

3   show a non-exculpated breach of the duty of loyalty and the duty of good faith subsumed within.

4   *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (the Delaware

5   Supreme Court noted that the fiduciary duty of loyalty "encompasses cases where the fiduciary

6   fails to act in good faith").  As the Delaware Supreme Court held, "[o]nly if [the Directors]

7   knowingly and completely failed to undertake their responsibilities would they breach their duty of

8   loyalty."  *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-44 (Del. 2009).  Claims of incompetence

9   or even gross negligence are not enough.  As the Delaware Court of Chancery has held:

10          Under Delaware law, there is a **vast difference** between an inadequate or flawed effort to
             carry out fiduciary duties and a conscious disregard for those duties. In that regard, an

11          **extreme set of facts** is required to sustain a disloyalty claim premised on the notion that
             disinterested directors were intentionally disregarding their duties.

12  *Dent*, 2014 WL 2931180, at *7.

13          In the related securities action, this Court rejected the parallel claim that HP and its leaders

14  knowingly approved the acquisition of Autonomy at an inflated price and then knowingly misled

15  the market about that acquisition.  *In re HP Sec. Litig.*, Master File No. C 12-05980 CRB, 2013

16  WL 6185529, at *5 (N.D. Cal. Nov. 26, 2013).  The Court held that lead plaintiff in the securities

17  class action "fail[ed] to establish any coherent motive as to why Defendants would knowingly

18  purchase a company for several times its actual value or that they knew Autonomy's accounting

19  was problematic."  *Id.* at *6.  Accordingly, the Court dismissed the securities claims against

20  Director Lane.  *See id.* at *7.  The same reasoning applies with equal force here; the Objectors

21  cannot explain why *any* of the Directors in "bad faith" knowingly acquired Autonomy for several

22  times its actual value.  *See, e.g.*, *BioClinica*, 2013 WL 5631233, at *6 (Delaware law requires a

23  plaintiff to explain "a story of **why** the directors" acted, thereby providing the "purpose" for bad

24  faith conduct); *see also Ash v. McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *9 (Del. Ch. Sept.

25  15, 2000) ("[I]t is simply illogical to presume that McKesson directors would *knowingly* cause

26  McKesson to acquire a company with significant, undisclosed earnings misstatements.  Nothing in

27  the pleadings remotely suggests a reason why McKesson would purposely buy such a company;

28

                                                    4

1    nor do the pleadings offer anything by way of explanation – not a single fact or theory that could

2    possibly support such a conclusion.").

3         In addition, as HP demonstrates in its Response, the DRC concluded after its extensive

4    investigation that each of the Directors acted on an informed basis in a manner he or she believed

5    to be in the best interests of HP and its shareholders, and reasonably relied upon information,

6    opinions, reports and other statements prepared by HP's management and independent experts and

7    advisors, and that none of the Company's advisors had presented any red flags regarding

8    Autonomy's valuation or accounting practices.[3]  (*See* HP's Response Section III.B.2 (Dkt. 398-4);

9    *see also* DRC Resolution at 35 (Dkt. 211-1).)  Accordingly, there was no "knowing[] and

10   complete[]" failure by the Directors to undertake their responsibilities.  *Lyondell*, 970 A.2d at 243-

11   44; *see also BioClinica*, 2013 WL 5631233, at *6 ("Only if they knowingly and completely failed

12   to undertake their responsibilities would they breach their duty of loyalty.").

13        In their Objections, Steinberg and Copeland argue that the Directors acted in "bad faith"

14   because they consciously ignored "red flags" when they approved the Autonomy acquisition.  HP's

15   Response completely demolishes this argument.  (HP's Response Section III.B.2 (Dkt. 398-4).)

16   The Directors will not burden the Court by repeating HP's arguments here.  But the Directors

17   highlight here some of the points particularly relevant to them:

18   - The Objectors claim that HP's failure to obtain the work papers of Autonomy's financial
       auditor, Deloitte UK, was a red flag and that the Directors should have reviewed KPMG's
19     report.  (*See* Steinberg Objection at 7, 12 (Dkt. 383-6); Copeland Objection at 10-12 (Dkt.
       379).)  However, the DRC found that the Directors relied on HP's financial advisors, who
20     informed the Directors that the financial information obtained from Deloitte UK and
       Autonomy in due diligence was "comparable with other acquisitions involving large U.K.
21     publicly traded companies" given the constraints of the U.K. City Code on Takeovers and
       Mergers and the strategic risk that interlopers might obtain non-public information provided
22     to HP.  (HP's Response at 27-28, 32 (Dkt. 398-4); *see also* DRC Resolution at 31-32 (Dkt.
       211-1).)  The DRC also found that the HP Board was advised that "no material issues" were
23

24   [3]    Each of the Directors participated fully in the DRC's investigation including sitting for
     interviews, sometimes twice.  Moreover, as the Objectors admit, the DRC's investigation involved
25   the collection of millions of documents obtained from HP and Autonomy custodians and hundreds
     of thousands of additional materials obtained directly from HP and its professional advisors.
26   (Steinberg Objection at 34 (Dkt. 383-6); DRC Resolution at 16 (Dkt. 211-1).)  The DRC also
     interviewed approximately 90 individuals.  (DRC Resolution at 16 (Dkt. 211-1).)  For the
27   Objectors to claim that this settlement has been reached early in the process ignores the detailed
     work of the DRC and the investigation by Lead Plaintiff's counsel.

28

found as a result of KPMG's accounting diligence.  (HP's Response at 32 n. 26 (Dkt. 398-4).)

- Steinberg claims that the Directors failed to consider analyst reports that questioned Autonomy's reported organic growth.  (Steinberg Objection at 4-5, 28 (Dkt. 383-6).)  But as HP shows in its Response, many analysts expressed favorable views of Autonomy and its organic growth in the months prior to the acquisition.  (HP's Response at 35-37 (Dkt. 398-4).)  Importantly, the Directors relied on HP's financial advisors who, aware of this debate in the analyst community, recommended moving forward with the merger.  (HP's Response at 27 (Dkt. 398-4).)

- Steinberg claims that the Technology Committee failed to vet Autonomy's IDOL software. (Steinberg Objection at 23-24 (Dkt. 383-6).)  This claim, of course, has nothing to do with the damage that HP has suffered from the fraud at Autonomy.  The problem at Autonomy was not bad software.  The problem was fraudulent accounting undertaken at the insistence of Michael Lynch and Sushovan Hussain.  In any event, the DRC found that the Technology Committee's role was **strategic** oversight and guidance on technology issues. (HP's Response at 40 (Dkt. 398-4).)  The committee's mandate did not encompass hands-on testing of new technology.  (*Id.*)

- The Objectors claim that the Directors failed to consider objections to the Autonomy acquisition raised by HP's CFO Catherine Lesjak.  (Steinberg Objection at 8-9, 11-12 (Dkt. 383-6); Copeland Objection at 12 (Dkt. 379).)  However, as the DRC found, Lesjak never raised a concern about Autonomy's financial condition or accounting.  (HP's Response at 42 (Dkt. 398-4); *see also* DRC Resolution at 34 (Dkt. 211-1).)  Rather, Lesjak stated her view that HP investors would principally react negatively to the deal.  (*Id.*)  As the DRC found, the Directors carefully considered Lesjak's dissenting views before approving the transaction.  (HP's Response at 42-43 (Dkt. 398-4); *see also* DRC Resolution at 34 (Dkt. 211-1).)

- While Steinberg points to negative investor reaction following the announcement of the acquisition and an email by Raymond Lane in which he wrote that he was "haunted" by the Acquisition (Steinberg Objection at 10 (Dkt. 383-6)), HP shows in its response that Lane acted in accordance with his fiduciary duties of care and good faith by requesting HP management to explore the company's options, including whether HP could withdraw from the transaction.  (HP's Response at 45 n. 45 (Dkt. 398-4).)

As shown by HP's Response and the DRC's Resolution, neither of the Objectors has presented evidence that, before approving the acquisition, the Directors learned of "red flags" that Autonomy had falsified its financial statements, much less that they consciously ignored any such warnings.  In the absence of any indicia of bad faith by the Directors, the Objectors have raised issues that would amount to a farfetched claim that the Directors – who were entitled to rely on management and their advisors and who were told that there were no significant accounting issues – breached the duty of *care* based on their alleged failure to detect "accounting irregularities during the course of due diligence investigations performed in connection with [a] merger."  *Ash*, 2000 WL 1370341, at *5.  Accordingly, even if the Court were to accept as true the factual assertions

6

made by the Objectors, those claims would result in zero monetary recovery for HP in light of provisions in HP's Certificate of Incorporation that exculpate the Directors from monetary liability for acting without care. *See, e.g., In re Lear Corp. S'holder Litig.,* 967 A.2d 640, 652 (Del. Ch. 2008) ("[T]he General Assembly adopted § 102(b)(7), authorizing corporations to exculpate their directors from liability for violations of the duty of care.").[4]

The Court should not hesitate to approve the Settlement as to the Directors based on the implementation of corporate governance reforms where, as here, the Directors were protected by the exculpatory provision adopted by HP. *See, e.g., In re Oclaro, Inc. Deriv. Litig.*, No. C-11-3176 EMC, 2014 WL 4684993, at *2 (N.D. Cal. Sept. 19, 2014) (granting final approval of settlement of derivative claims providing corporate governance measures, where "the derivative plaintiffs faced a number of risks of proceeding with litigation," including the "potential challenge of proving bad

---

[4]     None of the cases cited by the Objectors shows that the Directors acted in bad faith in approving the Autonomy acquisition. For example, the Objectors predominately rely on cases involving the alleged failure by directors to prevent illegal corporate conduct by their own corporations. *See Stone*, 911 A.2d at 364 (affirming the dismissal of claims that AmSouth directors failed to "implement any sort of statutorily required monitoring, reporting or information controls that would have enabled them to learn of" possible violations of anti-money laundering laws); *see also In re China Automotive Sys. Inc. Deriv. Litig.*, 2013 Del. Ch. LEXIS 217, at *2 (Del. Ch. Aug. 2013) ("[T]he Plaintiffs assert that the Board as a whole, as well as . . . members of the Company's Audit Committee, breached their fiduciary duties by failing to maintain adequate accounting controls and by utilizing improper accounting and audit practices, leading to the Company's issuance of false and misleading statements."); *McCall v. Scott*, 239 F.3d 808, 813 (6th Cir. 2001) ("Plaintiffs alleged that Columbia's senior management, with Board knowledge, devised schemes to improperly increase revenue and profits, and perpetuated a management philosophy that provided strong incentives for employees to commit fraud."), *amended on denial of reh'g*, 250 F.3d 997 (6th Cir. 2001). The Objectors' remaining cases involve the conduct by directors of corporations that were the **targets** of an acquisition proposal, none of which apply to the conduct of the Directors here. *See Lyondell*, 970 A.2d at 243-44 (In reversing the Court of Chancery, the Delaware Supreme Court held that Lyondell's directors did not "knowingly and completely fail[] to undertake their responsibilities" in selling Lyondell so as to be liable for a non-exculpated claim for bad faith.); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1281 (Del. 1989) (Macmillan directors improperly delegated oversight of the sale of Macmillan to management when management was pursuing its own sponsored buyout of Macmillan); *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 818 (Del. Ch. 2011) (in enjoining a transaction due to Del Monte's financial advisor violating board instructions and the advisor secretly agreeing to provide financing to the proposed purchaser of Del Monte, the court noted that Del Monte's exculpation provision and the board's reliance on its advisors made "the chances of a judgment for money damages [against Del Monte's directors] vanishingly small"); *In re Toys "R" Us S'holder Litig.*, 877 A.2d 975, 1022 (Del. Ch. 2005) (plaintiffs failed to show a "reasonable probability of success on the merits" for their claims that the directors of Toys "R" Us breached their fiduciary duties in approving a sale of the company).

1  faith by a preponderance of the evidence" and the "exculpatory clause in Oclaro's Certificate of

2  Incorporation that may have prevented a finding of liability").

3  **IV.    CONCLUSION.**

4        For the reasons stated herein, the Directors respectfully submit that the Court should grant

5  final approval of the Settlement as fair, reasonable, and adequate to HP and its shareholders.

6  DATED:  July 17, 2015

                                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
7

8
                                        By:  _____/s/ Timothy A. Miller_____
9                                              TIMOTHY A. MILLER
                                               Attorneys for Defendants
10                                        RAYMOND J. LANE, MARC L. ANDREESSEN,
                                               SHUMEET BANERJI, RAJIV L. GUPTA,
11                                        JOHN H. HAMMERGREN, ANN M. LIVERMORE,
                                               GARY M. REINER, PATRICIA F. RUSSO,
12                                          G. KENNEDY THOMPSON, RALPH V.
                                          WHITWORTH, LAWRENCE T. BABBIO, JR.,
13                                        SARI M. BALDAUF, and DOMINIQUE SENEQUIER

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8